1 of 16

RECEIVED

# IN THE UNITED STATES DISTRICT COURT
## OF ALABAMA MIDDLE DISTRICT

MIDDLE DISTRICT

| | |
|---|---|
| JAMES WILLIE JACKSON<br>Petitioner # 151754,<br>-VS-<br>WARDEN CHERYL PRICE et al<br>Respondent. | Civil Action No. 3:06-CV-1027-MHT<br><br>Circuit Court Number:<br>CC-03-378 |

## SEPARATE MEMORANDUM OF LAW IN SUPPORT OF FEDERAL HABEAS CORPUS PETITION

COMES NOW James Willie Jackson, pro se hereinafter "petitioner" And repectfully moves this Honorable Court to entertain the above-styled memorandum of law in support of his petition, And for good cause and reason show as follows:

# STATEMENT OF THE CASE AND FACTS

1) On January 4, 2003, Petitioner was Arrested And charged with Unlawful Distribution of a Controlled Substance, to wit: Crack Cocaine. On June 24, 2003, Petitioner, through his Attorney Mr. Jeremy W. Armstrong, filed a waiver of Arraignment And entered a plea of not guilty.

2) On August 21, 2003, the trial of the matter began before the Honorable George Greene. The jury subsequently returned a guilty verdict for Aforesaid offense (R. 141-143). On September 9, 2003, a sentencing hearing was conducted before the trial court. (R. 145-148) The State invoked the Habitual Offender Act And submitted two (2) prior felony convictions (R. 146). The Court sentenced Petitioner to twenty-two (22) years in the penitentiary. After the filing of a motion for new trial and same denied, Petitioner, on September 12, 2003, filed written notice of Appeal.

3) On April 23, 2004, the Alabama Court of Criminal Appeals issued its opinion in the matter Affirming the conviction and sentence.

4) On or about May 6, 2004, Petitioner received a letter (dated May 3, 2004) from his trial/Appellate Attorney Advising the Affirmance to the Appeal; And

essentially advised that no further action would be taken in the matter by him on petitioner's behalf.

## FACTS TO THE RECORD

1. On September 16, 2002, confidential informat, Jason Hathcock, approached Sergeant Steve Johnson with the Russell County Sheriff's Department (R. 32-33, 44-45) Hathcock informed Sergeant Johnson that he could "work off" those traffic citations by purchasing crack cocaine from an individual known as "Blackjack", who was later identified as the Petitioner, James Jackson. (R. 33-34, 45-46, 85-86). After Sergeant Johnson contacted other officers on the potential purchase, wired Hathcock with an audio recording device, they set motion to fulfil their objective in getting drugs.

---

(footnote) Sergeant Johnson and Hathcock testimony conflicted (e.g. Johnson testified as to have "stripped searched" Hathcock to his underwear. (R. 35) Hathcock (C.I.) testified that Johnson "did not" strip search him and only a "pat-down" search was conducted. (R. 61)

2. Sergeant Johnson, Investigator Franklin and three (3) other law enforcement officer followed Hathcock in his vehicle in route to the alleged location of Petitioner, (R. 36-37, 48, 88-89) Hathcock drove his vehicle to the alleged location of Jackson while law enforcement monitored the audio recording device a (sic) "half a mile away." (R. 37, 48, 90) Sergeant Johnson and Investigator Franklin testified that they, nor any other law enforcement officers, were able to actually see the alleged drug transaction. (R. 43, 116).

3. Hathcock allegedly purchased twenty dollars ($20.00) of crack cocaine from Petitioner (R. 49-51) Once Hathcock left the location of the alleged drug transaction, Sergeant John testified that he and Investigator Franklin drove by the location where the alleged drug transaction took place. (R. 37). Sergeant Johnson testified that Petitioner was wearing a "white jersey type shirt." (R. 38) However, Hathcock and Investigator testified that Jackson was wearing a "red jersey and a black pair of pants" (R. 59-60, 93). It's important to note that the alleged drug transaction took place no later than 6:30 p.m. (E.S.T.) and it was still daylight. (R. 42, 63, 105.

4. Hathcock turned over the suspected crack cocaine, according to his testimony, to Investigator Franklin. (R. 106) Hathcock further testified that after the alleged drug transaction, no law enforcement officer searched his person or his vehicle. (R. 70)[2] However, Investigator Franklin testified that a (sic) "pat-down" search was conducted on Hathcock's person and a (sic) "cockpit" search of Hathcock's vehicle was conducted. (R. 112) Investigator Franklin testified that the suspected rock cocaine weighed point four (0.4) grams (R. 108). Investigator Franklin testified that it was his habit of weighing "just the rock" when attempting to ascertain a weight. (R. 108-109) Investigator Franklin testified that the particular piece of suspected rock cocaine had a street value of forty dollars ($40.00)(R. 109).

5. Investigator Franklin testified that the suspected rock cocaine was turned over to evidence custodian Tommy Pell who turned said evidence over to forensic scientist Sherwin Boswell (R. 24-31, 96) Boswell testified that when he received the suspected rock cocaine that it had a weight of point one seven (0.17) grams. — point two three (0.23) grams less

than what the suspected rock cocaine weighed at the time Investigator Franklin took custody of the suspected rock cocaine. (R. 75, 82).

6. During trial, the State bought out the issue of Hathcock's traffic citations during the direct examination of Sergeant Johnson and Hathcock. (R. 33-34, 45-46, 85-86). However, Petitioner was not allowed to conduct a thorough and sifting cross-examination concerning; to wit: to (Sic) "work off" traffic citation by purchasing crack cocaine from Jackson. (R. 33-34, 45-46, 85-86).

After a reading of the transcript in this matter, there is no doubt that the "key" to the State's case was the credibility of the confidential informant, Jason Hathcock. The only witnesses as to whether a drug transaction took place are Hathcock and Jackson.

---

( footnote )

It is clear from the record that the testimony between confidential informant Hathcock and Sergeant Johnson and Investigator Franklin conflicted as to the extensiveness of the search of Hathcock's person and vehicle, as evinced (R. 35, 36, 88-89); (R. 61); (R. 70)

# SYNPOSIS OF CLAIMS

(1) Petitioner has maintained his innocence through out the course of his trial and has suffered an unconstitutional loss of liberty; and should be entitled to have his case viewed within the purview of the doctrine of actual, factual and legal innocence

(2) Petitioner's conviction is a result of a fundamental miscarriage of justice

(3) The evidence of guilt may have been unlawfully admitted and/or that an error precluded the development of true facts or resulted in the admission of false ones

(4) Fundamental fairness dictates that when fundamental error occurs, court should look to the validity of such error to determine its prejudicial effect on a petitioner's federal due process rights.

(5) When a petitioner's appellate attorney abandon him in the midst of the appellate process, in respect to fully exhausting the required state court remedies, such error and abandonment become the contributory factor to aforesaid process.

## SUMMARY OF THE ARGUMENT

1) The prosecution failed to present sufficient evidence to prove element of crime; And therefore Petitioner is legal innocent of the crime in which his conviction and sentence rest upon; he is therefore actually innocent for the charged offense; his conviction is not consistant with the demands of the federal due process clause; the state court(s) resolution of petitioner's claim(s) was contrary to or involved an unreasonble application of federal law as determined by United States Supreme Court precedent, or that it was based upon an unreasonable determination of the facts. 28

USC Section 2254(d)(1) and (2)... And failure to entertain the claims heretofore and hereinafter would result in a fundamental miscarriage of justice because cause and prejudice has been demostrated through state court's activities; and, when fundamental errors occurs, courts should look to the validity of such error to determine its prejudcial effect on a petitioner's federal due process rights; And finally, a claim of actual innocent, not limited to factual and/or legal, give rise to excuse a procedural default bar and/or a failure to exhaust state court remedies.

## ARGUMENT

First and foremost among the contentions set out hereinafter, Petitioner declares that he is actual innocent of the alleged Unlawful Distibution of Crack Cocaine that he has been accused of by the Russell County Sheriff's Department ... And that no drug transaction never occured between him and confidential informant, Jason Hathcock, as contended by the State of Alabama which resulted in his impri-

sonment. This instant position is supported by
Additional facts adduced during trial and
Are supported by the record, to wit: Sergeant
Johnson testified that he "stripped searched"
Hathcock to his underwear. (R. 35) Hathcock,
himself, testified that Sergeant Johnson "did not"
strip search him and only a "pat-down"
search was conducted. (R. 61). Sergeant Johnson
and Investigator Franklin testified that they,
nor any other law enforcement officers, were
able to actually see the alleged drug trans-
action. (R. 43, 116). Sergeant Johnson
testified that Jackson was wearing a "white
jersey type shirt." (R. 38) However, Hathcock
and Investigator Franklin testified that Jackson
was wearing a "red jersey and a black pair
of pants." (R. 59-60, 93)

On that point, Petitioner presents to
this Court that, on the day in question, the
coloring clothing he wore starkly differs
from Johnson, Franklin and Informant's testi-
monial Account. And moreover, as demostrated
heretofore; Hathcock testified that After
the alleged drug transaction, no law enforce-
ment officer searched his person or his
vehicle. (R. 70) However, Investigator Franklin

testified that a "pat-down" search was conducted on Hathcock's person and a "cockpit" search of Hathcock's vehicle was conducted. (R. 112).

Investigator Franklin's testimony as to the weight of the suspected rock cocaine upon receipt of it from C.I. (i.e., it weighed (sic)point four (0.4.) grams) were in stark and notable conflict to that of DFS Sherwin Boswell upon receipt from evidence custodian Tommy Pell (i.e., it weighed in at point one seven (0.17) grams)... Compare R. <u>108, 24 – 31, 96, 75, 82.</u>

At this point of the pleading, it is conceivently clear that the above-noted conflict of given testimonies and discrepencies violates basic protection of a criminal trial. See <u>United States v. Olano,</u> 507 U.S. 725 (1993) ... And no criminal punishment may be regarded as fundamentally fair — <u>id.</u> Moreover, petitioner argues therefrom that, such errors precluded the development of true facts, or they resulted in the admission of false ones. <u>Moore v. Kemp,</u> 874 F.2d. 847. Further, as Petitioner maintains — he is innocent of the charged offense; and would therefore argues that an actual innocence claim will excuse a procedual

default bar, and that the ends of justice demands consideration of an actual innocence claim, as shown in Kulhman v. Wilson, 477 U.S. 436, 106, S.Ct. 2616 (1986); See also Murry v. Carrier, 477 U.S. 478, 106 S.Ct. 2639, 2649-50

Having said that, and having recognizing that, heretofore; it's also the contention of the Petitioner that the resolution of these claims in state court was contrary to or involved an unreasonable application of federal law as determined by the United States Supreme Court precedent, or that it was based on unreasonable determination of the facts. See 28 U.S.C. Section 2254 (d) (1) and (2). See also Cf. Williams v. Taylor, 529 U.S. 362; Brown v. Head, 272 F. 3d 1308, 1313 (11th Cir. 2001)

Petitioner further contends that he was denied his federal constitution rights to due process of law and right to a fair trial. Specifically, Petitioner argues that he was denied the right to attack the credibility of the State's confidential informant on matters relevant to a material issue in the case (this issue was specifically reserved at trial). It is clear from the trial transcript that Hathcock

had a motive to make sure, a drug transaction occurred between he and Jackson; to wit: to "work off" traffic citations by purchasing crack cocaine from Jackson. (R. 33-34, 43-46, 85-86).

The State brought out the issue of Hathcock's traffic citations during the direct examination of Sergeant Johnson and Hathcock. (R. 33-34, 45-46, 85-86) When cross was attempted on the issue (e.g. why Hathcock's license was suspended); the court sustained the State's objection to the defense counsel's question.

There is no doubt that the "key" to the State's case was the credibility of the confidential informant, Jason Hathcock. The issue of Hathcock's traffic citations is the very reason Hathcock approached law enforcement to set up an alleged drug transaction with Jackson. This issue was relevant to a material issue in the case; to wit: Hathcock's credibility.

Jackson was denied his right to a "thorough and sifting cross-examination" and his right to a fair and impartial trial in violation of the Fifth, Sixth and Fourteenth Amendment to the United States Constitution.

This was a clear abuse of the trial court's discretion. Additionally, Petitioner was denied the right to thoroughly crosse-examine the State's confidential informant as to the length of time the confidential informant owned the vehicle that was used in the alleged drug transaction (this issue too was specifically preserved at trial. (R. 69-70) Moreover, Hathcock testified that after the alleged drug transaction, no law enforcement officer searched his person or his vehicle. (R. 70); (R. 112). Again — there is no doubt that the "key to the State's case was the credibility of the confidential informant, Jason Hathcock. Hence, the trial court's action in limiting the cross-examination was substantially erroneous. Sec. § 136.01, McElroy's Alabama Evidence; Riley v. City of Huntsville, 379 So. 2d 557 (Ala 1980); McMillian v. State, 594 So. 2d 1253, 1261 (Ala Crim. App. 1991) Moore v. Kemp, 874 F. 2d 847 ("...the test is whether the alleged error precluded the development of true facts). Moreover, Petitioner would argue that no man shall be condemned in his person or property

without... an opportunity to make his defense Cf. Baldwin v. Hitle, 1 Wall, 223, 233, 17 L. Ed. 531 (1864). See also Windsor v. McVergh, 93, 182 U.S. 274, 277, 23 L. Ed 914 (1876)(... A pro forma opportunity will not do; ... due process demands an opportunity to be heard at a meaningful time and in a meaningful manner) Armstrong v. Manzo, 380 U.S. 545, 552, 85 S. Ct 1187, 1191; Morgan v. United States, 304 U.S. 1, 18, 58 S Ct 773, 776, 82 L. Ed. 1129 (1938) (... defendant must be afforded a reasonable opportunity to meet the charge against him by way of defense or explanation).

   Having said that, and having recognizing that, Petitioner will therefore hold the position that he is also legally innocent due to the State court's action and activities because such error(s) has caused a miscarriage of justice. See: also U.S. Const. Amends. 5th and 14th and Ala Const Art. 1, §7, Article 1 Section 6 of the Ala 1901 and right under the 6th Amendment of the United States Constitution; Schlup v. Delo, 513 U.S. 298, 320 (1995); Murray v. Carrier, 477 U.S. 478 (1986). Moreover, this Court should decide whether the state court's decision of the issue(s) is objectively unreasonable. Williams v. Taylor, 529 U.S. 362;

Brown v. Head, 272 F.3d 1308; Winship v United States., supra ( defining the concept of reasonable doubt).

Hence, this Court is encourged to continue to recognize that a process which is mere gesture is not due process. That being recognized, Petitioner argues that had he been afforded the opportunity to thoroughly and siftly cross-examine the confidential informant about the aforesaid matters, the outcome of the trial would have been different (i.e., the jury would have reached a different result — because informant's true motive behind his actions would have manifested and/or informant's lack of credibility could have raise to the level of impeachment.

Based on the foregoing this Court should conduct an evidentiary hearing in this matter and/or grant Petitioner relief he may be entitled, in this cause of action. See also Petitioner Exhibit A, B, & C attached hereto in support of the aforementioned contention and argument thereupon.

Respectfully Submitted:

/s/ James W Jackson

# EXHIBIT
# "A"

*Pet. Exh. A*

# ARMSTRONG & GRAY, P.C.
### A PROFESSIONAL CORPORATION
### ATTORNEYS AT LAW

1619 BROAD STREET
PHENIX CITY, ALABAMA  36867
Telephone: (334) 291-0410
Telecopier: (334) 291-0411

JEREMY W. ARMSTRONG
WALTER L. GRAY, III

———————————
J.C. PERDUE
OF COUNSEL

MAILING ADDRESS:

POST OFFICE BOX 3409
PHENIX CITY, ALABAMA
36868-3409

March 19, 2004

Ventress Correctional Facility
**ATTN:  James Willie Jackson**
**AIS# 151754**
Post Office Box 767
Clayton, Alabama  36016

Dear Mr. Jackson:

     Please find enclosed a copy of the brief I filed today on your behalf in the Alabama Court of Criminal Appeals.  Also, find enclosed a copy of the trial record in your case.

     I will keep you informed of any updates in your case.  If you have any questions please do not hesitate to write.

Sincerely,

JEREMY W. ARMSTRONG

JWA/kle

CC:   File

Pet, Exh. "B"

# ARMSTRONG & GRAY, P.C.
## A PROFESSIONAL CORPORATION
## ATTORNEYS AT LAW

1619 BROAD STREET
PHENIX CITY, ALABAMA  36867
Telephone: (334) 291-0410
Telecopier: (334) 291-0411

JEREMY W. ARMSTRONG
WALTER L. GRAY, III

J.C. PERDUE
OF COUNSEL

MAILING ADDRESS:

POST OFFICE BOX 3409
PHENIX CITY, ALABAMA
36868-3409

May 3, 2004

Ventress Correctional Facility
**ATTN:  James Willie Jackson**
**AIS# 151754**
Post Office Box 767
Clayton, Alabama  36016

Dear Mr. Jackson:

Please find enclosed a copy of the State of Alabama's brief filed in the Alabama Court of Criminal Appeals and a copy of the Alabama Court of Criminal Appeals April 23, 2004, opinion, affirming your conviction and sentence.  After careful review of the Court's Opinion and research on all pertinent case law, I have determined that an appeal to the Alabama Supreme Court would be futile in this matter.  If you disagree, you have until May 7, 2004, to file an Application for Rehearing with the Alabama Court of Criminal Appeals, (334) 242-4590, (334) 242-4689 [Fax].  Said application for rehearing must be in compliance with Rule 40, *Alabama Rules of Appellate Procedure.*  I previously forwarded you a copy of the clerk's record and reporter's transcript along with a copy of our brief in this matter.

Sincerely,

JEREMY W. ARMSTRONG

JWA/tlk

CC:   File

# EXHIBIT "B"

Pet. Exh. B

# ARMSTRONG & GRAY, P.C.
### A PROFESSIONAL CORPORATION
### ATTORNEYS AT LAW

1619 BROAD STREET
PHENIX CITY, ALABAMA  36867
Telephone: (334) 291-0410
Telecopier: (334) 291-0411

JEREMY W. ARMSTRONG
WALTER L. GRAY, III

MAILING ADDRESS:

POST OFFICE BOX 3409
PHENIX CITY, ALABAMA
36868-3409

J.C. PERDUE
OF COUNSEL

June 7, 2004

Ventress Correctional Facility
**ATTN:  James Willie Jackson**
**AIS# 151754**
Post Office Box 767
Clayton, Alabama  36016

Dear Mr. Jackson:

I am in receipt of your letter dated June 1, 2004, requesting that I further appeal your case by filing an application for rehearing.  I informed you in my May 3, 2004, correspondence that I would not file any further appeal in your case based on futility.  Additionally, I informed you in this correspondence as follows:

Please find enclosed a copy of the State of Alabama's brief filed in the Alabama Court of Criminal Appeals and a copy of the Alabama Court of Criminal Appeals April 23, 2004, opinion, affirming your conviction and sentence.   After careful review of the Court's Opinion and research on all pertinent case law, I have determined that an appeal to the Alabama Supreme Court would be futile in this matter.  If you disagree, **you have until May 7, 2004, to file an Application for Rehearing with the Alabama Court of Criminal Appeals**, (334) 242-4590, (334) 242-4689 [Fax].  Said application for rehearing must be in compliance with Rule 40, *Alabama Rules of Appellate Procedure*.  I previously forwarded you a copy of the clerk's record and reporter's transcript along with a copy of our brief in this matter.

As of May 3, 2004, I no longer represent you in this matter.  Additionally, as shown above, I informed you of the deadline to file an application for rehearing if you wished to proceed further with your appeal.  Obviously, you failed to meet that deadline since a Certificate of Judgment was entered in your case.  The direct appeal of your conviction and sentence is **final**.  However, you do have one (1) year from the Certificate of Judgment date to file a post-conviction petition (Rule 32, *Alabama Rules of Criminal Procedure*) or a federal habeas petition.

However, I will not be representing you on those matters.  I wish you luck in this matter.

Sincerely,

JEREMY W. ARMSTRONG

JWA/tlk

CC:    File

Affidavit of Jackson pg. 1 of 2

1 of 2

# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA

JAMES WILLIE JACKSON,
    Petitioner,

    - VS -

WARDEN CHERYL PRICE et al.,
    Respondents.

Civil Action No. 3:06CV-1027-MH

Circuit Court, Russ. Co. #
CC-03-378

## AFFIDAVIT

State of Alabama )
County of Bibb )

       Before me the undersigned authority did personally appear one JAMES WILLIE JACKSON, who first being duly sworn before me did depose and sayeth under penalty of perjury and to the best of his knowledge and belief, the following:

AFFIANT SO SAYETH:

1). That I am the petitioner in the attached petition and memorandum of law and that I do have personal and instant knowledge of the contents of this instant affidavit;

2). That I am the affiant in this instant affidavit and that I do have personal and instant knowledge of the contents of this instant affidavil; and wherein declaration, to petitioner's charged offense underlying his imprisonment, is hereby made in support of same;

3). That I am over the legal age of nineteen (19) years;

4). That the information and exhibits contained in the attached argument are true and correct to the best of my knowledge and belief under penalty of perjury.

AFFIANT SAYETH NOTHERING FURTHER.

Executed this the 9 day of November, 2006.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

NOTARY STATEMENT

Sworn To And Subscribed Befor Me This 9 Day of November, 2006

/s/ James Jackson
James Willie Jackson # 151754

/s/ Laura Nixes 9-1-2010
NOTARY PUBLIC