IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

JAMES WILLIE JACKSON, #151754    )
                                    )

       Petitioner,               )
                                      )

v.                                ) CIVIL ACTION NO.
                                )   3:06-CV-1027-MHT

CHERYL PRICE, et al.,          )
                                     )

       Respondents.          )

## RESPONSE

Come now the Respondents, by the Attorney General for the State of

Alabama, and in answer to Petitioner James Willie Jackson's petition for writ of

habeas corpus state the following:

## I. PROCEDURAL HISTORY

### a. Conviction

1. On August 21, 2003, Jackson was found guilty of unlawful distribution of

a controlled substance by a duly selected and sworn jury in the Russell County,

Alabama Circuit Court. (RX-1, at pgs. C. 4, 42-43 & R. 141)[1] On September 9,

---

[1] RX-1 is the appellate record of Jackson's conviction for unlawful distribution of a
controlled substance. Pages prefixed by "C" are pages of the clerk's record that
comprise the first 77 pages of the exhibit. Pages prefixed by "R" are references to
the trial transcript of the appellate record.

2003, Jackson was sentenced as an habitual felony offender with two prior felony convictions to twenty-two years in the penitentiary. (RX-1, at pgs. C. 4-5, 44-45; R. 147-148) On September 12, 2003, Jackson filed a motion for new trial. (RX-1, at pgs. C. 5, 53-55) The motion for new trial was denied on September 17, 2003. (RX-1, at pg. C. 56) Circuit Judge George R. Greene presided. Jackson was represented by Attorney Jeremy W. Armstrong.

### b. Direct appeal

2. Armstrong represented Jackson on appeal. He filed notice of appeal on September 12, 2003. (RX-1, pgs. C. 47-48) Jackson argued on appeal that the trial court abused its discretion when it denied him his right to attack the credibility of the State's confidential informant during cross-examination on matters relevant to a material issue in the case. Specifically, he argued that he was denied his right to the cross-examination of the confidential informant on two matters: (1) the traffic citations that were the basis of the traffic fines that the police would help the informant "work off" in exchange for the informant setting up a drug transaction with Jackson; and, (2) the length of time the confidential informant owned the car that was used in the alleged drug transaction. (RX-2, at pgs. 7-15) The State filed its brief on April 6, 2004 and argued that the issues were meritless. (RX-3)

3. On April 23, 2004, the Alabama Court of Criminal Appeals issued a memorandum decision affirming Jackson's conviction for unlawful distribution of a controlled substance. The Court of Criminal Appeals ruled that because Jackson did not make an offer of proof as to the substance of the testimony he was trying to elicit or the relevance of that testimony, he did not properly preserve the alleged error of the trial court when it limited his cross-examination of the confidential informant. Therefore, the argument was not properly before the appellate court. (RX-4)

4. Jackson did not file an application for rehearing nor did he file a petition for writ of certiorari in the Supreme Court of Alabama. On May 12, 2004, the Alabama Court of Criminal Appeals issued a certificate of judgment. (RX-5)

### c. Post-conviction proceedings

5. On September 9, 2004, Jackson, pro se, executed a Rule 32, Alabama Rules of Criminal Procedure, post-conviction petition for relief from his conviction for unlawful distribution of a controlled substance. (RX-6, at pg. 21) The petition stated that it was being mailed on September 7, 2004. (RX-6, at pg. 13) The petition was marked filed by the Russell County Circuit Clerk on September 21, 2004. Jackson raised several claims alleging that he was illegally arrested on January 4, 2003 for reasons unknown to Jackson. He also stated that he was

sentenced to thirteen days in jail for "failure to appear", and after his thirteen day sentence was completed he was not released from jail. He argued that the incarceration was a pretext to keep him in jail until he was indicted on May 23, 2003 for unlawful distribution of a controlled substance; further, the indictment was defective. (RX-6, pgs. 16-17) It appears that of the above claims only the indictment claim addressed the conviction which the present habeas corpus petition challenges.

      6. In addition to the above claims, Jackson alleged claims of ineffective assistance of counsel. Those claims were as follows:

    (1) Counsel failed to preserve his <u>Batson</u> challenge for appellate review;

    (2) Counsel failed to challenge the defective indictment;

    (3) Counsel failed to develop a defense;

    (4) Counsel did not make the necessary challenge to the prosecutor's striking all but one of the African-Americans from the jury panel;

    (5) Counsel failed to make an objection on the ground that the jury venire was not drawn from a fair cross-section of the community;

    (6) Because of the violation of <u>Batson v. Kentucky</u>, Jackson was denied a fair trial;

    (7) Counsel failed to investigate the law concerning the <u>Batson</u> objection; and,

    (8) Counsel failed to challenge the State's refusal to reveal the full extent of the confidential informant's prior criminal record as well as the promises made to the informant in return for his services.

(RX-6 at pgs. 17-19)

Within the claims of ineffective assistance of counsel, Jackson also argued that he was entrapped into making the drug transaction and that the State's evidence was insufficient to support his conviction. He alleged that if he had had an effective defense counsel, and if defense counsel had filed the necessary motions to dismiss, the outcome of his trial would have been different. (RX-6, pg. 18) Further, Jackson alleged that counsel was ineffective on appeal because he failed to argue that the State's peremptory strikes violated <u>Batson v. Kentucky</u>. Also, he alleged that counsel was ineffective on appeal because he did not seek review of his case in the Supreme Court of Alabama by a writ of certiorari. (RX-6, at pg. 19) Last, he alleged that counsel was ineffective on direct appeal by failing to research the appropriate law and raise all instances of "obvious error" that occurred during trial. (RX-6, pgs. 19-20)

7. On November 19, 2004, the State filed an answer to the petition. (RX-6, pgs. 24-25) On October 26, 2006, the trial court entered an order denying Jackson relief under Rule 32, A.R.Crim.P.. (RX-6, at pgs. 52-53) Jackson did not appeal from the Russell County Circuit Court's denial of his Rule 32 petition.

## II. HABEAS CORPUS PETITION

### a. Status of petition

8.  On September 9, 2006, Jackson, pro se, filed the above-styled 28 U.S.C. § 2254 petition for habeas corpus relief in this Court challenging his 2003 conviction for unlawful distribution of a controlled substance.  The present petition is Jackson's first habeas corpus petition challenging the 2003 unlawful distribution of a controlled substance conviction.

### b. Claims

9.  Jackson argues that the prosecution failed to present sufficient evidence to prove the elements of unlawful distribution of a controlled substance and therefore, he is "legally innocent" and "actually innocent" of the offense.

10.  Jackson also argues that he was denied due process and a fair trial because his cross-examination of the confidential informant was restricted.

### c. Application of 28 U.S.C. § 2244(d)(1) statute of limitation

11.  Under 28 U.S.C. § 2244(d) a petitioner is required to file an application for a writ of habeas corpus within a one-year period from the date on which the state court judgment became final by the conclusion of direct review.  The time during which a properly filed application for state post-conviction review with

respect to the pertinent judgment or claims is pending is not counted toward any period of limitation under this sub-section. 28 U.S.C. § 2244(d)(1)(2).

12. On May 12, 2004, the Alabama Court of Criminal Appeals issued a certificate of judgment on direct appeal. (RX-5) On September 9, 2004, Jackson executed a post-conviction petition pursuant to Rule 32, A.R.Crim.P.. (RX-6, at pg. 21) The petition stated that it was being mailed September 7, 2004. (RX-6, pg. 13) Apparently, Jackson did not file the proper cover sheet with his Rule 32 petition, but it appears the petition was marked filed by the Russell County Alabama Circuit Clerk on September 21, 2004. (RX-6, pg. 7)[2]

13. The Rule 32 petition was denied and dismissed by the Russell County Circuit Court on October 27, 2006. Jackson executed his habeas corpus petition on October 14, 2006. Jackson's petition was filed in this Court within the one-year statute of limitation period of 28 U.S.C. §2244(d).

---

[2] The circuit court case action summary notes that the petition was filed on October 29, 2004. (RX-6, pg. 1) However, under Houston v. Lack, 487 U. S. 266, 271-272 (1988) the petition was "filed" when Jackson delivered his petition to prison officials for mailing. Although Jackson states that the petition was to be mailed on September 7, 2004 – He signed the petition on September 9, 2004. September 9 is the earliest date he could have "filed" his petition.

### d. Exhaustion

14. Although Jackson did not fully exhaust his claims in the state court, and they are now procedurally defaulted in this Court, the claims are to be considered exhausted for the purpose of habeas corpus review.

## III. FACTS RELEVANT TO THE CLAIMS

15. The following are the facts relevant to the claims raised in Jackson's habeas corpus petition.[3]

16. On September 16, 2002, Jason Hathcock approached Russell County, Alabama Sheriff Sergeant Steve Johnson at the Sheriff's Department. (R. 32-33, 44) Hathcock told Sergeant Johnson that he could buy dope or crack from a man known as "Blackjack" on Masons Road in Phenix City; in return, Hathcock wanted to work off fines and restitution owed from his two traffic tickets. (R. 33-34, 45-46) Sergeant Johnson notified Sergeant Thomas Franklin, a detective with the Russell County Sheriff's Department. (R. 34, 84-85) Sergeant Franklin was familiar with a person known as "Blackjack", and knew that his name was James Willie Jackson. (R. 34, 85) To make sure that Hathcock and Sergeant Franklin were talking about the same person, Sergeant Franklin compiled a photographic

---

[3] All page references are to the trial transcript in the appellate record on direct review – Respondents' Exhibit 1.

line-up with a picture of Jackson and five other similar-looking black men. (R. 46-47, 86-87) Sergeant Franklin showed the photographic line-up to Hathcock and he identified Jackson as the person he knew as "Blackjack." (R. 86-87)

17. Sergeant Johnson searched Hathcock to make sure he had no illegal drugs or contraband on his person. (R. 33-36, 47, 88) Sergeant Franklin searched Hathcock's car for contraband and none was found. (R. 47, 89) They photocopied the twenty-dollar bill that they gave to Hathcock to use for the transaction. (R. 48, 88) They fitted Hathcock with an electronic monitoring device so they could listen to the transaction and make an audiotape of it. (R. 36, 88) Hathcock got back into his car and drove to a residence at 7 Masons Road. Sergeant Johnson and Sergeant Franklin followed but the officers waited around the corner while Hathcock was making the transaction. (R. 36-37, 48, 90-93)

18. When Hathcock drove up to the trailer at 7 Masons Road, there were four people standing in the front yard. (R. 49) Jackson walked up to Hathcock's car and asked him how he was doing. (R. 49) Hathcock asked Jackson if he could give him a twenty and Jackson said yes. (R. 49-50) Hathcock told Jackson that he wanted to see it first, so Jackson walked up to another individual and then walked back to Hathcock. (R. 55) Jackson gave Hathcock a piece of crack cocaine and Hathcock gave Jackson the twenty-dollar bill. (R. 50) Hathcock drove away. Sergeant Johnson and Sergeant Franklin followed him to Industrial Park. (R. 90-

92) From their location, Sergeant Johnson and Sergeant Franklin could hear the entire transaction. (R. 37, 89-90) The entire transaction was audio-recorded and the tape was played for the jury at trial. (R. 89-90, 100)

19. Hathcock told the deputies that Jackson was wearing a red shirt and black pants. (R. 60, 93) Hathcock turned over the crack cocaine to Sergeant Franklin, he sealed it in a plastic bag, and he marked it with his initials and the date. (R. 91-92, 95) The substance field-tested positive for cocaine and was later verified as containing 0.17 grams of cocaine. (C. 64; R. 79, 95) Later that night, Sergeant Franklin drove back by the trailer at 7 Masons Road and he saw an individual wearing a red shirt and black pants. (R. 93) They did not arrest Jackson immediately because they wanted to try making other cases. (R. 97) After several attempts, Russell County Sheriff's deputies were able to arrest Jackson on January 9, 2003. (R. 114)

20. Subsequently, Hathcock's two tickets were disposed of. He paid $180 of the original $236 fines. (R. 63) At trial, Hathcock testified that one of his traffic tickets was for driving with a suspended license. (R. 62) When counsel asked why Jackson's license had been suspended, the State objected to the relevance of the question and the trial court sustained the objection. (R. 62) Hathcock testified that he was driving his car that night - a 1994 Mercury Sable. (R. 69) Jackson's counsel asked how long he had owned the car and the State

objected to the relevance of the question.  The trial court sustained the objection.
(R. 69-70)

21.  After being properly given <u>Miranda</u> warnings and waiving them,
Jackson spoke to Investigator Goodrich and Sergeant Franklin.  (R. 99)  This
interview was video and audio recorded and played for the jury.  (R. 99-100)
During this interview, Sergeant Franklin said "I know you may not be the main
man, you may not be making all the money, in fact, I think you said you probab[l]y
just getting part of the dope" and Jackson turned to Investigator Goodrich and said
"see, I told you that's what I was doing."  (R. 101)  After considering the evidence
presented at trial, the jury returned a verdict finding Jackson guilty of unlawful
distribution of a controlled substance.  (R. 141)

## IV.  PROCEDURAL DEFAULT

### a.  Sufficiency of the evidence claim

22.  Jackson argues that he is "factually" and "actually" innocent of the
charge of unlawful distribution of a controlled substance.  He argues that there was
conflicting evidence by witnesses.  He argues that the effect of the contradictions
and discrepancies in the testimony was that the State did not meet its burden of
proving all the elements of the crime of unlawful possession of a controlled
substance.  Although couched in terms of "actual innocence", the claim is actually

11

a claim challenging the sufficiency of the evidence to support his conviction. Although counsel made a motion for a judgment of acquittal at trial on the ground that the evidence was insufficient to prove each and every element of the charged offense (RX-1, at pg. R. 128), and although a motion for new trial was filed challenging the sufficiency and weight of the evidence (RX-1, at pgs. C. 53-54), no issue challenging the sufficiency of the evidence was raised on appeal. (RX-2) Claims that are not raised on direct appeal are procedurally defaulted.

23.   A state habeas corpus petitioner who fails to raise his federal claims in the state court is procedurally barred from pursuing those claims in federal court absent a showing of cause for and actual prejudice arising from the default. Wainwright v. Sykes, 97 S. Ct. 2497 (1977); Bailey v. Nagle, 172 F. 3d 1299, 1302 (11th Cir. 1999).  Such procedural default can arise in two ways.  Where a state court applies a procedural default principle of state law to arrive at a conclusion that a federal claim is barred, Sykes requires a federal court to respect the state court's decision.  Id.  Second, if a petitioner has never raised a claim in the state court, and the unexhausted claim would be procedurally barred under state law if the petition was dismissed without prejudice to allow the petitioner to return to state court, the claim is procedurally defaulted.  Id. at 1303.  Claims not raised on direct appeal are procedurally barred.  Magwood v. Smith, 791 F. 2d 1438, 1444 (11th Cir. 1986).  Because Jackson did not raise his sufficiency of the evidence

claim on direct appeal, he is procedurally barred from raising the claim in this Court.

### b. The denial of cross-examination claim

24. Jackson argues that the trial court denied him due process and a fair trial because it restricted his cross-examination of the confidential informant. This claim was raised on appeal and the Alabama Court of Criminal Appeals, on April 23, 2004, found the claim to be barred from review because Jackson did not comply with the requirements of Rule 103(a), A.R. Evid., and Futral v. State, 558 So. 2d 991, 992 (Ala. Crim. App. 1989), when he did not make an offer of proof as to the substance of the testimony he was trying to elicit or the relevance of the testimony. Because he made no offer of proof, he did not properly preserve the alleged errors for appellate review. (RX-4, at pg. 2) Because the Court of Criminal Appeals, the last court rendering a judgment in the case, clearly and expressly stated that its judgment rested on a procedural bar, the claim is procedurally defaulted in this Court. Harris v. Reed, 109 S. Ct. 1038 (1989); Bailey, 172 F. 3d at 1304.

25. Also, the claim is procedurally defaulted because Jackson did not petition the Supreme Court of Alabama for certiorari review of his cross-examination claim. To properly exhaust the claim for federal habeas corpus

13

review, Jackson was required to give the State courts the opportunity to resolve the claim by invoking one complete round of Alabama's well established appellate review process - including certiorari review by the Supreme Court of Alabama. Because Jackson failed to satisfy the exhaustion requirement as to the cross-examination claim, he is procedurally barred from review by this Court. O'Sullivan v. Boerckel, 119 S. Ct. 1728, 1732 (1999); Henderson v. Campbell, 353 F. 3d 880, 898 (11th Cir. 2003).

### c. Cause and prejudice

26.  Unless Jackson can establish cause and prejudice to excuse the procedural default of his claims, they are barred from review by this Court.  To establish cause, a petitioner must establish that some objective factor external to the defense impeded his effort to raise the claim and the factor cannot be fairly attributable to his own conduct.  Murry v. Carrier, 477 U. S. 478, 488 (1986).

27.  Jackson states that failure to entertain his claims would result in a fundamental miscarriage of justice because "cause and prejudice has been demonstrated through state court's activities; and, when fundamental errors occurs, courts should look into the validity of such error to determine its prejudicial effect on a petitioner's federal due process rights . . ." (Doc. 2-1, pg. 9)  Jackson has not

14

identified what action by the state courts prevented him from properly exhausting his claims. Therefore, he has not shown cause to avoid his procedural default.

28. To the extent that he is alleging as cause that appellate counsel "abandoned him in the midst of the appellate process, in respect to fully exhausting the required state court remedies . . ." (Doc. 2-1, pg. 8), counsel's alleged ineffectiveness cannot be cause to avoid the procedural default. The Supreme Court of the United States has made it clear that an ineffective assistance of counsel claim being used for cause to excuse a procedurally default for another claim is not itself excepted from the doctrine of procedural default. A petitioner must properly exhaust the ineffective assistance of counsel claim, or must establish cause and prejudice to excuse the procedural default of his ineffective assistance claim, or he is barred from using it as a basis to excuse his procedural default of the underlying claim. Edwards v. Carpenter, 120 S. Ct. 1587, 1591-1594 (2000); Henderson v. Campbell, 353 F. 3d 880, 896-898 (11th Cir. 2003).

29. In the present case, Jackson filed a Rule 32 petition raising the claim of ineffective assistance of appellate counsel. (RX-6, at pg. 19) The claim, though, is a general claim of ineffectiveness and does not specify or state that the facts supporting the ground of ineffective assistance was the failure of appellate counsel to file a petition for writ of certiorari in the Supreme Court of Alabama thereby fully exhausting his issues on direct appeal. It is also unclear whether Jackson

argues that counsel was ineffective for not raising the sufficiency of evidence claim. However, if he did not raise the claims in his Rule 32 petition he would be barred from pursuing the claims in federal court. Bailey, 172 F. 3d at 1302. If he did raise the claims in his Rule 32 petition, he is nevertheless barred because he did appeal from the denial of the state post-conviction petition. Collier, 910 F. 2d. at 773. Because Jackson did not exhaust his claims of ineffective assistance of counsel they are procedurally defaulted. Thus, counsel's alleged ineffectiveness cannot be cause to excuse the procedural default of the underlying claims.

### d. Actual innocence

30. Jackson also argues that he is actually, factually, and legally innocent of the crime for which he was convicted. Innocence, though, is not an independent claim; rather, it is the gateway through which a petitioner must pass before a court may consider constitutional claims which are defaulted. Schlup v. Delo, 513 U. S. 298, 315 (1995). This exception applies where a petitioner establishes a "constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U. S. 478, 496 (1986). To meet this standard "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Schlup, 513 U. S. at 326. To make a viable claim of innocence, a petitioner must show that he

16

is actually innocent as opposed to legally innocent. A claim of actual innocence requires a petitioner to support his allegations of constitutional error with new reliable evidence that was not presented at trial. High v. Head, 209 F. 3d 1257, 1269 (11th Cir. 2000): Schlup, 513 U. S. at 324. Schlup observed that:

> A substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare . . . to be credible, such a claim requires a petitioner to support his allegation of constitutional error with new reliable evidence -- whether it be exculpatory, scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial. Id. at 324.

31. Jackson argues that the record of the trial shows that he was actually innocent. He refers to alleged contradictory testimony by witnesses at trial and discrepancies between testimony and scientific evidence. (Doc. 2-1 at pgs. 10-11) [The page references are to the trial record - Respondent's Exhibit 1.] Jackson has not presented new evidence to support his claim of actual innocence. Jackson's argument is not one of actual innocence; instead, as has been previously argued, it is an assertion that the evidence was not sufficient to support his conviction for distribution of a controlled substance. As such, it is at best an assertion of legal innocence – not actual innocence – and therefore it cannot serve to allow Jackson to avoid the procedural default of his claims.

17

## V. MERITS

32. Jackson's claims were not adjudicated on the merits in the state court. His sufficiency claim was not raised at all in the state court and his cross-examination claim was found to be procedurally defaulted. The Respondents, though, assert that his claims are nevertheless meritless. The Respondents ask this Court for leave to amend its answer addressing the merits of the claim if it is determined that, for some reason outside the knowledge of the Respondents, Jackson's claims are not procedurally defaulted from review by this Court.

## VI. AVAILABILITY OF RECORDS

33. In addition to all of the documents filed with the Respondents' Answer as exhibits, the attorney for Respondents has in his possession miscellaneous orders of the Alabama Court of Criminal Appeals on direct review. The Respondents know of no other proceedings that were not recorded and are not available or were not made part of the documents filed as exhibits with the Respondents' Answer.

## VII. CONCLUSION

34. Jackson's claims are procedurally defaulted from review by this Court. He has not shown cause for his procedural default. Jackson has also not shown that he is actually innocent of the charge for which he was convicted. Therefore, he cannot avoid the effect of the procedural default, and his petition should be denied.

Respectfully submitted,

Troy King (KIN047)
Attorney General
By:


s/Jack W. Willis
Jack W. Willis(WIL075)
Assistant Attorney General

19

# EXHIBIT LIST

Exhibit RX-1  - Appellate record on direct appeal from Jackson's conviction for unlawful distribution of a controlled substance (2 volumes);

Exhibit RX-2  - Jackson's brief on direct appeal;

Exhibit RX-3  - State of Alabama's brief on direct appeal;

Exhibit RX-4  - April 23, 2004 memorandum opinion of the Alabama Court of Criminal Appeals on direct appeal;

Exhibit RX-5  - Certificate of judgment issued on direct appeal; and,

Exhibit RX-6  - Record of post-conviction proceedings.

## CERTIFICATE OF SERVICE

I hereby certify that on this <u>11th</u> day of January, 2007, I electronically filed

the foregoing with the Clerk of the Court using the CM/ECF system and I hereby

certify that I have mailed by United States Postal Service the document to the

following non-CM/ECF participants: <u>James Willie Jackson, AIS # 151754, Bibb</u>

<u>County Correctional Facility, 565 Bibb Lane, Brent, Alabama 35034</u> .

<div style="margin-left:40%">

s/Jack W. Willis
Jack W. Willis (WIL075)
Office of the Attorney General
Alabama State House
11 South Union
Montgomery, AL  36130-0152
Telephone: (334) 242-7300
Fax: (334) 242-2848
E-Mail: <u>Jwillis@ago.state.al.us</u>

</div>

220450/102366-001

VOLUME 1

COURT OF CRIMINAL APPEALS NO. _____ CR-02-2200 _____

# Appeal To Alabama Court of Criminal Appeals

### FROM
### Circuit Court of Russell County, Alabama

CIRCUIT COURT NO _____ CC-99-115.61 _____

CIRCUIT JUDG _____ CC-2003-378 _____

Type of Conviction/ Order Appealed From: _____ SENTENCING _____

Sentence Imposed: _____ 22 YEARS _____

Defendant Indigent: ☑ YES  ☐ NO

JAMES W. JACKSON
_____
**Name of Appellant**

JEREMY ARMSTRONG        334-291-0410
(Appellant's Attorney)                    (Telephone No.)

1619 BROAD STREET
(Address)

PHENIX CITY,        AL          36868
(City)              (State)          (Zip Code)

### V.

STATE OF ALABAMA
_____
**Name of Appellee**

(State represented by Attorney General)

NOTE: If municipal appeal, indicate above, and enter

name and address of municipal attorney below.

_____

_____

(For Court of Criminal Appeals Use Only)



EXHIBIT
PAct
RX-I-I

INDEX TO TRANSCRIPT

PAGE

Case Action Summary                                            1

Arrest Report                                                  7

Indictment                                                     8

Grand Jury Warrant of Arrest                                  10

Arraignment Order                                             11

Motion for Discovery                                          12

Notice of Prior Convictions for Sentence Hearing and/or
   Impeachment                                                14

Notice of Intent to Admit Certificate of Analysis            16

Notice of Appearance                                          17

Defendant's Request for Production                            19

Defendant's Request for Disclosure of Prior Bad Acts of
   The Defendant                                              22

Order Granting Motion for Production                          24

Order Granting Motion for Disclosure of Prior Bad Acts       25

Order Granting Motion for Discovery                          26

Notice of Compliance with Discovery Request                  27

Motion to Compel Disclosure of Confidential Informants
   Identity and Confidential Informant's Prior Criminal
   History                                                    28

Answer to Motion to Compel Disclosure                        31

Motion in Limine                                              33

Notice of Defense Witnesses                                   36

State's Potential Witnesses                                          38

Defendant's Proposed Jury Instruction Number One                    39

Defendant's Proposed Jury Instruction Number Two                    40

Defendant's Proposed Jury Instruction Number Three                  41

Jury Recommendation                                                 42

Verdict                                                             43

Sentence Order                                                      44

Transcript of Record                                                46

Notice of Appeal                                                    47

Docketing Statement                                                 49

Reporter's Transcript Order                                         51

Clerk's Notice of Appeal                                            52

Motion for New Trial                                                53

Order Denying Motion for New Trial                                  56

Amended Clerk's Notice of Appeal                                    57

Request for Local Extension of Time to Complete the
    Reporter's Transcript                                           58

Acknowledge by Court of Criminal Appeals of Extension
    Of Time to file Reporter's Transcript                           59

Motion to Court of Criminal Appeals for Extension of
    Time to File Transcript                                         60

Motion to Court of Criminal Appeals for Extension of
    Time to File Transcript                                         61

Reporter's Index to Exhibits                                        62

Certificate of Incapability of Photocopying Exhibit                 63

State's Exhibit 3                                      64

State's Exhibit 6                                      65

State's Exhibit 7                                      66

State's Exhibit 7A                                     67

Defendant's Exhibit 1                                  68

State's Exhibit A                                      69

Reporter's Transcript Order                             1

Index                                                   2

Caption                                                 3

Court's Introduction of Case to Jury Venire             4

Motions                                                 6

Batson Motion                                          10

Court's Opening Instructions to Jury                   12

Opening Statement by Mr. Landreau                      18

Opening Statement by Mr. Armstrong                     22

Testimony of Tommy Pell                                24

Testimony of Steve Johnson                             32

Testimony of Jason Hathcock                            44

Testimony of Sherwin Boswell                           73

Testimony of Tom Franklin                              83

Motion                                                125

Objections to Closing Arguments                       129

Jury Charge                                            130

Question by Jury                                140

Verdict                                          141

Sentencing                                       145

Reporter's Certificate                           149

```
ACRO370                  ALABAMA JUDICIAL INFORMATION SYSTEM      CASE: CC 2003 000378.00
OPER: TIW                        CASE ACTION SUMMARY
PAGE:   1                        CIRCUIT   CRIMINAL                RUN DATE: 02/11/2004
=======================================================================================
THE CIRCUIT COURT OF   RUSSELL                                           JUDGE: GRG

CITY OF SL0204552                  VS      JACKSON JAMES WILLIE
                                           48 FARM ROAD
CASE: CC 2003 000378.00
                                           PHENIX CITY, AL   36867 0000

DOB: 04/25/1961         SEX: M  RACE: B  HT: 5 11  WT: 180   HR: BLK EYES: BRO
SSN: 423029851  ALIAS NAMES:
=======================================================================================
CHARGE01: UNLAW DISTRIB CONTRO CODE01: UDCS  LIT: UNLAW DISTRIB  TYP: F #: 001
OFFENSE DATE: 09/16/2002                AGENCY/OFFICER: 0570100

DATE WAR/CAP ISS:                       DATE ARRESTED: 01/04/2003
DATE    INDICTED: 05/23/2003            DATE    FILED: 06/04/2003
DATE   RELEASED:                        DATE  HEARING:
     BOND AMOUNT:       $7,500.00           SURETIES:

DATE 1: 09/09/2003  DESC: SENT          TIME: 1000 A
DATE 2:             DESC:               TIME: 0000

TRACKING NOS: GJ 2003 000274 00  /  DC 2003 000016 00  /  WR 2002 002278 00

   DEF/ATY: ARMSTRONG JEREMY WAYNE      TYPE: A                        TYPE:
            1619 BROAD STREET
            P. O. BOX 3409
            PHENIX CITY    AL 36868                     00000

PROSECUTOR: LANDREAU BUSTER


=======================================================================================
OTH CSE: GJ200300027400 CHK/TICKET NO:                   GRAND JURY: 116
 URT REPORTER: _____     SID NO:     000000000
 F STATUS: JAIL                     DEMAND:                        OPER: TIW
```

| TRANS DATE | ACTIONS, JUDGEMENTS, AND NOTES | OPE |
|---|---|---|
| 06/04/2003 | INITIAL STATUS SET TO: "J" - JAIL          (AR01) | JOS |
| 06/04/2003 | DEFENDANT ARRESTED ON: 01/04/2003          (AR01) | JOS |
| 06/04/2003 | DEFENDANT INDICTED ON: 05/23/2003          (AR01) | JOS |
| 06/04/2003 | BOND SET AT: $7500.00                      (AR01) | JOS |
| 06/04/2003 | SET FOR:  ARRAIGNMENT ON 06/24/2003 AT 1000A(AR01) | JOS |
| 06/04/2003 | CHARGE 01: UNLAW DISTRIB CONTRO/#CNTS: 001  (AR01) | JOS |
| 06/24/2003 | SET FOR: JURY TRIAL ON 08/11/2003 AT 0900A (AR10) | JOS |
| 06/24/2003 | SET FOR: DOCKET CALL ON 07/24/2003 AT 1000A (AR10) | JOS |
| 06/24/2003 | ***ARRAIGNMENT ORDER*** | JOS |
| 06/24/2003 | ORDER APPOINTING THE HON. JEREMY ARMSTRONG, DEFEN- | JOS |
| 06/24/2003 | DANT WAIVES READING OF INDICTMENT AND ENTERS A | JOS |
| 06/24/2003 | PLEA OF NOT GUILTY | JOS |
| 06/24/2003 | MOTION FOR DISCOVERY BY STATE | JOS |
| 06/24/2003 | NOTICE OF PRIOR CONVICTIONS FOR SENTENCING HEARING | JOS |
| 06/24/2003 | AND/OR IMPEACHMENT | JOS |
| 06/24/2003 | NOTICE OF INTENT TO ADMIT CERTIFICATE OF ANALYSIS | JOS |
| 06/25/2003 | NOTICE OF APPEARANCE | JOS |

```
ACRO370                ALABAMA JUDICIAL INFORMATION SYSTEM      CASE: CC 2003 000378.00
OPER: TIW                      CASE ACTION SUMMARY
PAGE:   2                      CIRCUIT   CRIMINAL                RUN DATE: 02/11/2004
=============================================================================
```

THE CIRCUIT COURT OF  RUSSELL                                    JUDGE: GRG

CITY OF SL0204552                  VS      JACKSON JAMES WILLIE
                                           48 FARM ROAD
CASE: CC 2003 000378.00
                                           PHENIX CITY, AL  36867 0000

DOB: 04/25/1961       SEX: M  RACE: B  HT: 5 11  WT: 180   HR: BLK EYES: BRO
SSN: 423029851  ALIAS NAMES:
```
=============================================================================
```
| TRANS DATE | ACTIONS, JUDGEMENTS, AND NOTES | OPE |
|---|---|---|
| 06/25/2003 | DEFENDANT'S REQUEST FOR PRODUCTION | JOS |
| 06/25/2003 | DEFENDANT'S REQUEST FOR DISCLOSURE OF PRIOR BAD | JOS |
| 06/25/2003 | ACTS OF THE DEFENDANT | JOS |
| 06/27/2003 | ORDER ON DEFENDANT'S REQUEST FOR PRODUCTION | ADS |
| 06/27/2003 | ORDER ON DEFENDANT'S REQUEST FOR DISCLOSURE | ADS |
| 06/30/2003 | ORDER ON MOTION FOR DISCOVERY BY STATE | ADS |
| 07/01/2003 | NOTICE OF COMPLIANCE WITH DISCOVERY REQUEST | JOS |
| 07/25/2003 | DEFENDANT'S MOTION TO COMPEL DISCLOSURE OF | DEB |
| 07/25/2003 | CONFIDENTIAL INFORMANT'S IDENTITY AND | DEB |
| 07/25/2003 | CONFIDENTIAL INFORMANT'S PRIOR CRIMINAL | DEB |
| 07/25/2003 | HISTORY | DEB |
| 07/29/2003 | WITNESS SUBPOENA ISSUED                AWP24 | JOS |
| 07/29/2003 | ANSWER TO MOTION TO COMPEL DISCLOSURE | JOS |
| 08/20/2003 | MOTION IN LIMINE | JOS |
| 08/21/2003 | NOTICE OF DEFENSE WITNESSES | JOS |
| 08/21/2003 | DEFENDANT'S PROPOSED JURY INSTRUCTION #1-GIVEN | JOS |
| 08/21/2003 | DEFENDANT'S PROPOSED JURY INSTRUCTION #2-GIVEN | JOS |
| 08/21/2003 | DEFENDANT'S PROPOSED JURY INSTRUCTION #3-GIVEN | JOS |
| 08/21/2003 | ***GUILTY VERDICT*** | JOS |
| 08/21/2003 | ***VERDICT*** | JOS |
| 08/21/2003 | AUGUST 21, 2003. NOW COMES THE JURY AND RETURNS | JOS |
| 08/21/2003 | ITS UNANIMOUS VERDICT AS FOLLOWS: "WE, THE JURY | JOS |
| 08/21/2003 | FINE THE DEFENDANT, JAMES W. JACKSON, GUILTY OF | JOS |
| 08/21/2003 | THE OFFENSE OF UNLAWFUL DISTRIBUTION OF A | JOS |
| 08/21/2003 | CONTROLLED SUBSTANCE, AS CHARGED IN THE INDICT- | JOS |
| 08/21/2003 | MENT."  THE DEFENDANT IS REMANDED TO THE | JOS |
| 08/21/2003 | CUSTODY OF THE SHERIFF.  SENTENCING SET FOR | JOS |
| 08/21/2003 | SEPTEMBER 9, 2003, AT 10:00 A.M. | JOS |
| 09/09/2003 | ***SENTENCING ORDER*** | JOS |
| 09/09/2003 | ORDER SENTENCING DEFENDANT AS A HABITUAL OFFENDER | JOS |
| 09/09/2003 | TO 22 YEARS TO THE DEPT. OF CORRECTIONS, CREDIT | JOS |

```
ACRO370              ALABAMA JUDICIAL INFORMATION SYSTEM    CASE: CC 2003 000378.00
OPER: TIW                    CASE ACTION SUMMARY
PAGE:   3                   CIRCUIT   CRIMINAL            RUN DATE: 02/11/2004
========================================================================
```

THE CIRCUIT COURT OF  RUSSELL                                      JUDGE: GRG

CITY OF SL0204552              VS      JACKSON JAMES WILLIE
                                       48 FARM ROAD
CASE: CC 2003 000378.00

                                       PHENIX CITY, AL  36867 0000

DOB: 04/25/1961      SEX: M  RACE: B  HT: 5 11  WT: 180   HR: BLK EYES: BRO
SSN: 423029851  ALIAS NAMES:

| Date | Description | | Init |
|------|-------------|---|------|
| 09/09/2003 | FOR TIME SERVED, $2,500.00 FINE, COSTS, $250.00 | | JOS |
| 09/09/2003 | VCF, $100.00 FORENSIC SERVICES TRUST FUND, | | JOS |
| 09/09/2003 | $1,000.00 DEMAND REDUCTION ASSESSMENT ACCOUNT, | | JOS |
| 09/09/2003 | ATTORNEY'S FEES, SUBSTANCE ABUSE PROGRAM AND | | JOS |
| 09/09/2003 | DRIVER'S LICENSE SUSPENDED 6 MONTHS.  THE | | JOS |
| 09/09/2003 | DEMAND REDUCTION ASSESSMENT ACCOUNT WILL BE | | JOS |
| 09/09/2003 | SUSPENDED UPON THE DEFENDANT'S AGREEMENT TO | | JOS |
| 09/09/2003 | ENROLL IN A REHABILIATION PROGRAM AND PAYMENT | | JOS |
| 09/09/2003 | OF SAME.  THE PAYMENT OF MONIES SHALL BE A | | JOS |
| 09/09/2003 | CONDITION OF PAROLE, EARLY RELEASE, SIR OR | | JOS |
| 09/09/2003 | WORK RELEASE. | | JOS |
| 09/10/2003 | CONVICTION REPORT TO BOARD OF REGISTRARS | | JOS |
| 09/12/2003 | PAYMENT DUE DATE SET TO: 09/09/2005 | (FE52) | JOS |
| 09/12/2003 | TRANSCRIPT OF RECORD ISSUED: 09/12/2003 | (AR08) | JOS |
| 09/12/2003 | CASE ACTION SUMMARY PRINTED | (AR08) | JOS |
| 09/12/2003 | CASE APPEALED ON: 09/12/2003 | (AR10) | JOS |
| 09/12/2003 | APPEAL "TO" TYPE: "O" | (AR10) | JOS |
| 09/12/2003 | NOTICE OF APPEAL | | JOS |
| 09/12/2003 | MOTION FOR NEW TRIAL | | JOS |
| 09/12/2003 | DOCKETING STATEMENT | | JOS |
| 09/12/2003 | REPORTER'S TRANSCRIPT ORDER | | JOS |
| 09/15/2003 | APPEAL DATE CHANGED FROM: 00/00/0000 | (AR11) | TIW |
| 09/15/2003 | APPEAL TYPE CHANGED FROM: | (AR11) | TIW |
| 09/15/2003 | INDTRL TYPE CHANGED FROM: | (AR11) | TIW |
| 09/15/2003 | PROSECUTOR CHANGED FROM: | (AR11) | TIW |
| 09/15/2003 | ATYW TYPE CHANGED FROM: | (AR11) | TIW |
| 09/15/2003 | ATTY 1 CHANGED FROM: | (AR11) | TIW |
| 09/15/2003 | MOTION CODE 1 CHANGED FROM: | (AR11) | TIW |
| 09/15/2003 | ATTY 1 TYPE CHANGED FROM: | (AR11) | TIW |
| 09/15/2003 | MOTION FILE DATE 1 CHANGED FROM: 00/00/0000 | (AR11) | TIW |
| 09/15/2003 | IRA TYPE CHANGED FROM: | (AR11) | TIW |
| 09/15/2003 | COURT REPORTER 1 CHANGED FROM: | (AR11) | TIW |

```
ACRO370            ALABAMA JUDICIAL INFORMATION SYSTEM      CASE: CC 2003 000378.00
OPER: TIW                     CASE ACTION SUMMARY
PAGE:   4                     CIRCUIT   CRIMINAL              RUN DATE: 02/11/2004
=================================================================================
\ THE CIRCUIT COURT OF  RUSSELL                                       JUDGE: GRG

CITY OF SL0204552                VS     JACKSON JAMES WILLIE
                                        48 FARM ROAD
CASE: CC 2003 000378.00
                                        PHENIX CITY, AL  36867 0000

DOB: 04/25/1961        SEX: M  RACE: B  HT: 5 11  WT: 180    HR: BLK EYES: BRO
SSN: 423029851   ALIAS NAMES:
=================================================================================
```

| Date | Action | Oper |
|------|--------|------|
| 09/15/2003 | IRA TYPE CHANGED FROM: N                        (AR11) | TIW |
| 09/22/2003 | ATTORNEY'S FEES ($2,063.00) | JOS |
| 09/24/2003 | MOTION FOR NEW TRIAL DENIED | JOS |
| 09/25/2003 | MOTION ACTION 1 CHANGED FROM:                   (AR11) | TIW |
| 09/25/2003 | MOTION ACTION DATE 1 CHANGED FROM: 00/00/0000 | TIW |
| 11/19/2003 | REQUEST FOR LOCAL EXTENSION OF TIME TO COMPLETE | TIW |
| 11/19/2003 |   THE REPORTER'S TRANSCRIPT | TIW |
| 11/19/2003 | ORDER,REQUEST FOR LOCAL EXTENSION OF TIME TO | TIW |
| 11/19/2003 |   COMPLETE THE REPORTER'S TRANSCRIPT GRANTED | TIW |
| 01/13/2004 | MOTION TO COURT OF CRIMINAL APPEALS FOR EXTENSION | TIW |
| 01/13/2004 |   OF TIME TO FILE TRANSCRIPT | TIW |
| 02/11/2004 | CASE ACTION SUMMARY PRINTED                     (AR08) | TIW |

OFFICER'S WORK PRODUCT MAY NOT BE PUBLIC INFORMATION

| 1 ORI # | 2 AGENCY NAME | 3 CASE # |
|---|---|---|
| 0 5 7 0 1 0 0 | Russell County Phenix City Police Department | SL 02 04552 |

**IDENTIFICATION**

| 4 LAST, FIRST, MIDDLE NAME | | | | | | 5 ALIAS AKA |
|---|---|---|---|---|---|---|
| Jackson, James Willie | | | | | | |

| 7 SEX | 8 RACE | 9 HGT. | 10 WGT. | 11 EYE | 12 HAIR | 13 SKIN | 14 | SCARS | MARKS | TATOOS | AMPUTATIONS |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ☒M ☐F | ☒B ☐W ☐A ☐I | 5'11 | 175 | Blk | Bro | | | | | | |

| 15 PLACE OF BIRTH (CITY, COUNTY, STATE) | 16 SSN | 17 DATE OF BIRTH | 18 AGE | 19 MISCELLANEOUS ID # |
|---|---|---|---|---|
| Phenix City, Russell, AL | 412 31 10 21 19 851 | 411 25 1641 | 41 | |

| 20 SID # | 21 FINGERPRINT CLASS | KEY | MAJOR | PRIMARY | SCDV | SUB-SECONDARY | FINAL | 22 DL # | 23 ST |
|---|---|---|---|---|---|---|---|---|---|

| 24 FBI # | HENRY CLASS | | | | 25 IDENTIFICATION COMMENTS |
|---|---|---|---|---|---|
| | NCIC CLASS | | | | |

| 26 ☐ RESIDENT ☒ NON-RESIDENT | 27 HOME ADDRESS (STREET, CITY, STATE, ZIP) 48 Farm Rd Phenix City AL 36867 | 28 RESIDENCE PHONE 334 218-1116 | 29 OCCUPATION (BE SPECIFIC) Barber |
|---|---|---|---|

| 30 EMPLOYER (NAME OF COMPANY/SCHOOL) Scott Barber Shop | 31 BUSINESS ADDRESS (STREET, CITY, STATE, ZIP) 165 Old Brickyard Rd Phenix City AL | 32 BUSINESS PHONE 334 448-2008 |
|---|---|---|

**ARREST**

| 33 LOCATION OF ARREST (STREET, CITY, STATE, ZIP) Abercrombie @ Wilmer Rd Phen-City AL 17 01 06 | 35 SECTOR # 1 |
|---|---|

| 34 CONDITION OF ARRESTEE: | ☐ DRUNK ☒ SOBER ☐ DRINKING ☐ DRUGS | 37 RESIST ARREST? ☐ YES ☒ NO | 38 INJURIES? ☒ NONE ☐ OFFICER ☐ ARRESTEE | 39 ARMED? ☐ Y ☒ N | 40 DESCRIPTION OF WEAPON ☐ HANDGUN ☐ OTHER FIREARM ☐ RIFLE ☐ OTHER WEAPON ☐ SHOTGUN |
|---|---|---|---|---|---|

| 41 DATE OF ARREST 01 16 04 05 | 42 TIME OF ARREST 13:15 ☐ AM ☒ PM ☐ MIL. | 43 DAY OF ARREST 1 2 3 4 5 6 7 | 44 TYPE ARREST ☒ ON VIEW ☐ WARRANT | 45 ARRESTED BEFORE? ☒ YES ☐ NO ☐ UNKNOWN |
|---|---|---|---|---|

| 46 CHARGE—1 ☒ FEL ☐ MISO Fail. Contempt of Court | 47 UCR CODE 5015 | 48 CHARGE—2 ☐ FEL ☒ MISO Sale of Cocaine | 49 UCR CODE 3580 |
|---|---|---|---|
| 50 STATE CODE/LOCAL ORDINANCE CCC 419.40 | 51 WARRANT # IM 1295 1612 | 52 DATE ISSUED | 53 STATE CODE/LOCAL ORDINANCE | 54 WARRANT # CX 2002 CC 2278 00 | 55 DATE ISSUED C49 V 85 1012 |

| 56 CHARGE—3 ☐ FEL ☐ MISO | 57 UCR CODE | 58 CHARGE—4 ☐ FEL ☐ MISO | 59 UCR CODE |
|---|---|---|---|
| 60 STATE CODE/LOCAL ORDINANCE | 61 WARRANT # | 62 DATE ISSUED M D Y | 63 STATE CODE/LOCAL ORDINANCE | 64 WARRANT # | 65 DATE ISSUED M D Y |

| 66 ARREST DISPOSITION ☒ HELD ☐ BAIL ☐ RELEASED ☐ TOT-LE ☒ OTHER | 67 IF OUT ON RELEASE WHAT TYPE? | 68 ARRESTED WITH (1) ACCOMPLICE (FULL NAME) |
|---|---|---|
| | | 68 ARRESTED WITH (2) ACCOMPLICE (FULL NAME) |

**VEHICLE**

| 70 VYR | 71 VMA | 72 VMO | 73 VST | 74 VCO TOP BOTTOM | 75 TAG # | 76 LIS | 77 LIY |
|---|---|---|---|---|---|---|---|

| 78 VIN | 79 IMPOUNDED? ☐ YES ☒ NO | 80 STORAGE LOCATION/IMPOUND # |
|---|---|---|

| 81 OTHER EVIDENCE SEIZED/PROPERTY SEIZED | ☐ CONTINUED IN NARRATIVE |
|---|---|

**JUVENILE**

| 82 JUVENILE DISPOSITION: | ☐ HANDLED AND RELEASED ☐ REF. TO JUVENILE COURT | ☐ REF. TO WELFARE AGENCY ☐ REF. TO OTHER POLICE AGENCY | ☐ REF. TO ADULT COURT | 83 RELEASED TO |
|---|---|---|---|---|

| 84 PARENT OR GUARDIAN (LAST, FIRST, MIDDLE NAME) | 85 ADDRESS (STREET, CITY, STATE, ZIP) | 86 PHONE ( ) |
|---|---|---|

| 87 PARENTS EMPLOYER | 88 OCCUPATION | 88 ADDRESS (STREET, CITY, STATE, ZIP) | 90 PHONE ( ) |
|---|---|---|---|

**RELEASE**

| 91 DATE AND TIME OF RELEASE 01 16 04 05 13:50 ☐ AM ☒ PM ☐ MIL | 92 RELEASING OFFICER NAME S. Paquette | 93 AGENCY/DIVISION PCPD | 94 ID # 380 |
|---|---|---|---|
| 95 RELEASED TO: RCJ | 96 AGENCY/DIVISION RCSO | 97 AGENCY ADDRESS Prentiss Dr | |

| 98 PERSONAL PROPERTY RELEASED TO ARRESTEE ☐ YES ☒ NO ☐ PARTIAL | 99 PROPERTY NOT RELEASED/HELD AT: | 100 PROPERTY # |
|---|---|---|

| 101 REMARKS (NOTE ANY INJURIES AT TIME OF RELEASE) |
|---|

| 102 SIGNATURE OF RECEIVING OFFICER | 103 SIGNATURE OF RELEASING OFFICER |
|---|---|
| MULTIPLE CASES CLOSED | 104 CASE # | 105 SFX | 106 CASE # | | ☐ ORIGINAL ☐ CLOSED ☐ NATIVE ☐ N |

| 11 ARRESTING OFFICER (LAST, FIRST, M.) Paquette S | 112 ID # 380 | 113 ARRESTING OFFICER (LAST, FIRST, M.) |
|---|---|---|

TYPE OR PRINT IN BLACK

REV. 10-90

A TRUE BILL, presented to the judge Presiding in open Court by the Foreperson of this Grand Jury, and filed in open court this 23ᵈ day of _May_ , 2003.

_Patman Robertson_     _Kathy Coulter_       CC-03-378

Grand Jury Foreman     Clerk of the Circuit Court
of Russell County
Twenty-Sixth Judicial Circuit

# INDICTMENT

## THE STATE OF ALABAMA

*vs.*

*JAMES W. JACKSON*
*SID: AL01102898*

*alias*

**None Reported**

CHARGES:                                     SECTION

1. DISTRIBUTION OF A CONTROLLED SUBSTANCE

Bail fixed at $ _7500_ this _23_ day of _May_ , 2003.

_____
Judge Presiding

THE STATE OF ALABAMA                      CIRCUIT COURT
RUSSELL COUNTY                               2003

354

Prosecutor: BUSTER LANDREAU

KENNETH DAVIS
DISTRICT ATTORNEY
TWENTY-SIXTH JUDICIAL

THE STATE OF ALABAMA, Russell COUNTY

Circuit Court - Twenty-Sixth Judicial Circuit

COUNT 1

The Grand Jury of said county charge that, before the finding of this indictment, JAMES W. JACKSON, whose name is otherwise unknown to the Grand Jury than as stated, did unlawfully sell, furnish, give away, manufacture, deliver or distribute COCAINE, a controlled substance, in violation of Section 13A-12-211 of the Code of Alabama, 1975, as amended, and against the peace and dignity of the State of Alabama.

KENNETH DAVIS
District Attorney
Twenty-Sixth Judicial Circuit

WITNESSES:

SHERWIN BOSWELL., P. O. BOX 3510, AUBURN, AL  36831
SGT TOM FRANKLIN, RUSSELL COUNTY SHERIFFS DEPT, PHENIX CITY, AL  36868
INVESTIGATOR GOODRICH, RCSO, PHENIX CITY, AL  36867
SGT. STEVE JOHNSON, RCSO, PHENIX CITY, AL  36867
INV. THOMAS PELL, RCSO, PHENIX CITY, AL
LT. HEATH TAYLOR, RUSSELL COUNTY SHERIFF'S DEPT., PHENIX CITY, AL

ALABAMA JUDICIAL DATA CENTER
WARRANT OF ARREST

000010

GJ 2003 000274.00
TERM #: SP03-116

CC-03-378

TO ANY LAW ENFORCEMENT OFFICER OF THE STATE OF ALABAMA:

AN INDICTMENT HAS BEEN RETURNED BY THE GRAND JURY OF RUSSELL COUNTY

AGAINST        JACKSON JAMES WILLIE        R C Jail
               48 FARM ROAD

               PHENIX CITY    AL 36867-0000

CHARGING THE OFFENSE OF:

        UNLAW DISTRIB CONTRO  13A-012-211          CNTS:    1

YOU ARE THEREFORE ORDERED TO ARREST THE PERSON NAMED ABOVE AND BRING THAT

PERSON BEFORE A JUDGE OR MAGISTRATE OF THIS COURT TO ANSWER THE CHARGES

AGAINST THAT PERSON AND HAVE WITH YOU THEN AND THERE THE WARRANT OF ARREST

WITH YOUR RETURN THEREON.  IF A JUDGE OF MAGISTRATE OF THIS COURT IS

UNAVAILABLE, OR IF THE ARREST IS MADE IN ANOTHER COUNTY, YOU SHALL TAKE

THE ACCUSED PERSON BEFORE THE NEAREST OR MOST ACCESSIBLE JUDGE OF

MAGISTRATE IN THE COUNTY OF ARREST.


   BOND SET AT:          $7,500.00

   DATE ISSUED: 05/27/2003                                    BY JBS
                                        CLERK


        EXECUTED THIS    28    DAY OF    May    , 2003, BY

   ARRESTING THE WITHIN NAMED DEFENDANT _____

                                        Diane Callahan
                                        LAW ENFORCEMENT OFFICER

                                        BY: _____


   -------------------------------------
   |  DEFENDANT'S FEATURES:              |
   |-----------------------------------  |
   |  HT: 5'11"  HAIR: BLK   DOB: 04/25/1961 |
   |                                     |
   |  WT: 180  SEX: M   EYE: BRO  RACE: B |
   |  SSN: 423029851                     |
   -------------------------------------

   ARRAIGNMENT DATE:  JUNE 24, 2003, AT 10:00 A.M. IN COURTROOM I.
   BRING YOUR RETAINED ATTORNEY WITH YOU


05/27/2003 JOS

STATE OF ALABAMA )                IN THE CIRCUIT COURT OF
            PLAINTIFF, )          RUSSELL COUNTY, ALABAMA
VS. )                             CASE NO.: CC 03-378
JAMES WILLIE JACKSON )
            DEFENDANT. ) .

## ARRAIGNMENT ORDER

Defendant appeared in open court on this date at which time:

____ The defendant advised the Court that he/she had retained
_____, Attorney at law, to represent him/
her in these proceedings.

✓ The defendant advised the Court that he/she was indigent and
unable to employ counsel to represent him/her in these
proceedings. The Court appointed *Jeremy Armstrong*
an experienced and competent attorney, to represent him/her in
these proceedings.

____ Arraignment is continued to September 17, 2003 at 10:00 A.M.

____ The defendant applied for youthful offender status. Ruling on
said application was set for July 21, 2003 at 1:45 P.M.

✓ The defendant filed a written waiver or waived the reading of
the indictment and entered a plea of not guilty to the offense
charged therein.

____ The Court ordered an alias writ and preliminary forfeiture for
the defendant's failure to appear in Court.

✓ Plea dates are July 21st at 2:00 P.M., July 22nd at 2:00 P.M.
and July 22nd at 10:00 A.M.

✓ Docket call is set for July 24, 2003 at 10:00 A.M.

✓ This case is scheduled for trial docket of August 11th or
August 18, 2003.

____ The defendant shall pay the sum of $_____ per week/month
towards his/her attorney's fees. Payments to begin _____.

____ _____

**DONE** this the 24th day of June 2003.

_____
                              JUDGE, CIRCUIT COURT

| STATE OF ALABAMA | * | IN THE CIRCUIT COURT OF |
|---|---|---|
| | * | |
| VS. | * | RUSSELL COUNTY, ALABAMA |
| | * | |
| JAMES W. JACKSON | * | CASE NO. CC-03-*378* |

### MOTION FOR DISCOVERY

Comes now the State of Alabama by and through its District Attorney, Kenneth Davis and moves the Court pursuant to Rule 16.2 of the Alabama Rules of Criminal Procedure to issue an order directed to Hon. *Jeremy Armstrong*_____ Counsel for Defendant, to-wit:

1. To permit the State to analyze, inspect, and copy or photograph books, papers, documents, photographs, audio tapes, video tapes, tangible objects, buildings or places, or portions of any of these things, which are within the possession custody, or control of the Defendant and which the Defendant intends to introduce in evidence at the trial.

2. To permit the State to inspect and copy any results or reports of physical or mental examinations, and of scientific tests or experiments made in connection with this particular case, which are within the possession or control of the Defendant and which he intends to introduce in evidence at the trial or which were prepared by a witness whom the Defendant intends to call at the trial, if the results or reports relate to the witness's testimony.

3. To produce and permit the State to inspect and copy the names and addresses of qualified mental health professionals who have personally examined the Defendant or any evidence in this case, as well as the results of or reports of mental examinations, scientific tests, experiments or comparisons and statements made by such professionals.

FILED IN OFFICE

KENNETH DAVIS
DISTRICT ATTORNEY
26TH JUDICIAL CIRCUIT

BY: _____
     Buster Landreau
     Chief Deputy District Attorney
     LAN 034


## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing Motion for Discovery upon the Hon. _Jeremy Armstrong_. Counsel for the Defendant, by placing the same in a receptacle reserved in his/her name in the Office of the Clerk of the Circuit Court of Russell County, Alabama.

This the __24th__ Day of __June__, 2003.

_____
Buster Landreau

STATE OF ALABAMA

V.

JAMES W. JACKSON

*
*
*
*
*

IN THE CIRCUIT COURT OF    G00014

RUSSELL COUNTY, ALABAMA

CASE NO. CC-03 - *378*

## NOTICE OF PRIOR CONVICTIONS FOR SENTENCE HEARING
## AND/OR IMPEACHMENT

Pursuant to Rule 26.6(b)(3)(ii) of the Alabama Rules of Criminal Procedure, notice is hereby given as to the following convictions which the State intends to establish in the sentence hearing of this Defendant in the event said Defendant is convicted on the instant matter, **or which the State intends for use in impeachment** in the event the Defendant testifies at trial to-wit:

1. In the Circuit Court of Russell County, Alabama, Case Number CC-85-51, Defendant was convicted of Attempted Assault 1st, a felony. Defendant was represented by Counsel.

2. In the Circuit Court of Russell County, Alabama, Case Number CC-88-419, Defendant was convicted of Escape 3rd, a felony. Defendant was represented by Counsel.

Buster Landreau

Chief Deputy District Attorney

26th Judicial Circuit

LAN 034

FILED IN OFFICE

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he served a copy of the foregoing upon the Hon. _Jeremy Armstrong_, Attorney for Defendant by placing the same in a box reserved in said attorney's name in the Circuit Clerk's Office of Russell County.

This _24th_ day of _June_, 2003.

000015

Buster Landreau

GO0016

| | | |
|---|---|---|
| STATE OF ALABAMA | * | IN THE CIRCUIT COURT OF |
| | * | |
| V. | * | RUSSELL COUNTY, ALABAMA |
| | * | |
| JAMES W. JACKSON | * | CASE NO. CC-03- *378* |

## NOTICE OF INTENT TO ADMIT CERTIFICATE OF ANALYSIS

COMES NOW THE STATE OF ALABAMA by and through the District Attorney for Russell County and gives notice to the above named Defendant that it intends to offer proof of the nature and quantity of the substance or substances charged in this case by the certificate of analysis prepared for the State by the Alabama Department of Forensic Sciences in proper form as required by Section 12-21-300 of the Code of Alabama (1975).

KENNETH DAVIS
DISTRICT ATTORNEY

BUSTER LANDREAU
Chief Deputy District Attorney
LAN034

## CERTIFICATE OF SERVICE

I hereby certify that I have served the foregoing notice on the **Hon.** *Jeremy Armstrong* Counsel for Defendant by placing a copy of said notice in the receptacle reserved in his name in the Circuit Clerk's Office in the courthouse of Russell County, Alabama.

Done this 24th Day of June, 2003.

Buster Landreau

IN THE CIRCUIT COURT FOR THE TWENTY-SIXTH JUDICIAL CIRCUIT,
RUSSELL COUNTY, ALABAMA

| | |
|---|---|
| STATE OF ALABAMA, | ) |
| | ) |
|     PLAINTIFF, | ) |
| | ) |
| V. | )    CC-03-378 |
| | ) |
| JAMES JACKSON, | ) |
| | ) |
|     DEFENDANT. | ) |

## NOTICE OF APPEARANCE

Comes now the undersigned, Jeremy W. Armstrong, and enters a notice of

appearance in the above-styled case, to be placed as counsel of record for the

Defendant. The Honorable George Green appointed counsel for the Defendant

on June 24ᵗʰ 2003.

      RESPECTFULLY SUBMITTED this 25th day of June 2002.

                               _____

                    JEREMY W. ARMSTRONG (ARM027)
                    COUNSEL FOR THE DEFENDANT

ADDRESS FOR COUNSEL:

**ARMSTRONG & GRAY, P.C.**
POST OFFICE BOX 3409
1619 BROAD STREET
PHENIX CITY, ALABAMA  36868-3409
(334) 291-0410
(334) 291-0411 [FAX]

CC:    Russell County District Attorney's Office
       File

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of June 2003, I did serve a true copy of the foregoing upon the District Attorney's Office, by placing said copy in the appropriate Courthouse Box located at the Russell County Courthouse or by placing said copy in the United States mail, postage prepaid and properly addressed as follows:

> Russell County District Attorney's Office
> P.O. Box 939
> Phenix City, AL  36868-0939

JEREMY W. ARMSTRONG (ARM 027)
COUNSEL FOR THE DEFENDANT

ADDRESS FOR COUNSEL:

**ARMSTRONG & GRAY, P.C.**
POST OFFICE BOX 3409
1619 BROAD STREET
PHENIX CITY, ALABAMA  36868-3409
(334) 291-0410
(334) 291-0411 [FAX]

IN THE CIRCUIT COURT FOR THE TWENTY-SIXTH JUDICIAL CIRCUIT,
RUSSELL COUNTY, ALABAMA

| | | |
|---|---|---|
| STATE OF ALABAMA, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| V. | ) | CC-03-378 |
| | ) | |
| JAMES JACKSON, | ) | |
| | ) | |
| DEFENDANT. | ) | |

## DEFENDANT'S REQUEST FOR PRODUCTION

COMES NOW the Defendant, by and through his counsel for record, Jeremy W. Armstrong, and respectfully request the State of Alabama:

1. To produce and permit the Defendant to inspect and copy any and all materials the Defendant is entitled to under *Rule 16, Alabama Rules of Criminal Procedure.*

2. To produce and permit the Defendant to inspect and copy any and all materials the Defendant is entitled to under *Brady v. Maryland*, 373 U.S. 83 (1963).

3. To produce and permit the Defendant to inspect and copy any written or recorded statements (audio and/or video and or electronic media) made by the Defendant to any law enforcement officer, official or employee which are within the possession, custody, or control of the State of Alabama, the existence of which is known to the District Attorney.

4. To produce and permit the Defendant to inspect and copy any written or recorded statements made by a co-defendant or accomplice, which is in the possession, custody or control of the State, the existence of which is know to the District Attorney and which the State intends to offer into evidence at trial.

5. To produce and permit the Defendant to inspect and copy any written or recorded statements made by any complainant or witness in this case which are within

the possession, custody, or control of the State of Alabama, the existence of which is known to the District Attorney.

6.  To disclose to the Defendant the substance of any oral statement made by the Defendant before or after arrest to any law enforcement officer, official or employee which the State intends to offer into evidence at trial.

7.  To disclose to the Defendant the substance of any oral statement made by a co-defendant or accomplice, which the State intends to offer into evidence at trial.

8.  To disclose copies of any and all police and investigative reports and statements of claimed experts made in connection with this particular case, including results of physical or mental examination and scientific tests, experiments, or comparisons made in connection with the Defendant's arrest.

**RESPECTFULLY SUBMITTED** this 25th day of June, 2003.

JEREMY W. ARMSTRONG (ARM021)
COUNSEL FOR THE DEFENDANT

ADDRESS FOR COUNSEL:

**ARMSTRONG & GRAY, P.C.**
POST OFFICE BOX 3409
1619 BROAD STREET
PHENIX CITY, ALABAMA  36868-3409
(334) 291-0410
(334) 291-0411 [FAX]


CC:     Russell County District Attorney's Office
        File

G00021

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of June, 2003, I did serve a true copy of the

foregoing upon the District Attorney's Office, by placing said copy in the appropriate

Courthouse Box located at the Russell County Courthouse or by placing said copy in the

United States mail, postage prepaid and properly addressed as follows:

Russell County District Attorney's Office
P.O. Box 939
Phenix City, AL 36868-0939

JEREMY W. ARMSTRONG (ARM020)
COUNSEL FOR THE DEFENDANT

ADDRESS FOR COUNSEL:

**ARMSTRONG & GRAY, P.C.**
POST OFFICE BOX 3409
1619 BROAD STREET
PHENIX CITY, ALABAMA  36868-3409
(334) 291-0410
(334) 291-0411 [FAX]

C00022

| STATE OF ALABAMA, | * | IN THE CIRCUIT COURT OF |
| PLAINTIFF | * | RUSSELL COUNTY, ALABAMA |
| VS. | * | CASE NO.: CC-03-378 |
| JAMES JACKSON | * | |
| DEFENDANT | * | |

## DEFENDANT'S REQUEST FOR DISCLOSURE OF
## PRIOR BAD ACTS OF THE DEFENDANT

COMES NOW the Defendant, by and through his counsel for record, and respectfully request the State of Alabama to disclose to the Defendant any and all prior bad acts of the Defendant which it intends to introduce at the trial of the instant indictment or any proceeding relating thereto for the purposes of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  Pursuant to Rule 404(b), *Alabama Rules of Evidence*, upon the request of the accused/defendant, the prosecution must provide reasonable notice in advance of trial of other crimes, wrongs or acts of the Defendant it intends to introduce at trial for the purposes of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

RESPECTFULLY SUBMITTED this 25th day of June, 2003.

_____
JEREMY W. ARMSTRONG (ARM 021)
COUNSEL FOR THE DEFENDANT

CC:    Russell County District Attorney's Office
       File

G03023

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of June, 2003, I did serve a true copy of the

foregoing upon the District Attorney's Office, by placing said copy in the United States mail,

postage prepaid and properly addressed as follows:

> Russell County District Attorney's Office
> P.O. Box 939
> Phenix City, AL  36868-0939

JEREMY W. ARMSTRONG (ARM-021)
COUNSEL FOR THE DEFENDANT

ADDRESS FOR COUNSEL:

**ARMSTRONG & GRAY, P.C.**
**POST OFFICE BOX 3409**
**1619 BROAD STREET**
**PHENIX CITY, ALABAMA  36868-3409**
**(334) 291-0410**
**(334) 291-0411 (FAX)**

IN THE CIRCUIT COURT FOR THE TWENTY-SIXTH JUDICIAL CIRCUIT,
RUSSELL COUNTY, ALABAMA

| | | |
|---|---|---|
| STATE OF ALABAMA, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| V. | ) | CC-03-378 |
| | ) | |
| JAMES JACKSON, | ) | |
| | ) | |
| DEFENDANT. | ) | |

## ORDER

This case is now before the Court on the Defendant's Motion for Production. The Court is of the Opinion that said Motion should be granted. It is, therefore,

**ORDERED** as follows:

1. The Defendant's Motion for production is granted.

2. The Plaintiff's respond to the Defendant's Request for Production of Documents no later than ten (10) days before the trial of the case.

3. A copy of this Order shall be mailed, postage prepaid, or otherwise delivered to the attorneys of record.

   **DONE** this the 27th day of _____June_____, 20 03

       _____

       Judge, Circuit Court

STATE OF ALABAMA,                    *    IN THE CIRCUIT COURT OF

      PLAINTIFF                    *    RUSSELL COUNTY, ALABAMA

VS.                                  *    CASE NO.: CC-03-378

JAMES JACKSON                        *

      DEFENDANT                    *

## ORDER

This case is now before the Court on the Defendant's Motion for Disclosure of Prior Bad Acts of the Defendant. The Court is of the Opinion that said Motion should be **GRANTED**. It is, therefore, **ORDERED** as follows:

1. The Defendant's Motion for Disclosure of Prior Bad Acts of the Defendant is **GRANTED**.

2. The State of Alabama is ordered to provide notice to the Defendant no later than ten (10) days before the trial of the case of all prior bad acts of the Defendant which it intends to introduce at the trial of the instant indictment or any proceeding relating thereto for the purposes of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

3. A copy of this Order shall be mailed, postage prepaid, or otherwise delivered to the attorneys of record.

DONE THIS THE _27th_ day of _June_, 2003.

_____
CIRCUIT JUDGE

CC:  File
     Russell County District Attorney's Office

IN THE CIRCUIT COURT OF

PLAINTIFF,

VS.

James W. Jackson

DEFENDANT.

)    RUSSELL COUNTY, ALABAMA

)    CASE NO. CC 03- _378_

)

)

)

## O R D E R

The State of Alabama, by and through its District Attorney, has filed a motion for discovery in the above case. Upon consideration of the motion, it is **ORDERED** by the Court that the Defendant shall:

1. Permit the District Attorney to analyze, inspect, and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or portions of any of these things, which are within the possession, custody or control of the defendant and which the defendant intends to introduce in evidence at the trial.

2. Permit the District Attorney to inspect and copy any results or reports of physical or mental examinations, and of scientific tests or experiments made in connection with the particular case, which are within the possession or control of the defendant and which the defendant intends to introduce in evidence at the trial or which were prepared by a witness whom the defendant intends to call at trial, if the results or reports relate to the witness's testimony.

**DONE** this 30th day of June 2003.

_____

George R. Greene, Circuit Judge

FILED IN OFFICE
2003 JUN 30 PM 2: 42

STATE OF ALABAMA
\*
\*
\*
vs.
\*
\*
JAMES JACKSON
\*

IN THE CIRCUIT COURT OF

RUSSELL COUNTY, ALABAMA

CASE NO. CC-03-378

## NOTICE OF COMPLIANCE WITH DISCOVERY REQUEST

TO:     **JEREMY ARMSTRONG**

FROM:   Buster Landreau

DATE:   July 1, 2003

FILED IN OFFICE

You filed a Motion for Discovery in the above-styled case(s). The materials to which you are entitled under Rule 16 of the Alabama Rules of Criminal Procedure and **Brady** are ready and available for you **to pick up.** This case was assigned to me so the material is being kept by me in my office. You will need to sign for this when you pick it up, so if I am not available, you can simply ask Randi Milner or Deborah Kimber and they know where the material is located.

If any audio or video discovery exists, you must make an appointment with me to view the item or have a copy made. As to inspecting any exhibits and/or other physical evidence you will need to make an appointment with me to do so.

**You may also view the file and make notes. Due to time and budget constraints the District Attorney's Office will not copy items from the file for you.**

IN THE CIRCUIT COURT FOR THE TWENTY-SIXTH JUDICIAL CIRCUIT,
RUSSELL COUNTY, ALABAMA

STATE OF ALABAMA,      )
          )
    PLAINTIFF,        )
          )
V.                )     CC-03-378
          )
JAMES JACKSON,      )
          )
    DEFENDANT.      )

### MOTION TO COMPEL DISCLOSURE OF CONFIDENTIAL INFORMANT'S IDENTITY AND CONFIDENTIAL INFORMANT'S PRIOR CRIMINAL HISTORY

Comes now the undersigned, Jeremy W. Armstrong, and respectfully requests that this Honorable Court to issue an Order directing the State of Alabama to disclose the identity of its' confidential informant and the confidential informant's prior criminal history, if any. Counsel for the Defendant respectfully request that this Honorable Court direct the State of Alabama to provide this information at least five (5) days prior to the trial date of August 11, 2003. In support of said motion, counsel for the Defendant asserts the following:

1. The confidential informant was an active participant in the identification of the Defendant.

2. The confidential informant was an active participant in the arrest of the Defendant. Disclosure is required when the informant is a participant in the crime with which the accused is charged. See, Roviaro v. United States, 353 U.S. 53 (1957); Ex parte Self, 420 So. 2d 798, 802

(Ala. 1982), rev'd, Self v. State, 420 So. 2d 798 (Ala. 1982); New v. State, 337 So. 2d 1355 (Ala. Crim. App. 1976); Davenport v. State, 278 So. 2d 769 (Ala. Crim. App. 1973).

3.  The Defendant also requests disclosure of the confidential informant's address and prior criminal history, if any.  If a trial court orders disclosure in a criminal case, the seeking party must be given the identity, address and <u>any other information within the government's possession and control which would aid the accused</u> . . . .  Ex parte Self, 420 So. 2d 798, 802 (Ala. 1982), rev'd, 420 So. 2d 798 (Ala. 1982).

Wherefore, the premises considered, the Defendant respectfully moves this Court to compel the District Attorney to disclose the confidential informant's identity and the confidential informant's prior criminal history, if any, at least five (5) days prior to trial, which would be no later than August 6, 2003.  **If the trial court is of the opinion that such motion should be denied, counsel for the Defendant respectfully requests a hearing on said motion, prior to ruling, so that the record can be preserved for appellate purposes.**

**RESPECTFULLY SUBMITTED** this 25th day of July 2003.

JEREMY W. ARMSTRONG (ARM 021)
COUNSEL FOR THE DEFENDANT

CC:    Russell County District Attorney's Office
       File

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of July 2003, I did serve a true copy of the foregoing upon the District Attorney's Office, by placing said copy in the appropriate Courthouse Box located at the Russell County Courthouse or by placing said copy in the United States mail, postage prepaid and properly addressed as follows:

Russell County District Attorney's Office
P.O. Box 939
Phenix City, AL  36868-0939

JEREMY W. ARMSTRONG (ARM 021)
COUNSEL FOR THE DEFENDANT

ADDRESS FOR COUNSEL:

**ARMSTRONG & GRAY, P.C.**
POST OFFICE BOX 3409
1619 BROAD STREET
PHENIX CITY, ALABAMA  36868-3409
(334) 291-0410
(334) 291-0411 [FAX]

STATE OF ALABAMA      *      IN THE CIRCUIT COURT OF

             *

VS.                   *      RUSSELL COUNTY, ALABAMA

             *

JAMES JACKSON      *      CASE NO. CC-03-378

## ANSWER TO MOTION TO COMPEL DISCLOSURE

Comes now the State of Alabama and for answer to the Motion to Compel Disclosure of Confidential Informant and the Criminal History of Informant and says as follows:

1 - The State agrees that the Defendant is entitled to the name of the informant and has furnished the same to counsel for the defense.

2 - The State Objects to the disclosure of the informant's criminal history.

**The State submits there is no absolute right to disclosure of the criminal records of the State's witnesses. It has' been further held that a trial court's refusal to order the prosecution, pursuant to a defendant's discovery motion, to provide the criminal history of a witness for the state was not a violation of Brady v Maryland.** Mack v State 375 So 2d 476 (1978). Wright v State, 424 So 2d 684 (1982), State v Parris 2002 Ala Crim App. Lexis 252 (2002) and Ex Parte Mack , 2003 Ala Crim App. Lexis 107 (2003).

KENNETH E. DAVIS
DISTRICT ATTORNEY
26TH JUDICIAL CIRCUIT

Buster Landreau
Chief Deputy District Attorney

CASE TRIED August 21, 2003
Motion Ruled on in open Court
State directed to compel areal Felony
arrest record of informant — G.G.

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing upon the Honorable Jeremy Armstrong, Attorney for the Defendant, by placing said copy in the receptacle reserved in his name in the office of the Clerk of the Circuit Court of Russell County, Alabama.

This the 29th day of July, 2003.

Buster Landreau
Chief Deputy District Attorney

IN THE CIRCUIT COURT FOR THE TWENTY-SIXTH JUDICIAL CIRCUIT,
RUSSELL COUNTY, ALABAMA

STATE OF ALABAMA,               )
                                )
        PLAINTIFF,              )
                                )
V.                              )        CC-03-378
                                )
JAMES JACKSON,                  )
                                )
        DEFENDANT.              )

### MOTION IN LIMINE

COMES NOW, the Defendant, by and through his counsel, Jeremy W. Armstrong, and respectfully requests this Honorable Court to grant Defendant's request for a *Motion In Limine* to prevent the State of Alabama from making any statements, comments or inferences, either directly or indirectly, during all phases of this proceeding (from Jury Voir Dire to Closing Arguments), concerning prior bad conduct of the Defendant.

This *motion in limine* is timely. The Committee Comments relating to *motions in limine* states in pertinent part, [a]lthough such motions generally are made before trial, there is no reason why, when appropriate, they could not as well be made after commencement of the trial. (Emphasis Added); See Also, Maddox, Alabama Rules of Criminal Procedure, 3rd Edition, §15.6, page 519.

Specifically, during the videotape interrogation of the Defendant, the interrogating officer alluded to prior bad conduct for which the Defendant had not been convicted. The interrogating officer stated the following during the interrogation: (1) that the Defendant had ran from law enforcement authorities during a previous drug sale; (2) that law enforcement had information from other sources that the Defendant "sold drugs

time and time again," and (3) other comments alluding to prior criminal activity by the

Defendant for which the Defendant has not been convicted.  Prior to the videotape

interrogation being played for the jury, the Defendant respectfully requests that this

Honorable Court order that the State of Alabama to redact any prejudicial statements

from the videotape statement relating to prior bad conduct for which the Defendant has

not been convicted.  Additionally, during the video tape interrogation, the interrogating

officer mentioned the prior convictions of the Defendant.  Prior to the videotape

interrogation being played for the jury, the Defendant respectfully requests that the State

of Alabama be prevented from mentioning, directly or indirectly, the Defendants prior

convictions during its case-in-chief.  The Defendant respectfully requests that this

Honorable Court order that the State of Alabama redact any prejudicial statements

relating to the prior convictions of the Defendant.

WHEREFORE, Counsel for Defendant prays for an Order consistent with the

Motion and the grounds presented.

**RESECTFULLY SUBMITTED** this 20th day of August 2003

JEREMY W. ARMSTRONG (ARM041)
COUNSEL FOR THE DEFENDANT

CC:    Russell County District Attorney's Office
         File

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of August 2003, I did serve a true copy of the foregoing upon the District Attorney's Office IN OPEN COURT, or by placing said copy in the appropriate Courthouse Box located at the Russell County Courthouse or by placing said copy in the United States mail, postage prepaid and properly addressed as follows:

Russell County District Attorney's Office
P.O. Box 939
Phenix City, AL 36868-0939

_____
JEREMY W. ARMSTRONG (ARM021)
COUNSEL FOR THE DEFENDANT

ADDRESS FOR COUNSEL:

**ARMSTRONG & GRAY, P.C.**
**POST OFFICE BOX 3409**
**1619 BROAD STREET**
**PHENIX CITY, ALABAMA  36868-3409**
**(334) 291-0410**
**(334) 291-0411 (FAX)**

IN THE CIRCUIT COURT FOR THE TWENTY-SIXTH JUDICIAL CIRCUIT,
RUSSELL COUNTY, ALABAMA

STATE OF ALABAMA,              )
                              )
    PLAINTIFF,                )
                              )
V.                           )          CC-03-378
                              )
JAMES JACKSON,               )
                              )
    DEFENDANT.               )

### NOTICE OF DEFENSE WITNESSES

Comes now the undersigned, Jeremy W. Armstrong, and enters a

notice of defense witnesses expected to testify in the above referenced

matter.  The Defendant expects to call the following witnesses to testify

on his behalf:

1. Defendant
2. All witnesses subpoenaed by the State of Alabama which are listed
   on the indictment.
3. Any witnesses necessary for rebuttal purposes.

**RESPECTFULLY SUBMITTED** this the trial week of August 18, 2003.

JEREMY W. ARMSTRONG (ARM 021)
COUNSEL FOR THE DEFENDANT

CC:    Russell County District Attorney's Office
       File

## CERTIFICATE OF SERVICE

I hereby certify that during the trial week of the 18th day of August, 2003,

I did serve a true copy of the foregoing upon the District Attorney's Office, by

hand delivery in open court, or by placing said copy in the appropriate

Courthouse Box located at the Russell County Courthouse or by placing said

copy in the United States mail, postage prepaid and properly addressed as

follows:

       Russell County District Attorney's Office
       P.O. Box 939
       Phenix City, AL  36868-0939

       JEREMY W. ARMSTRONG (ARM-021)
       COUNSEL FOR THE DEFENDANT

ADDRESS FOR COUNSEL:

ARMSTRONG & GRAY, P.C.
POST OFFICE BOX 3409
1619 BROAD STREET
PHENIX CITY, ALABAMA  36868-3409
(334) 291-0410
(334) 291-0411 [FAX]

000038

STATE OF ALABAMA

V.

JAMES JACKSON

\*    IN THE CIRCUIT COURT OF
\*
\*    RUSSELL COUNTY, ALABAMA
\*
\*    CASE NO. CC-03-378

### State's Potential Witnesses

TOM FRANKLIN

SHERWIN BOSWELL

- TOMMY PELL

JASON HATHCOCK

STEVE JOHNSON

6 - GROVER Goodrich

IN THE CIRCUIT COURT FOR THE TWENTY-SIXTH JUDICIAL CIRCUIT,
RUSSELL COUNTY, ALABAMA

| | | |
|---|---|---|
| STATE OF ALABAMA, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| V. | ) | CC-03-378 |
| | ) | |
| JAMES JACKSON, | ) | |
| | ) | |
| DEFENDANT. | ) | |

## DEFENDANT'S PROPOSED JURY INSTRUCTION NUMBER ONE
### (DEFENDANT'S FAILURE TO TESTIFY)

The Defendant has the right not to testify. On the trial of all criminal cases, the person accused of a crime shall at his own request, but not otherwise, be a competent witness. Failure to make such a request shall not create any presumption against him nor even be subject of comment by counsel. Therefore, no inference whatsoever may be derived from the facts that the Defendant did not take the witness stand in this matter.

**RESPECTFULLY SUBMITTED** the week of August 18, 2003.

_____
JEREMY W. ARMSTRONG (ARM 021)
COUNSEL FOR THE DEFENDANT

___/___   GIVEN   8/21/07  &s.

_____   DENIED

_____   WITHDRAWN

FILED IN OFFICE
2007 AUG 22  PM 2:55

IN THE CIRCUIT COURT FOR THE TWENTY-SIXTH JUDICIAL CIRCUIT,
RUSSELL COUNTY, ALABAMA

| | | |
|---|---|---|
| STATE OF ALABAMA, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| V. | ) | CC-03-378 |
| | ) | |
| JAMES JACKSON, | ) | |
| | ) | |
| DEFENDANT. | ) | |

### DEFENDANT'S PROPOSED JURY INSTRUCTION NUMBER TWO
### (CREDIBILITY OF A WITNESS)

The law states that if you think a witness intentionally misleads you about a material issue in the case, you may disregard that portion of the witness' testimony, or all of that witness' testimony.

**RESPECTFULLY SUBMITTED** the week of August 18, 2003.

_____
JEREMY W. ARMSTRONG (ARM 021)
COUNSEL FOR THE DEFENDANT

_____   GIVEN   *in general charge 8/21/03 GS*

_____   DENIED

_____   WITHDRAWN

IN THE CIRCUIT COURT FOR THE TWENTY-SIXTH JUDICIAL CIRCUIT,
RUSSELL COUNTY, ALABAMA

| | |
|---|---|
| STATE OF ALABAMA, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| V. | )     CC-03-378 |
| | ) |
| JAMES JACKSON, | ) |
| | ) |
| DEFENDANT. | ) |

## DEFENDANT'S PROPOSED JURY INSTRUCTION NUMBER THREE
### (PRESUMPTION OF INNOCENCE)

The Defendant is presumed to be innocent, and the presumption that he is innocent remains throughout the course of the trial until each and every juror is convinced, from the evidence, that the Defendant is guilty beyond a reasonable doubt. This presumption of innocence is to be regarded by you as a matter of evidence, and it is a benefit to which the Defendant is entitled. Only until, and unless, you are convinced from the evidence that the Defendant is guilty beyond a reasonable doubt, only at that time does the presumption that he is innocent leave him.

**RESPECTFULLY SUBMITTED** the week of August 18, 2003.

_____
JEREMY W. ARMSTRONG (ARM 021)
COUNSEL FOR THE DEFENDANT

_____     **GIVEN**     8/21/07   66

_____     **DENIED**

_____     **WITHDRAWN**

IN THE CIRCUIT COURT OF RUSSELL COUNTY, ALABAMA

STATE OF ALABAMA              )

      PLAINTIFF           )

VS.                          )        CASE NO.  CC 03-378

JAMES W. JACKSON        )

      DEFENDANT         )

## GUILTY VERDICT

We the jury, find the defendant, James W. Jackson,  guilty of the offense of Unlawful distribution of a controlled substance as charged in the indictment.

_____
Foreperson

8 - 21 - 03
_____
Date

STATE OF ALABAMA,        )  IN THE CIRCUIT COURT OF

     PLAINTIFF,       )  RUSSELL COUNTY, ALABAMA

VS.                )  CASE NO. CC 03-378

JAMES W. JACKSON     )

     DEFENDANT.      )

## VERDICT

August 21, 2003.  Now comes the defendant, with assistance of counsel, for trial by a jury of twelve upon his/her plea of not guilty.

August 21, 2003.  Now comes the jury and returns its unanimous verdict as follows:  "We, the Jury, find the defendant, James W. Jackson, guilty of the offense of Unlawful distribution of a controlled substance, as charged in the indictment.

Date: August 21, 2003; Joe Garcia, Foreperson."

The verdict being in proper form, the Court accepts the verdict.

The defendant is remanded to the custody of the Sheriff of Russell County.  Sentencing is scheduled for September 9, 2003 at 10:00 A.M.

George R. Greene, Circuit Judge

STATE OF ALABAMA ) IN THE CIRCUIT COURT OF
VS. ) RUSSELL COUNTY, AL
JAMES WILLIE JACKSON ) CASE NO. CC 03-378
    DEFENDANT )

## SENTENCING ORDER

The defendant and counsel, and counsel for the State of Alabama appeared in open court for the defendant to be sentenced on his/her conviction of <u>Unlawful distribution of a controlled substance</u>.

## HABITUAL FELONY OFFENDER

✓    Defendant is sentenced as a habitual offender under the provision of Section 13A-5-9 and 10 of the <u>Code of Alabama</u>.

## SENTENCE

✓    The Court conducted a sentencing hearing.

✓    A pre-sentence report was requested by the defendant and considered by the Court.

_____    Defendant waived a pre-sentence investigation and report.

✓    Defendant is sentenced to the custody of the Commissioner of the Department of Corrections for a period of
_22_ year(s) _____ life.

_____    Sentence to include five (5) years enhancement pursuant to 13A-12-270, <u>Code of Alabama</u>, and an additional five (5) years enhancement pursuant to 13A-12-250, <u>Code of Alabama</u>.

_____    Defendant is sentenced to the custody of the Sheriff of Russell County for a period of _____ month(s)
_____ days.

_____    Defendant's sentence shall be concurrent with the sentence(s) imposed in _____.

_____    Defendant shall pay restitution in the amount of $_____ to _____.
The Clerk of the court is authorized to collect and disburse the restitution. Restitution is to be paid prior to other court costs.

✓    Defendant shall be given credit for time served.

✓    Defendant shall pay a fine in the amount of $ _2500 00_.

_____    Defendant shall pay $10.00 per day incarceration fee.

✓    Defendant shall pay the cost of this case.

✓    Defendant shall pay the Alabama Crime Victims Compensation Commission $_250_.

_____    Defendant shall perform _____ hours of community service.

✓    Defendant is assessed with $1000.00 penalty mandated by the Demand Reduction Assessment Account, Section 13A-12-281 of the <u>Code of Alabama</u> which will be suspended upon defendant's agreement to enroll in rehabilitation program and pay for same. The defendant may apply to the Court to reduce the amount due by any payments defendant has made.

✓    Defendant shall undergo a substance abuse program while at the Department of Corrections.

_____ Defendant shall complete a substance abuse program through the Court Referral Officer.

_____ Defendant is assessed with $100.00 to Forensic Services Trust Fund Act No. 95-733.

_____ Defendant's drivers license are suspended for a period of 6 months.

_____ Defendant shall reimburse the State of Alabama the costs of his/her appointed counsel.

_____ Payment of court ordered monies shall be a condition of parole, early release, S.I.R., or work release.

_____ Defendant shall submit to the taking of DNA samples.

_____ Defendant shall register as a sex offender.

## SUSPENDED SENTENCE

_____ Sentence is suspended, and the defendant is placed on ___supervised ___ unsupervised probation for a period of _____.

## SPLIT SENTENCE

_____ Sentence is suspended, and the defendant is placed on supervised probation for a period of _____, however, as a first condition of probation the defendant shall serve a period of _____ in the custody of the commissioner of the Department of Corrections/Sheriff of Russell County.  Upon release from incarceration, the defendant must report within 5 days to the Russell County Probation Office.

## REVERSE SPLIT SENTENCE

_____ Sentence is suspended, and the defendant is placed on supervised probation for a period of _____; however, upon completion of said probation period, the defendant shall serve a period of _____ in the custody of the Sheriff of Russell County, Alabama.

## BOOT CAMP

_____ Defendant shall serve up to 180 days in the custody of the Commissioner of the Department of Corrections and he shall successfully complete the disciplinary, Rehabilitation program.  When said program is completed or defendant is released from said program, he shall be returned to this Court for a hearing on his application for probation.

_____ Defendant waives any right to appeal and waives any right to any post conviction remedy.

_____ Defendant was advised that he/she has the right to appeal his/her conviction and sentence, and if declared indigent he/she has the right to appointed counsel and the court reporter's transcript will be provided without cost to the defendant.

_____ Review is scheduled for _____, 2003 at _____.

_____ Defendant gave oral notice of appeal.

DONE and ORDERED in open court this 9th day of September 2003.

_____
JUDGE, CIRCUIT COURT

CC 2003 000378.00 01
GEORGE R. GREENE

```
CIRCUIT COURT OF RUSSELL COUNTY                    COURT ORI: 057015 J

CITY OF SL0204552         VS.                      DC NO: GJ 2003 000274.00
JACKSON JAMES WILLIE            ALIAS:             G J:  116
48 FARM ROAD                   ALIAS:             SSN:  423029851
PHENIX CITY  AL  36867                            SID:  000000000
                                                   AIS:
```

```
DOB:  04/25/1961   SEX: M   HT: 5 11   WT: 180   HAIR: BLK   EYE: BRO
RACE: ( )W (X)B ( )O   COMPLEXION: _____   AGE: _____   FEATURES: _____
```

```
DATE OFFENSE: 09/16/2002   ARREST DATE: 01/04/2003   ARREST ORI: 0570100
```

| CHARGES @ CONV | CITES | CT | CL | COURT ACTION | CA DATE |
|---|---|---|---|---|---|
| UNLAW DISTRIB | CUNT 13A-012-211 | 01 | B | CONVICTED | 08/21/2003 |
| | | 00 | | | 00/00/0000 |
| | | 00 | | | 00/00/0000 |

```
JUDGE: GEORGE R. GREENE              PROSECUTOR: LANDREAU BUSTER
```

```
PROBATION  APPLIED    GRANTED  DATE      REARRESTED DATE  REVOKED  DATE
( )Y( )N _____   ( )Y( )N _____   ( )Y( )N _____   ( )Y( )N _____
```

```
15-18-8, CODE OF ALA 1975   IMPOSED    SUSPENDED   TOTAL     JAIL CREDIT
( )Y (X)N   CONFINEMENT:   22 00 000   00 00 000   22 00 000   00 00 248
            PROBATION:     00 00 000               00 00 000
DATE SENTENCED: 09/09/2003   SENTENCE BEGINS: 09/09/2003
```

| PROVISIONS | COSTS/RESTITUTION | DUE | ORDERED |
|---|---|---|---|
| | RESTITUTION | $0.00 | $0.00 |
| PENITENTIARY | ATTORNEY FEE | $0.00 | $0.00 |
| HABITUAL OFDR | CRIME VICTIMS | $250.00 | $250.00 |
| DOC/SAPP PGM | COST | $406.00 | $406.00 |
| DRUG | FINE | $2500.00 | $2500.00 |
| | MUNICIPAL FEES | $0.00 | $0.00 |
| | DRUG FEES | $1360.00 | $1360.00 |
| | ADDTL DEFENDANT | $0.00 | $0.00 |
| | DA FEES | $0.00 | $0.00 |
| | COLLECTION ACCT | $0.00 | $0.00 |
| | JAIL FEES | $0.00 | $0.00 |
| | TOTAL | $4516.00 | $4516.00 |

```
APPEAL DATE       SUSPENDED        AFFIRMED          REARREST
(X)Y( )N 9-12-03   ( )Y( )N _____   ( )Y( )N _____   ( )Y( )N _____
```

REMARKS:

THIS IS TO CERTIFY THAT THE
ABOVE INFORMATION WAS EXTRACTED
FROM OFFICIAL COURT RECORDS
AND IS TRUE AND CORRECT.

*Kathy Coulter*

KATHY COULTER

09/12/2003

OPERATOR: JOS
PREPARED: 09/12/2003

IN THE CIRCUIT COURT FOR THE TWENTY-SIXTH JUDICIAL CIRCUIT,
RUSSELL COUNTY, ALABAMA

STATE OF ALABAMA,                    )
                                     )
    PLAINTIFF,                       )
                                     )
V.                                   )        CC-03-378
                                     )
JAMES JACKSON,                       )
                                     )
    DEFENDANT.                       )

### NOTICE OF APPEAL

Comes now trial counsel for the Defendant, Jeremy W. Armstrong, and respectfully enters a written notice of appeal to the Alabama Court of Criminal Appeals of the conviction and sentence in the above-styled case. Trial counsel respectfully requests that the Defendant's indigent status be continued and that an attorney be appointed to represent the Defendant for appeal purposes.

**RESPECTFULLY SUBMITTED** this 9th 12TH day of September, 2003.

_____

JEREMY W. ARMSTRONG (ARM 021)
COUNSEL FOR THE DEFENDANT

CC:    Russell County District Attorney's Office
       File

## CERTIFICATE OF SERVICE

I hereby certify that on this ~~9th~~ 12TH day of August, 2003, I did serve a true

copy of the foregoing upon the District Attorney's Office, by placing said copy in

the appropriate Courthouse Box located at the Lee County Courthouse or by

placing in the United States mail, postage prepaid and properly addressed as

follows:

Russell County District Attorney's Office
P.O. Box 939
Phenix City, AL 36868-0939

JEREMY W. ARMSTRONG (ARM 021)
COUNSEL FOR THE DEFENDANT

ADDRESS FOR COUNSEL:

**ARMSTRONG & GRAY, P.C.**
POST OFFICE BOX 3409
1619 BROAD STREET
PHENIX CITY, ALABAMA  36868-3409
(334) 291-0410
(334) 291-0411 [FAX]

State of Alabama
Unified Judicial System
Form ARAP-26 (front)   8/91

**COURT OF CRIMINAL APPEALS**
**DOCKETING STATEMENT**

Criminal Appeal Number

## A. GENERAL INFORMATION:

☒ CIRCUIT COURT   ☐ DISTRICT COURT   ☐ JUVENILE COURT OF _RUSSELL_____ COUNTY

_JAMES JACKSON_____, Appellant

v.   ☒ STATE OF ALABAMA   ☐ MUNICIPALITY OF _____

| | | |
|---|---|---|
| Case Number _CC-03-378_ | Date of Complaint or Indictment _MAY 23, 2003_ | Date of Judgment/Sentence/Order _AUG. 21, 2003 / SEP. 9, 2003_ |
| Number of Days of Trial/Hearing _1_ Days | Date of Notice of Appeal Oral: _SEPT. 9, 2003_ | Written: _SEPT. 9, 2003_ |
| Indigent Status Requested: ☒ Yes ☐ No | Indigent Status Granted: ☐ Yes ☐ No | |

## B. REPRESENTATION:

Is Attorney Appointed or Retained?  ☒ Appointed  ☐ Retained.      If no attorney, will appellant represent self?  ☐ Yes  ☐ No

Appellant's Attorney (Appellant if pro se) (Attach additional pages if necessary)   Telephone Number
_JEREMY W. ARMSTRONG_                                    _(334) 291-0410_

Address _1619 BROAD STREET_   City _PHENIX CITY_   State _AL_   Zip Code _36867_

## C. CODEFENDANTS: List each CODEFENDANT and the codefendant's case number.

| | Case Number |
|---|---|
| Codefendant _N/A_ | |
| Codefendant | Case Number |
| Codefendant | Case Number |

## D. TYPE OF APPEAL: Please check the applicable block.

1 ☒ State Conviction
2 ☐ Post-Conviction Remedy
3 ☐ Probation Revocation
4 ☐ Pretrial Order
5 ☐ Contempt Adjudication
6 ☐ Municipal Conviction
7 ☐ Juvenile Transfer Order
8 ☐ Juvenile Delinquency
9 ☐ Habeas Corpus Petition
10 ☐ Other (Specify)

## E. UNDERLYING CONVICTION/CHARGE: Regardless of the type of appeal checked in Section D, please check the box beside each offense category for which the appellant has been convicted or charged as it relates to this appeal. Also include the applicable section of the Code of Alabama for State convictions.

1 ☐ Capital Offense - § _____
2 ☐ Homicide - § _____
3 ☐ Assault - § _____
4 ☐ Kidnapping/Unlawful Imprisonment - § _____
5 ☐ Drug Possession - § _____
6 ☐ Trafficking in Drugs - § _____
7 ☐ Theft - § _____
8 ☐ Damage or Intrusion to Property - § _____
9 ☐ Escape - § _____
10 ☐ Weapons/Firearms - § _____
11 ☐ Fraudulent Practices - § _____
12 ☐ Offense Against Family - § _____
13 ☐ Traffic - DUI - § _____
14 ☐ Traffic - Other - § _____
15 ☒ Miscellaneous (Specify): _DRUG DISTRIBUTION_ - § _13A-12-211_

## F. DEATH PENALTY:

Does this appeal involve a case where the death penalty has been imposed?   ☐ Yes  ☒ No

## G. TRANSCRIPT:

1. Will the record on appeal have a reporter's transcript?  ☒ Yes  ☐ No
2. If the answer to question "1" is "Yes," state the date the Reporter's Transcript Order was filed. _SEPT. 9, 2003_ (Date)
3. If the answer to question "1" is "No":
   (a) Will a stipulation of facts be filed with the circuit clerk?  ☐ Yes  ☐ No
   (b) Will the parties stipulate that only questions of law are involved and will the trial court certify the questions?  ☐ Yes  ☐ No

NOTE: If the appeal is from the district or juvenile court and the answer to question "1" is "No," then a positive response is required for question 3(a) or 3(b).

**H. POST-JUDGMENT MOTIONS:** List all post-judgment motions by date of filing, type, and date of disposition (whether by trial court order or by the provisions of Rules 20.3 and 24.4 (ARCrP)):

| DATE OF FILING | | | TYPE OF POST-JUDGMENT MOTION | DATE OF DISPOSITION. | | |
|---|---|---|---|---|---|---|
| Month | Day | Year | | Month | Day | Year |
| 09 | 17 | 2003 | MOTION FOR NEW TRIAL | PENDING | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**I. NATURE OF THE CASE:** Without argument, briefly summarize the facts of the case.

THE DEFENDANT WAS CONVICTED OF DISTRIBUTION OF A CONTROLLED SUBSTANCE BASED ON THE EYEWITNESS TESTIMONY OF A CONFIDENTIAL INFORMANT.

**J. ISSUE(S) ON APPEAL:** Briefly state the anticipated issues that will be presented on appeal. *(Attach additional pages if necessary.)*

NOT KNOWN AT THIS TIME.

**K. SIGNATURE:**

SEPT. 9, 2003
Date

Signature of Attorney/Party Filing this Form

Form ARAP- 1C    8/91

See Rules 10(c) and 11(b) of the
Alabama Rules of Appellate Procedure (A.R. App.P.)

TO BE COMPLETED BY COUNSEL FOR THE APPELLANT OR BY THE APPELLANT IF NOT REPRESENTED AND FILED WITH THE WRITTEN NOTICE OF APPEAL OR FILED WITHIN 7 DAYS AFTER ORAL NOTICE OF APPEAL IS GIVEN.

☒ CIRCUIT COURT ☐ DISTRICT COURT ☐ JUVENILE COURT OF _____ **Russell** _____ COUNTY

**James Jackson** , Appellant

v. ☒ STATE OF ALABAMA ☐ MUNICIPALITY OF _____

| Case Number **CC-03-378** | Date of Judgment/Sentence/Order **Aug. 21, 2003 / Sept. 9, 2003** | |
| Date of Notice of Appeal Oral: **Sept. 9, 2003** Written: **Sept. 9, 2003** | Indigent Status Granted: ☒ Yes ☐ No | |

**PART 1. TO BE SIGNED IF THE APPEAL WILL NOT HAVE A COURT REPORTER'S TRANSCRIPT:**
I CERTIFY THAT NO REPORTER'S TRANSCRIPT IS EXPECTED AND THAT THE RECORD ON APPEAL SHALL CONSIST OF THE CLERK'S RECORD ONLY. IF THE APPEAL IS FROM DISTRICT COURT OR JUVENILE COURT, I ALSO CERTIFY (1) THAT A STIPULATION OF FACTS WILL BE INCLUDED IN THE CLERK'S RECORD AND THAT THE APPELLANT WAIVES HIS RIGHT TO A JURY TRIAL IF SO ENTITLED; OR (2) THAT THE PARTIES HAVE STIPULATED THAT ONLY QUESTIONS OF LAW ARE INVOLVED AND THAT THE QUESTIONS WILL BE CERTIFIED BY THE JUVENILE/DISTRICT COURT FOR INCLUSION IN THE CLERK'S RECORD (SEE RULE 28(A)(1), ALABAMA RULES OF JUVENILE PROCEDURE, AND §12-12-72, *CODE OF ALABAMA 1975*).

_____ _____ _____
Signature          Date          Print or Type Name

**PART 2. DESIGNATION OF PROCEEDINGS TO BE TRANSCRIBED.** Request is hereby made to the court reporter(s) indicated below for a transcript of the following proceedings in the above referenced case (see Rule 10(c)(2), Alabama Rules of Appellate Procedure (A.R App.P.):

MARK PROCEEDINGS REQUESTED:

COURT REPORTER(S)

A. ☒ TRIAL PROCEEDINGS - Although this designation will include the judgment and sentence proceedings, a transcript of the organization of the jury and arguments of counsel must be designated separately
**Linda Wilson c/o Judge Greene**

B. ☒ ORGANIZATION OF THE JURY - This designation will include voir dire examination and challenges for cause. Note that in noncapital cases the voir dire of the jury will not be recorded unless the trial judge so directs. (See Rule 19.4, ARCrP.)
**Linda Wilson c/o Judge Greene**

C. ☒ ARGUMENTS OF COUNSEL - Note that in noncapital cases the arguments of counsel will not be recorded unless the trial judge so directs. (See Rule 19.4, ARCrP.)
**Linda Wilson c/o Judge Greene**

IN ADDITION TO ANY PROCEEDINGS DESIGNATED ABOVE, SPECIAL REQUEST IS HEREBY MADE TO INCLUDE THE FOLLOWING PROCEEDINGS IN THE REPORTER'S TRANSCRIPT PORTION OF THE RECORD ON APPEAL. (ATTACH ADDITIONAL PAGES IF NECESSARY):

| ADDITIONAL PROCEEDINGS REQUESTED | DATE | COURT REPORTER(S) |
| --- | --- | --- |
| D. **Closing Arguments** | **Aug. 21, 2003** | **Linda Wilson c/o Judge Greene** |
| E. | | |
| F. | | |
| G. | | |

**IMPORTANT NOTICE:** The court reporter who reported the proceedings for which a transcript is requested must be identified on this form to be effective. Additionally, it is important to note that the appellant may not be permitted to raise any issue on appeal relating to any proceedings in the case that are not specifically designated on this form for inclusion in the reporter's transcript. A general designation such as "all proceedings" is not sufficient. (See Rule 10(c)(2), A.R.App.P.)

**PART 3. MUST BE SIGNED IF THE APPEAL WILL HAVE A COURT REPORTER'S TRANSCRIPT:**
I CERTIFY THAT I HAVE DISTRIBUTED THIS FORM AS SET OUT BELOW. I ALSO CERTIFY (1) THAT I HAVE MADE SATISFACTORY FINANCIAL ARRANGEMENTS WITH EACH COURT REPORTER LISTED ABOVE FOR PREPARING HIS OR HER PORTION OF THE REPORTER'S TRANSCRIPT HEREIN REQUESTED; OR (2) THAT THE APPELLANT PROCEEDED AT TRIAL AS AN INDIGENT AND THAT THAT STATUS HAS NOT BEEN REVOKED; OR, (3) THAT THE APPELLANT HAS BEEN GIVEN PERMISSION TO PROCEED ON APPEAL IN FORMA PAUPERIS.

_____ **Sept. 9, 2003** **Jeremy W. Armstrong**
Signature          Date          Print or Type Name

**DISTRIBUTION: Original filed with Clerk of Trial Court and copies mailed to:** (1) Clerk of the Court of Criminal Appeals, (2) the District Attorney, (3) the Attorney General or the municipal prosecutor in lieu of the District Attorney and the Attorney General if the appeal is from a municipal conviction, and (4) to each Court Reporter who reported proceedings designated for inclusion in the reporter's transcript.

IN THE CIRCUIT COURT OF RUSSELL COUNTY BY THE TRIAL COURT CLERK

STATE OF ALABAMA VS JACKSON JAMES WILLIE        JUDGE: GEORGE R. GREENE

-----------------------------------------------------------------

| APPEAL DATE: 09/12/2003

-----------------------------------------------------------------

INDIGENCY STATUS:
  GRANTED INDIGENCY STATUS AT TRIAL COURT:       __X__ YES   _____ NO
  APP. TRIAL COUNSEL PERMITTED TO W/D ON APPEAL: _____ YES   __X__ NO
  INDIGENT STATUS REVOKED ON APPEAL:             _____ YES   __X__ NO
  INDIGENT STATUS GRANTED ON APPEAL:             __X__ YES   _____ NO

DEATH PENALTY: NO

APPEAL TYPE: OTHER (SPECIFY)_*State Conviction*_

-----------------------------------------------------------------

THIS APPEAL IS FROM AN ORDER DENYING A PETITION (I.E., RULE 32 PETITION,
WRIT OF HABEAS CORPUS, ETC) OR FROM ANY OTHER ISSUED BY THE TRIAL JUDGE.

CO/CASE NUMBER: 57/CC 2003 000378.00

ORDER ENTERED (DATE): 08212003 PETITION: __DISMISSED  __DENIED  __GRANTED

-----------------------------------------------------------------

THIS IS AN APPEAL FROM A CONVICTION.

DATE OF CONVICTION: 08/21/2003       DATE OF SENTENCE: 09/09/2003

YOUTHFUL OFFENDER STATUS: DENIED

CO/CASE NUMBER: 57/CC 2003 000378.00
CODE: UDCS   CONVICTION: UNLAW DISTRIB CO   ACTION: CONVICTED
                                             STATUTE: 13A-012-211

SENTENCE:   CONF: 22 YRS 00 MOS 000 DAYS
SENTENCE:   PROB: 00 YRS 00 MOS 000 DAYS     LIFE: NO   LIFEWO: NO

-----------------------------------------------------------------

POST-JUDGMENT MOTIONS FILED:   DT FILED      DT DENIED    CON BY AGREE
_X_ MOTION FOR NEW TRIAL       09/12/2003    ---------    ------------
___ MOTION FOR JUDG. OF ACQUIT ---------     ---------    ------------
___ MOTION TO W/D GUILTY PLEA  ---------     ---------    ------------
___ MOTION FOR ATTY TO W/DRAW  ---------     ---------    ------------
___ OTHER _____      ---------     ---------    ------------

-----------------------------------------------------------------

COURT REPORTER(S):              WILSON, LINDA S.
ADDRESS:                        C/O HON. GEORGE R. GREENE
                                PHENIX CITY   , AL  36867

APPELLATE COUNSEL #1:           ARMSTRONG JEREMY WAYNE
ADDRESS:                        1619 BROAD STREET
                                P. O. BOX 3409
                                PHENIX CITY   , AL  36868
PHONE NUMBER:                   334-291-0410

APPELLATE COUNSEL #2:           --------------------------------
ADDRESS:                        --------------------------------
                                --------------------------------
                                --------------------------------
PHONE NUMBER:                   --------------------------------

APPELLANT (PRO SE):             JACKSON JAMES WILLIE
ADDRESS:                        48 FARM ROAD
                                PHENIX CITY   , AL  368670000
AIS #:

APPELLEE (IF CITY APPEAL):      --------------------------------
ADDRESS:                        --------------------------------
                                --------------------------------

-----------------------------------------------------------------

I CERTIFY THAT THE INFORMATION PROVIDED          OPERATOR: TIW
ABOVE IS ACCURATE TO THE BEST OF MY           PREPARED: 09/15/2003
KNOWLEDGE AND I HAVE SERVED A COPY OF
THIS NOTICE OF APPEAL ON ALL PARTIES TO       _*Kathy Coulter*_ /PN
THIS ACTION ON THIS 15th DAY OF *September*, 2003    CIRCUIT COURT CLERK

IN THE CIRCUIT COURT FOR THE TWENTY-SIXTH JUDICIAL CIRCUIT,
RUSSELL COUNTY, ALABAMA

| | | |
|---|---|---|
| STATE OF ALABAMA, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| V. | ) | CC-03-378 |
| | ) | |
| JAMES JACKSON, | ) | |
| | ) | |
| DEFENDANT. | ) | |

## MOTION FOR NEW TRIAL

COMES NOW, the Defendant, by and through his counsel, Jeremy W. Armstrong, and respectfully moves this Honorable Court to grant a new trial, on the following grounds, separately and severally:

1. The verdict of the jury is contrary to the great weight of the evidence in this case.

2. The verdict of the jury is not supported by the evidence in this case beyond a reasonable doubt.

3. The evidence produced upon the trial of this case is insufficient to support a verdict.

4. The evidence produced upon the trial of this case is insufficient to support a finding beyond a reasonable doubt and to a moral certainty of the Defendant's guilt.

5. The verdict of the jury is contrary to the law.

6. The judgment of the Court is contrary to the law.

7. The evidence produced upon the trial of this case is insufficient to support a verdict.

8. There was insufficient evidence that the confidential informant was properly searched by Sgt. Johnson prior to the alleged drug transaction.

9. The Court erred when it overruled the Defendant's Batson v. Kentucky objection.

10. The Court erred in overruling the Defendant's motion for mistrial regarding State's Exhibit 7A being shown to the jury. State's Exhibit 7A was an identification list of six (6) individuals in the photograph line-up depicted in State's Exhibit 7. State's Exhibit 7A indicated that the Defendant was depicted in photographs number six (6) of the photograph line-up. State's Exhibit 7A indicated an inmate identification number bearing the date of December 19, 1999.

*9/17/03 - Motion for new trial denied GC*

State's Exhibit 7A inferred to the jury that the Defendant had prior contact with law enforcement and that the Defendant had prior bad conduct.

11. The Court erred in overruling the Defendant's objection to the prosecutor's comment during closing arguments, to wit: "would an innocence man run from police." This comment by the prosecutor was improper and was an inference on the Defendant's failure to testify to prove his innocence.

12. The Court erred in overruling the Defendant's motion for judgment of acquittal made at the close of the State's case.

13. The sentence imposed on the Defendant is so excessive as to constitute cruel and unusual punishment in violation of the state and federal constitutional provisions against cruel and unusual punishment.

14. The sentencing of the Defendant is a violation of the state and federal constitutional provisions against cruel and unusual punishment in that the sentence is disproportionate to the offense.

15. The sentencing of the Defendant is a violation of the due process provisions of the federal Constitution in that the sentence is disproportionate to the offense for which Defendant was convicted.

WHEREFORE, Counsel for Defendant prays for an Order consistent with the

Motion and the grounds presented.

**RESECTFULLY SUBMITTED** this 12TH day of September 2003.

JEREMY W. ARMSTRONG (ARM021)
COUNSEL FOR THE DEFENDANT

CC:    Russell County District Attorney's Office
       File

## CERTIFICATE OF SERVICE

I hereby certify that on this 12TH day of September 2003, I did serve a true copy of

the foregoing upon the District Attorney's Office by placing said copy in the appropriate

Courthouse Box located at the Russell County Courthouse or by placing said copy in the

United States mail, postage prepaid and properly addressed as follows:


    Russell County District Attorney's Office
    P.O. Box 939
    Phenix City, AL 36868-0939

                                JEREMY W. ARMSTRONG (ARM031)
                                COUNSEL FOR THE DEFENDANT


ADDRESS FOR COUNSEL:

**ARMSTRONG & GRAY, P.C.**
**POST OFFICE BOX 3409**
**1619 BROAD STREET**
**PHENIX CITY, ALABAMA  36868-3409**
**(334) 291-0410**
**(334) 291-0411 (FAX)**

STATE OF ALABAMA                    )    IN THE CIRCUIT COURT OF

       PLAINTIFF,                   )    RUSSELL COUNTY, ALABAMA

                  )

VS.                                 )    CASE NO.: CC 03-378

                  )

JAMES JACKSON                       )

       DEFENDANT.                   )

## ORDER

    The defendant having filed a motion for new trial and the Court having reviewed and considered same, it is ORDERED that the motion for new trial is denied.

    DONE this the 17th day of September 2003.

_____
JUDGE, CIRCUIT COURT

FILED IN OFFICE
2003 SEP 24  PM 12: 40
CIRCUIT/DIST. COURT
RUSSELL CO., AL.

ACR37     ALABAMA JUDICIAL DATA CENTER
Case 3:06-cv-01027-MHT-SRW   Document 2-2   Filed 01/11/2007   Page 80 of 69   000057
NOTICE OF APPEAL
BY THE TRIAL COURT CLERK
IN THE CIRCUIT COURT OF   RUSSELL COUNTY
STATE OF ALABAMA VS JACKSON JAMES WILLIE     JUDGE: GEORGE R. GREENE

---

APPEAL DATE: 09/12/2003

INDIGENCY STATUS:
   GRANTED INDIGENCY STATUS AT TRIAL COURT:      __X__ YES   _____ NO
   APP. TRIAL COUNSEL PERMITTED TO W/D ON APPEAL:   _____ YES   __X__ NO
   INDIGENT STATUS REVOKED ON APPEAL:      _____ YES   __X__ NO
   INDIGENT STATUS GRANTED ON APPEAL:      __X__ YES   _____ NO

DEATH PENALTY: NO

APPEAL TYPE: OTHER(SPECIFY) *State conviction*

---

THIS APPEAL IS FROM AN ORDER DENYING A PETITION (I.E., RULE 32 PETITION, WRIT OF HABEAS CORPUS, ETC) OR FROM ANY OTHER ISSUED BY THE TRIAL JUDGE.

CO/CASE NUMBER: 57/CC 2003 000378.00

ORDER ENTERED(DATE): 08212003 PETITION: __DISMISSED __DENIED __GRANTED

---

THIS IS AN APPEAL FROM A CONVICTION.

DATE OF CONVICTION: 08/21/2003      DATE OF SENTENCE: 09/09/2003

YOUTHFUL OFFENDER STATUS: DENIED

CO/CASE NUMBER: 57/CC 2003 000378.00
CODE: UDCS    CONVICTION: UNLAW DISTRIB CO    ACTION: CONVICTED
                                            STATUTE: 13A-012-211

SENTENCE:    CONF: 22 YRS 00 MOS 000 DAYS
SENTENCE:    PROB: 00 YRS 00 MOS 000 DAYS     LIFE: NO    LIFEWO: NO

---

POST-JUDGMENT MOTIONS FILED:    DT FILED      DT DENIED      CON BY AGREE
_X_ MOTION FOR NEW TRIAL      09/12/2003      09/24/2003     _____
___ MOTION FOR JUDG. OF ACQUIT   _____      _____      _____
___ MOTION TO W/D GUILTY PLEA    _____      _____      _____
___ MOTION FOR ATTY TO W/DRAW    _____      _____      _____
___ OTHER _____      _____      _____      _____

---

COURT REPORTER(S):      WILSON, LINDA S.
ADDRESS:      C/O HON. GEORGE R. GREENE
                  PHENIX CITY  , AL 36867

APPELLATE COUNSEL #1:      ARMSTRONG JEREMY WAYNE
ADDRESS:      1619 BROAD STREET
                  P. O. BOX 3409
                  PHENIX CITY  , AL 36868
PHONE NUMBER:      334-291-0410

APPELLATE COUNSEL #2:      _____
ADDRESS:      _____
                  _____
                  _____
PHONE NUMBER:      _____

APPELLANT (PRO SE):      JACKSON JAMES WILLIE
ADDRESS:      48 FARM ROAD
                  PHENIX CITY  , AL 368670000
AIS #:

APPELLEE (IF CITY APPEAL):      _____
ADDRESS:      _____
                  _____

---

I CERTIFY THAT THE INFORMATION PROVIDED          OPERATOR: TIW
ABOVE IS ACCURATE TO THE BEST OF MY      PREPARED: 09/25/2003
KNOWLEDGE AND I HAVE SERVED A COPY OF
THIS NOTICE OF APPEAL ON ALL PARTIES TO    *Kathy Coulter /TW*
THIS ACTION ON THIS 25t DAY OF Sept , 03      CIRCUIT COURT CLERK

REQUEST FOR LOCAL EXTENSION OF TIME
TO COMPLETE TRANSCRIPTS

James Willie Jackson _____ v. ___ State of Alabama _____
Appellant's Name                                    Appellee

Trial Court Case No. CC 03-378    Notice of Appeal Date 9/9/03

On appeal from the:    [X] Circuit Court of
                       [ ] District Court of     Russell _____ County
                       [ ] Juvenile Court of

I Linda Wilson _____, a court reporter in the above referenced case,

hereby request a 28- day extension to complete the transcript in said cause for the reasons

I have set out below. Currently this transcript is due on 11/19/03 _____, and with this extension

the transcript will be due on 12/17/03.

REASONS: _____

_____

_____

_____

Linda Wilson _____    11/19/03 _____
Court Reporter                       Date

FILED IN OFFICE
'03 NOV 19 PM 12: 2
CIRCUIT/DIST. COURT
RUSSELL CO. AL

====================================================================
TRIAL COURT ACTION
====================================================================

[X] Upon consideration of the above request, I hereby grant a 28- day extension to complete said transcript, thus extending
the transcript's due date to 12/17/03. Upon granting this request, I direct the court reporter to file this order
with the Clerk of this Court and to mail or fax a copy hereof to the Clerk of the Court of Criminal Appeals at the address
noted below by no later than the transcript due date in effect immediately preceding this order.

[ ] The above referenced request for a local extension is denied.

_____    11/19/03 _____
Judge's Signature           Date

Note:    Pursuant to Rule 11(c) of the Alabama Rules of Appellate Procedure, local extensions cannot total more than 28
days and cannot be to a date more than 84 days from the date of the notice of appeal.

====================================================================
The Clerk of the Court of Criminal Appeals    Fax (334) 242-4689
P. O. Box 301555
Montgomery, Alabama 36130-1555

060059

COURT OF CRIMINAL APPEALS
STATE OF ALABAMA
JUDICIAL BUILDING, 1366 DEXTER AVENUE
P.O. BOX 301555
MONTGOMERY, AL 36130-1555

November 19th, 2003

H. W. "Bucky" McMILLAN
Presiding Judge
SUE BELL COBB
PAMELA W. BASCHAB
GREG SHAW
A. KELLI WISE
Judges

Lane W. Mann
Clerk
Wanda K. Ivey
Assistant Clerk
(334) 242-4590
FAX (334) 242-4689

RE: CR-02-2200

James Willie Jackson v. State of Alabama (Appeal from Russell Circuit Court: CC03-378).

        You are hereby notified that the Court of Criminal Appeals acknowledges that the
following action was taken in the above cause by the trial court:

        Additional time is granted to certify the completion of reporter's transcript to
and including 12/17/2003.

                                        Lane W. Mann, Clerk
                                        Court of Criminal Appeals

LWM/sm


cc: Honorable George R. Greene, Circuit Judge
    Honorable Kathy S. Coulter, Circuit Clerk
    Linda S. Wilson, Court Reporter
    Honorable Jeremy W. Armstrong, Attorney, Appellant

FILED IN OFFICE
2003 NOV 20  AM 11:31
CIRCUIT/DIST. COURT
RUSSELL CO. AL

COURT OF CRIMINAL
APPEALS FOR EXTENSION OF TIME
TO FILE TRANSCRIPT

CC0060

Fax: (334) 242-4689

O   The Clerk of the Court of Criminal Appeals
    P. O. Box 301555
    Montgomery, Alabama 36130-1555

iminal Appeals Case Number        CR _02_ _2200_

_James Willie Jackson_    v. _State of Alabama_
Appellant's Name                        Appellee

Trial Court Case No. _CC03-378_   Notice of Appeal Date _9/9/03_

On appeal from the: [X] Circuit Court of
                    [ ] District Court of   _Russell_ County
                    [ ] Juvenile Court of

I, _Linda Wilson_, a court reporter in the above referenced case,

reby request a _28-_ day extension to complete the transcript in said cause for the reasons

I have set out below. Currently this transcript is due on _12/17/03_, and with this extension

the transcript will be due on _1/14/04_.

REASONS: _____

_____

_____

_____

_____

_____

_____

_Linda Wilson_                    _12/16/03_
Court Reporter                      Date

Note:   Rule 11(c) of the Alabama Rules of Appellate Procedure prohibits an appellate court from
granting an extension if the request is not received by the clerk of the appellate court within the time
originally prescribed or before the expiration of an extension previously granted. Based on internal
policy of the Court of Criminal Appeals, no more than two 28-day extensions will be granted.

# APPLICATION TO COURT OF CRIMINAL APPEALS FOR EXTENSION OF TIME TO FILE TRANSCRIPT

Fax: (334) 242 –4689

O    The Clerk of the Court of Criminal Appeals
     P. O. Box 301555
     Montgomery, Alabama 36130-1555

Criminal Appeals Case Number    CR   02   2200   State of Alabama

James Willie Jackson    v.    _____
Appellant's Name                      Appellee

Trial Court Case No. CC03-378   Notice of Appeal Date 9/9/03

On appeal from the: [X] Circuit Court of
                     [ ] District Court of     Russell   County
                     [ ] Juvenile Court of

I, Linda Wilson _____, a court reporter in the above referenced case,
hereby request a 28- day extension to complete the transcript in said cause for the reasons
I have set out below.  Currently this transcript is due on 1/14/04 , and with this extension
the transcript will be due on 2/10/04 .

REASONS: _____

_____

_____

_____

_____

_____

Linda Wilson _____    1/13/04 _____
Court Reporter                       Date

Note:    Rule 11(c) of the Alabama Rules of Appellate Procedure prohibits an appellate court from
granting an extension if the request is not received by the clerk of the appellate court within the time
originally prescribed or before the expiration of an extension previously granted. Based on internal
policy of the Court of Criminal Appeals, no more than two 28-day extensions will be granted.

STATE OF ALABAMA

IN THE CIRCUIT COURT FOR THE COUNTY OF RUSSELL

TWENTY-SIXTH JUDICIAL CIRCUIT


JAMES W. JACKSON,      )
                           )
        Appellant,    )    CRIMINAL ACTION
                           )    CASE NO.
        V.              )    CC 03-378
                           )
STATE OF ALABAMA,     )
                           )
        Appellee.     )

## REPORTER'S INDEX TO EXHIBITS

| NO. | DESCRIPTION | ADMITTED |
|-----|-------------|----------|
| **Trial** | | |
| State's Exhibit 1 | Plastic package | X |
| State's Exhibit 1A | Cocaine | X |
| State's Exhibit 2 | Audiotape | X |
| State's Exhibit 3 | Lab report | X |
| State's Exhibit 4 | Videotape | X |
| State's Exhibit 6 | Waiver of Rights form | X |
| State's Exhibit 7 | Photo lineup | X |
| State's Exhibit 7A | Back page of lineup | X |
| | (Not back with jury) | |
| Deft.'s Exhibit 1 | Supplemental report | X |
| **Sentencing** | | |
| State's Exhibit A | Prior convictions | X |

IN THE CIRCUIT COURT OF RUSSELL COUNTY
STATE OF ALABAMA

|  |  |  |
|---|---|---|
| JAMES W. JACKSON,<br>Appellant, | )<br>) |  |
|  | ) | CRIMINAL ACTION |
| v. | ) | CASE NO.  CC-03-378 |
|  | ) |  |
| STATE OF ALABAMA<br>Appellee. | )<br>) |  |

## CERTIFICATE OF INCAPABILITY OF PHOTOCOPYING EXHIBIT

I, Kathy Coulter, Clerk of the Circuit Court of Russell County, Alabama, do
hereby certify that State's Exhibit 1, 1A, 2 and 4 in the above-styled cause are incapable
of being photocopied, and will upon request, be mailed or under separate cover to the
Court of Criminal Appeals of Alabama.

Witness my hand and the Seal of the Circuit Court of Russell County, Alabama,
this the 13th day of February, 2003.

*Kathy Coulter /rw*

CLERK OF THE CIRCUIT COURT
RUSSELL COUNTY, ALABAMA

000064



### ALABAMA
# DEPARTMENT OF FORENSIC SCIENCES

991 WIRE ROAD
AUBURN, ALABAMA 36830
(334) 887-7001

P.O. BOX 3510
AUBURN, ALABAMA 36831-3510
FACSIMILE (334) 887-7531

## CERTIFICATE OF ANALYSIS

SERGEANT TOM FRANKLIN
RUSSELL COUNTY S.O.
305 PRENTISS DR.
PHENIX CITY, AL 36867

CASE NUMBER: 03AB00232                SUBMITTING AGENCY CASE NUMBER: SL0203552

| SUSPECT(S) | RACE | SEX | BIRTH DATE | STATUS |
|---|---|---|---|---|
| James W Jackson | B | M | 04/26/1961 | Adult |

SERVICE REQUESTED:  Drug Analyses

CHAIN OF CUSTODY:

| RELINQUISHED BY | RECEIVED BY | DATE | TIME |
|---|---|---|---|
| Tommy Pell | Sherwin K Boswell | 11/15/2002 | 0911 |

DESCRIPTION OF EVIDENCE:

1. One sealed plastic bag containing one zip lock bag holding compressed substance.

RESULTS OF ANALYSES:                DATE(S) OF ANALYSES: 04/18/2003 - 04/18/2003

1. Laboratory analyses of the compressed substance revealed the presence of cocaine (base). Weight in grams - 0.17 Cocaine is a Schedule II controlled substnace.

Sworn to and subscribed before me this the _9th_ Day of _May_ 20 _03_ as true and correct.

_Sherwin K Boswell_

Sherwin K Boswell
FORENSIC SCIENTIST IV
Analyst

_H. Lee W. Ramey_

Notary Public



# RUSSELL COUNTY SHERIFF'S DEPARTMENT
## ADULT ADVICE OF RIGHTS

CASE #: _SL0204552_

DATE: _01/09/03_

TIME: _1120 Hours_

LOCATION: _Russell Co. Sheriffs Office_

Before we ask you any questions, you must understand your rights.

You have the right to remain silent.

Anything you say can be used against you in court.

You have the right to talk to a lawyer for advice before we ask you any questions, and have him with you during questioning.

If you cannot afford a lawyer, one will be appointed for you before questioning, if you wish.

If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.

## WAIVER OF RIGHTS

I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I'm doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me. Subject further states that (he/she) (can/cannot read) and (write) (completed the _12th_ grade at _Mt. Olive School_ school in _Russell Co. Alabama_) and/but understands his/her rights after having been read or explained to him/her by _____

SIGNED _____

WITNESS: _____

WITNESS: _____

TIME: _1120 Hours_

RUSSELL COUNTY
SHERIFF'S DEPARTMENT
# BUREAU OF INVESTIGATION









FILE NUMBER _____ 5w0204552 _____     DATE ___ 9/16/02 ___

EVIDENCE NUMBER _____     AGENT ___ T. Franklin ___

EXHIBIT NO. _____

## PHOTO IDENTIFICATION PROCEDURE

1. A MINIMUM OF SIX PHOTOS MUST BE USED: The source of all photos should be known, i.e., supplied by law enforcement agency files.

2. SIMILARITY OF PHOTOS; COVERING OF SUGGESTIVE MARKINGS: All photos should be of identified persons of similar physical make-up, sex, hair, race, age, weight or build, etc. There should be nothing in the photos that would make the suspect's photo stand out. If mugshots are used, any identifying markings must be covered.

3. All photos used in each photo display should be affixed and sealed into folder in each of the apertures numbered one through six. The photo display folder should be closed and sealed.

4. SHOWING PHOTO DISPLAY: Before conducting the photo line-up, the following should be read to each witness:

    "In a moment I am going to show you a group of photographs. This group of photographs may or may not contain a picture of the person being investigated. Keep in mind that hair styles, beards, and moustaches may be easily changed. Also, photographs may not always depict the true complexion of a person—it may be lighter or darker than shown in the photo. Pay no attention to any markings or numbers that may appear on the photos or any other differences in the type or style of the photographs. When you have looked at all the photos, tell me whether you see any person known to you. Do not tell other witnesses that you have or have not identified anyone".

    Where there is more than one witness, each should view photos SEPARATELY, NOT in each other's presence.

    Witnesses should not be allowed to confer with one another about their identification either before, during or after the viewing.

    Witness should not be told whether he or she has picked a "right" or "wrong" photo, nor should he or she be told whether another witness did or did not identify a photo.

    Under no circumstances should a witness be given any assistance in picking out photos, nor should he or she be asked questions relative to the photos that might in any manner suggest who the suspect is or is not.

    The witness should indicate whether an identification can be made or not. If a positive or tentative identification is made the designated photo number should be indicated in the appropriate block. If a tentative identification is made, the reason for the similarity should be briefly explained in the remarks section. Each person viewing the photo spread is required to sign in the signature block. The remarks section should be used to record any relevant information and if necessary the name(s) of additional officers present during a particular photo viewing.

5. RECORDING THE IDENTIFICATION PROCESS: The agent conducting the photo identification must document the procedure in a REPORT OF INVESTIGATION including but not limited to:

    a. All persons present during the viewing;
    b. The sources of the photos;
    c. The identity of the person who prepared the folder;
    d. Witness comments.

6. The photo identification folder containing all photos and/or initialed photocopies used in the photo line-up must be processed as evidence after the viewing.



Narrative:
CASE NO: SL0204552

Evidence:1) One evidence bag containing one piece of crack cocaine.
Approximate weight .4 grams with a street value $40.00.

On Monday 09/16/02 Investigators from the Russell County Sheriff's
Department came into possession of the above listed evidence. The
evidence was properly marked, packaged and sealed for transportation to
the state crime lab for analysis.

..................THIS CASE REMAINS UNDER INVESTIGATION...............

On Monday 09/16/02 Sgt. Franklin received information from a
confidential informant that he/she could purchase a quantity of crack
cocaine from #7 Masons Road. The informant stated that there were
several individuals selling cocaine from the residence, the main of
which the informant identified in a photographic lineup as who he knew
as "blackjack". "Blackjack"'s real name is James Willie Jackson.

On Monday 09/16/02 Sgt. Johnson searched the informant and no contraband
was found. Sgt. Johnson then fitted the informant with a electronic
monitoring device, and Sgt. Franklin gave the informant $20.00 of
previously recorded Russell County Sheriff's Department funds. The
informant's vehicle was searched by Sgt. Franklin and no contraband was
found.

The informant was then followed by the following teams to #7 Masons
Road: Team one-Franklin and Johnson and team two-Taylor, Goodrich and
Pell. The informant then met with Jackson in the front yard and called
 h by his nickname "Blackjack". Jackson was wearing a red jersey, and a
pair of black pants. The informant told Jackson that he wanted a
"twenty", referring to crack cocaine. Jackson reached out for the money
and the informant told Jackson he wanted to see it first, again
referring to the cocaine. Jackson then walked over to another black male
wearing red sweatpants and no shirt, where Jackson retrieved the
cocaine. Jackson then walked back to the informants car where Jackson
gave the informant one piece of crack cocaine in return for the $20.00
of Russell County funds.

The informant then left the area and met with the investigations at a
location where the cocaine was turned over to Sgt. Franklin. Sgt.
Franklin obtained a taped statement concerning the transaction from the
informant. Warrants to be obtained for James Willie Jackson at a later
date.

This case remains under investigation.

DEFENDANT'S
EXHIBIT
1

STATE OF ALABAMA                    )

RUSSELL COUNTY                      )


I, Kathy Coulter, Clerk to the Circuit Court and Ex-officio Clerk of

the District Court of Russell County, Alabama, do hereby certify that

the following is a true and correct copy of the original Docket Entry,

Explanation of Rights and Plea of Guilt and Plea Recommendation in

the cause of STATE OF ALABAMA VS.  JAMES WILLIE JACKSON,

CC-1988-419, as the same appears of record and on file in my office in

Phenix City, Alabama.

Witness my hand and the Seal of the Circuit Court of Russell

County, Alabama, this the 28th day of August, 2003.


_____

CLERK OF THE CIRCUIT COURT AND EX-OFFICIO
CLERK OF THE DISTRICT COURT
RUSSELL COUNTY, ALABAMA





ALABAMA JUDICIAL INFORMATION CENTER

CASE ACTION SUMMARY
CIRCUIT   CRIMINAL                          CASE CC 88 000419.00

IN THE CIRCUIT COURT OF RUSSELL COUNTY                    JUDGE: WTJ

STATE OF ALABAMA          —          VS          JACKSON JAMES WILLIE
CASE CC 88 000419 00                              RT 6 BOX 591-A
                                                  PHENIX CITY AL 36867

| | |
|---|---|
| CHARGE  ESCAPE 3RD      TYPE: F | DATE WAR/CAP ISSUED: __/__/__ |
| LITERAL: ESCAPE 3RD DEGREE | DATE ARRESTED: 09/19/88 |
| DEFENDANT STATUS: JAIL | DATE HEARING: __/__/__ |
| DEFENSE ATTORNEY: *Kerry Curtis (appld)* | DATE RELEASED: __/__/__ |
| PROSECUTOR:   DAVIS, KENNETH E | DATE ARRAIGNED: 09/26/88 |
| OFFICER:            COUNSEL: | DATE TRIAL: 10/17/88 |
| DATE OF BIRTH:   04/25/61 | BOND/TYPE SURETIES: |
| RACE:  B          SEX:  M | BOND AMOUNT:      $5000   .00 |
| ALIAS NAME:  _____ | DATE INDICTED: 09/17/88 |
| AGENCY: | DATE FILED: 09/19/88 |
| DC CASE NUMBER   DC 88 000316 00 | WORTHLESS CHECK NO:  _____ |
| GRAND JURY NUMBER:  902 | COURT REPORTER:  _____ |
| ADDITIONAL INFORMATION AND REMARKS: | SID NO: |

| DATE | ACTIONS, JUDGMENTS, CASE NOTES |
|---|---|
| Sept. 26  19 88 | Defendant *James W. Jackson* before the Court, and having made known to the Court that he is financially unable to employ counsel to represent him in this case, the Court hereby appoints *Hon. C. Kerry Curtis* experienced and competent attorney, practicing at the bar of Russell County, Alabama, to represent and defend said defendant in this case. |
| | *Wayne T. Johnson* (Judge Presiding) |
| 9-26-88 | Comes now the defendant, in the presence of counsel, who waives in writing the reading of the indictment against him, acknowledging a copy of the same, and enters a plea of not guilty. |
| | *Wayne T. Johnson* Circuit Judge |

State of Alabama
Unified Judicial System

# EXPLANATION OF RIGHTS AND
# PLEA OF GUILT
(AFTER INDICTMENT)

Case Number:

CC 88 419
     YR    Number

IN THE _____ COURT OF _____ COUNTY
STATE OF ALABAMA                                    vs.    JAMES W. JACKSON

TO THE ABOVE NAMED DEFENDANT

This is to inform you of your rights as a defendant in this criminal case. Under the indictment returned against you in this case by the Grand Jury of this county, you are charged with the crime of ___ESCAPE THIRD_____ which is a Class ___C___ Felony. In the event you plead guilty to said crime, or if the jury finds that you are guilty of said crime, the law provides for punishment by imprisonment in the penitentiary for not less than ___1 yr___ nor more than ___10 yrs___ for such offense and by imposition of a fine not to exceed $ ___5,000___ Provided further that at a sentencing hearing should the State of Alabama prove to this Court that prior to committing this offense, you have previously been convicted of any one (1) felony, then the said imprisonment term must be for not less than ___2 yr___ nor more than ___20 yrs___, and a fine not to exceed $ ___10,000___. Likewise, if the State proves you have been so convicted of any two (2) prior felonies, then the said imprisonment term must be for not less than _____ nor more than _____ and a fine not to exceed $ _____. And, if the State proves that you have been so convicted of any three (3) prior felonies, then the said imprisonment must be for not less than _____ nor more than _____, and a fine not to exceed $ _____.

Further, you may be ordered to pay restitution in an amount determined by the court, for the use and benefit of the victim of your criminal offense.

In accordance with §15-23-17, Code of Alabama 1975, you shall be ordered to pay a victim compensation assessment of not less than $25.00 nor more than $10,000.

IN ENTERING A PLEA OF GUILTY IN THIS COURT, YOU ARE WAIVING A TRIAL BY JURY AND THE FOLLOWING RIGHTS TO WHICH YOU ARE ENTITLED IN THE EVENT OF A JURY TRIAL.

Under the Constitutions of the United States and of the State of Alabama you have a right or privilege not to be compelled to give evidence against yourself. In the trial of your case before the jury, you have the right to take the witness stand and to testify on your own behalf, if you so desire, but no one can require you to so testify. If you testify, you can be cross-examined by the state. If you do not testify, no one can even comment to the jury as to your failure to testify. You have the right to remain absolutely silent, but anything that you voluntarily say, with knowledge of your rights, may be used against you. Your conversations with your attorney are confidential and cannot, and will not, be disclosed by your attorney.

You have the right to stand on your plea of not guilty, and the right to a public trial before a duly selected jury. In a jury trial, the jury would determine whether you are guilty or whether you are innocent, based upon the evidence in the case.

In the trial of your case, your attorney could subpoena witnesses on your behalf, make legal objections to matters that he felt were objectionable, cross-examine the witnesses of the state, examine your own witnesses, and argue the matter before the jury. He would be bound to do everything that he could honorably and reasonably do to see that you obtain a fair and impartial trial. You have the right to have witnesses subpoenaed to testify as to pertinent facts in your favor.

In the trial of your case, you will come into court clothed with a presumption that you are not guilty and this presumption of innocence will follow you throughout the course of the trial until the evidence produced by the state convinces each juror beyond a reasonable doubt of your guilt. The burden of proof is upon the State of Alabama to convince each and every juror, from the evidence in the case, that you are guilty beyond a reasonable doubt before the jury would be authorized to find you guilty. If the state does not meet such burden of proof, it will be the jury's duty to find you not guilty. You will have no burden of proof whatsoever in your trial.

To the charges set forth in the indictment you have the right to enter a plea of guilty, not guilty, not guilty by reason of insanity or any other special plea. You will enter a plea of guilty only if you are actually guilty of said crime and if you do not desire a jury trial. IF YOU PLEAD GUILTY THERE WILL BE NO JURY TRIAL, AS HAS BEEN HERETOFORE EXPLAINED TO YOU.

Your attorney will go over these rights with you, but if you have any questions about any of them, please ask the undersigned judge and he will make further explanation thereof to you.

DATE  10-25-88                                    JUDGE _[signature]_

Comes the defendant in the above-styled cause and states to the court that he has read, or has had read to him, the matters and things hereinabove set forth; that his attorney has thoroughly gone over said matters and things with him and that he, the defendant, thoroughly understands them; that he is not under the influence of any drugs, medicines or alcoholic beverages and has not been threatened or abused or offered any inducement or reward to get him to plead guilty. Defendant further states to the court that he is guilty as charged, in this case, and desires to plead guilty.

DATE  10/25/88                                    DEFENDANT _[signature] James Jackson_

Comes the attorney for the above-styled defendant and certifies that the above and foregoing rights were read by the defendant in my presence, or were read to him by me, that I discussed such rights with the defendant, in detail, and that a written copy of the above rights was given to the defendant or his attorney. Having gone over his rights with the defendant, in my judgement, the defendant understands his rights.

DATE  10/25/88                                    ATTORNEY _[signature]_

Filed in Office This Date:  10-25-88        Clerk _[signature]_        By _____

COURT RECORD (White)    DEFENDANT (Canary)    ATTORNEY (Pink)



PLEA RECOMMENDATION AND RESTITUTION AGREEMENT                88 419

STATE OF ALABAMA                          )    IN THE CIRCUIT COURT OF
                                          )
)       vs.                               )    RUSSELL COUNTY, ALABAMA
                                          )
James (a) Jackson.                        )
                    Defendant             )

Comes now the State of Alabama, by and through its District Attorney, and shows unto this Court that the defendant has been indicted by the Grand Jury of Russell County, Alabama, for the following offense(s):

CASE NO.          OFFENSE CHARGED

1. CC-88-419      Escape Third

2.

3.

4.

The State of Alabama, by and through its District Attorney, after considering all the facts and law pertaining to the charge(s) against the defendant, recommends to this Court that should the defendant desire to plead guilty, that the following disposition of the case(s) be ordered by this Court:

CASE NO.          OFFENSE TO BE PLED                 SENTENCE

1. CC-88-419      Escape 3rd                         2 years + 100 VCE

2.

3.

4.

It is agreed to by the defendant, his attorney of record, and the District Attorney that restitution in the amount of $ None is due the victim(s) _____ whose address(es) is/are _____ for

_____

_____

(damages, etc.)

It is further agreed to by the defendant, his attorney of record, and the District Attorney that should the above recommended disposition of the case(s) against the defendant be approved by the Court, that the defendant will enter a plea of guilty.

DONE this the 25th day of October, 19 88.



_____                    _____
        Defendant                                District Attorney

_____                    THE STATE WILL NOT MAKE A RECOMMENDATION TO
  Attorney of Record for Defendant          THE COURT IN ANY CASE IN WHICH THIS PLEA
                                            AGREEMENT HAS NOT BEEN RETURNED, SIGNED BY THE
                                            DEFENDANT, PRIOR TO THE FIRST DAY OF TRIALS
                                            THE WEEK IN WHICH THIS CASE APPEARS ON THE
                                            DOCKET



88-419   Willie James Jackson

WTJ   10-25-88 - After Jury Struck

P. G. as charged.

( 2 years and $100.00 to CVCF)

Sen:   11-10-88

STATE OF ALABAMA                    )

RUSSELL COUNTY                     )


I, Kathy Coulter, Clerk to the Circuit Court and Ex-officio Clerk of

the District Court of Russell County, Alabama, do hereby certify that

the following is a true and correct copy of the original Docket Entry,

Judgment and Sentence in the cause of STATE OF ALABAMA VS.

JAMES WILLIE JACKSON, CC-1985-31, as the same appears of

record and on file in my office in Phenix City, Alabama.

Witness my hand and the Seal of the Circuit Court of Russell

County, Alabama, this the 28th day of August, 2003.



_Kathy Coulter_
_____
CLERK OF THE CIRCUIT COURT AND EX-OFFICIO
CLERK OF THE DISTRICT COURT
RUSSELL COUNTY, ALABAMA



CC0075

| State of Alabama<br>Unified Judicial System<br>Adm. Office of Courts | **CASE ACTION SUMMARY**<br>**(CRIMINAL)** | Case Number |
|---|---|---|
| Form C-6  Rev 8/77 | | CC 85 31<br>ID   YR   Number |

IN THE ___ CIRCUIT ___ COURT OF ___ RUSSELL ___ COUNTY

| STATE OF ALABAMA<br>vs. | Date of Birth<br>4-26-61 | Distinguishing Features: |
|---|---|---|

SSAN   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

| Sex | Race | Eyes | Hair | Height | Weight |
|---|---|---|---|---|---|

| Defendant<br><br>JACKSON, JAMES WILLIE | Address<br><br>Rt. 6 Box 591-A<br>Ft. Mitchell, Al.<br>Zip |
|---|---|

| Date War/Cap. Issued | Date Committed to Jail<br>9-2-84 |
|---|---|

| Employer | Address |
|---|---|

| Date Initial Appearance | Date Released on Bond<br>9-15-84 |
|---|---|

| Case Number<br>CC-85-31 | ☒ Jury<br>☐ Non-Jury | Date Arrested<br>9-2-84 | Incarcerated<br>☒ On Bond |
|---|---|---|---|

| Bond Amount<br>10,000.00 | Bond Type & Sureties<br>PRIVATE |
|---|---|

| Charges  ☐Msd. ☒Fel. ☐App. | Prosecutor<br>KENNETH E. DAVIS | Judge ID |
|---|---|---|

Dt. Prelim. Hearing

| Attorney<br><br>*Kerry Curtis* | Dt. Y.O. Applic. | Dt. Probation Applic. |
|---|---|---|

ATTEMPT TO COMMIT MURDER

| Grand Jury No.<br>106 | Dt. Indictment<br>1-17-85 |
|---|---|

| Dt. Arraignment | Plea |
|---|---|

| Arresting Officer: | ☐ Municipal  ☐ State<br>☐ County  ☐ Conservation | Dt. Trial | Dt. Sentenced |
|---|---|---|---|

| Complainant: | Address | Dt. Appeal Filed | Appeal Bond Amt. |
|---|---|---|---|

| Additional Information And Remarks: | Disposition |
|---|---|

DC-84-893

*Minute Book 7*

| DATE | ACTIONS, JUDGMENTS, CASE NOTES |
|---|---|
| 12-11-85 | Alias writ. Preliminary forfeiture. |
| 2-12-85<br>2-14-85 | Alias Writ and Preliminary forfeiture issued.<br>Alias Writ executed. |
| 2-14-85 | Preliminary forfeitures returned no service. |
| 2-15-85 | *Alias Writ and Prel. Forf. set aside* |

FEB. 1 5 1985  19 ____ Defendant being before the Court and having made known to the Court that he is financially unable to employ counsel to represent him in this cause, the Court hereby appoints *Kerry Curtis* an experienced and competent attorney practicing at the bar of Russell County, Alabama, to represent and defend said defendant in this cause.

Circuit Judge

FEB. 1 5 1985  19 ____ Defendant arraigned on the indictment in this cause and pleads not guilty to the offense charged therein.

Circuit Judge

Court Record - White

| Date | ACTIONS, JUDGMENTS, CASE NOTES |
|------|-------------------------------|
| 2-21-85 | Motion for Order compelling State to Elect Which Indictment it will Proceed with Against Defendant. |

February 28 19 85 The Defendant James Willie Jackson together with his attorney, being before the Court in open court, and having been advised by the COURT of the charge or offense embraced in the indictment, and having been further advised by the Court of the punishment for said offense provided by law, the said Defendant James Willie Jackson with the consent and advice of his attorney, withdraws his plea of not guilty and pleads guilty to the offense of attempted assault 1st degree as charged in Count II of the amended indictment. Whereupon it is ordered by the Court that Sentencing on the plea of guilty is hereby set for 9:00 A.M. on the 28th day of March 19 85. Same bond will hold defendant until sentencing. Defendant and State waive the right to a sentence hearing.

_(signature)_
Judge Presiding

Application for Probation and Hearing on same ordered to be held at 9:00 A.M. on the 28 day of March , 19 85

_(signature)_
Judge Presiding

| 3-1-85 | Order that the sentencing be reset for 10:00 A.M. on March 29, 1985. |
| 3-7-85 | Motion filed on February 21, 1985 in file. No order. |

3-29-85 In presence of counsel, upon the defendant's plea of guilty to the offense of attempted assault 1st degree, Count II the Court adjudges him guilty of attempted assault 1st degree and fixes his punishment at 3 years in the state penitentiary. Application for probation is granted for 3 years on the conditions that defendant continue to be employed, reimburse the State for attorney's fees, obey instructions of probation officer, perform 10 days public service work, and serve 6 weekends in the Russell County jail. Count I is ordered nol prossed. Costs are assessed to defendant. No restitution due.

_(signature)_
Circuit Judge

This defendant may be classified as a Class I prisoner, pursuant to Act No. 80-446. Date of offense _____


Circuit Judge

| 5-29-85 | Request for Attorney fee. |

| State of Alabama Unified Judicial System | **CASE ACTION SUMMARY** CONTINUATION | Case Number |
|---|---|---|
| Form C-7 Rev 2/70 | | CC 85 31<br>ID   YR   Number |

Style:   JAMES WILLIE JACKOSN                                    Page Number _____ of _____ Pages

| DATE | ACTIONS, JUDGMENTS, CASE NOTES |
|---|---|
| 8-30-85 | Order that the defendant is declared delinquent and the defendant's period of probation is tolled and stopped and a writ of arrest ordered. |
| 8-30-85 | Alias Writ issued. |
| 4-6-88 | Alias Writ executed. |
| 4-8-88 | Order setting hearing on charges of delinquency on May 4, 1988 at 9:00 A.M. Hon. Kerry Curtis is appointed to represent the defendant in these proceeding |
| 5-4-88 | Order that East Alabama Mental Health Center is requested to make an evaluation of the defendant's mental condition at the present time and for the period of time between March 29, 1985 and the present and send a report of such evaluation to this Court. The Sheriff of Russell County shall transport the defendant at such time that is agreeable to E.A.M.H. Center and return him to the Jail at the completion of the evaluation. |
| 8-8-88 | Order that a hearing be held on August 24, 1988 at 2:30 P.M |
| 10-3-88 | Order setting hearing for October 31, 1988 at 9:00 A.M. |

| State of Alabama Unified Judicial System Form ARAP-1C    8/91 | REPORTER'S TRANSCRIPT ORDER -- CRIMINAL See Rules 10(c) and 11(b) of the Alabama Rules of Appellate Procedure (A.R. App.P.) | Criminal Appeal Number COPY |

**COMPLETED BY COUNSEL FOR THE APPELLANT OR BY THE APPELLANT IF NOT REPRESENTED AND FILED WITH THE WRITTEN NOTICE OF**
A. ...AL OR FILED WITHIN 7 DAYS AFTER ORAL NOTICE OF APPEAL IS GIVEN.

☒ CIRCUIT COURT  ☐ DISTRICT COURT  ☐ JUVENILE COURT OF _RUSSELL_ COUNTY

_JAMES JACKSON_ , Appellant

v. ☒ STATE OF ALABAMA  ☐ MUNICIPALITY OF _____

| Case Number _CC-03-378_ | Date of Judgment/Sentence/Order _AUG. 21, 2003 / SEPT. 9, 2003_ |
| Date of Notice of Appeal Oral: _SEPT. 9, 2003_    Written: _SEPT. 9, 2003_ | Indigent Status Granted: ☒ Yes  ☐ No |

**PART 1. TO BE SIGNED IF THE APPEAL WILL NOT HAVE A COURT REPORTER'S TRANSCRIPT:**
I CERTIFY THAT NO REPORTER'S TRANSCRIPT IS EXPECTED AND THAT THE RECORD ON APPEAL SHALL CONSIST OF THE CLERK'S RECORD ONLY. IF THE APPEAL IS FROM DISTRICT COURT OR JUVENILE COURT, I ALSO CERTIFY (1) THAT A STIPULATION OF FACTS WILL BE INCLUDED IN THE CLERK'S RECORD AND THAT THE APPELLANT WAIVES HIS RIGHT TO A JURY TRIAL IF SO ENTITLED; OR (2) THAT THE PARTIES HAVE STIPULATED THAT ONLY QUESTIONS OF LAW ARE INVOLVED AND THAT THE QUESTIONS WILL BE CERTIFIED BY THE JUVENILE/DISTRICT COURT FOR INCLUSION IN THE CLERK'S RECORD (SEE RULE 28(A)(1), ALABAMA RULES OF JUVENILE PROCEDURE, AND §12-12-72, *CODE OF ALABAMA 1975*).

Signature _____  Date _____  Print or Type Name _____

**PART 2. DESIGNATION OF PROCEEDINGS TO BE TRANSCRIBED.** Request is hereby made to the court reporter(s) indicated below for a transcript of the following proceedings in the above referenced case (see Rule 10(c)(2), Alabama Rules of Appellate Procedure (A.R.App.P.)):

**MARK PROCEEDINGS REQUESTED:**                                           **COURT REPORTER(S)**

A. ☒ TRIAL PROCEEDINGS - Although this designation will include the judgment and sentence proceedings, a transcript of the organization of the jury and arguments of counsel must be designated separately.    _LINDA WILSON C/O JUDGE GREENE_

B. ☒ ORGANIZATION OF THE JURY - This designation will include voir dire examination and challenges for cause. Note that in noncapital cases the voir dire of the jury will not be recorded unless the trial judge so directs. (See Rule 19.4, ARCrP.)    _LINDA WILSON C/O JUDGE GREENE_

C. ☒ ARGUMENTS OF COUNSEL - Note that in noncapital cases the arguments of counsel will not be recorded unless the trial judge so directs. (See Rule 19.4, ARCrP )    _LINDA WILSON C/O JUDGE GREENE_

IN ADDITION TO ANY PROCEEDINGS DESIGNATED ABOVE, SPECIAL REQUEST IS HEREBY MADE TO INCLUDE THE FOLLOWING PROCEEDINGS IN THE REPORTER'S TRANSCRIPT PORTION OF THE RECORD ON APPEAL. (ATTACH ADDITIONAL PAGES IF NECESSARY):

| ADDITIONAL PROCEEDINGS REQUESTED | DATE | COURT REPORTER(S) |
|---|---|---|
| D. _CLOSING ARGUMENTS_ | _AUG. 21, 2003_ | _LINDA WILSON C/O JUDGE GREENE_ |
| E. _____ | _____ | _____ |
| F. _____ | _____ | _____ |
| G. _____ | _____ | _____ |

**IMPORTANT NOTICE:** The court reporter who reported the proceedings for which a transcript is requested must be identified on this form to be effective. Additionally, it is important to note that the appellant may not be permitted to raise any issue on appeal relating to any proceedings in the case that are not specifically designated on this form for inclusion in the reporter's transcript. A general designation such as "all proceedings" is not sufficient. (See Rule 10(c)(2), A.R.App.P )

**PART 3. MUST BE SIGNED IF THE APPEAL WILL HAVE A COURT REPORTER'S TRANSCRIPT:**
I CERTIFY THAT I HAVE DISTRIBUTED THIS FORM AS SET OUT BELOW. I ALSO CERTIFY (1) THAT I HAVE MADE SATISFACTORY FINANCIAL ARRANGEMENTS WITH EACH COURT REPORTER LISTED ABOVE FOR PREPARING HIS OR HER PORTION OF THE REPORTER'S TRANSCRIPT HEREIN REQUESTED; OR (2) THAT THE APPELLANT PROCEEDED AT TRIAL AS AN INDIGENT AND THAT STATUS HAS NOT BEEN REVOKED; OR, (3) THAT THE APPELLANT HAS BEEN GIVEN PERMISSION TO PROCEED ON APPEAL IN FORMA PAUPERIS.

Signature _____   Date _SEPT. 9, 2003_   Print or Type Name _JEREMY W. ARMSTRONG_

**DISTRIBUTION:** Original filed with Clerk of Trial Court and copies mailed to: (1) Clerk of the Court of Criminal Appeals, (2) the District Attorney, (3) the Attorney General or the municipal prosecutor in lieu of the District Attorney and the Attorney General if the appeal is from a municipal conviction, and (4) to each Court Reporter who reported proceedings designated for inclusion in the reporter's transcript.

### INDEX TO REPORTER'S TRANSCRIPT

Reporter's Transcript Order                              1
Index                                                   2
Caption (August 21, 2003)                               3
Court's Introduction of Case to Jury Venire          4-6
Motions                                              6-10
Batson Motion                                       10-12
Court's Opening Instructions to Jury                12-18
Opening Statement by Mr. Landreau                   18-22
Opening Statement by Mr. Armstrong                  22-24

| Witness | Direct | Cross | Redirect | Recross |
|---------|--------|-------|----------|---------|
| For the State: | | | | |
| Tommy Pell | 24-30 | 30-31 | | |
| Steve Johnson | 32-38 | 38-43 | | |
| Jason Hathcock | 44-58 | 58-71 | 71-72 | |
| Sherwin Boswell | 73-81 | 81-82 | | |
| Tom Franklin | 83-101 | 101-121 | 121-124 | |

Motion                                            125-128
Objections to Closing Arguments                   129-130
Jury Charge                                       130-140
Question by Jury                                  140-141
Verdict                                           141-144
Sentencing                                        145-148
Reporter's Certificate                                149

STATE OF ALABAMA

IN THE CIRCUIT COURT FOR THE COUNTY OF RUSSELL

TWENTY-SIXTH JUDICIAL CIRCUIT

CRIMINAL

STATE OF ALABAMA

    v.                        Case No. CC 03-378

JAMES WILLIE JACKSON,

        Defendant.

_____/

REPORTER'S OFFICIAL TRANSCRIPT

Before:

        Honorable George R. Greene and Jury
            Phenix City, Alabama - August 21, 2003

APPEARANCES:

        For the State:
            Buster Landreau, Esq.
            Chief Deputy District Attorney

        For the Defendant:
            Jeremy W. Armstrong, Esq.
            Phenix City, Alabama

Linda S. Wilson
Official Court Reporter

4

1          (Jury venire present.)

2          THE COURT:  Welcome, ladies and gentlemen of

3    the jury.  Thank you for being here this morning

4    and being prompt, and we'll proceed with the call

5    of the case.

6          Which case would the State call for trial at

7    this time?

8          MR. LANDREAU:  State of Alabama versus James

9    W. Jackson, Case Number CC 2003-378, on a charge

10   of distribution of cocaine.  State is ready to

11   proceed.

12         THE COURT:  Is the Defendant ready?

13         MR. ARMSTRONG:  Defense is ready, Your

14   Honor.

15         THE COURT:  Ladies and gentlemen, the State

16   has called for trial the case styled as the State

17   of Alabama versus James W. Jackson.  This case

18   comes to the Court by way of an indictment

19   returned by a grand jury impaneled here in

20   Russell County.  The indictment is not evidence

21   in the case and may not be considered by you as

22   evidence.  It is merely the written means by

23   which the case is brought to the Court for

24   trial.

25         The indictment in this case alleges that

1    James W. Jackson did unlawfully sell, furnish,

2    give away, manufacture, deliver or distribute

3    cocaine, a controlled substance, in violation of

4    Section 13A-12-211 of the Code of Alabama of

5    1975, as amended, and against the peace and

6    dignity of the State of Alabama.  To the charge

7    of unlawful distribution of a controlled

8    substance, the Defendant has entered a plea of

9    not guilty.  The Defendant is presumed to be

10   innocent until such time as proven guilty beyond

11   all reasonable doubt by the State of Alabama.

12       Would the jurors please stand and raise your

13   right hands.

14            (Jury venire sworn.)

15            (Voir dire of jury venire.)

16   THE COURT:  State have anything further?

17   MR. LANDREAU:  State's satisfied, Your

18   Honor.

19   THE COURT:  Defendant have anything

20   further?

21   MR. ARMSTRONG:  Defense is satisfied, Your

22   Honor.

23   THE COURT:  Ladies and gentlemen of the

24   jury, that would conclude the oral questioning

25   part of the trial.  We'll now recess for about 30

1    minutes.  You may remain in the courtroom or in

2    the hallway, and we'll call you back just as

3    quick as we can to proceed with the trial of the

4    case.  Thank you.

5              (Jury venire not present.)

6         MR. ARMSTRONG:  Judge, we've got a couple of

7    motions that I believe we need to take up on the

8    record before we get started with jury selection,

9    if you may.

10        THE COURT:  Okay.  What are the motions?

11        MR. ARMSTRONG:  I believe the first one the

12   State and I have already got worked out, but I've

13   got the original I filed yesterday, a Motion in

14   Limine.

15        THE COURT:  I haven't seen it.

16        MR. ARMSTRONG:  This is the original here,

17   Your Honor.  It's just dealing with prejudicial

18   statements that were made during the

19   interrogation of my client.  I believe it was

20   Sergeant Goodrich; am I right about that?

21        MR. LANDREAU:  Investigator Goodrich.

22        MR. ARMSTRONG:  Investigator Goodrich.  And

23   I believe the State of Alabama has agreed not to

24   play any portion of his interrogation, just the

25   portion that Tom Franklin, Investigator Tom

1    Franklin, did with my client.

2         THE COURT:  Okay.

3         MR. LANDREAU:  Judge, that's correct.  But

4    there's a further stipulation by the Defendant

5    that he was properly read his Miranda rights by

6    Investigator Goodrich prior to being questioned

7    by Sergeant Franklin.

8         MR. ARMSTRONG:  And we'd stipulate to that.

9    We have no problem with his Miranda rights being

10   read prior to interrogation.

11        THE COURT:  Very good.

12        MR. ARMSTRONG:  The next motion, Your Honor,

13   I filed back on July 25th was a motion to compel

14   disclosure of the confidential informant's

15   identity and the confidential informant's prior

16   criminal history, and I've got a copy of that

17   motion for you, Your Honor.  The State filed a

18   response.  They did give me the identity of the

19   confidential informant.  However, Judge, they

20   would not provide me with the criminal history of

21   the confidential informant.

22        Now, they cite several cases in their

23   response, and I have the State of Alabama's

24   response here, Judge, right there that they filed

25   a few days later citing about four cases.  Each

1   of those cases I would submit, Your Honor, are

2   distinguishable from the case at bar.  In each of

3   those cases, defense counsel asked for the

4   criminal history of all the State witnesses.  I'm

5   not asking for the criminal history of all the

6   State witnesses in the case, only of the

7   confidential informant as it relates to his

8   credibility.

9        Your Honor, if I could see my motion there

10  just for a minute.  Particularly, I'd like for

11  the Court to look at Ex parte Self, Your Honor,

12  which is 420 Southern Second 798.  Here the

13  Alabama Supreme Court said if the trial court

14  orders disclosure of a confidential informant in

15  a criminal case, the seeking party, which is us,

16  must be given the identity, address, and, quote,

17  any other information within the government's

18  possession and control which would aid the

19  accused.  And I believe the criminal history

20  would aid us in terms of attacking the

21  credibility of the confidential informant, which

22  this whole case is based on.

23       THE COURT:  I don't think you're entitled to

24  an entire criminal history.  I think you're

25  entitled only to any felony convictions and any

1    criminal history that may have been, in effect,

2    used as part of a plea bargain agreement or

3    dealing with that particular --

4        MR. LANDREAU:  Judge, that's already been --

5    what he was working off has already been

6    furnished.

7        MR. ARMSTRONG:  Yeah.  In terms of the

8    traffic case, they told me that.

9        THE COURT:  I would direct that if he has

10   any felony convictions, that that be furnished to

11   the Defendant.

12       MR. LANDREAU:  We've never run his criminal

13   history, so --

14       MR. ARMSTRONG:  You haven't run it?

15       MR. LANDREAU:  Huh-uh (negative response).

16       MR. ARMSTRONG:  Well, Judge, the problem is

17   there if they run it and they've got felony

18   convictions and then he gets on the stand and

19   denies it, I hadn't had time to get certified or

20   exemplified copies of those convictions because

21   they hadn't provided one till today, and I would

22   have a problem in terms of cross-examination

23   attacking his credibility.

24       MR. LANDREAU:  Judge, I'll have somebody run

25   it in a few minutes.  We'll find out if there is

1    a problem instead of speculating.

2        MR. ARMSTRONG:  That's fine with me.

3        THE COURT:  All right.  Strike a jury.

4    You've got 30 minutes.

5            (Counsel and the circuit court clerk

6             struck the jury without the presence

7             of the court reporter.)

8        (Jury venire not present.)

9        THE COURT:  There is a motion at this time?

10        MR. ARMSTRONG:  Yes, Your Honor.  I make a

11   Batson motion.  During jury selection, the State

12   of Alabama struck four of the five

13   African-American jurors that are on the jury

14   panel:  Juror Number 41, Juror Number 43, Juror

15   Number 53 and Juror Number 157.  I contend this

16   is in violation of Ex parte Branch, State of

17   Alabama's case.  They do not have sufficient

18   reasons to exercise their peremptory strikes to

19   strike each and every one of these jurors.  And,

20   again, that takes into account in terms of my

21   client not getting a fair and impartial jury that

22   is a fair representation of the community to

23   preside over this case or to hear this case, and

24   I just ask that the Court make the State of

25   Alabama give their reasons for each strike.

1    THE COURT:  28 jurors, and of the venire,

2    there were five blacks?

3    MR. ARMSTRONG:  Correct.

4    THE COURT:  And of 28, 23 whites.  And as

5    impaneled, there's one black juror?

6    MR. ARMSTRONG:  Correct.  And for the

7    record, my client is African-American, Your

8    Honor.

9    THE COURT:  Anything further?

10    MR. ARMSTRONG:  No, Your Honor.

11    THE COURT:  Court finds there is an

12    insufficient showing in the motion of

13    discrimination in the selection on the part of

14    the District Attorney's office and would deny

15    your motion.

16    MR. ARMSTRONG:  Just note my objection for

17    the record.

18    THE COURT:  If we'll bring the jurors in,

19    please.

20    (Jury venire present.)

21    (The following bench conference was

22    held outside the hearing of the jury

23    venire:)

24    MR. LANDREAU:  During the break, we ran the

25    history, criminal history, of the informant.  The

1   criminal history shows that he has no prior

2   felony offenses, and, therefore, there would be

3   nothing to disclose.

4        MR. ARMSTRONG:  And I'm just relying on what

5   the State of Alabama has told me that the

6   confidential informant, which is Mr. Hathaway --

7   Hathcock, has no prior felony criminal history.

8             (Jury impaneled.)

9             (Rest of jury venire dismissed.)

10            (Jury sworn.)

11       THE COURT:  Ladies and gentlemen, I had

12   previously read out the indictment to you and I

13   will not reread the indictment, but this case

14   comes to the Court by way of an indictment

15   returned by a grand jury impaneled here in

16   Russell County.  The indictment is not evidence

17   in the case and should not be considered by you

18   as evidence in the case.  It is merely the

19   written means by which the case is brought before

20   you for trial.  The indictment also serves the

21   purpose of notifying a defendant with

22   particularity of the offense with which he is

23   charged, and it sets out the elements of the

24   offense which must be proved by the State of

25   Alabama.

1       Before proceeding with the trial of the

2   case, it may be helpful to you and to the Court

3   that you understand the rules of procedure that

4   will be followed by you and by the Court in this

5   case.  This is a criminal case.  The procedure

6   for the trial of this case, as in criminal cases

7   of the same character, will be as follows:  Mr.

8   Landreau on behalf of the State would make an

9   opening statement outlining the State's case.

10  Mr. Armstrong will then make an opening statement

11  outlining the defense.  Each side in the opening

12  statement will be confined to an outline of the

13  case and a statement of what they expect the

14  evidence to show.  Their statements are intended

15  to inform you and the Court about the case, so

16  that we will both be familiar with the theories

17  and contentions of each side from the beginning.

18      Following these opening statements by the

19  attorneys, witnesses will first be called by the

20  State to testify.  After the State has presented

21  witnesses, the Defendant will then be permitted

22  to call witnesses to testify.  All witnesses will

23  be sworn and will testify under oath.  Their

24  testimony will be evidence.  There may be

25  exhibits offered which, if received by the Court,

1   will also be evidence.  It will be upon this

2   testimony and these exhibits, and only this

3   testimony and these exhibits, that you may

4   consider in arriving at your final verdict.

5       Following the close or presentation of

6   evidence in the case, the attorneys will again

7   have the privilege of addressing you, and we

8   refer to this as summation or closing argument.

9   The attorneys have the right to discuss the

10  evidence and all the reasonable inferences to be

11  drawn therefrom to help you arrive at a just and

12  true verdict.  Mr. Landreau on behalf of the

13  State will have the right to open the arguments,

14  followed by Mr. Armstrong on behalf of the

15  Defendant.  Mr. Landreau will then have the right

16  to a second closing argument, and this is

17  primarily based upon the fact that the burden of

18  proof is upon the State of Alabama to prove the

19  Defendant guilty as charged.

20      Following these closing arguments, it will

21  then be the duty of the Court to state to you the

22  applicable rules to guide you in arriving at your

23  verdict.  The case will then be submitted to you

24  for your deliberation.  Upon retiring to the jury

25  room to consider your verdict, you elect one of

1    your number as foreperson to moderate your

2    discussion and to sign and return the verdict

3    chosen by you to the Court.

4         During the course of the trial, I may rule

5    on objections by the attorneys as to the

6    admissibility of testimony or other evidence.   It

7    is the duty of an attorney to make such

8    objections to the offer of evidence which he

9    deems illegal or improper.   You must not concern

10   yourselves with the reasons for my rulings since

11   they are controlled and required by rules of

12   law.   You are not to speculate as to possible

13   answers to questions which I do not require to be

14   answered.   The overruling of an objection to a

15   question or to evidence being submitted is not

16   intended to indicate the weight to be given such

17   evidence by you.   This admitted evidence is to be

18   considered along with all the other evidence.

19   You are to disregard any evidence or offer of

20   evidence which the Court has excluded.

21        No juror should attempt to make an

22   individual investigation of the facts or of

23   anyplace testified about.   You are not authorized

24   to gather evidence on your own account or on

25   behalf of any of the parties to this case.   You

1   should not visit the scene of any alleged

2   incident or attempt to inspect or examine any

3   object or property unless that object or property

4   has been received into evidence and your

5   inspection is made either in the courtroom or in

6   the jury room.

7       As a juror, you have a legal right to take

8   notes during the trial, but the Court does not

9   generally recommend the taking of notes by

10  jurors.  If notes are taken by you, they should

11  be taken simply as an aid to your memory and for

12  your assistance in that regard, and they may not

13  be exhibited to the other jurors as an

14  authoritative record.

15      During the course of the trial, there may be

16  some words or phrases or terms used that need to

17  be defined.  The Court will give to you the

18  proper definition of these words or terms.

19  Sometimes a legal definition is different from

20  the definition that is customarily ascribed to

21  this word or series of words or phrases, and if

22  this should happen, you should accept the Court's

23  definition.  In no event should you seek any

24  definition of any word or phrase by consulting a

25  dictionary, encyclopedia or other book.  It would

1    be improper for you to do so.

2        Until this case is submitted to you for your

3    deliberations, you must not discuss the case with

4    anyone, nor permit anyone to discuss the case

5    with you or in your hearing.  You are to keep an

6    open mind, and you shall neither discuss nor

7    decide any issue in this case among yourselves

8    until the case is submitted to you for your

9    deliberations under the instructions of the

10   Court.  If members of your family or friends or

11   anyone else should ask you about the case, you

12   should tell them that you are under the Court's

13   instruction not to discuss it.  When the trial is

14   over and your verdict rendered, you will then be

15   released from this instruction and you will be

16   free to discuss the case and your experiences as

17   a juror, if you so desire.

18       The attorneys, parties and witnesses are not

19   permitted to talk to you during the trial.  Even

20   a discussion which has no relation to the case

21   might give a bad appearance.  If the participants

22   in the trial fail to greet you or converse with

23   you during the course of the trial, it would be

24   due to this rule.

25       That concludes the Court's opening statement

1    instructions.  We'll now begin with opening

2    statements by the attorneys, first by Mr.

3    Landreau, followed by Mr. Armstrong.  Mr.

4    Landreau?

5         MR. LANDREAU:  May it please the Court, Mr.

6    Armstrong.

7         MR. ARMSTRONG:  Your Honor, at this time

8    we'd like to invoke the Rule in this case.  I

9    don't think we've got that problem right now, but

10   I want to make sure the Rule's invoked.

11        THE COURT:  Okay.  We'll do so.  Thank you.

12        MR. LANDREAU:  Judge, we designate Sergeant

13   Franklin as our representative.

14        MR. ARMSTRONG:  No objection.

15        THE COURT:  Very good.

16        MR. LANDREAU:  Ladies and gentlemen, this

17   part of a trial is called opening statement.  You

18   notice it's not opening argument.  This is an

19   opportunity for myself on behalf of the State and

20   Mr. Armstrong on behalf of the Defendant to tell

21   you what we expect the evidence to be in this

22   case.  Now, we do that for the purpose of you're

23   going to be sitting here and you're going to hear

24   witnesses, and you need to know where in the

25   overall scheme of things, so to speak, a

particular witness and their testimony fits.
This is going to be the evidence in this case.

In September of last year, a young man by
the name of Jason Hathcock went to the Russell
County Sheriff's Office.  He had received a
traffic citation, a ticket, and he wanted some
help and he said, look, I can help y'all.  I can
buy drugs from a house down on Masons Road from a
guy named Blackjack.  Sergeant Franklin knew of a
person with that nickname, the Defendant, so he
put together what's called a photographic lineup,
six pictures of very similar people, and you'll
see the lineup, and he showed it to Hathcock and
said do you see the person you're calling
Blackjack in here, and Hathcock says, yes, this
is him, the Defendant.  So they move on.

On September 16th, around 5:30, 6:00 in the
afternoon, Mr. Hathcock goes to the sheriff's
department.  Now, the first thing they do --
they're getting ready to make this buy, and the
first thing the officers do is they search Mr.
Hathcock thoroughly.  That's a precaution
officers take in drug cases to make sure Hathcock
didn't bring any drugs with him.  It's a check
and balance, if you will, on how they handle

1    these cases.  Hathcock had no drugs.

2         They put a bug on him; in other words, a

3    microphone where they can record the

4    conversation.  They give Hathcock $20, a $20

5    bill, which they photocopy.  Then they go out and

6    they search Hathcock's car and make sure he

7    doesn't have any drugs in it.  Then they leave

8    the sheriff's office headed towards Masons Road.

9    Mr. Hathcock's in his car, Sergeant Franklin is

10   in his car behind him, so are some other

11   officers, and they keep him in sight the whole

12   way until he gets to Masons Road, Number 7 Masons

13   Road.  You'll hear the audiotape of what happened

14   there.

15        What occurred is Hathcock pulls up, the

16   Defendant comes out to his car, says what can I

17   get you.  Hathcock indicated he wanted $20 worth

18   of cocaine.  The Defendant said give me the

19   money.  Hathcock says, huh-uh, I want to see the

20   drugs first.  The Defendant turned -- now Mr.

21   Jackson was wearing a red shirt and some black

22   pants.  He turned and walked over to another man

23   in the yard, got something from him, came back,

24   handed Hathcock $20 worth of cocaine and took the

25   money.

1    Hathcock drove off.  He met Sergeant

2    Franklin, gave Sergeant Franklin what he had

3    bought from the Defendant, and you'll hear from

4    the state forensic chemist it is cocaine.  It is

5    an illegal substance.  Sergeant Franklin rode

6    by -- Hathcock said the guy who sold it to me has

7    on a red jersey and black pants.  Sergeant

8    Franklin rides by Number 7 Masons Road,

9    recognizes the Defendant who's still standing out

10   in the yard wearing a red shirt, black pants.

11       Afterwards, Sergeant Franklin interviewed

12   the Defendant.  He read him his Miranda rights

13   which y'all are familiar with, you have the right

14   to remain silent, so on and so forth.  Those were

15   read to him.  And he questioned the Defendant,

16   and you'll see the videotape of that.  Now you

17   have to listen close to that, but let me tell

18   you, because the Defendant says I didn't sell it

19   because I didn't get the money.  I just gave -- I

20   gave it to the other guy and he just gave me some

21   cocaine for doing that.  That's distribution,

22   ladies and gentlemen.  It doesn't matter.  But

23   you'll hear him agree, and what you'll hear is

24   Sergeant Franklin say isn't this what happened.

25   There's another investigator in the room.  You

1    have to listen closely because the Defendant

2    turns around and says, I told you that's what I

3    was doing, to the other investigator.  So he has

4    confessed, we submit, ladies and gentlemen.

5         When we finish with this case, there will be

6    no doubt in your mind that James Jackson, the

7    Defendant, is guilty of selling cocaine.  Thank

8    you.

9         THE COURT:  Mr. Armstrong?

10        MR. ARMSTRONG:  May it please the Court, Mr.

11   Landreau, ladies and gentlemen of the jury, good

12   morning again.  This is the only time that I'm

13   going to get to talk with you until we conclude

14   this case when we do closing arguments

15   afterwards, and I want each of you to listen very

16   closely to the evidence the State of Alabama

17   presents in this case.  That's going to become

18   very important.  And after you listen, I want you

19   to use what my mama and daddy calls just your

20   common sense, your God given common sense, your

21   horse sense.  And I want you to listen to the

22   testimony of Tom Franklin and the confidential

23   informant especially, Mr. Hathcock.

24        Now, the State of Alabama tells you they're

25   going to play an audiotape.  And the CI, the

1    confidential informant, was wired, and the

2    alleged transaction taking place, and I believe

3    Mr. Landreau said you can hear him said -- a lot

4    of things were said between Hathcock and my

5    client.  I want you to listen to that audiotape

6    and hear what you can hear.  I submit you're not

7    going to hear -- you're not going to hear my

8    client.  You're not going to hear anything but

9    Mr. Hathcock on that tape.  Listen very closely

10   to it.

11        And then they tell you about the videotape.

12   You'll see a videotape of Investigator Tom

13   Franklin of the Russell County Sheriff's

14   Department talking with my client, interrogating

15   my client.  And Mr. Landreau said that on that

16   videotape my client, quote, said I did not sell

17   it.  I just got the money.  Listen very closely

18   and see if you hear that.  I submit you won't.

19   You will not hear that.

20        Ladies and gentlemen of the jury, my client

21   is charged with distribution of a controlled

22   substance.  We submit that the transaction didn't

23   take place between my client and Mr. Hathcock.

24   You listen to Mr. Hathcock.  What reason did he

25   have to try to get the sale that night.  He was

1      working off a case.  You'll hear that.  He was

2      working off a case.  He had to have that arrest

3      that night.

4         All I ask is that you use your common sense,

5      listen to all the evidence in this case, and then

6      once you hear it and you get back to that jury

7      deliberation room, you're going to have

8      reasonable doubt in your mind whether a

9      transaction even occurred between Mr. Hathcock

10      and my client, Mr. Jackson.  And when you have

11      that reasonable doubt, which I submit you will

12      when you get back there, you're obligated to

13      return a verdict of not guilty.  Thank you for

14      your time.

15         THE COURT:  Who would the State call as its

16      first witness?

17         MR. LANDREAU:  Officer Tommy Pell.

18                THOMAS PELL

19       was sworn and testified as follows:

20             DIRECT EXAMINATION

21  BY MR. LANDREAU:

22  Q     Deputy, tell us your full name, please, sir.

23  A     Thomas Pell.

24  Q     Where are you employed?

25  A     Russell County Sheriff's Department.

1   Q   And in what capacity are you employed?

2   A   Investigator.

3   Q   Do you have any duties assigned to you in

4       connection with the care and transport of

5       evidence that's seized by your department?

6   A   Yes, sir, I do.

7   Q   And what are those duties?

8   A   I receive evidence from the deputies at the

9       sheriff's department.  I secure that evidence,

10      and I transport it back and forth to the labs

11      that it needs to go to for analysis.

12  Q   And how long have you been doing that?

13  A   With the evidence, I'm going to say roughly maybe

14      four years; three, four years.

15  Q   Did you receive any evidence in connection with

16      this case against James W. Jackson?

17  A   Yes, I did.

18  Q   And do you have that with you?

19  A   Yes, I do.

20  Q   If you would, I'm going to mark that as State's

21      Exhibit 1 for purposes of identification.  Now,

22      referring to State's Exhibit Number 1, Mr. Pell,

23      when did you receive that item and from whom?

24  A   I received it, it was on September the 17th of

25      2002, from Sergeant Franklin.

1   Q   Is there anything on the package itself that
2       would indicate that or that the jury could look
3       at to see those dates reflected?
4   A   Not on the actual evidence itself.  It is in a
5       supplement that I do when I receive evidence from
6       a deputy.  I make a report as to when I received
7       it from them and who I actually received it from.
8   Q   When you received it -- and what was the date
9       again?
10  A   The 17th.
11  Q   When you received it on the 17th, was it already
12      packaged in this plastic bag?
13  A   Correct.  It was already sealed.
14  Q   And were there anyone's initials?
15  A   Sergeant Franklin's initials are on it stating
16      that he's the one that sealed it.
17  Q   And this tape that y'all put across them, is that
18      a type of tape you can tell if it's been opened?
19  A   Yes.
20  Q   What did you do with the item when you received
21      it?
22  A   I placed it in our evidence room.
23  Q   Now, the evidence room, is that a locked or
24      unlocked facility?
25  A   It's a locked room.  Only myself, I have the only

```
 1        key.
 2   Q    You have the only key?
 3   A    Correct.
 4   Q    And how long did this State's Exhibit 1 remain in
 5        your evidence room?
 6   A    I took it to the lab in November, November the
 7        15th.
 8   Q    Do you know which lab did you take it to?
 9   A    To the Auburn drug lab.
10   Q    And do you recall who you gave it to?
11   A    It was one of the assistants there.  I don't have
12        the name in front of me.  More likely Melissa
13        Kelly is usually who I deal with.
14   Q    And did the State's Exhibit 1 stay at the lab for
15        some period of time?
16   A    Correct, it did.
17   Q    When did you receive it back?
18   A    I picked it up at the lab July the 18th of this
19        year.
20   Q    And where has it been since July 18th?
21   A    I brought it back and placed it back in the
22        evidence room and locked it up.
23   Q    That's the one only you have access to?
24   A    Correct.
25   Q    Deputy Pell, from the time you received that
```

1         item, State's Exhibit 1, on September 17th of

2         2002, until you took it to the state lab, was it

3         exclusively in your possession?

4   A   It was in the evidence room, correct.

5   Q   To which you have the only key?

6   A   Correct.

7   Q   Now, did you change or alter State's Exhibit 1 in

8         any way between the time you received it from

9         Sergeant Franklin and the time you took it to the

10        lab?

11   A   No, I did not.

12   Q   Did you add anything to it or subtract anything

13        from it?

14   A   No, I did not.

15   Q   When you delivered it to the lab, was it in the

16        same condition as when you received it from

17        Sergeant Franklin?

18   A   The only change is that where they opened the bag

19        to get the evidence out and then resealed it with

20        their blue evidence tape.

21   Q   My question is directed, though, between the time

22        you received it from Sergeant Franklin and the

23        time you took it to the lab

24   A   No.

25   Q   Had it been opened during that time?

1    A    No, sir.

2    Q    Okay. When you say it was opened, what time

3         frame are you referring to then?

4    A    When I took it to the lab, in order for them to

5         do their analysis, they open the plastic bag.

6    Q    So from the time you received it until the time

7         you gave it to the lab, it was in the exact same

8         condition as when you got it from Sergeant

9         Franklin?

10    A    Correct.

11    Q    Then when you got it back from the lab, you

12         noticed that the bag had been opened by the

13         laboratory people and resealed; is that correct?

14    A    Correct.

15    Q    And you're indicating some marking on that that

16         shows us that?

17    A    Correct.

18    Q    What marking is that?

19    A    It's the blue evidence tape covering the seal,

20         plus the initials of the lab technician who

21         sealed it back up.

22    Q    From the time you received this State's Exhibit 1

23         back in July of this year until today, has it

24         been under your exclusive control?

25    A    Yes.

1  Q   Have you changed or altered it in any way?

2  A   No, sir.

3  Q   Added anything to or subtracted anything from it?

4  A   No, sir.

5  Q   Is State's Exhibit 1 in the exact same condition

6      as when you received it back from the lab in July

7      of this year?

8  A   It is.

9          MR. LANDREAU:   No further questions.

10              CROSS-EXAMINATION

11 BY MR. ARMSTRONG:

12 Q   Investigator Pell, when did you get State's

13     Exhibit 1, the evidence in this case, again?

14 A   When was it turned over to me?

15 Q   Turned over to you.

16 A   On September the 17th.

17 Q   And that's of 2002?

18 A   2002.

19 Q   And you received that from Investigator Tom

20     Franklin; is that correct?

21 A   Correct.

22 Q   And when did you receive that from Tom Franklin,

23     what date?

24 A   September the 17th.

25 Q   And once you received it, did you place it in the

1     evidence room on that same date?

2  A    Correct.

3  Q    And then you did not transport it to the

4     Department of Forensic Science in Auburn until

5     November 15th, 2002; is that correct?

6  A    Correct.

7  Q    Why did you wait so long to transport it?

8  A    I take -- I don't make a trip for each individual

9     piece of evidence.  I wait until I have several

10    pieces of evidence, then I take them all at the

11    same time.

12  Q   Are you aware if a warrant prior to you taking it

13    over had already been taken out for my client?

14  A   I'm not aware.

15  Q   But, basically, it was a little over a two-month

16    period or right at a two-month period before you

17    transported it to the lab for testing; is that

18    correct?

19  A   Correct.

20     MR. ARMSTRONG:  Nothing further, Your

21    Honor.

22     THE COURT:  May this witness be excused?

23     MR. LANDREAU:  Yes, Your Honor.

24     MR. ARMSTRONG:  I have no objection.

25     THE COURT:  Who is the State's next

1    witness?

2            MR. LANDREAU:  Call Sergeant Steve Johnson.

3                    STEVE JOHNSON

4        was sworn and testified as follows:

5                DIRECT EXAMINATION

6    BY MR. LANDREAU:

7    Q    Tell us your full name, please, sir.

8    A    Steve Johnson.

9    Q    And I take it from your uniform you're with the

10        sheriff's department; is that correct?

11   A    Yes, sir, I am.

12   Q    How long have you been a deputy sheriff with

13        Russell County?

14   A    Eight years.

15   Q    And you are a certified law enforcement officer;

16        is that correct?

17   A    Yes, sir, I am.

18   Q    Back on September 16th of 2002, did you have an

19        occasion to be assigned or become involved in an

20        investigation of possible drug sales going on at

21        7 Masons Road in Phenix City?

22   A    Yes, sir, I was.

23   Q    Are you familiar with Masons Road in Phenix City?

24   A    Yes, sir, I am.

25   Q    Tell us roughly where that is?

| | | |
|---|---|---|
| 1 | A | Take 165 South, take a left on Brickyard Road, |
| 2 | | and it's a left-hand turn off of Brickyard |
| 3 | | approximately a mile-and-a-half, two miles down. |
| 4 | Q | Is that in Russell County? |
| 5 | A | Yes, sir, it is. |
| 6 | Q | Now, what was the or how were you made aware that |
| 7 | | there was going to be some sort of action by the |
| 8 | | sheriff's department towards that address?  How |
| 9 | | did you become aware of what led to this case is |
| 10 | | what I'm saying? |
| 11 | A | I was approached by a gentleman that said that he |
| 12 | | could buy an amount of dope or crack cocaine from |
| 13 | | a location on Masons Road. |
| 14 | Q | And who was that gentleman? |
| 15 | A | It was Jason Hathcock. |
| 16 | Q | Did you know Mr. Hathcock prior to him |
| 17 | | approaching you? |
| 18 | A | No, sir, I did not. |
| 19 | Q | He told you he could buy a quantity of drugs from |
| 20 | | 7 Masons Drive? |
| 21 | A | Yes, sir, he did. |
| 22 | Q | Did he specify what type of drug? |
| 23 | A | He said crack. |
| 24 | Q | That's cocaine? |
| 25 | A | Yes, sir. |

1   Q   Did he specify who he could buy it from?

2   A   All he knew the individual's name of was

3       Blackjack.

4   Q   Were you familiar with someone named Blackjack at

5       that address?

6   A   I was familiar with an individual by the name of

7       Blackjack.

8   Q   After you received this information from Mr.

9       Hathcock -- well, let me ask you, did Mr.

10      Hathcock ask for something in return?

11  A   Yes, sir.  He stated he had a couple of traffic

12      citations that he was willing to try to work some

13      of the restitution or fines off.

14  Q   So he wanted to avoid restitution or fines on

15      some traffic citations?

16  A   Yes, sir.

17  Q   And once you received this information, what did

18      you do with the information?

19  A   I notified Sergeant Franklin of the sheriff's

20      office.

21  Q   Now, do you normally work for Sergeant Franklin,

22      or why did you choose Sergeant Franklin?

23  A   Because Sergeant Franklin was a sergeant in

24      investigations and because of his knowledge in

25      working narcotics on the street in the past.

1    Q    Now, was this on or about September 16th of 2002?

2    A    Yes, it was.

3    Q    What did you do next in connection with this

4         investigation?

5    A    On September the 16th, myself had searched Mr.

6         Hathcock, which was the informant, to make sure

7         he didn't have any contraband on himself.

8    Q    Let me stop you.  Where did this occur?

9    A    At the sheriff's office.

10   Q    And do you recall what time of day or night it

11        was on September 16th?

12   A    It was approximately 6:30.  I believe it was on a

13        Monday.

14   Q    What was your purpose in searching Mr. Hathcock?

15   A    To make sure he didn't have any cocaine on

16        himself.

17   Q    Is that standard procedure when using a

18        confidential informant to buy drugs?

19   A    Yes, sir, it is.

20   Q    Well, did he have any on him?

21   A    No, sir, he did not.

22   Q    And did you just pat him down, or how thoroughly

23        did you search him?

24   A    I stripped him to his underwear.

25   Q    So you did basically a strip search of him?

1  A   Yes.

2  Q   Now, did you do something else in connection with

3      this after you searched Mr. Hathcock?

4  A   Once I determined he didn't have any contraband

5      on himself, I wired him with an audio recording

6      device better known as a bug.

7  Q   Just tell us briefly how you do that.  Is there a

8      microphone or something?

9  A   There is a small electrical box that has a bug on

10     it.  The antenna comes out of the box, and then

11     it has another little piece which is the

12     microphone, and we tape the box to the small of

13     the individual's back and run the bug up around

14     the individual's neck.

15 Q   Did you do that in Mr. Hathcock's case?

16 A   Yes, sir, I did.

17 Q   What next did you do in connection with this

18     investigation?

19 A   Once the CI was sent to go to the location,

20     myself and Sergeant Franklin set off a distance

21     from the location it was supposed to be and

22     listened to the transaction.

23 Q   Let me ask you, did you follow or did someone

24     follow Mr. Hathcock from the sheriff's office to

25     this location?

| 1  | A | We followed him to the area, but we didn't go |
| 2  |   | exactly to the location with him. |
| 3  | Q | You didn't pull up in front of the house? |
| 4  | A | No, sir. |
| 5  | Q | How close to the house did you follow Mr. |
| 6  |   | Hathcock? |
| 7  | A | Probably three quarters to maybe half a mile |
| 8  |   | away. |
| 9  | Q | And then you sat where you could hear the tape or |
| 10 |   | hear the -- |
| 11 | A | Hear the transaction going on, that's correct. |
| 12 | Q | Now, what else did you do in connection with |
| 13 |   | this? |
| 14 | A | After the transaction was completed, we went |
| 15 |   | around Masons Road, and as the confidential |
| 16 |   | informant was coming out, we come by the location |
| 17 |   | which was 7 Masons Road and followed the |
| 18 |   | informant out. |
| 19 | Q | When you drove by 7 Masons Road, did you see the |
| 20 |   | Defendant in this case there? |
| 21 | A | Yes, sir, we did. |
| 22 | Q | And can you point out -- is the person you saw |
| 23 |   | there that day right after this transaction in |
| 24 |   | the courtroom today? |
| 25 | A | Yes, sir, he is. |

| | | |
|---|---|---|
| 1 | Q | Would you point him out to us, please? |
| 2 | A | The black gentleman there in the yellow shirt and |
| 3 | | green pants. |
| 4 | Q | You now know that individual to be who? |
| 5 | A | James Willie Jackson.  Blackjack. |
| 6 | Q | Do you recall how Mr. Jackson was dressed that |
| 7 | | day? |
| 8 | A | I can't remember the pants he was wearing, but I |
| 9 | | believe he was wearing a white jersey type shirt. |
| 10 | Q | Now, after -- why did y'all meet up with the |
| 11 | | informant afterwards? |
| 12 | A | To get the crack cocaine from him and to get a |
| 13 | | statement from him. |
| 14 | Q | And did you do anything else in connection with |
| 15 | | this case? |
| 16 | A | No, sir. |
| 17 | Q | Okay. |
| 18 | | MR. LANDREAU:  No further questions for |
| 19 | | Sergeant Johnson. |
| 20 | | CROSS-EXAMINATION |
| 21 | | BY MR. ARMSTRONG: |
| 22 | Q | Good morning, Sergeant Johnson. |
| 23 | A | Good morning. |
| 24 | Q | You stated in your testimony earlier that Mr. |
| 25 | | Hathcock approached you about working off how |

1      many traffic citations?

2   A  I believe it was two.

3   Q  Two traffic citations.  Do you know what type of

4      traffic citation charges those were?

5   A  I don't recall exactly.

6   Q  But he had some, I believe your testimony was,

7      some fines and some restitution or court costs;

8      is that correct?

9   A  It may have been both, or it may have been even

10     one or the other.  I don't recall exactly which

11     one it was, but I know it was some fines or

12     restitution.

13  Q  Do you know what happened with those traffic

14     citation cases after this alleged transaction

15     between Mr. Hathcock and my client?

16  A  I spoke with Judge Bellamy in reference to his

17     case, and Judge Bellamy, I know, alleviated some

18     of the fines on one of the cases.  I'm not sure

19     what happened if there was any more cases.

20  Q  Okay.  Now, Mr. Hathcock came to you?

21  A  Yes, sir.

22  Q  Is that correct?

23  A  Uh-huh (positive response).

24        MR. ARMSTRONG:  Judge, I had invoked the

25     Rule in this case, and I don't know if Heath

1     Taylor is going to be a witness in this case.

2         THE COURT:  He was not qualified to the

3     jury.

4         MR. LANDREAU:  Judge, excuse me.

5         MR. ARMSTRONG:  He was on the list, the

6     State's witness list, I believe.

7         MR. LANDREAU:  I don't intend to call him.

8         MR. ARMSTRONG:  If he's not being called, I

9     have no objection to him staying.

10        THE COURT:  Those are the witnesses I

11     qualified.  He's not on the list.

12        MR. ARMSTRONG:  Okay.

13        MR. LANDREAU:  No, sir, he will not be

14     called as a witness.

15 Q  (By Mr. Armstrong:)  You said Mr. Hathcock came

16     to you?

17 A  Yes, sir.

18 Q  Correct?

19 A  Yes, sir.

20 Q  Did you know Mr. Hathcock prior to this date?

21 A  No, sir.

22 Q  Why did he come to you, do you have any reason?

23 A  I have no idea, sir.

24 Q  And where did he approach you?  Where were you?

25 A  Outside the jail front door.

1   Q   Now, you searched Mr. Hathcock prior to the

2       incident going to 7 Masons Road; is that correct?

3   A   That's correct.

4   Q   You searched his person; correct?

5   A   That's correct.

6   Q   You didn't search his automobile; is that

7       correct?

8   A   No, sir.

9   Q   Now, I believe your testimony earlier was that

10      you searched him, stripped him down to his

11      underwear; is that correct?

12   A   Yes, sir.

13   Q   Did you check at all in his underwear?

14   A   No, sir, I did not.

15   Q   Did you check around the waistband of his

16      underwear at all?

17   A   Yes, sir, I did.

18   Q   You did?

19   A   Uh-huh (positive response).

20   Q   Did you find any drug evidence in the waistband

21      at all?

22   A   No, sir.

23   Q   But that's as far as you went in checking his

24      underwear; is that correct?

25   A   Yes, sir.

42

1  Q    And you said you searching his person was around

2       6:30, or y'all left the sheriff's department

3       around 6:30?

4  A    I'm not sure what time I actually searched him,

5       but it was prior to leaving the sheriff's office.

6  Q    Do you know when you left the sheriff's office

7       following Mr. Hathcock?

8  A    Sometime between six and 6:30.

9  Q    And this was on September 16th, 2002; correct?

10 A    Uh-huh (positive response).  I believe it was a

11      Monday.

12 Q    Do you know if it was dusk by then or getting

13      dark by then?

14 A    No, it was daylight.

15 Q    And you said y'all followed him to the location.

16      Who's y'all?  Who else was with you?

17 A    Me and Sergeant Franklin.

18 Q    Those are the only -- that was the only person

19      with you in your car?

20 A    Yes, sir.  Me and Sergeant Franklin was in the

21      same vehicle.

22 Q    What vehicle were y'all in?

23 A    I believe it was a Jeep Cherokee, green in color.

24 Q    Was it marked in any way in terms of indicating a

25      law enforcement vehicle?

1    A    No, sir.

2    Q    And y'all followed Mr. Hathcock all the way to

3          the scene in the area of the scene; is that

4          correct?

5    A    Yes, sir.

6    Q    7 Masons Road?

7    A    Yes, sir.

8    Q    But you stated earlier in testimony that you were

9          about, I believe you said, a half a mile to three

10        quarters of a mile away when the alleged

11        transaction took place; is that correct?

12   A    That's correct.

13   Q    Could you see the transaction take place?

14   A    No, I did not.

15   Q    You could not?

16   A    Huh-uh (negative response).

17   Q    And you had a receiver device where you listened

18        to the conversation; right?

19   A    That's correct.

20          MR. ARMSTRONG:  I have nothing further, Your

21      Honor.

22          MR. LANDREAU:  Your Honor, may this witness

23      be excused?  I believe he's on vacation.

24          THE COURT:  Yes.

25          MR. ARMSTRONG:  I have no objection.

1     THE COURT:  Who is the State's next

2     witness?  Thank you.

3         MR. LANDREAU:  State would call Jason

4     Hathcock.

5                   JASON HATHCOCK

6         was sworn and testified as follows:

7                 DIRECT EXAMINATION

8   BY MR. LANDREAU:

9   Q     Tell us your full name, please, sir.

10  A     Jason Dean Hathcock.

11  Q     And where do you live, Mr. Hathcock?

12  A     I live on South Railroad Street.

13  Q     How old are you?

14  A     29.

15  Q     Now, Mr. Hathcock, back in September of last

16        year, 2002, did you approach Sergeant Johnson

17        with the Russell County Sheriff's Department

18        about something?

19  A     Yes, sir.

20  Q     And why did you contact Sergeant Johnson?

21  A     Because I had some traffic citations that I

22        wanted to take care of and to get some stuff off

23        the streets.

24  Q     What kind of traffic citations had you got?

25  A     A couple of tickets, driving while suspended

```
 1        license.

 2   Q    So you were looking at paying some fines and

 3        costs; right?

 4   A    Yes, sir.

 5   Q    And that was all?

 6   A    (Witness nods head affirmatively.)

 7   Q    Any other?

 8   A    No, sir, that was it.

 9   Q    Had you already been to court?

10   A    One time I did.

11   Q    And so you wanted some consideration for that in

12        return for helping with the sheriff's office; is

13        that correct?

14   A    Yes, sir.

15   Q    Well, when you approached Sergeant Johnson, what

16        did you tell him you could help him with?

17   A    I told him I could help him get some crack off

18        the streets, help him get some people.

19   Q    Well, did you tell him where you could get this

20        crack cocaine?

21   A    Yes, sir.

22   Q    And where was that?

23   A    Off of Brickyard Road called Masons Drive or

24        Masons Road.

25   Q    And did you tell him who you could get the drugs
```

```
 1         from?

 2    A    Yes, sir.

 3    Q    And who was that?

 4    A    A guy by the name of Blackjack.  That's his

 5         nickname.  I don't know his real name.

 6    Q    Do you see Blackjack here in the courtroom today?

 7    A    Yes, sir.

 8    Q    Would you point him out to us?

 9    A    Over to my right.

10    Q    The gentleman in the blue suit or the gentleman

11         in the yellow shirt?

12    A    In the yellow shirt.

13              MR. LANDREAU:  Would the record reflect that

14         he pointed out the Defendant, James Jackson.

15    Q    Now, after you told Sergeant Johnson this, what

16         did he and you do?

17    A    We set up a date to deal with it.

18    Q    Did you ever meet with Sergeant Franklin here?

19    A    Yes, sir.

20    Q    Did Sergeant Franklin make any attempt or did you

21         make any further attempt to identify who

22         Blackjack's real name was?

23    A    Yes, sir.

24    Q    And what was done in regard to that?

25    A    They showed me some pictures of some people, and
```

1        I pointed out the picture that I seen.

2   Q    So they showed you some photographs, and you

3        pointed out the man you knew to be Blackjack?

4   A    Yes, sir.

5   Q    And this was before you went down there; is that

6        correct?

7   A    Yes, sir.

8   Q    Now, what date did y'all or on the date y'all set

9        up to do this, where did y'all meet?

10  A    At the sheriff's department.

11  Q    And were you by yourself?

12  A    Yes, sir.

13  Q    And who all did you meet with?

14  A    Sergeant Johnson, Franklin.  There's a couple

15       more.  I don't know them.  I just know they work

16       down there at the sheriff's office.

17  Q    Now, what transpired at the sheriff's office?

18  A    Well, they patted me down, make sure I didn't

19       have nothing on me or anything.  They searched my

20       car and everything.  Then they put a wire on me.

21  Q    Well, did you have any drugs on your person when

22       you went to the sheriff's office?

23  A    No, sir.

24  Q    Did you have any drugs in your car when you went

25       to the sheriff's office?

1   A    No, sir.

2   Q    And they searched both you and the car; is that

3         correct?

4   A    Yes, sir.

5   Q    And they put a wire on you?

6   A    Yes, sir.

7   Q    You were then to do what?

8   A    Go down to Masons Road where they was selling it

9         at and buy a 20.

10   Q    And what were you supposed to use as money?

11   A    A $20 bill that they gave me.

12   Q    So the sheriff's office gave you a $20 bill?

13   A    Yes, sir.

14   Q    And when you went to Masons Road, did you go in

15         your own car?

16   A    Yes, sir.

17   Q    Was there anyone following you as you went to

18         Masons Road?

19   A    Yes, sir, until I got there at the road.  Then I

20         turned off and they went on.

21   Q    So they followed you all the way down to Masons

22         Road?

23   A    Yes, sir.

24   Q    And this address, I believe, is Number 7 Masons

25         Road; is that right?

```
1   A    I think so.  Like I said, I'm not for sure about

2        the address.  I just knew where to go get it.

3   Q    Now, when you got there to Masons Road, did you

4        go to a particular house?

5   A    Yes, sir.

6   Q    Could you describe the house for us?

7   A    It was a trailer that sit up on top of a hill.

8   Q    And was there anyone home?

9   A    Yes, sir.

10  Q    How many people were there -- well, first off let

11       me ask you, these people who were at that

12       location, were they inside the trailer or outside

13       the trailer?

14  A    Outside.

15  Q    And how many people were outside the trailer?

16  A    There was four people outside the trailer.

17  Q    Was Blackjack among them?

18  A    Yes, sir.

19  Q    When you pulled up there, did you have a

20       conversation with anybody?

21  A    Blackjack.

22  Q    And tell us, roughly, what that conversation was

23       about.

24  A    I pulled up, I asked him how he was doing.  He

25       said he was all right.  I asked him could he give
```

```
 1        me a 20.  He said yeah.  I told him I wanted to

 2        see it first, so he went and got it, brought it

 3        back to me.

 4    Q   Did you pay him for the cocaine?

 5    A   Yes, sir.

 6    Q   Well, Mr. Hathcock, let me make sure, this

 7        gentleman seated right here, this Defendant,

 8        James Jackson, is this the person you asked to

 9        sell you the $20 worth of cocaine?

10    A   Yes, sir.

11    Q   Is this the same man who went and got the $20 of

12        cocaine and brought it to you?

13    A   Yes, sir.

14    Q   And is this the man you gave the $20 bill to?

15    A   Yes, sir.

16    Q   Any question in your mind?

17    A   Nope.

18    Q   After you got the cocaine, what did you do?

19    A   I put it in the car, and then I left and met the

20        sheriffs at the -- followed them down to where we

21        met at.  I got out of the car, told them where it

22        was at.  They went straight to where it was at

23        and got it out.

24    Q   From the time you left the Defendant, James

25        Jackson, until you gave the cocaine to the
```

| 1 | | officers, how long transpired? |
|---|---|---|
| 2 | A | Probably about five minutes. |
| 3 | Q | And which officer did you give the cocaine you |
| 4 | | had bought to? |
| 5 | A | I think it was Franklin. |
| 6 | Q | Sergeant Franklin? |
| 7 | A | Yes, sir. |
| 8 | Q | In the time that you had the drugs in your |
| 9 | | possession, that is, from the time James Jackson |
| 10 | | sold them to you until you gave them to Sergeant |
| 11 | | Franklin, did you change or alter them in any |
| 12 | | way? |
| 13 | A | No, sir. |
| 14 | Q | Add anything to them or subtract anything from |
| 15 | | them? |
| 16 | A | No, sir. |
| 17 | Q | So were the drugs in the same condition when you |
| 18 | | gave them to Sergeant Franklin as when you |
| 19 | | received them? |
| 20 | A | Yes, sir. |
| 21 | Q | Now, let me show you what I've marked as State's |
| 22 | | Exhibit 2, which is an audiotape.  Are you |
| 23 | | familiar with that? |
| 24 | A | Yes, sir. |
| 25 | Q | I believe you've listened to that audiotape; have |

1      you not?

2   A   Yes, sir.

3   Q   And what is that an audiotape of?

4   A   Of the conversation me and Blackjack had.

5   Q   There on September 16th when he sold the drugs?

6   A   Yes, sir.

7   Q   You were present during that conversation?

8   A   Yes, sir.

9   Q   Does State's Exhibit 2, the audiotape, does it

10      fairly and accurately copy and record the

11      conversation that you had with the Defendant,

12      James Jackson, that day?

13  A   Yes, sir.

14          MR. LANDREAU:  Your Honor, at this time we

15      move to introduce State's Exhibit 2.

16          MR. ARMSTRONG:  Your Honor, I object.

17      Improper authentication.

18          MR. LANDREAU:  Judge, this witness has

19      testified he was present during the conversation

20      which was recorded, he's heard the recording, and

21      the recording accurately reflects the

22      conversation.  I believe that's the proper

23      predicate.

24          MR. ARMSTRONG:  I'm not sure if he testified

25      to one of those elements, Your Honor.

1    THE COURT:  He testified that he heard this

2  recording?

3    MR. LANDREAU:  Yes, sir.

4    MR. ARMSTRONG:  That's the one I'm looking

5  for.  I'm not sure if he testified to that.

6    MR. LANDREAU:  I asked him a moment ago, but

7  I'll reask him.

8 Q You've heard the recording; have you not?

9 A Yes, sir.

10 Q And you were present during the conversation this

11  records?

12 A Yes, sir.

13 Q And this State's Exhibit 2, the recording,

14  accurately copied and recorded the conversation

15  you had with the Defendant, James Jackson?

16 A Yes, sir.

17    MR. LANDREAU:  Judge, again, we move to

18  introduce State's Exhibit 2.

19    MR. ARMSTRONG:  No objection.

20    THE COURT:  All right.  Be admitted and

21  received.

22     (State's Exhibit 2 was admitted in

23     evidence.)

24    MR. LANDREAU:  We ask that it be played for

25  the jury.

EXHIBIT

RX-1 - Part 3

tabbies

54

1          THE COURT:  How long do you anticipate --

2          MR. LANDREAU:  Judge, it's fairly short.

3      It's like three or four minutes.

4          THE COURT:  Okay.

5              (Audiotape played to the jury.)

6  Q    Mr. Hathcock, on that tape, when you pull up, I

7      hear you call somebody by the name of Blackjack;

8      is that correct?

9  A    Yes, sir.

10 Q    And that individual, is that the Defendant, James

11     Jackson?

12 A    Yes, sir.

13 Q    Now, there appears to be a female voice in the

14     background also.  Was there a female there?

15 A    Yes, sir.

16 Q    Did you have any conversation with her?

17 A    No, sir.

18 Q    Was she involved in selling you drugs in any way?

19 A    No, sir.

20 Q    There is -- we hear your voice saying 20, and we

21     hear a male's -- another male's voice.  Is that

22     other male James Jackson, the other male voice on

23     it?

24 A    Yes, sir.

25 Q    Now, when you went to give Mr. Jackson the money,

1    or at some point in the tape I hear the phrase I

2    want to see it first, stated by you.  What was

3    that in reference to?

4    A    Because, you know, sometimes you give somebody

5    the money, they take off running with it and you

6    just out of money and out of bat, so I was just

7    being smart.

8    Q    So you told him you wanted to see the drugs

9    before he got the money?

10    A    Yes, sir.

11    Q    Now, did Mr. Jackson go somewhere and get the

12    drugs?

13    A    Yes, sir.

14    Q    And where did he go to get the drugs?

15    A    Probably about 10 steps away from where I was at

16    to another guy.

17    Q    Another guy.  Was that the guy with no shirt on?

18    A    Yes, sir.

19    Q    So Mr. Jackson got -- left your car, walked over

20    to a guy with no shirt on, got the cocaine, and

21    came back and got your money?

22    A    Yes, sir.

23    Q    There is a voice in there that seems to me to be

24    saying to you give me a piece of it.  Who was

25    that?

1   MR. ARMSTRONG:  I'm going to object, Your

2 Honor.  I'm not sure -- that is not specified on

3 that tape.  You could not hear that on the tape,

4 and the D.A. is trying to get the evidence in the

5 case that's not been evidence presented to the

6 jury.

7   MR. LANDREAU:  Judge, it is on the tape.

8   THE COURT:  Well, I'll allow you to replay

9 that portion.

10   MR. LANDREAU:  Sure.

11    (Said portion of audiotape replayed to

12    the jury.)

13 Q Did Mr. Jackson ask you for a piece of the crack

14  cocaine?

15 A Yes, sir.

16 Q And you told him this wasn't yours, you were

17  buying it for somebody else?

18 A Yes, sir.

19 Q Do you know who the other person that Mr. Jackson

20  went and got the cocaine from, do you know who

21  that is?

22 A No, sir, I don't.

23 Q Had you ever seen that individual before?

24 A Yes, sir.  I've seen him there plenty of times.

25 Q Okay.  Mr. Hathcock, I'm going to show you what

1        I'm going to mark as State's Exhibit 7 and ask

2        you if you recognize this item?

3    A    Yes, sir.

4    Q    When did you first see those photographs?

5    A    September the 16th when I went down to the

6        sheriff's department.

7    Q    And who showed them to you?

8    A    Sergeant Franklin.

9    Q    And do you recall for what purpose he showed

10        them?

11   A    Yes, sir.

12   Q    Did he ask you if you recognized anybody in this

13        lineup?

14   A    Yes, sir.

15   Q    And did you?

16   A    Yes, sir.

17   Q    Do you recall which number you picked?

18   A    Number six.

19   Q    Okay.

20            MR. LANDREAU:  Judge, move to introduce

21        State's Exhibit 7.

22            MR. ARMSTRONG:  No objection.

23            THE COURT:  Be admitted and received.

24                (State's Exhibit 7 was admitted in

25                  evidence.)

```
 1              MR. LANDREAU:  No further questions for this
 2         witness.
 3                     CROSS-EXAMINATION
 4    BY MR. HATHCOCK:
 5    Q    Mr. Hathcock, is that correct?
 6    A    Yes, sir.
 7    Q    Good morning.  How you doing?
 8    A    Fine.  How about you, sir?
 9    Q    Just fine.  We've heard that tape twice now.  It
10         sounded like a lot of folks talking around you at
11         the time that you made this alleged transaction.
12         I mean, you had a female around there; is that
13         correct?
14    A    Yes, sir.
15    Q    Was she in the vehicle with you?
16    A    No, sir.
17    Q    Where was she?
18    A    She was outside the vehicle.
19    Q    Where at, on the driver's side where you were?
20    A    She was in front of my car.
21    Q    And was she talking to you?
22    A    No, sir.
23    Q    Had you ever seen her there before or anything?
24    A    No, sir.
25    Q    Now, you're claiming that whatever we heard on
```

| | | |
|---|---|---|
| 1 | | that tape, some voice, whatever it was, you're |
| 2 | | claiming that voice was my client; is that |
| 3 | | correct? |
| 4 | A | Yes, sir. |
| 5 | Q | Do you know an individual by the name of T-Rock, |
| 6 | | street name T-Rock?  It's a yes or no question. |
| 7 | | Do you know him? |
| 8 | A | I've heard of that name. |
| 9 | Q | Do you know him? |
| 10 | A | No, not personally. |
| 11 | Q | Have you ever seen him before? |
| 12 | A | No, sir. |
| 13 | Q | How many people were around your vehicle? |
| 14 | A | It was only Blackjack around the vehicle, but |
| 15 | | there was four people there.  Blackjack, the |
| 16 | | other black guy and two white people, a white |
| 17 | | girl and a white guy. |
| 18 | Q | Did any of those other individuals come up and |
| 19 | | try to sell you any type of drugs or anything? |
| 20 | A | No, sir. |
| 21 | Q | Now, we heard you say on that tape he's got red |
| 22 | | sweatpants on.  Who was you referring to? |
| 23 | A | Talking about the guy that Blackjack went and got |
| 24 | | it from. |
| 25 | Q | What color -- what clothes was my client wearing |

|    |   |                                                           |
|----|---|-----------------------------------------------------------|
| 1  |   | that evening?                                             |
| 2  | A | He was wearing a red jersey with some black               |
| 3  |   | sweatpants.                                               |
| 4  | Q | So if there's testimony he was wearing a white            |
| 5  |   | shirt, that would be incorrect; is that right?            |
| 6  | A | Yes, sir.                                                 |
| 7  | Q | Now, you approached Sergeant Johnson about                |
| 8  |   | working off some traffic tickets; is that                 |
| 9  |   | correct?                                                  |
| 10 | A | Yes, sir.                                                 |
| 11 | Q | Did you know Sergeant Johnson?                            |
| 12 | A | Yes, sir.                                                 |
| 13 | Q | You did?  How did you know Sergeant Johnson?             |
| 14 | A | I know pretty much all the sheriff's department.         |
| 15 | Q | Have you ever talked to Sergeant Johnson before?         |
| 16 | A | Yes, sir.                                                 |
| 17 | Q | And about how many times have you talked to him          |
| 18 |   | before?                                                   |
| 19 | A | A lot of times.                                          |
| 20 | Q | So if he testified that he didn't know you prior         |
| 21 |   | to you talking to him, that would be incorrect;          |
| 22 |   | is that right?                                            |
| 23 | A | Yes, sir.                                                 |
| 24 | Q | And you testified that he patted you down,               |
| 25 |   | Sergeant Johnson?                                         |

1    A    Yes, sir.

2    Q    He searched you.  How did he search you?

3    A    He patted me down, make sure I didn't have

4         nothing on me, you know.

5    Q    Did he make you take your clothes off?

6    A    My shirt, you know, checked my pockets and

7         everything like that.

8    Q    Did he make you take your clothes off?

9    A    No, sir.

10   Q    He didn't strip you down to your underwear at

11        all?

12   A    No, sir.

13             MR. LANDREAU:  Excuse me, Your Honor, may we

14        approach?

15                  (Bench conference, off record.)

16   Q    So Sergeant Johnson just patted you down?

17   A    Yes, sir.  I mean, he took everything out of my

18        pockets and make sure I didn't have nothing on

19        me.

20   Q    What were you wearing?

21   A    Blue jeans.

22   Q    You didn't take those blue jeans off?

23   A    No, sir.

24   Q    Now, you said your vehicle was searched prior to

25        you leaving the sheriff's department; is that

1      correct?

2   A  Yes, sir.

3   Q  And who searched your vehicle?

4   A  Franklin, Sergeant Franklin.

5   Q  What'd he do in searching your vehicle, did you

6      see him?

7   A  No, sir.

8   Q  You didn't see him at all?

9   A  No, sir.

10  Q  Now, you said your traffic citations, one of them

11     was driving while suspended?

12  A  Yes, sir.

13  Q  Why was your license suspended?

14        MR. LANDREAU:  Judge, I object.  That's

15     irrelevant.

16        MR. ARMSTRONG:  Your Honor, it goes to

17     credibility.

18        THE COURT:  I'll sustain the objection.

19        MR. ARMSTRONG:  Just note my objection, Your

20     Honor.

21  Q  Those traffic cases you were working off, what

22     happened to those?

23  A  I got a ticket up in Atlanta, Georgia.

24  Q  What happened?  After you did this alleged

25     transaction, did they go away?

63

| | | |
|---|---|---|
| 1 | A | Yes, sir. |
| 2 | Q | Just went away.  Did you have to pay any court |
| 3 | | costs, monies on them at all? |
| 4 | A | I paid some. |
| 5 | Q | But you got a pretty good deal on them? |
| 6 | A | Yes, sir.  I paid like 180. |
| 7 | Q | Which is a lot less than what you would have paid |
| 8 | | for them? |
| 9 | A | 236. |
| 10 | Q | Now, what was the time of the alleged transaction |
| 11 | | that you made with my client?  About what time |
| 12 | | was it? |
| 13 | A | About 6:15, 6:30.  It was pretty late in the |
| 14 | | evening, still daylight. |
| 15 | Q | About 6:15, 6:30 -- |
| 16 | A | Yes, sir. |
| 17 | Q | -- is when you allegedly conducted the |
| 18 | | transaction with my client; is that correct? |
| 19 | A | Yes, sir. |
| 20 | Q | Do you know what time you left the sheriff's |
| 21 | | department? |
| 22 | A | A little after six I know because it didn't take |
| 23 | | long to get there. |
| 24 | Q | Okay. |
| 25 | A | It don't take but like five or 10 minutes to get |

```
 1          there with the traffic and everything.

 2     Q    So if there was testimony you left at 6:30 or

 3          thereafter, that would be incorrect?

 4     A    Yes, sir.

 5     Q    And did someone from the sheriff's department

 6          follow you?

 7     A    Yes, sir.

 8     Q    Who followed you; do you know?

 9     A    Sergeant Franklin, Sergeant Johnson, and some

10          more detectives and stuff.

11     Q    Were they all in one vehicle?

12     A    No, sir.  They was in separate vehicles.

13     Q    Do you know what type of vehicle Sergeant Johnson

14          and Franklin were in?

15     A    A Jeep Cherokee.

16     Q    Now, are you aware if any of the law enforcement

17          officers, whether it was Sergeant Johnson or

18          Sergeant Franklin, are you aware if any of them

19          videotaped the transaction?

20     A    No, sir.

21     Q    Never heard them talk about a videotape?

22     A    (Witness shakes head negatively.)

23     Q    Are you aware if they were where they could see

24          you when this alleged transaction was taking

25          place?
```

```
 1    A    Not that I know of.

 2    Q    Okay.

 3    A    I mean, I knew they was where I was at, around

 4         where I was at, but I don't know --

 5    Q    In that area somewhere?

 6    A    Yeah.  I don't know if they seen it happen or

 7         not.

 8    Q    Okay.  Now, you were given $20 of sheriff's

 9         department funds to allegedly purchase this crack

10         cocaine; is that correct?

11    A    Yes, sir.

12    Q    Now, I think we heard from the tape you allegedly

13         told my client that you wanted a 20?

14    A    Yes, sir.

15    Q    Tell the ladies and gentlemen of the jury what a

16         20 means.

17    A    A $20 piece of rock, crack cocaine; whatever you

18         want to call it.

19    Q    And you're claiming that you got a piece of crack

20         rock from my client; is that right?

21    A    Yes, sir.

22    Q    Was it one rock?

23    A    Yes, sir.

24    Q    And $20 is all you had to purchase crack cocaine?

25    A    Yes, sir.
```

1   Q   And that's the $20 that the sheriff's department

2       gave you; is that correct?

3   A   Yes, sir.

4   Q   Do you know how many grams a $20 piece of crack

5       cocaine is?

6   A   No, sir, I don't.

7   Q   Now, you testified earlier for Mr. Landreau that

8       once you allegedly got the crack cocaine, the one

9       piece of crack rock from my client, it took you

10      about five minutes to get it back to the law

11      enforcement officers; is that correct?

12  A   Yes, sir, from where we left at to where we met

13      at.

14  Q   And where did y'all meet at?

15  A   In the Industrial Park off of 431.

16  Q   Going down 431, the Industrial Park?

17  A   Yes, sir.

18  Q   And I believe you testified earlier that you gave

19      that crack cocaine to Tom Franklin; is that

20      correct?

21  A   Yes, sir.

22  Q   Did you see what he did with it at that time?

23  A   He put it in a bag and sealed it up.

24  Q   Do you recall if it was a bag like this or

25      similar to that at all?

| 1 | A | It's similar to it. |
|---|---|---|
| 2 | Q | Was it that size? |
| 3 | A | I'm not for sure.  I know it was a bag. |
| 4 | Q | Okay. |
| 5 | A | It probably -- it could be smaller than that, |
| 6 | | bigger than that.  I just know it was a bag he |
| 7 | | put it in. |
| 8 | Q | Well, let me ask you this, this has been |
| 9 | | introduced as State's Exhibit 1. |
| 10 | | MR. LANDREAU:  I don't believe it has been |
| 11 | | introduced yet. |
| 12 | | MR. ARMSTRONG:  That's correct, you're |
| 13 | | right. |
| 14 | | THE COURT:  You want to show it as |
| 15 | | tentatively identified as State's Exhibit 1? |
| 16 | Q | Identifying this as State's Exhibit 1, Your |
| 17 | | Honor, do you recognize this at all that's in |
| 18 | | this small baggy? |
| 19 | A | Yes. |
| 20 | Q | What is that? |
| 21 | A | The crack cocaine, crack rock; whatever you want |
| 22 | | to call it. |
| 23 | Q | How do you know that's crack cocaine? |
| 24 | A | You can tell by the color.  It's got -- because |
| 25 | | it's got a yellowish tint to it. |

1    Q    So you're familiar with it?

2    A    Yes, sir.

3    Q    Now, during the transaction, did you have any way

4         of communicating with the officers, Tom Franklin

5         or Sergeant Johnson?

6    A    No, sir, I didn't.

7    Q    You know you had the wire on?

8    A    Except by talking to them through the wire.

9    Q    So they could hear you, but you had no way of

10        talking to them; is that correct?

11   A    No, sir.

12   Q    And you're telling the ladies and gentlemen of

13        the jury that when you allegedly bought this

14        crack cocaine from my client, you gave him the

15        $20 in sheriff's department funds; is that

16        correct?

17   A    Yes, sir.

18   Q    Now, so we can be clear, I believe your testimony

19        is that my client allegedly went to go get the

20        crack rock from someone else, then brought it

21        back to you, and you gave my client the 20; is

22        that correct?

23   A    Yes, sir.

24   Q    Assuming that that happened, did you see what my

25        client did with the money?

1    A    No, sir, I didn't.

2    Q    Now, we heard on there, you claim, that all

3         right, I got it in my hand, got it from

4         Blackjack.  That's what we heard on the tape; is

5         that correct?

6    A    Yes, sir.

7    Q    Are you aware if the officers arrested Blackjack,

8         came in and stormed in and arrested him then?

9    A    No, sir.

10   Q    You're not aware, or they didn't do that?

11   A    I'm not aware of it.

12   Q    Now, you used your own vehicle when you went and

13        made this alleged transaction; right?

14   A    Yes, sir.

15   Q    And no one was in the vehicle with you?

16   A    No, sir.

17   Q    What type of vehicle was it?

18   A    It's a Mercury Sable.

19   Q    Do you know what year it was?

20   A    '94.

21   Q    How long had you owned the vehicle?

22             MR. LANDREAU:  Judge, I object to the

23        relevance.

24             MR. ARMSTRONG:  I'm going to tie it up

25        later, Judge.

1    THE COURT:  How long had he owned his

2  vehicle?

3    MR. ARMSTRONG:  Yeah, how long he owned his

4  vehicle.

5    THE COURT:  I don't see that's relevant at

6  this point.  I'll sustain the objection.

7 Q Now, did you know that if you got an arrest that

8  night, that the traffic cases, something would be

9  reduced or they would go away?

10 A No, sir.

11    MR. ARMSTRONG:  One moment, Your Honor.

12    (Brief pause.)

13 Q When you went back to give the crack -- the

14  alleged crack cocaine to Tom Franklin, did they

15  search you again?

16 A No, sir.

17 Q Nobody patted you down?

18 A No, sir.

19 Q Did they search your car again?

20 A No, sir.

21 Q Okay.

22 A I just told where it was at, and they went and

23  got it.

24 Q Who went and got it?

25 A Sergeant Franklin.

1      MR. ARMSTRONG:   Nothing further, Your

2    Honor.

3      MR. LANDREAU:   Just a couple of questions on

4    redirect.

5                    REDIRECT EXAMINATION

6    BY MR. LANDREAU:

7    Q    Mr. Hathcock, if I understood your testimony in

8         response to Mr. Armstrong, you ended up getting a

9         $50 break on a fine; is that right?

10   A    Yes, sir.

11   Q    Now, he asked you about some other individuals.

12        How long before September 16th had you known

13        Blackjack, also known as James Willie Jackson?

14   A    A long time.

15   Q    Seen him on many occasions?

16   A    Yes, sir.

17   Q    Seen him at 7 Masons Road before?

18   A    Yes, sir.

19   Q    No doubt in your mind that the man who got the 20

20        from you and handed the cocaine to you is the

21        Defendant, James Jackson?

22   A    Yes, sir.

23          MR. LANDREAU:   No further questions.

24          MR. ARMSTRONG:   Nothing further, Your

25      Honor.   I just ask that he be subject to recall.

1          THE COURT:   Okay.   Who's your next witness?

2          MR. LANDREAU:   Judge, let me check outside

3     and see if Mr. Boswell has arrived.

4               (Brief pause.)

5          MR. LANDREAU:   Judge, Mr. Boswell is en

6     route.   We can call Tom Franklin or --

7          THE COURT:   Well, let's take a recess for

8     about 10 minutes, ladies and gentlemen, and I'll

9     send you to the jury room.   Mr. Mitchell will

10    escort you to the jury room.   We'll hopefully

11    promptly resume the trial in about 10, 12

12    minutes.   Do not discuss the case, even among

13    yourselves.

14               (Recess.)

15               (Jury present.)

16         THE COURT:   Welcome back, ladies and

17    gentlemen.   We'll resume with the trial of the

18    case.

19         Who would the State call as its next

20    witness?

21         MR. LANDREAU:   State would call Sherwin

22    Boswell.

23

24

25

1                    SHERWIN BOSWELL

2           was sworn and testified as follows:

3                  DIRECT EXAMINATION

4    BY MR. LANDREAU:

5    Q    State your full name and occupation, please,

6         sir.

7    A    My name is Sherwin Keith Boswell.  I'm a forensic

8         scientist four.  I work in the field of drug

9         analysis and also laboratory director for the

10        Auburn Laboratory.

11   Q    So you are employed by the State of Alabama?

12   A    That's correct.

13   Q    And part of your duties are the analysis of

14        controlled substances; is that correct?

15   A    That's correct.

16   Q    What education and training do you have that

17        qualifies you for that position?

18   A    My education and training include a B.S. Degree

19        in biology with a minor in chemistry and math

20        from Troy State University.  I've taken

21        additional chemistry courses at Auburn

22        University.  I was trained directly by the drug

23        chemist coordinator for the department.  I've

24        attended numerous seminars, lectures, schools.

25        I've worked numerous cases as far as the

1      identification of controlled substances.  Also, I

2      have testified numerous times both in state and

3      Federal Court.

4  Q   How many times have you analyzed substances to

5      determine whether or not they're controlled?

6           MR. ARMSTRONG:  Judge, I'll stipulate to his

7      qualifications.  I've known Mr. Boswell a number

8      of years dealing with prosecution.  I'll

9      stipulate.

10          THE COURT:  Thank you.

11          MR. LANDREAU:  Thank you, Mr. Armstrong.

12          THE COURT:  He would be qualified as an

13     expert then in his field.

14 Q   Mr. Boswell, let me show you what's been marked

15     State's Exhibit 1 and ask you can you recognize

16     that?

17 A   Yes, I can.

18 Q   And how do you recognize it?

19 A   I recognize this because at the time that I

20     received it, I placed a case number, an item

21     number, the date I received it and my initials on

22     the outside of the package.

23 Q   Now, after you received that item, have you or

24     anyone in your presence either altered, amended,

25     added to or taken anything from the contents of

1      that package prior to you conducting your tests?

2 A   No.

3 Q   Would you open the package for me, please, sir?

4      While you do that, let me ask you, was the

5      packaged sealed when you received it?

6 A   Yes, it was.

7 Q   Okay.

8            (Witness complies.)

9 Q   Now, do you recognize the package that you just

10      took out of the larger one?

11 A   Yes, I do.

12 Q   And was it in State's Exhibit 1 when you received

13      State's Exhibit 1?

14 A   Yes, it was.

15 Q   I'm going to mark the smaller package as

16      Exhibit 1-A and ask you did you perform any tests

17      on Exhibit 1-A?

18 A   Yes, I did.

19 Q   And for what purpose did you perform these tests?

20 A   The purpose of the tests was to identify the

21      off-white compressed substance that was present

22      in the sample -- plastic bag, identify it to see

23      if it had any controlled substances.

24 Q   And what tests did you perform?

25 A   I performed two different types of instrumental

1    analysis on this particular sample after I

2    obtained a weight.

3  Q  Would you describe very briefly what those tests

4    are?

5  A  Sure.  One of the first things that we want to

6    do, as I stated earlier, we will take a weight of

7    the sample.  At that particular time this sample

8    did have a weight of 0.17 grams.  So once the

9    weight is completed, then we will take a portion

10   of the sample, I will run it on an instrument

11   that we call the infrared spectrophotometer.

12   This particular instrument, we use it to help us

13   identify that particular or controlled substance

14   or substances that may be present in the sample.

15   At this particular time that instrument showed

16   the presence of cocaine in the base form.

17       This particular instrument is based on

18   purity, and when I say that, the purer your

19   samples, the better your instrument is going to

20   read that particular sample.  And from that

21   particular reading, we can take it and compare it

22   to a known sample or a known standard to see if

23   it actually matches.  This did match the cocaine

24   base, as I stated earlier.

25       Once I completed that, then I take another

1    portion of the sample, I would dissolve it in an

2    alcohol, run it on an instrument that we call the

3    gas chromatograph mass spectrometer or GCMS for

4    short, and this particular instrument is actually

5    two instruments.  Here we would take a portion of

6    the sample, we will inject it -- like I said, we

7    dissolve it in alcohol, we'd inject it on the

8    instrument.  This particular instrument will show

9    us or help us identify whether or not there's a

10   combination of drugs or whether or not there's

11   one or two drugs present.  And then once that

12   particular instrument which is the GC shows us

13   this, then the mass spectrometer would take that

14   same sample as it comes from the GC and pretty

15   much break it apart into small fragments or small

16   pieces, and from that it will identify different

17   compounds that may be found in that particular

18   sample.

19        On this particular sample, it did show the

20   presence of cocaine.

21   Q    Both tests showed cocaine?

22   A    Yes, they did.

23   Q    Based on those tests and your experience and

24   training, do you have an opinion as to what the

25   substance in State's Exhibit 1 and 1-A are?

1    A    Yes, I do.

2    Q    What is that, please, sir?

3    A    Based on my analysis, my conclusion was that the

4         compressed substance which was contained in the

5         Ziplock plastic bag was, in fact, cocaine in the

6         base form.

7    Q    Are you familiar with the type of cocaine known

8         as crack cocaine?

9    A    Yes, I am.

10   Q    Is that normally sold or produced in kind of a

11        rock or ball form?

12   A    Yes, it is.

13   Q    Now, during your testing, is it necessary for you

14        to break that down to test it?

15   A    Yes, it is.

16   Q    Okay.  So if this 1-A had come in as a solid

17        rock, so to speak, it would be broken down for

18        you to run those tests that you've just described

19        for us; is that correct?

20   A    Well, that's correct.

21   Q    Now, after you performed your tests, Sherwin,

22        what did you do with the substance?

23   A    Once I completed my analysis, I labeled the

24        plastic bag with the case number, my item number,

25        the date that I received it and my initials.  It

1         was then placed back into this plastic bag, and

2         then it was sealed with evidence tape with my

3         initials across the tape and placed into the

4         evidence return room until it was returned to the

5         Russell County Sheriff's Office.

6   Q   Other than this process of breaking down the rock

7         so you can test it, did you or anyone in your

8         presence change, alter the substance in any other

9         way?

10  A   No, they did not.

11  Q   Other than that part of the substance that may

12        have been used up in the testing process, was

13        anything taken or added to?

14  A   No, sir, it was not.

15  Q   Mr. Boswell, is it normal business practice in

16        your department to reduce your findings to

17        writing?

18  A   Yes, it is.

19  Q   Let me show you State's Exhibit 3 and ask you if

20        you recognize that document?

21  A   Yes, I do.

22  Q   And what is that, please, sir?

23  A   This is the Certificate of Analysis that we issue

24        out to the District Attorney's office and also to

25        the law enforcement agency.

```
 1   Q    And when was that dated?

 2   A    This was completed on the 9th of May, 2003.

 3   Q    So that would be the date you concluded your

 4        testing; is that correct?

 5   A    Actually, this is the date that the report was

 6        signed and mailed out.

 7   Q    And it reflects the results of your testing; is

 8        that correct?

 9   A    That's correct.

10   Q    And that was 0.17 grams of cocaine?

11   A    That's correct.

12   Q    Mr. Boswell, are you familiar with the schedule

13        of controlled substances in the State of Alabama?

14   A    Yes, I am.

15   Q    Is cocaine a controlled substance under Alabama

16        law?

17   A    Yes, it is.

18   Q    And is the substance contained in Exhibit 1 and

19        1-A a controlled substance under Alabama law?

20   A    Yes, it is.

21             MR. LANDREAU:  Your Honor, at this time we

22        move to introduce State's Exhibit 3.

23             MR. ARMSTRONG:  No objection.

24             THE COURT:  Be admitted and received.

25                  (State's Exhibit 3 was admitted in
```

1                        evidence.)

2            MR. LANDREAU:  Your witness, Mr. Armstrong.

3            MR. ARMSTRONG:  Thank you, Mr. Landreau.

4                    CROSS-EXAMINATION

5    BY MR. ARMSTRONG:

6    Q    Good morning, Mr. Boswell.  How you doing?

7    A    Fine.  And you?

8    Q    Good.  When did the Department of Forensic

9         Science receive State's Exhibit 1 and 1-A?

10   A    I received the exhibit on November the 15th,

11        2002.

12   Q    Now, did it come in a solid rock when you

13        received it?

14   A    My note said the bag is holding an off-white

15        compressed substance.  Yes, it did.

16   Q    And who received that; was it you?

17   A    Yes, I did.

18   Q    And do you recall when you visually saw it being

19        a solid rock?

20   A    Based on my photocopy of the evidence, it shows

21        the small plastic bag and it shows the small

22        solid compressed substance.

23   Q    And later you would have had to break it down to

24        do some testing; is that right?

25   A    Later we would cut pieces off of it, yes, I did.

1  Q    Now, when you received it in as a solid rock, did

2       you weigh it in?

3  A    I weighed it when I began my analysis.

4  Q    And how much was the weight again?

5  A    At the time that sample had a weight of 0.17

6       grams.

7  Q    0.17 grams.  Are you aware of what the weight in

8       grams is of a $20 piece of crack rock, the normal

9       weight in grams?

10 A    No, because they can vary.

11 Q    Have you seen what they can vary from?

12 A    I've seen it, but I cannot give you an exact

13      figure right now, exact numbers.

14 Q    Okay.

15           MR. ARMSTRONG:  I have nothing further, Your

16      Honor.

17           MR. LANDREAU:  No further for this witness.

18      May he be excused?

19           MR. ARMSTRONG:  I have no objection.

20           THE COURT:  Thank you.  Who's the State's

21      next witness?

22           MR. LANDREAU:  Call Sergeant Tom Franklin.

23

24

25

1      <u>THOMAS FRANKLIN</u>

2   was sworn and testified as follows:

3     <u>DIRECT EXAMINATION</u>

4 <u>BY MR. LANDREAU:</u>

5 Q State your full name, please, sir.

6 A Thomas Franklin.

7 Q Where are you employed?

8 A I'm employed at the Russell County Sheriff's

9   Department.

10 Q And in what capacity are you employed?

11 A I'm a sergeant over the investigative division.

12 Q And would that be a detective sergeant?

13 A Yes, sir.

14 Q Prior to your assignment as a detective sergeant,

15   did you have other duties within the sheriff's

16   department?

17 A Yes, sir, I did.

18 Q And what were they?

19 A I was initially assigned as a road deputy upon

20   coming to the sheriff's department in '96.  I

21   spent almost four years assigned as a special

22   agent with the Metro Narcotics Task Force working

23   drug cases, and then I came back to the sheriff's

24   department, was assigned briefly to patrol, and

25   then assigned to investigations.

1   Q   While you were with Metro Narcotics Task Force,

2       was that -- was your time devoted exclusively to

3       drug crimes?

4   A   Yes, sir, it was.

5   Q   Now, on September 16th of 2002, did you meet with

6       Jason Hathcock?

7   A   Yes, sir.

8   Q   And where did that meeting take place?

9   A   At the Russell County Sheriff's Department.

10   Q   Tell us, if you will, just generally, Sergeant,

11       how do you go about conducting a drug buy.  If

12       you want to make a case against somebody for

13       selling drugs, how do you go about it?

14   A   We initially identify who the suspect is.  Then

15       we go through several procedures, including

16       searching the informant, searching his vehicle,

17       following him to the site, obtaining a recording

18       so that we can listen to part of what's going

19       on.  And we also collect the evidence in a normal

20       way so that it can't be tampered with.

21   Q   Is it normal to use people who want some sort of

22       consideration for doing it?

23   A   Yes, sir.  Many times that's the case.

24   Q   And is it usually like Mr. Hathcock, wanting $50

25       off a traffic ticket, or is it --

1   A   No, sir, that's a rare case.  Normally, people

2         are charged with more serious, most of the time,

3         other drug crimes because they don't -- they're

4         not a case like an assault would be with a

5         victim, and the State has more discretion in

6         those type cases.

7   Q   In a narcotics investigation, would you prefer to

8         have someone who is selling or who simply

9         possesses the drugs as far as arresting them?

10   A   The sellers.  The people more up to the

11         distributors and the people that are bringing it

12         into our area.

13   Q   When you met with Mr. Hathcock on the 16th, where

14         did he tell you he could buy these drugs?

15   A   From on Masons Road.

16   Q   And did he have a name of the person he would be

17         able to buy them from?

18   A   Blackjack.

19   Q   Did he know Blackjack's name?

20   A   No, sir, he didn't.

21   Q   Were you familiar with an individual who went by

22         the nickname or street name of Blackjack?

23   A   Yes, sir, I was.

24   Q   And who's that individual?

25   A   James Willie Jackson.

```
 1   Q    Is Mr. Jackson in the courtroom today?

 2   A    Yes, sir, he is.

 3   Q    Would you point him out?

 4   A    He's the gentleman wearing the yellow shirt

 5        seated next to Mr. Armstrong.

 6   Q    Did you take any steps to see if the person you

 7        knew as Blackjack was the same person that Jason

 8        Hathcock knew as Blackjack?

 9   A    Yes, sir.  Using computer software, I made a

10        photographic lineup in which Mr. Jackson was

11        included in the lineup, and I read a preprinted

12        statement on the back of the form that we read to

13        people who look at a photographic lineup.

14   Q    Now, I have up here on the board State's Exhibit

15        7 which has been introduced into evidence.  Is

16        that the lineup that you showed to Mr. Hathcock?

17   A    Yes, sir, it is.

18   Q    And is there any process you go in selecting

19        these photographs?

20   A    We just try to find photographs that are a

21        likeness or at least, you know, somewhat

22        familiar.

23   Q    So you wouldn't put -- say if the suspect was a

24        black male, you wouldn't put him in there with

25        five white males as your lineup, would you?
```

1   A   No, sir.  Wouldn't put him in there with a white

2       female or a white male.  It would be of the same

3       race and somewhat likeness.

4   Q   Now, when you showed this to Mr. Hathcock, was he

5       able to pick out one of these individuals?

6   A   Yes, sir, he was.

7   Q   And who did he tell you in this lineup was the

8       man who was selling or that he could buy drugs

9       from?

10  A   He said number six was Blackjack.

11  Q   This individual?

12  A   Yes, sir.

13  Q   Now, did he know at the time what name went with

14      what photograph?

15  A   No, sir, he didn't.  It's on the inside of the

16      lineup for our knowledge and for when we get to

17      court purposes to know who the other people were.

18  Q   It would be here; right?

19  A   Yes, sir.

20  Q   Number six was James Willie Jackson in this

21      lineup?

22  A   Yes, sir.

23  Q   After Mr. Hathcock identified the Defendant as

24      being the person he could buy drugs from, what

25      did y'all do?  What happened next?

| 1 | A | Right after, I marked the back of the lineup |
| 2 | | stating that he had identified number six, and I |
| 3 | | wrote in the remarks that he identified him as |
| 4 | | Blackjack. |
| 5 | Q | That would be on the very back of this lineup |
| 6 | | card? |
| 7 | A | Yes, sir, it should be. |
| 8 | Q | I believe it says CI, 9/16, identified him as |
| 9 | | Blackjack; is that correct? |
| 10 | A | Yes. |
| 11 | Q | There's another date on there, 9/24.  Was that a |
| 12 | | different CI? |
| 13 | A | Yes, sir, it was. |
| 14 | Q | Now, once you finished with the lineup, what, if |
| 15 | | anything, occurred next? |
| 16 | A | Well, I had several investigators and Sergeant |
| 17 | | Johnson that was assisting me, and I tasked |
| 18 | | different other people to assist with certain |
| 19 | | things to get ready.  Sergeant Johnson was to |
| 20 | | search the informant, make sure that he didn't |
| 21 | | have any contraband.  I searched the informant's |
| 22 | | vehicle myself.  I photocopied $20 of Russell |
| 23 | | County Sheriff's Department funds and gave them |
| 24 | | to Mr. Hathcock.  And we fitted -- Sergeant |
| 25 | | Johnson fitted Mr. Hathcock with an electronic |

1    monitoring device so that we would be able to

2    hear what was going on.  I also got another team

3    up that was composed of Lieutenant Taylor and

4    Investigator Goodrich and Investigator Pell that

5    were to assist with surveillance in this case.

6  Q  Let me ask you this, you assigned Sergeant

7    Johnson to search the informant?

8  A  Yes, sir, I did.

9  Q  Did Sergeant Johnson report back to you that he

10   was satisfied that the informant did not have

11   drugs on him or that he was unsatisfied?

12  A  Yes, sir.  He stated that Mr. Hathcock did not

13   have any contraband on his person.

14  Q  And you personally searched Hathcock's car?

15  A  Yes, I did.

16  Q  Was that for the same purpose?

17  A  Yes, sir, it was.

18  Q  And did you find any drugs or contraband in Mr.

19   Hathcock's car?

20  A  No, sir, I didn't.

21  Q  Were you satisfied Mr. Hathcock did not have any

22   drugs in that car?

23  A  Yes, sir, extremely.

24  Q  Y'all placed a wire on him.  Now, the way this

25   wire operates, can y'all hear what's going on?

| | | |
|---|---|---|
| 1 | A | Yes, sir, we can. |
| 2 | Q | We've heard a tape of what occurred there at |
| 3 | | Masons Road.  Would you have been able to hear |
| 4 | | that while it was going on? |
| 5 | A | Yes, sir, I did hear it. |
| 6 | Q | And that tape accurately depicts what you |
| 7 | | overheard over the wire? |
| 8 | A | Yes, sir. |
| 9 | Q | Did y'all follow him to Masons Road? |
| 10 | A | Yes, sir. |
| 11 | Q | And Mr. Hathcock indicated that when he turned on |
| 12 | | Masons off of, I believe, Brickyard that y'all |
| 13 | | didn't turn on the road with him? |
| 14 | A | No, sir, we didn't.  It's a very short road, and |
| 15 | | we wouldn't have turned on the road with him. |
| 16 | Q | Let me ask you, under the numbering system that |
| 17 | | Russell County uses for houses, Number 7 would be |
| 18 | | less than a tenth of a mile up the road, wouldn't |
| 19 | | it? |
| 20 | A | Yes, sir, a very short distance. |
| 21 | Q | And y'all would have stayed on Brickyard while he |
| 22 | | went up to the house? |
| 23 | A | Yes, sir. |
| 24 | Q | How long was he gone? |
| 25 | A | A matter of seconds until, you know, we heard him |

1     speak the name of Blackjack and he answered or he

2     said what are you doing Blackjack, and he said

3     chillin', I believe.

4  Q   Now, between the time he turned onto Masons and

5     the time he went up and talked to Blackjack, I

6     believe the tape was running, wasn't it?

7  A   Yes, sir. As soon as he turned onto the street,

8     onto Masons Road, we would have turned the

9     recording on so that we wouldn't miss anything.

10  Q   So if he had stopped or opened the door or gotten

11     out of the car, that would have been heard on

12     that tape, wouldn't it?

13  A   Yes, sir. If he would have spoke with anyone, it

14     would have been monitored.

15  Q   Did you hear that?

16  A   No, sir.

17  Q   If he had talked to someone else before he got up

18     there, that would have been on the tape?

19  A   Yes, sir.

20  Q   Is it on there?

21  A   No, sir.

22  Q   Well, what did he do after he bought these drugs

23     from the Defendant?

24  A   He left and came back out to Brickyard Road,

25     where he followed us to the Industrial Park and

1   turned the cocaine over to me.

2   Q   Why didn't you just take it from him there on

3       Brickyard Road?

4   A   Well, in this specific area, if we're anywhere

5       close, then normally the people know about it.

6       If we turn on one of the streets off Brickyard

7       Road or even are seen on Brickyard Road, it

8       doesn't take very long for people to know the

9       police are in the area.

10  Q   Now, let me ask you, Masons Road, is it a dead

11      end, does it go down and turn into another road,

12      or is it a loop?

13  A   It goes down and it comes to a stop sign where

14      you can make a right or a left turn.  Either way,

15      you come back out onto Brickyard Road.

16  Q   Did Mr. Hathcock come back out the way he went

17      in, or did he loop around?

18  A   No, sir.  He went on to the stop sign and took a

19      left and came out.

20  Q   After he drove off from 7 Masons Road, did you

21      drive down Masons Road?

22  A   Yes, sir.  Actually, when he would have made the

23      turn, he would have passed where myself and

24      Sergeant Johnson were.  So as soon as he came to

25      the stop sign, we would have been turning to go

 1      past the trailer and the little camping area they

 2      have out there or little barbecue area.

 3   Q  When you met with Mr. Hathcock, did he describe

 4      to you what Blackjack was wearing?

 5   A  Yes, sir, he did.

 6   Q  What did he say he was wearing?

 7   A  He said that he had on a red jersey.

 8   Q  Did he describe the pants?

 9   A  Yes, sir.  He said that he had on a red jersey

10      and a black pair of pants.

11   Q  How long after the sale was completed when you

12      rode by Number 7 Masons Drive?

13   A  Maybe 10, 15 seconds from when he would have been

14      pulling out of the driveway, we would have been

15      driving by.

16   Q  Well, when you drove by, did you see an

17      individual in the yard dressed in a red shirt and

18      black pants?

19   A  Yes, sir, I did.

20   Q  And do you see that subject here in the courtroom

21      today?

22   A  Yes, sir, I do.

23   Q  And who is that?

24   A  James Willie Jackson.

25   Q  Same person?

| | | |
|---|---|---|
| 1 | A | Yes, sir. |
| 2 | Q | Did you see a second individual in that yard that |
| 3 | | wasn't wearing a shirt? |
| 4 | A | Yes, sir. |
| 5 | Q | Do you know who that was? |
| 6 | A | No, sir.  I believe I might know who it was, but |
| 7 | | I wasn't positive about his identity. |
| 8 | Q | So you saw a person fitting the description |
| 9 | | Hathcock gave you as far as clothing.  You also |
| 10 | | saw a person fitting the description of the |
| 11 | | person he says Jackson got the drugs from? |
| 12 | A | Yes, sir. |
| 13 | Q | Now, when you met him down in the Industrial |
| 14 | | Park, did he give something to you? |
| 15 | A | Yes, sir. |
| 16 | Q | Did Mr. Hathcock? |
| 17 | A | Yes, sir, he did. |
| 18 | Q | Did y'all follow him down to the Industrial Park? |
| 19 | A | Yes, sir, we did. |
| 20 | Q | And what did he give you there at the Industrial |
| 21 | | Park? |
| 22 | A | He gave me a piece of crack cocaine that he had |
| 23 | | bought, what he had recovered from 7 Masons Road. |
| 24 | Q | Let me ask you to take a look at State's Exhibit |
| 25 | | 1 and 1-A and ask you if you recognize those |

1      items?

2  A    Yes, sir, I do.

3  Q    And were you given either of those items by Mr.

4      Hathcock?

5  A    Yes, sir, I was.

6  Q    Which one were you given by him?

7  A    State's Exhibit -- what's enclosed in State's

8      Exhibit 1-A.

9  Q    When he gave it to you, was it in any kind of

10     bag?

11  A   No, sir, it wasn't.

12  Q   Was it one piece, or was it in several pieces?

13  A   It was one piece.

14  Q   And what did you do with it?

15  A   I placed it in this plastic bag and placed my

16     initials TF and the date 9/16/02 on the back.

17  Q   So you put your initials and date you put it in

18     there?

19  A   Yes, sir.

20  Q   And then what did you do with it?

21  A   I made a -- I used a presumptive chemical test

22     that we use to detect the presence of cocaine,

23     and then I sealed this bag and also sealed the

24     evidence bag that I placed it in.

25  Q   And then what did you do with the evidence bag?

1    A    I turned it over to -- I secured it in the locker

2         for the night, and then I turned it over to

3         Investigator Pell on September 17th.

4    Q    Do you have an individual locker where you can

5         keep things on a temporary basis?

6    A    Yes, sir.  Well, when I say locker, it's

7         actually -- I have a safe, and I also have a

8         locked file cabinet that's inside of my office.

9    Q    Anyone else have keys to that or access to it?

10   A    No, sir.

11   Q    So let me ask you this, Sergeant, from the time

12        you received State's Exhibit 1-A or the contents

13        of 1-A from the informant until you turned it

14        over to Investigator Pell, did you or anyone in

15        your presence change or alter the substance in

16        any way?

17   A    No, sir.

18   Q    Did you add anything -- did you or anyone in your

19        presence add anything to it or take anything away

20        from it?

21   A    No, sir.

22   Q    When you turned it over to Investigator Pell, was

23        it in the same condition as when you received it

24        other than for the fact you had placed it in a

25        plastic bag and then into the larger envelope?

1    A    No, sir.

2         MR. LANDREAU:  Your Honor, at this time we

3         move to introduce State's Exhibit 1 and 1-A.

4         MR. ARMSTRONG:  No objection.

5         THE COURT:  Be admitted and received.

6              (State's Exhibits 1 and 1-A were

7              admitted in evidence.)

8    Q    Now, Sergeant Franklin, did y'all -- after you

9         got these drugs from your informant, did you go

10        up and arrest the Defendant right then?

11   A    No, sir, we didn't.

12   Q    Why not?

13   A    Because a lot of times we try to work more than

14        one case at a time.  We may do several buys at a

15        location to arrest other individuals or we may

16        use an informant to buy from other places, and if

17        we go to arrest someone right then, there's no

18        way to work a longer type investigation.

19   Q    So you made a decision as an investigator not to

20        make the arrest right then so you may be able to

21        make other cases?

22   A    That's correct.

23   Q    Well, let me ask you, when Mr. Hathcock came back

24        and met you and gave you the drugs, did he have

25        your $20 bill on him?

1   A    No, sir, he didn't.

2   Q    Do you know what happened to the $20 bill?

3   A    Yes, sir.  It was used to purchase the cocaine.

4        MR. ARMSTRONG:  Objection.

5   A    I don't think they would have given it to him.

6        MR. ARMSTRONG:  Objection.  He doesn't have

7        personal knowledge as to what was done with that

8        $20 bill.  I object to that.

9        THE COURT:  I'll sustain the objection.

10  Q    Let me ask you this, did Mr. Hathcock have any

11       other money on him when he went up there to buy

12       the drugs?

13  A    No, sir, he didn't.

14  Q    So he had money when he went up and made the

15       recording, we hear the conversation, and he

16       didn't have it when he came back?

17  A    That's right.

18  Q    Okay.  Now, did you later have an opportunity to

19       interview or question James W. Jackson?

20  A    Yes, sir, I did.

21  Q    And when did that take place?

22  A    It took place on the 9th of January, 2003.

23  Q    Prior to him being interviewed, had he been

24       arrested?

25  A    Yes, sir, he had.

99

```
1    Q    Was he advised about his rights by anyone?

2    A    Yes, sir.  He was advised of what's commonly

3         known as Miranda rights by Investigator Goodrich.

4    Q    And were you present or did you observe

5         Investigator Goodrich do that?

6    A    I was able to monitor it from a --

7              THE COURT:  Was this part of the

8         stipulation?

9              MR. LANDREAU:  Yes, sir, it was.

10             MR. ARMSTRONG:  Yes, Your Honor.  We'll

11        stipulate to that.

12   Q    Is State's Exhibit 6 the Waiver of Rights form

13        that the Defendant signed?

14   A    Yes, sir.

15             MR. LANDREAU:  Move to introduce State's

16        Exhibit 6.

17             MR. ARMSTRONG:  No objection.

18             THE COURT:  Be admitted and received.

19                  (State's Exhibit 6 was admitted in

20                   evidence.)

21   Q    And after signing that form and being read his

22        rights, he agreed to give a statement to you?

23   A    Yes, sir, he did.

24   Q    Now, was that statement recorded?

25   A    Yes, sir.  It was video and audio recorded.
```

1   Q   Let me show you State's Exhibit 4.  Is this a

2       copy of the videotaped statement that you took

3       from the Defendant?

4   A   Yes, sir, it appears to be.

5   Q   And have you reviewed that video copy that was

6       made of the statement?

7   A   Yes, sir.  I viewed the original, yes, sir.

8   Q   And you were present during the conversation?

9   A   Yes, sir, I was.

10   Q   And does the videotape fairly and accurately

11       reflect the conversation or interview between you

12       and the Defendant in this case?

13   A   Yes, sir, it does.

14       MR. LANDREAU:  Your Honor, at this time we

15      move to introduce State's Exhibit 4 and ask that

16      it be published.

17       MR. ARMSTRONG:  No objection.

18          (State's Exhibit 4 was admitted in

19           evidence.)

20       THE COURT:  Let me speak to the attorneys a

21      minute.

22       MR. LANDREAU:  Yes, sir.

23          (Bench conference, off record.)

24          (Videotape played to the jury.)

25   Q   Sergeant Franklin, that is an accurate -- that

1        tape depicts your conversation with him; is that

2        correct?

3    A   Yes, sir.  That was what was said.

4    Q   It appears to me that in one place in that tape

5        where you're saying, look, I know you may not be

6        the main man, you may not be making all the

7        money, in fact, I think you said you probaby just

8        getting part of the dope, did he turn to your

9        fellow investigator and say, see, I told you

10        that's what I was doing?

11   A   Yes, sir.  That's exactly what he said.

12   Q   And that other person in that room, who was he?

13   A   Investigator Goodrich.

14   Q   Masons Road is in Russell County?

15   A   Yes, sir, it is.

16            MR. LANDREAU:  Your witness, Mr. Armstrong.

17            MR. ARMSTRONG:  Thank you, Mr. Landreau.

18                    CROSS-EXAMINATION

19   BY MR. ARMSTRONG:

20   Q   Investigator Franklin, who gave the informant $20

21        of Russell County funds to purchase crack

22        cocaine?

23   A   I did.

24   Q   I've marked this as Defendant's Exhibit 1.  Do

25        you recognize this?

1    A    Yes, sir.

2    Q    What is that?

3    A    This is one of the supplemental reports that I

4         did in the case.

5    Q    You actually did that one?

6    A    Yes, sir, I did.

7    Q    And does that report accurately and correctly

8         depict what you reported that was fresh in your

9         mind at the time?

10   A    Yes, sir.

11   Q    Do you know when you made that?

12   A    When I made the report?

13   Q    Yeah, when you made this report.

14   A    I believe it was late in the evening of the 16th.

15   Q    Late in the evening of the 16th?

16   A    I mean, it would have been after the buy.

17   Q    Right, okay.  And you hadn't altered or amended

18        that in any way, have you?

19   A    No, sir.

20   Q    And that was your report that you made; correct?

21   A    Yes, sir.

22            MR. ARMSTRONG:  Your Honor, I ask

23        Defendant's Exhibit 1 be admitted into evidence.

24                (Defendant's Exhibit 1 was admitted in

25                    evidence.)

1  A  Actually, let me -- can I clarify that, Judge?

2  Q  What do you want to clarify?

3  A  Actually, what I wrote was an initial report

4     that's on a uniform incident/offense report, and

5     this was typed in by the secretary, so, you know,

6     this wasn't my actual original.  It would have

7     said incident/offense report.  This was typed in.

8  Q  Do you have that incident/offense report in your

9     case file?

10 A  I believe Mr. Landreau had a copy of it.

11          MR. LANDREAU:  I do.  I believe I furnished

12     you a copy, Mr. Armstrong.

13 Q  Well, you're not talking about the Alabama

14     uniform arrest report, just that?

15 A  No, sir.  It would say Alabama uniform

16     incident/offense report.

17 Q  Is this what you're talking about here?

18 A  Yes, sir.

19 Q  And that's the report you made; is that correct?

20 A  Yes, sir.

21 Q  And from this report, you're indicating that

22     someone with your office typed Defendant's

23     Exhibit 1 based on this report; is that correct?

24 A  Yes, sir.  Our investigators' secretary typed it.

25          MR. ARMSTRONG:  Just for identification

1        purposes, Judge, I know this is the D.A.'s copy,

2        but I'm going to mark this as Defendant's Exhibit

3        3, and I know the D.A. will need a copy of this

4        after the fact.

5            MR. LANDREAU:  What happened to Exhibit 2?

6            MR. ARMSTRONG:  Well, I've already marked

7        one that's two.

8            MR. ARMSTRONG:  Again, Judge, I ask that

9        Defendant's Exhibit 1 be admitted into evidence

10       which is based on --

11           THE COURT:  It's already been admitted.

12           MR. ARMSTRONG:  Okay.

13  Q   Now, in Defendant's Exhibit 1, who searched the

14        vehicle for any contraband?

15  A   I searched the vehicle.

16  Q   And describe to the ladies and gentlemen of the

17        jury how you searched the vehicle.

18  A   I initially searched the vehicle by looking

19        through the interior, making sure that there was

20        no dangerous items, looking into anywhere that

21        the -- under the mats, under the -- anywhere that

22        I know as an investigator that there may be --

23        any contraband could be held.  Then by use of the

24        canine, I also put him through the vehicle, and

25        he detected no signs of any narcotics.

1   Q   Did you indicate that you used the canine in any

2       Defendant's Exhibit 1 or Defendant's Exhibit 3?

3   A   No, sir.  I just indicated that there was a

4       search of the vehicle made and that there was no

5       contraband found.

6   Q   And about what time did you search that vehicle;

7       do you recall?

8   A   It would have been approximately 6:00.

9   Q   Now, what time did y'all -- you heard testimony

10      earlier from Sergeant Johnson both you and he

11      left together from the Russell County Sheriff's

12      Department; is that correct?

13   A   Yes, sir, it is correct.

14   Q   And you followed the CI at that point; is that

15      correct?

16   A   Yes, sir.

17   Q   What time did you leave the Russell County

18      Sheriff's Department?

19   A   Again, I didn't know an exact time, but it would

20      have been about 6:15.

21   Q   Are you aware of the time that the alleged

22      transaction took place between the CI and my

23      client?

24   A   Approximately 6:25 p.m.

25   Q   And from the time of the transaction completed,

```
 1         how long did it take for the informant to turn

 2         the alleged crack cocaine over to a law

 3         enforcement officer?

 4    A    Approximately five to 10 minutes.

 5    Q    And who did the CI turn it over to?

 6    A    It was turned over to myself.

 7    Q    To you.  How long have you been a law enforcement

 8         officer, Sergeant Franklin?

 9    A    Approximately seven years.

10    Q    And in that seven years, have you worked other

11         drug cases, particularly, crack cocaine cases?

12    A    Yes, sir.

13    Q    About how many, just an estimate?

14    A    200, 300.  That's just an estimate.

15    Q    Okay.  With your experience of working two to 300

16         crack cocaine cases, are you aware of how many

17         grams a $20 piece of crack rock would be,

18         normally?

19    A    It can vary anywhere from point one gram up to

20         about point three or four grams depending on -- a

21         lot of times it depends on the purity and what

22         it's been cut with and added to it when it's put

23         in rock form.

24    Q    So from point one to point three?

25    A    Point one to point four, or point five I've seen
```

1    it up to.

2  Q   About how many of those two to 300 cases you've

3    dealt with was a $20 piece of crack rock?

4  A   I would say approximately half of them.  Maybe

5    100 to 150.

6  Q   And on average of those 100 to 150 cases, what

7    was the average weight in grams of the $20 piece

8    of crack rock, on average?

9        MR. LANDREAU:  Judge, I object to the

10    relevance of this.

11        MR. ARMSTRONG:  Judge, it's relevant to the

12    case.  I'm going to tie it up later.

13        MR. LANDREAU:  Judge, perhaps Mr. Armstrong

14    could tell us why --

15        THE COURT:  Well, if he has an opinion, he

16    may or may not have an opinion of that.  I don't

17    know, but I'll let you answer the question.

18  Q   On average of those 100 to 150 cases, what was

19    the average weight in grams of a $20 piece of

20    crack rock?

21  A   I can't give you an exact figure.  I would say

22    that the average would be between point one and

23    probably point three.

24  Q   Do you know the weight in grams of this piece of

25    crack rock that you got?

| | | |
|---|---|---|
| 1 | A | Yes, sir, I have two.  I have the weight, the |
| 2 | | initial weight that I found, and then the weight |
| 3 | | of the laboratory analysis. |
| 4 | Q | What was the initial weight you found? |
| 5 | A | It was -- approximate weight was point four |
| 6 | | grams. |
| 7 | Q | And how did you determine that? |
| 8 | A | I used a scale like you can buy at any store. |
| 9 | Q | Did you weigh the crack rock itself, just place |
| 10 | | the rock on the scale? |
| 11 | A | I don't recall.  I may have placed it on there |
| 12 | | with the bag also.  Normally, I try to weigh it, |
| 13 | | you know, just the rock, but on occasion I've |
| 14 | | weighed it with the bag because it doesn't change |
| 15 | | the weight of it that much. |
| 16 | Q | So you have a habit of normally weighing just the |
| 17 | | rock? |
| 18 | A | I try to. |
| 19 | Q | Okay. |
| 20 | A | Yes, sir. |
| 21 | Q | And assuming you followed that habit, assuming |
| 22 | | you did, you came up with a weight of point four |
| 23 | | grams? |
| 24 | A | Yes, sir.  An approximate weight of point four |
| 25 | | grams. |

1    Q    With a street value of what?

2    A    $40.

3    Q    And the Department of Forensic Science, when they

4         got it, how much did it weigh?

5    A    It weighed point one seven grams.

6    Q    And you heard the testimony of the forensic

7         scientist in here today; correct?

8    A    Yes, sir.

9    Q    That he weighed it right when he got it still in

10        rock form?

11   A    Yes, sir.

12   Q    And that's a difference, would you agree, of

13        point two three grams?

14   A    Yes, sir.  And his would be absolutely the most

15        accurate.  His scales are certified and mine are

16        not.  They could be off at any time.

17   Q    Okay.  In your experience as a law enforcement

18        officer, who has dealt with numerous drug cases,

19        is it your experience that a seller of drugs

20        would give a buyer more or less drugs than what

21        the buyer actually paid for?

22   A    Again, it depends on the purity of the drugs.  If

23        the drugs had been broken down a lot and they're

24        less pure, then they're liable to get an

25        extensive amount.  If they're real pure, then

1    they may get a smaller amount.  It varies.

2 Q Let me put it this way, if you have a buyer ask

3    for a 20 and the seller gave the buyer $20, would

4    it be normal, based on your experience, for the

5    seller to give the buyer $40 worth of crack

6    cocaine?

7 A Again, it varies on the purity of the drugs

8    coming from the supplier down, you know, how much

9    is going out.  There will be more drugs would

10   require to achieve the amount of high that would

11   be $20.

12 Q Okay.  But you know that you gave the informant

13   $20?

14 A Yes, sir.

15 Q Correct?

16 A Yes, sir.

17 Q And you heard testimony, which we have

18   conflicting testimony between Sergeant Johnson

19   and the CI about the CI being searched, and

20   apparently, he did not have any more money; is

21   that correct?

22 A Yes, sir.  He did not have any more money.

23 Q Before the alleged transaction; correct?

24 A Yes, sir.

25 Q So all he's got is $20.  But according to your

1       report, he got $40 worth of crack, the way you

2       weighed it, for $20?

3    A  No, sir.

4           MR. LANDREAU:  Judge, I object.  That's not

5       what this witness has testified to.

6           THE COURT:  The jurors will remember the

7       testimony of the witnesses, and if any of the

8       attorneys or parties state something other than

9       what the testimony is, then the jurors will

10      consider only what the testimony was or elicited

11      from the witness stand.

12   Q  Well, your earlier testimony, Sergeant Franklin,

13      was that on average from the cases that you have

14      worked, an average rate of a $20 piece of crack

15      cocaine is point one to point three.  And you

16      weighed it as point four; is that correct?  Did

17      you weigh it as point four initially; is that

18      correct?

19   A  Yes, sir.  I weighed it at point four grams, that

20      is correct.

21   Q  Now, you heard the CI testify in here this

22      morning; is that correct?

23   A  Yes, sir, I did.

24   Q  And you heard him testify that no one searched

25      him or his vehicle after this alleged

1           transaction; is that correct?

2     A     Yes, sir.

3     Q     Did anyone search him or his vehicle after the

4           alleged transaction?

5     A     His vehicle was searched by me and there was a

6           pat-down search, but I did not do a strip search

7           of him after the actual transaction took place.

8     Q     So after the transaction.  And your testimony is

9           you searched him, a pat-down, and searched his

10          vehicle; correct?

11    A     I searched the cockpit area of his vehicle, and

12          by that I mean, anywhere that he could reach in

13          the vehicle I searched, and I also searched as a

14          pat-down search of him.  I did not conduct what

15          we term a strip search in the public.

16    Q     So the CI's testimony that he wasn't searched or

17          his vehicle is not true; is that correct?

18    A     Yes, sir.  He's mistaken about that.

19    Q     When was the warrant obtained in this case?

20    A     It was obtained a couple of days later.  Do you

21          want me to refer to my notes for the exact date?

22    Q     Yes, sir, please.

23    A     A warrant was obtained on Wednesday, September

24          the 18th of 2002.

25    Q     Which is approximately two days later; is that

1     correct?

2  A   Yes, sir, that's correct.

3  Q   Do you have the warrant with you there?

4  A   I don't know.  That's my supplement saying that I

5     had a warrant obtained.  I can see, I may have

6     the actual copy of the warrant.

7  Q   Okay.

8  A   Yes, sir.  I do have a copy of the warrant.

9  Q   May I see that, please?

10           (Witness complies.)

11  Q   On this warrant, is there an address indicated

12     for Mr. Jackson?

13  A   Yes, sir.

14  Q   And what address is that?

15  A   7 Masons Road.

16  Q   Did you do any investigation to confirm or deny

17     that that was his address?

18  A   I knew it to be his address.

19  Q   You knew that to be his address, 7 Masons Road?

20  A   Yes, sir.

21  Q   And you knew that at the time you made the

22     warrant, September 18, 2002?

23  A   Yes, sir.

24  Q   When did y'all arrest him?

25  A   He was arrested on the 4th day of January in

1       2003.

2    Q  Over three months later?

3    A  Yes, sir.

4    Q  Correct?

5    A  Yes, sir.

6    Q  Y'all knew in y'all's mind that my client had

7       committed a crime, you didn't arrest him that

8       evening.  You knew where he lived, but y'all

9       didn't arrest him till three months later.  Why?

10   A  Because every time we would drive up to Number 7

11      Masons Road, he would run.  There were several

12      occasions that we had went there, and, normally,

13      he would either be out by the barbecue area or

14      would be standing in the front door of this

15      trailer.  And it sits up on a hill with a wooded

16      area behind it, and by the time we would get any

17      cars up or even get people on foot up there, he

18      would have run out back into the wooded area, and

19      it was extremely hard to catch him.  He can run

20      pretty fast.

21   Q  You look like a pretty healthy guy.  You couldn't

22      run after him?

23   A  No, sir.  Back a few years ago, I could chase

24      several people down, but now with the gear that

25      we have to wear, I don't chase a whole lot of

1    people down.  I can still catch a few.

2  Q  Well, about how many times did you go up there, I

3    guess -- scratch that.  Let me rephrase the

4    question.  How many times did you attempt that

5    you're aware of to execute that warrant?

6  A  Maybe 10 or 12, 15 times myself.  In addition, I

7    asked the housing -- excuse me, the Phenix City

8    officers that work narcotics to attempt to serve

9    the warrant.  And I also asked the Metro

10    Narcotics agents to attempt to serve the

11    warrant.  I know on at least two or three

12    occasions the Phenix City police officers

13    attempted also to serve him.

14  Q  And all those attempts y'all couldn't arrest my

15    client?

16  A  No, sir.

17  Q  Okay.  Not until January 4th, 2003; is that

18    correct?

19  A  That's correct.

20  Q  Now, you and Sergeant Johnson left from the

21    Russell County Sheriff's Department following the

22    CI; correct?

23  A  Along with the other surveillance team, yes, sir.

24  Q  And you and Sergeant Johnson, I believe, were in

25    a black Jeep Cherokee; is that correct?

```
 1    A    No, sir.  We were in a green Jeep Cherokee.

 2    Q    Now, did you personally see the transaction take

 3         place?

 4    A    No, sir, I didn't.

 5    Q    Are you aware if any other law enforcement

 6         officers saw the transaction take place?

 7    A    No, sir.  Myself being the lead agent, I'm not

 8         aware of any law enforcement officer that

 9         actually eyewitnessed the transaction.

10    Q    So, to your knowledge, the only person we have

11         that witnessed it is the CI; is that correct?

12    A    Yes, sir.  Him, Mr. Jackson, and the other couple

13         of people that were there.  We only monitored or

14         were able to hear the transaction.

15    Q    Did you interview any of those other people that

16         were there?

17    A    No, sir.  We were not able to locate any of them

18         to interview them.

19    Q    Now, you testified earlier for Mr. Landreau that

20         Mr. Landreau said you could hear on the audiotape

21         that Mr. Hathcock got out of the car or stopped

22         the vehicle.  You would be able to hear that on

23         the videotape; correct?

24    A    I don't know that I --

25    Q    I mean, on the audiotape; correct?
```

1   A    I wouldn't have testified, I don't think, that

2        you would be able to hear the vehicle if it

3        stopped.  If someone stopped and talked to

4        another individual, you would be able to hear

5        it.  And if the door opened, then it's a

6        distinctive noise that you hear on a bug.  So

7        yes, sir, I believe that was my testimony.

8   Q    But during the time he was driving up to 7 Masons

9        Road and the time he came back, you wouldn't have

10       been able to see what he was doing in the

11       vehicle, would you?

12  A    No, sir.

13  Q    Okay.

14  A    I would not.  I was able to see him arrive at the

15       residence, but I was not able to see -- witness

16       the transaction.

17  Q    Okay.  And Sergeant Johnson was riding with you;

18       correct?

19  A    Yes, sir, he was.

20  Q    And you were present during Sergeant Johnson's

21       testimony today; correct?

22  A    Yes, sir, I was.

23  Q    And I think your testimony was my client was

24       wearing a red shirt; is that correct?

25  A    Yes, sir, it was.

1  Q  Do you know why Sergeant Johnson said my client

2     was wearing a white shirt?

3  A  No, sir, I don't.  He may have been mistaken.  It

4     was almost a year.

5  Q  But y'all were in the same vehicle?

6  A  Yes, sir.  We were in the same vehicle.

7  Q  And y'all rode by, I think you testified, 15 to

8     20 seconds after the transaction took place;

9     correct?

10 A  Yes, sir.

11 Q  And both of you laid eyes on my client; is that

12    correct?

13 A  I don't know --

14 Q  Did you lay eyes on my client?

15 A  Yes, sir.

16 Q  Your testimony is he was wearing a red shirt?

17 A  Yes, sir.

18 Q  And again at that point when you drove by, was my

19    client running?

20 A  No, sir, not at that time.

21 Q  Well, why didn't you get out and arrest him then,

22    Sergeant Franklin, if you knew he had committed a

23    crime?

24 A  Because we try to be structured with the way that

25    we do these operations.  And it would not be

1    protocol for myself and Sergeant Johnson, number

2    one, because we wasn't planning to arrest him

3    then because we may make other buys there or may

4    use the informant more, and, number two, it would

5    be a safety issue while we were also monitoring

6    the informant's activity to get out and attempt

7    to make an arrest when we were not prepared to

8    make an arrest at that time.

9  Q    Were y'all armed?

10 A    Yes, sir.

11 Q    And the other agents that were with you in the

12      other vehicles, were they armed?

13 A    Yes, sir.

14 Q    And you're saying it wasn't protocol to make an

15      arrest at that time; was that your testimony?

16 A    Yes, sir.

17      MR. LANDREAU:  Judge, I object.  That wasn't

18      his testimony.

19      MR. ARMSTRONG:  Well, he just said yes,

20      sir.

21 Q    So it's not protocol when someone commits a crime

22      to arrest them right then; is that what you're

23      testifying to?

24 A    What I'm testifying to is that we have an

25      operational plan that we put together, the

VOLUME 2

COURT OF CRIMINAL APPEALS NO. _____ CR-02-2200 _____

# Appeal To Alabama Court of Criminal Appeals

FROM

## Circuit Court of Russell County, Alabama

CIRCUIT COURT NO _____ CC-99-115.61 _____

CIRCUIT JUDGE _____ CC-2003-378 _____

| Type of Conviction/ Order Appealed From: | SENTENCING |
| Sentence Imposed: | 22 YEARS |

Defendant Indigent:   ☑ YES   ☐ NO

JAMES W. JACKSON

**Name of Appellant**

JEREMY ARMSTRONG                334-291-0410
(Appellant's Attorney)                              (Telephone No.)
1619 BROAD STREET
(Address)
PHENIX CITY,            AL            36868
(City)                        (State)                        (Zip Code)

V.

STATE OF ALABAMA

**Name of Appellee**

(State represented by Attorney General)

NOTE: If municipal appeal, indicate above, and enter

name and address of municipal attorney below.

_____

_____

(For Court of Criminal Appeals Use Only)



EXHIBIT
RX-1

```
 1            supervisors and the lead agents put together, and
 2            we make a plan of what we are going to do when we
 3            get there, and it is not procedure for us to
 4            change that in the middle of an operation unless
 5            there is extenuating circumstances.
 6    Q       Let me go to this video that we just saw when you
 7            came in and you were talking with my client.  Did
 8            you ever hear on that video that my client said
 9            this is what he did in this particular
10            transaction?  Did you hear that?
11    A       I heard him agree with me that he does make
12            drug -- arrange drug purchases at that location.
13    Q       Did you hear him say that he did on this
14            particular occasion?
15    A       No, sir.  I don't recall that I even questioned
16            him on this particular occasion did you sell
17            drugs.  I don't think I posed that question to
18            him.
19    Q       About how many times did he say to you I smoke
20            dope, I don't sell dope?  About how many times do
21            you think he said that in that tape?
22    A       He said it at least a couple of times.  I didn't
23            count the number of times.
24                 MR. ARMSTRONG:  One moment, Your Honor.
25                      (Brief pause.)
```

1          MR. ARMSTRONG:  Nothing further at this

2    time, Your Honor.

3          MR. LANDREAU:  Just very few questions.

4              REDIRECT EXAMINATION

5  BY MR. LANDREAU:

6  Q    Russell County has a dog trained to detect drugs;

7      is that correct?

8  A    Yes, sir, they do.

9  Q    And you're that dog's handler?

10  A    Yes, sir, I am.

11  Q    And you used that dog in connection with the

12      search of the informant and the informant's

13      vehicle; did you not?

14  A    I used it in connection with the informant's

15      vehicle search.

16  Q    Dog didn't alert to show there were any drugs in

17      there; right?

18  A    No, sir, he didn't.

19  Q    Now, let me ask you something, because I'm a

20      little confused about all this 20, 40 grams

21      business.  You give the man $20 and he gives you

22      one rock of cocaine; right?

23  A    Yes, sir.

24  Q    Now, how much that rock weighs can depend, as you

25      said, on the purity of it; right?

```
 1   A   Yes, sir.

 2   Q   Can also depend on supply and demand?

 3   A   Very much so.

 4   Q   Y'all make a lot of arrests for people selling,

 5       the price goes up; right?

 6   A   Yes, sir.  If there's a big hit of drugs to the

 7       area, then you'll see a lot smaller portions

 8       coming out.

 9   Q   Would it also be possibly not all of these rocks

10       are the same; is that correct?

11   A   No, sir.

12   Q   In your experience, does the drug dealers, do

13       they sit down and carefully weigh each rock to

14       make sure that each one weighs the exact same

15       amount?

16   A   No, sir.  Normally, they know approximately what

17       they're going to weigh.

18   Q   So sometimes when you pay the $20, you get a big

19       rock, sometimes you get a smaller one?

20   A   Yes, sir.  It depends on a lot of things.  It

21       depends on the seller.  It depends on the buyer,

22       if they're a known customer.  There are several

23       things.

24   Q   Let me ask you something.  If somebody was buying

25       a lot of drugs from a dealer, would it be more
```

1      likely to give him one of the bigger rocks for

2      the $20, in your experience?

3   A  Very much so.

4   Q  Y'all went to 7 Masons Road seven or, excuse me,

5      between 15 and 18 times trying to arrest this

6      individual; right?

7   A  Yes, sir.

8   Q  And every time y'all showed up, he ran off into

9      the woods?

10  A  Yes, sir.

11  Q  Do you think that's strange behavior for an

12     innocent man?

13         MR. ARMSTRONG:  Objection, Your Honor.

14         MR. LANDREAU:  Withdraw the question.

15         THE COURT:  Sustain the objection.  The jury

16     is to disregard the last question.

17  Q  But he ran into the woods every time?

18  A  Yes, sir.

19  Q  Okay.  How did y'all finally hem him up?

20  A  I'm really not sure.  An officer stopped him,

21     Officer Paquette, from Phenix City Police

22     Department.  I don't know if he was away from

23     that location, but for some reason he stopped for

24     the police on that occasion, and it was found

25     that he had a warrant that had been entered into

1        the computer by me.

2    Q   Okay.  Mr. Armstrong asked you, well, why didn't

3        y'all arrest him right then.  Do you remember

4        that question?

5    A   Yes, sir.

6    Q   Any reason he couldn't have run right then into

7        these woods?

8    A   No, sir.

9    Q   But y'all had a plan.  The plan was we're going

10       to make as many buys with this informant as we

11       can?

12   A   Yes, sir.

13   Q   And y'all stuck to your plan?

14   A   Yes, sir.

15           MR. LANDREAU:  That's all I have.

16           MR. ARMSTRONG:  Nothing further, Your Honor.

17           THE COURT:  May this witness be excused?

18           MR. ARMSTRONG:  I have no objection.

19           THE COURT:  Okay.  Thank you.  You may step

20       down.  Do you have any additional witnesses?

21           MR. LANDREAU:  Your Honor, State of Alabama

22       rests.

23           THE COURT:  Ladies and gentlemen of the

24       jury, this will be a good time to recess for the

25       lunch break.  I'll ask you to come back about,

1    let's say, 20 minutes till two.  That gives you

2    about an hour and 20 minutes.  Please be prompt

3    and be back.  Mr. Mitchell will be in the hallway

4    to show you which jury room to report to, and

5    hopefully, we'll call you in and resume the trial

6    promptly at 20 minutes till two.  Thank you.  Do

7    not discuss the case, nor allow it to be

8    discussed in your presence.

9              (Jury not present.)

10         THE COURT:  Does either party have any

11    written jury instructions to submit?

12         MR. ARMSTRONG:  I do, Your Honor.

13         MR. LANDREAU:  Your Honor, we would just

14    have the standard ones.

15         THE COURT:  Okay.  I'll give one and three,

16    and two is already included in the general

17    charge.

18         MR. ARMSTRONG:  Yes, Your Honor.  Your

19    Honor, can we take up some quick motions at this

20    point?

21         THE COURT:  Uh-huh.

22         MR. ARMSTRONG:  First of all, Your Honor,

23    I'd like to first make a motion for a mistrial in

24    this case.  The D.A., in State's Exhibit 7, which

25    is the photo lineup, had placed this up on the

1    monitor there and then placed this portion on the

2    back of it which lists the identification of them

3    up here on the monitor.  If you look at that

4    number six, ID number 124468, 12/21, the year

5    1999, 11:43 a.m., that is an indication that he's

6    been involved and had contact with the Russell

7    County Sheriff's Department before.  That's

8    indication of prior bad conduct which is not

9    admissible in this case, and we ask for a

10   mistrial on that basis.

11        Second of all, we ask for a mistrial on the

12   D.A.'s comment in terms of when he stated would

13   an innocent man run, and we ask for a motion for

14   a mistrial on that basis.

15        THE COURT:  Court's going to deny your

16   motion.  The Court gave curative instructions,

17   directed that the jury could not consider the

18   District Attorney's comments.  And, also, you

19   failed to bring it to the Court's attention when

20   it was shown to the jury, and you did not give

21   the Court an opportunity to correct that.  If you

22   wish when they come back to bring it to the

23   jury's attention, I'll instruct them not to --

24        MR. ARMSTRONG:  Well, I think that would

25   bring more attention to it.

1    THE COURT:  I would instruct them they may

2    not consider it, if you want to do that.

3    MR. ARMSTRONG:  Judge, just for the

4    record --

5    THE COURT:  It may reinforce in the jury's

6    mind what you're wanting to keep from them.

7    MR. ARMSTRONG:  Right, right.  The only

8    thing, Judge, I want to make sure for the record

9    that the State's exhibit, the front and the back

10   is copied for the record for purposes of appeal.

11   MR. LANDREAU:  Well, the whole thing is

12   there.  But, Judge, if he's objecting to that

13   part, since it's going to go back to the jury

14   room, I suggest we just remove the part he

15   objects to and you can label it aside.

16   MR. ARMSTRONG:  But they've already seen

17   it.  It stayed up there for a little while and

18   they've already seen it.  Now, I would agree

19   let's not take it back there, but the point is I

20   don't think it takes it away.  They've already

21   seen it.

22   THE COURT:  I would say that that may not go

23   back to the jury room as part of the exhibit.

24   MR. LANDREAU:  Certainly.  And, Judge, there

25   was no detail as to any criminal activity or the

1    nature of the activity.  I think counsel is

2    stretching to try to say criminal activity.

3         THE COURT:  Well, I think it needs to be

4    preserved for the record.

5         MR. ARMSTRONG:  Judge, of course, our other

6    motion is a motion for a judgment of acquittal

7    based on insufficient evidence to prove that my

8    client committed each and every element of the

9    crime.

10        THE COURT:  I'll deny that motion.

11        MR. ARMSTRONG:  Thank you, Your Honor.

12        MR. LANDREAU:  Why don't we label this as

13   7-A.

14        MR. ARMSTRONG:  Yes.  7-A for the record,

15   Linda, that part that I was objecting to.

16             (Lunch recess.)

17             (Jury present.)

18        THE COURT:  Welcome back, ladies and

19   gentlemen of the jury.  Does the Defendant have

20   anything to present at this time?

21        MR. ARMSTRONG:  No, Your Honor.  At this

22   time the defense rests.

23        THE COURT:  Ladies and gentlemen, we have

24   concluded the evidence presentation portion of

25   the trial.  We will now proceed with closing

1    argument.

2         Mr. Landreau, are you ready at this time?

3         MR. LANDREAU:  Your Honor, the State would

4    waive its initial opening and specifically

5    reserve its final close.

6         THE COURT:  Mr. Armstrong?

7         MR. ARMSTRONG:  Thank you, Your Honor.

8         THE COURT:  Thank you.

9              (Closing argument by Mr. Armstrong.)

10        MR. LANDREAU:  Judge, now I object.  There

11   is absolutely no evidence of any kind of

12   coercion.

13        MR. ARMSTRONG:  Judge, the jury can infer

14   from what they saw on the tape.  I'm just

15   submitting what the evidence, I believe, showed.

16        MR. LANDREAU:  Ask for a ruling, Your Honor.

17        THE COURT:  Court would overrule the

18   objection.

19              (Closing argument by Mr. Armstrong

20               continues.)

21              (Closing argument by Mr. Armstrong

22               concludes.)

23        THE COURT:  Mr. Landreau?

24              (Final argument by Mr. Landreau.)

25        MR. ARMSTRONG:  Objection, Your Honor.

1   MR. LANDREAU: Your Honor, the law is that

2 flight is evidence of guilt. That is proper

3 argument.

4   THE COURT: If you would approach the

5 bench.

6    (The following bench conference was

7    held outside the hearing of the jury:)

8   MR. ARMSTRONG: My specific objection, Your

9 Honor, he's claiming that why would an innocent

10 man run. That reflects on he should have to get

11 up here and testify and show that he's innocent.

12 It's an inference on his failure to testify.

13   THE COURT: I don't draw that from that

14 comment. I'm going to deny your motion.

15    (End of bench conference.)

16    (Final argument by Mr. Landreau

17    continues.)

18    (Final argument by Mr. Landreau

19    concludes.)

20   THE COURT: All right, ladies and

21 gentlemen. That would conclude the closing

22 argument phase. It's now my duty to instruct you

23 as to the law applicable to the facts of this

24 case.

25   The attorneys' statements and arguments are

1    intended to help you understand the evidence and

2    apply the law.  However, their statements are not

3    evidence, and you should disregard any remark,

4    statement or argument which is not supported by

5    the evidence or by the law as given to you by the

6    Court.  Likewise, statements made by the Court

7    are not evidence and are not to be considered by

8    you as evidence.

9        As I've told you before, it is my duty to

10   instruct you as to the law applicable in the

11   particular case, and it is your duty as a juror

12   to follow the law as so stated to you by the

13   Court.  You will, therefore, render a verdict in

14   accordance with the facts as you determine them

15   from the evidence and the law as given to you by

16   the Court.

17       All the witnesses who testified today were

18   sworn and testified under oath.  Their testimony

19   is evidence.  There were exhibits offered which

20   were received by the Court.  These exhibits are

21   evidence.  It will be upon this testimony and

22   these exhibits, and only the testimony and those

23   exhibits, that you may consider in arriving at

24   your final verdict.

25       The judge is not permitted by law to express

1    his opinion or comment on the effect of the

2    evidence presented to you or the credibility of

3    any witness in the case.  Any ruling, statement

4    or expression which may have been made by me

5    during the course of this trial is not to be

6    considered by you as any effort on my part to

7    convey to you any feeling or opinion about the

8    facts in this case or the credibility of any

9    witness.

10       As a juror, you will be the sole and

11   exclusive judge of the facts.  It will be your

12   duty to attempt to reconcile the testimony of all

13   the witnesses so as to make them all speak the

14   truth, if this can be done reasonably.  If you

15   cannot reasonably reconcile all the testimony, it

16   is then your duty to consider the testimony with

17   a view of determining what the true facts are.

18   In so doing, you may accept or reject any part of

19   the testimony of any witness and accept only the

20   testimony you consider worthy of belief.

21       In determining what the true facts are from

22   the evidence, you may take into consideration any

23   natural interest or bias a witness may have as a

24   result of any connection with the case.  You may

25   take into consideration the interest or bias a

1  witness may have shown while testifying.  And you

2  may take into consideration the demeanor of any

3  witness, as to whether the witness has apparently

4  testified frankly or evasively.  You may take

5  into consideration any matter which you would in

6  your everyday affairs in passing upon the

7  truthfulness and accuracy of the testimony.

8  Weigh the testimony in the light of your common

9  observation and experiences and reach a verdict

10 that will be based upon the truth as you

11 determine it from all of the evidence.  In

12 arriving at a verdict in this case, you must not

13 permit sympathy, prejudice or emotion to

14 influence you.

15     The Defendant has a right not to testify.

16 In the trial of all criminal cases, the person

17 accused of a crime shall, at his own request but

18 not otherwise, be a competent witness.  Failure

19 to make such a request shall not create any

20 presumption against him, nor even be subject to

21 comment by counsel.  Therefore, no inference

22 whatsoever may be derived from the fact that the

23 Defendant did not take the witness stand in the

24 matter.

25     The Defendant is presumed to be innocent,

1   and the presumption that he is innocent remains

2   throughout the course of the trial until each and

3   every juror is convinced from the evidence that

4   the Defendant is guilty beyond a reasonable

5   doubt.  This presumption of innocence is to be

6   regarded by you as a matter of evidence and is a

7   benefit to which the Defendant is entitled.  Only

8   until and unless you are convinced from the

9   evidence the Defendant is guilty beyond a

10  reasonable doubt, only at that time does the

11  presumption that he is innocent leave him.

12      Before a conviction can be had in this case,

13  the State must satisfy each and every member of

14  the jury of the Defendant's guilt beyond a

15  reasonable doubt.  Even if the State demonstrates

16  a probability of guilt, if it does not establish

17  it beyond a reasonable doubt, then you must

18  acquit the Defendant.

19      The phrase reasonable doubt is

20  self-explanatory.  Efforts to define it do not

21  always clarify the term.  It is not a mere

22  possible doubt because everything relating to

23  human affairs is open to some possible or

24  imaginary doubt.  A reasonable doubt is a doubt

25  of a fair-minded juror honestly seeking the truth

after careful and impartial consideration of all
the evidence in the case.  It is a doubt based
upon reason and common sense.  It does not mean a
vague or arbitrary notion, but is an actual doubt
based upon the evidence, the lack of evidence, a
conflict in the evidence or a combination of
those things.  It is a doubt that remains after
going over in your minds the entire case and
giving consideration to all the testimony.  It is
distinguished from a doubt arising from mere
possibility, from bare imagination or from
fanciful conjecture.

If, after considering all the evidence, you
are convinced of the Defendant's guilt beyond a
reasonable doubt, then it would be your duty to
convict the Defendant.  However, if you still
have a reasonable doubt, then the Defendant is
entitled to the benefit of that doubt and you
should acquit him.

The Defendant, James W. Jackson, is charged
with distributing cocaine which is a controlled
substance.  A person commits the crime of
unlawful distribution of a controlled substance
if he either sells, furnishes, gives away,
manufactures, delivers or distributes a

controlled substance.  To convict, the State must

prove beyond a reasonable doubt each of the

following elements of the offense of unlawful

distribution of a controlled substance:  That the

Defendant, James W. Jackson, did either sell,

furnish, give away, deliver or distribute

cocaine, and it is a controlled substance, and

the Defendant, James W. Jackson, acted

intentionally and knowingly.

A person acts intentionally with respect to

a result or to conduct when his purpose is to

cause that result or to engage in that conduct,

and a person acts knowingly with respect to

conduct or to a circumstance when he is aware

that his conduct is of that nature or that the

circumstance exists.

If you find from the evidence that the State

has proved beyond a reasonable doubt each of the

above elements of the offense of unlawful

distribution of a controlled substance as charged

in the indictment, then you shall find the

Defendant, James W. Jackson, guilty of unlawful

distribution of a controlled substance.  If,

however, you find the State has failed to prove

beyond a reasonable doubt any one or more of the

elements of the offense of unlawful distribution of a controlled substance as charged in the indictment, then you shall not find the Defendant, James W. Jackson, guilty of unlawful distribution of a controlled substance and you must acquit him.

An expert witness is one who, by education, training or experience, has attained skill, knowledge or experience in some science, profession, business or occupation that is not of common knowledge of the average layman. One expert witness has testified in this case as an expert and has been permitted to express an opinion and draw a conclusion. In passing upon the facts, you are not required to accept the conclusion or expressed opinion of an expert witness, but must determine for yourselves the weight to be given such testimony and evidence when considered in connection with all the other evidence material to the case.

The Court has prepared verdict forms for your use. There is one charge and two forms for you to consider. No inference should be drawn from the order in which the verdict forms are explained or delivered to you. After the Court

1   has finished its explanation to you of the

2   verdict forms, you are to retire to the jury room

3   to begin your deliberations.  Your first duty

4   would be to elect one of your number as

5   foreperson to moderate your discussion and to

6   sign and return the verdict chosen by you to the

7   Court.  Any verdict which you return must be

8   agreed by all 12 jurors.  In other words, your

9   verdict must be unanimous.

10       When you have reached a verdict, please

11   notify Mr. Mitchell, the bailiff, that you have

12   reached a verdict and he will, in turn, notify

13   the Court.  You'll then be returned to this

14   courtroom to deliver your verdict.

15       We have selected an alternate juror today,

16   and the alternate is Mr. Yancey.  Mr. Yancey,

17   I'll excuse you at this time.  Please be back

18   tomorrow morning at 9:00.  Thank you.

19           (Alternate juror excused.)

20       THE COURT:  As I've indicated to you, there

21   are two possible verdict forms for you to choose

22   from.  If, from the evidence, you should

23   determine that the Defendant, James W. Jackson,

24   is guilty of the offense of unlawful distribution

25   of a controlled substance as charged in the

1    indictment, you would select the guilty verdict

2    form that reads, "We, the jury, find the

3    Defendant, James W. Jackson, guilty of the

4    offense of unlawful distribution of a controlled

5    substance as charged in the indictment."  And if

6    that should be your verdict, it should be signed

7    and dated by the foreperson of the jury.  If,

8    however, from the evidence you find the Defendant

9    not guilty of the offense of unlawful

10   distribution of a controlled substance, you would

11   select the not guilty verdict form that reads,

12   "We, the jury, find the Defendant, James W.

13   Jackson, not guilty of the offense of unlawful

14   distribution of a controlled substance as charged

15   in the indictment."  And if that should be your

16   verdict, it should be signed and dated by the

17   foreperson of the jury.

18        Does the State have anything further?

19        MR. LANDREAU:  State's satisfied, Your

20   Honor.

21        THE COURT:  Defendant have anything

22   further?

23        MR. ARMSTRONG:  Defense is satisfied, Your

24   Honor.

25        THE COURT:  Thank you, gentlemen.  Ladies

1    and gentlemen, this concludes the Court's

2    instructions to you.  I'll now direct you retire

3    to the jury room to deliberate your verdict.

4    When you've reached your verdict, notify Mr.

5    Mitchell and he'll, in turn, notify me, and

6    you'll be returned to court.  The verdict forms

7    will accompany you in the jury room as well as

8    the exhibits if you wish to examine the exhibits

9    during your deliberation.  Thank you.  You've

10   been very prompt and patient today.

11              (Jury retires to begin their

12               deliberations.)

13              (Jury notification to the bailiff.)

14              (Jury present.)

15        THE COURT:  All right, ladies and

16   gentlemen.  You had requested to be able to

17   listen to the tape recording again, and we

18   decided that it would be best to bring you back

19   into the courtroom and play it for you in the

20   courtroom.  So, Mr. Landreau, if you'll go ahead

21   and replay the tape for them, and we've got it as

22   close to you as we can get so you can hear it.

23              (Audiotape played to the jury.)

24        THE COURT:  All right.  Is there any member

25   of the jury who did not hear any portion of that

1   or did not understand any portion of it and you

2   want it replayed again?

3           (No response.)

4       THE COURT:  I'll send you back to the jury

5   room to resume your deliberations.  Thank you.

6           (Jury retires for further

7            deliberations.)

8           (Jury notification to the bailiff.)

9           (Jury present.)

10      THE COURT:  Ladies and gentlemen of the

11  jury, it's my understanding you've reached a

12  verdict; is that correct?

13      THE FOREMAN:  Yes.

14      THE COURT:  Mr. Garcia, you've been elected

15  foreperson.  Have you been elected foreperson?

16      THE FOREMAN:  Yes, Your Honor.

17      THE COURT:  Would you stand and read the

18  jury's verdict, please, sir?

19      THE FOREMAN:  We, the jury, find the

20  Defendant, James W. Jackson, guilty of the

21  offense of unlawful distribution of a controlled

22  substance as charged in the indictment.

23      THE COURT:  Mr. Mitchell, would you hand me

24  the verdict form, please, sir?

25          (Brief pause.)

142

THE COURT:  All right, ladies and gentlemen
of the jury.  The verdict form has been executed
in proper order.  What I'm going to do, I'm going
to point to each of you as jurors and ask you is
this your verdict.  If it is your verdict,
respond by saying yes.  If it's not your verdict,
say, no, it's not my verdict

Is this your verdict, ma'am?

JUROR:  Yes.

THE COURT:  Is this your verdict, ma'am?

JUROR:  Yes.

THE COURT:  Is this your verdict, ma'am?

JUROR:  Yes.

THE COURT:  Is this your verdict, ma'am?

JUROR:  Yes.

THE COURT:  Is this your verdict, ma'am?

JUROR:  Yes.

THE COURT:  Is this your verdict, sir?

JUROR:  Yes.

THE COURT:  Is this your verdict, sir?

JUROR:  Yes, sir, Your Honor.

THE COURT:  Is this your verdict, sir?

JUROR:  Yes.

THE COURT:  Is this your verdict, sir?

JUROR:  Yes, sir.

1    THE COURT:  Is this your verdict, sir?

2    JUROR:  Yes, sir.

3    THE COURT:  Is this your verdict, ma'am?

4    JUROR:  Uh-huh (positive response).

5    THE COURT:  And is this your verdict,

6    ma'am?

7    JUROR:  Yes.

8    THE COURT:  Thank you.  That concludes your

9    jury service for today.  Please be back tomorrow

10    morning at 9:00.  Thank you.  And one good thing

11    about it, it's Friday.

12    (Jury dismissed.)

13    THE COURT:  Mr. Jackson, the jury has

14    returned a verdict finding you guilty of the

15    offense of unlawful distribution of a controlled

16    substance.  The Court has reviewed the verdict

17    form, and it has been executed in proper order.

18    The Court accepts the verdict as submitted.

19    Do you wish to make application for

20    probation at this time?

21    MR. ARMSTRONG:  Yes, Your Honor.

22    THE COURT:  Court would accept his

23    application for probation.  Sentencing is set in

24    this matter for September the 9th, and that's at

25    10:00 a.m., and the probation officer will come

1    talk with you in the jail to complete the

2    pre-sentence report.

3            MR. ARMSTRONG:  Thank you, Your Honor.

4            THE COURT:  Be back September 9th, and

5    that's at 10:00.

6            MR. LANDREAU:  Your Honor, State would give

7    oral notice of its intent to proceed under the

8    Habitual Offender Act.  We would expect to show

9    Mr. Jackson has two prior felony convictions.

10           THE COURT:  Thank you.

11               (The trial ended on August 21, 2003.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

STATE OF ALABAMA

IN THE CIRCUIT COURT FOR THE COUNTY OF RUSSELL

TWENTY-SIXTH JUDICIAL CIRCUIT

CRIMINAL


STATE OF ALABAMA

     v.                          Case No. CC 03-378

JAMES WILLIE JACKSON,

        Defendant.

_____/


**S E N T E N C I N G**

Before:

        Honorable George R. Greene
        Phenix City, Alabama - September 9, 2003


APPEARANCES:

        For the State:
            Buster Landreau, Esq.
            Chief Deputy District Attorney

        For the Defendant:
            Walter L. Gray, III, Esq.
            Phenix City, Alabama


Linda S. Wilson
Official Court Reporter

1    THE COURT:  James Willie Jackson?

2        (Defendant approaches the bench.)

3    THE COURT:  The Defendant has previously

4  been adjudicated guilty of the offense of

5  unlawful distribution of a controlled substance.

6    Does the State have proof of any prior

7  convictions to present at this time?

8    MR. LANDREAU:  Yes, Your Honor.  We have

9  certified copies of two prior felony convictions

10  out of Russell County.

11    THE COURT:  Does the Defendant have anything

12  to present prior to the Court imposing sentence?

13    MR. GRAY:  No, sir.  Only that I believe in

14  this case it was an unlawful distribution, not a

15  sale of drugs, and that no proof was made at the

16  trial of any of the enhancements and those would,

17  therefore, not apply.

18    MR. LANDREAU:  And we would agree the

19  enhancements do not apply in this case.

20        (Brief pause.)

21    MR. LANDREAU:  Judge, we would maintain the

22  range of sentence would be from 15 to life with

23  two priors.

24    MR. GRAY:  Right.

25    THE COURT:  Does the Defendant have anything

1    further to present?

2         MR. GRAY:  No, sir.

3         THE DEFENDANT:  No, sir.

4         THE COURT:  The Court has reviewed the

5    pre-sentence report in this matter and would

6    sentence the Defendant to 22 years in the custody

7    of the Commissioner of the Department of

8    Corrections.  Court directs that he be given

9    credit for any time served in jail against that

10   sentence.

11        Court would assess a fine in the case in the

12   amount of $2500, direct that he pay the court

13   costs of this case, a Victims Compensation Fund

14   fee in the amount of $250.  The prior convictions

15   would be -- they're not drug-related, so he will

16   be assessed a $1,000 penalty mandated by the

17   Demand Reduction Assessment Act, and he'll be

18   required to attend and complete a substance abuse

19   program as directed by the Commissioner of the

20   Department of Corrections.  He's ordered to pay a

21   $100 Forensic Services Trust Fund fee.  His

22   driver's license is suspended for a period of six

23   months.

24        He's ordered to reimburse the State of

25   Alabama the cost of appointed counsel fees, and,

as a condition of parole, he's ordered to pay all
court-ordered monies.  If, at the expiration of
the term of his parole, he has not fully paid all
fines, fees and court costs, then his parole is
automatically extended in six-month increments
until such time as the full amount of fines, fees
and costs are paid.

He has the right to appeal his conviction
and sentence and, if declared indigent, has the
right to appointed counsel, and a court
reporter's transcript would be provided to the
Defendant without cost.  Thank you.

MR. GRAY:  Judge, I'm standing in for Mr.
Armstrong today.  He has prepared the
documentation to file a notice of appeal, and we
would ask that an appeal bond be set.

THE COURT:  No appeal bond is possible.
Thank you.

(End of proceedings.)

## CERTIFICATE OF COMPLETION OF REPORTER'S TRANSCRIPT

JAMES W. JACKSON,

      Appellant

        v.

STATE OF ALABAMA

TO: The Clerk of the Court of
Criminal Appeals of
Alabama

On Appeal From the
Circuit Court of Russell
County

CASE NO. CC 03-378

DATE OF NOTICE OF APPEAL:
September 9, 2003

    I certify that I have this date completed and filed with the clerk of the trial court the original of a true and correct transcript of the proceedings designated in the Reporter's Transcript Order. All pages are numbered serially, in the upper right corner of each page, prefaced by a copy of the Reporter's Transcript Order (Page No. 1) and an index, and ending with the number appearing in the upper right corner of this certificate.
    I certify that a copy of this certificate is this date being served on counsel for defendant, the Attorney General of Alabama, and the District Attorney, along with a copy of the index.
    DATED this 11th day of February, 2004.

                              Linda S. Wilson
                            Official Court Reporter

NO.  CR-02-2200

IN THE COURT OF CRIMINAL APPEALS OF ALABAMA

JAMES WILLIE JACKSON,

APPELLANT,

VS.

STATE OF ALABAMA,

APPELLEE.


ON APPEAL FROM THE CIRCUIT COURT OF
RUSSELL COUNTY, ALABAMA
(CC-03-378)

---

BRIEF AND ARGUMENT
OF APPELLANT

---

JEREMY W. ARMSTRONG
COUNSEL FOR APPELLANT

ADDRESS OF COUNSEL:

ARMSTRONG & GRAY, P.C.
POST OFFICE BOX 3409
1619 BROAD STREET
PHENIX CITY, ALABAMA  36868-3409
(334) 291-0410
(334) 291-0411 [FAX]

EXHIBIT
RX-2
tabbies

## STATEMENT REGARDING ORAL ARGUMENT

The Appellant does not request oral argument because the facts and legal argument are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument.

## TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ................................................................. ii

TABLE OF CONTENTS .................................................................................................... iii

STATEMENT OF JURISDICTION ..................................................................................... iv

TABLE OF AUTHORTIES ................................................................................................. v

STATEMENT OF CASE ..................................................................................................... 1

ISSUES PRESENTED FOR REVIEW .................................................................................. 3

STATEMENT OF FACTS ................................................................................................... 4

ARGUMENT ...................................................................................................................... 7

CONCLUSION ................................................................................................................. 15

CERTIFICATE OF SERVICE ............................................................................................ 16

SUMMARY OF RULINGS AND ACTIONS ....................................................................... 17

STATEMENT OF COUNSEL ............................................................................................ 18

CERTIFICATION OF FONT AND TYPE-STYLE ............................................................... 19

## STATEMENT OF JURISDICTION

This Honorable Court has jurisdiction over this matter pursuant to §12-3-9, Code of Alabama (1975). This Honorable Court has jurisdiction over this matter due to the Appellant being convicted of a misdemeanor and/or felony.

This appeal to this Honorable Court is timely filed, pursuant to Rule 4(b)(1), Alabama Rules of Appellate Procedure. Pursuant to Rule 4(b)(1), Alabama Rules of Appellate Procedure, a notice of appeal must be filed within forty-two (42) days after pronouncement of the sentence. Therefore, this appeal is timely if Appellant's notice of appeal was filed no later than forty-two (42) days from September 9, 2003 (date of pronouncement of sentence); thereby, making the notice of appeal due on, or before, October 21, 2003. On September 12, 2003, the Appellant timely filed a notice of appeal. (CR. 47) Therefore, this Honorable Court has jurisdiction over this cause.

## TABLE OF AUTHORITIES

### Cases

Cooper v. State, 526 So. 2d 602 (Ala. Crim. App. 1986) .................................................... 8

McMillian v. State, 594 So. 2d 1253, 1261 (Ala. Crim. App. 1991) ................................... 9

Moody v. State, 100 So. 2d 733 (1957) .............................................................................. 8

Pilkington v. Peking Chinese Restaurant, 596 So. 2d 586 (Ala. 1992) ............................. 9

Riley v. City of Huntsville, 379 So. 2d 557 (Ala. 1980) ........................................ 9, 11, 15

Rincher v. State, 632 So. 2d 37, 40 (Ala. Crim. App. 1993) .............................................. 9

### Statutes

§12-3-9, Code of Alabama (1975) .................................................................................... iv

### Other Authorities

§136.01, McElroy's Alabama Evidence ........................................................... iv, 9, 11, 15

### Rules

Rule 4(b)(1), Alabama Rules of Appellate Procedure ....................................................... iv

Rule 611(b), Alabama Rules of Evidence ........................................................................... 8

## STATEMENT OF CASE

This is an appeal from the Circuit Court of Russell County where James Willie Jackson was convicted of Unlawful Distribution of a Controlled Substance, to wit: Cocaine. On May 23, 2003, Jackson was indicted by the grand jury of Russell County on Unlawful Distribution of a Controlled Substance, to wit: Cocaine.  (CR. 8-9)[1] On January 4, 2003, Jackson was arrested and charged with Unlawful Distribution of a Controlled Substance, to wit: Cocaine.  (CR. 1)[2]  On June 24, 2003, Jackson filed a waiver of arraignment and entered a plea of not guilty.  (CR. 11)

On August 21, 2003, the trial of the matter began before the Honorable George Greene.  (R. 3)   After an extensive voir dire examination, a jury was struck and the trial court empaneled the jury for Jackson's case.  (R. 4-6, R. 10-11)   The State presented its case-in-chief.  (R. 24-125)   At the conclusion of the State's case, Jackson made two (2) motions for mistrial which the trial court denied.  (R. 125-126)   Additionally, at the conclusion of the State's case, Jackson made a motion for judgment of

---

[1] References to the record on appeal will appear as follows: references to the clerk's record will appear as (CR.___); and references to the trial transcript will appear as (R.___).

[2] An indictment warrant was executed on May 28, 2003.  (CR. 10)  However, Jackson remained incarcerated at the Russell County Detention Facility based on his initial arrest of January 4, 2003.

acquittal which the trial court denied. (R. 128) Jackson presented no witnesses on his behalf. (R. 128) The jury returned a guilty verdict of Unlawful Distribution of a Controlled Substance. (CR. 42-43, R. 141-143) On September 9, 2003, a sentencing hearing was conducted before the trial court. (R. 145-148) The State invoked the Habitual Offender Act and submitted two (2) prior felony convictions. (R. 146) The Court sentenced Jackson to twenty-two (22) years in the penitentiary. (CR. 44-45; R. 147) On September 12, 2003, Jackson filed a motion for new trial which the trial court denied. (CR. 53-56) On September 12, 2003, Jackson filed a written notice of appeal. (CR. 47-52). This appeal follows:

## ISSUES PRESENTED FOR REVIEW

### I.

WHETHER THE TRIAL COURT ABUSED ITS
DISCRETION WHEN IT DENIED THE DEFENDANT
THE RIGHT TO ATTACK THE CREDIBILITY OF
THE STATE'S CONFIDENTIAL INFORMANT ON
MATTERS RELEVANT TO A MATERIAL ISSUE IN
THE CASE.

### STATEMENT OF FACTS

On September 16, 2002, confidential informant, Jason Hathcock, approached Sergeant Steve Johnson with the Russell County Sheriff's Department.    (R. 32-33, 44-45) Hathcock informed Sergeant Johnson that he had a couple of traffic citations he would like to "work off."    (R. 34, 44-45)    Hathcock informed Sergeant Johnson that he could "work off" those traffic citations by purchasing crack cocaine from an individual known as "Blackjack," who was later identified as the Defendant, James Jackson.    (R. 33-34, 45-46, 85-86)    Sergeant Johnson contacted Investigator Thomas Franklin with the Russell County Sheriff's Department.    (R. 34)    Prior to the alleged drug transaction, Sergeant Johnson searched Hathcock's person[3] and Investigator Franklin searched Hathcock's vehicle. (R. 35-36, 88-89)

Sergeant Johnson then wired Hathcock with an audio recording device.    (R. 36, 88)    Investigator Franklin photocopied twenty dollars ($20.00) of Russell County Sheriff's Department funds and gave the money to Hathcock. (R. 88)    Sergeant Johnson, Investigator Franklin and three (3) other law enforcement officers followed Hathcock in his

---

[3] The testimony of Sergeant Johnson and Hathcock conflicted as to the extensiveness of the search of Hathcock's person.  Sergeant Johnson testified that he "stripped searched" Hathcock to his underwear.  (R. 35)  Hathcock testified that Sergeant Johnson "did not" strip search him and only a "pat-down" search was conducted.  (R. 61)

4

vehicle in route to the alleged location of Jackson.  (R. 36-37, 48, 88-89)  Hathcock drove his vehicle to the alleged location of Jackson while law enforcement monitored the audio recording device a "half a mile away."  (R. 37, 48, 90)[4]  Sergeant Johnson and Investigator Franklin testified that they, nor any other law enforcement officers, were able to actually see the alleged drug transaction.  (R. 43, 116)

Hathcock allegedly purchased twenty dollars ($20.00) of crack cocaine from Jackson.  (R. 49-51)  Once Hathcock left the location of the alleged drug transaction, Sergeant Johnson testified that he and Investigator Franklin drove by the location were the alleged drug transaction took place.  (R. 37)  Sergeant Johnson testified that Jackson was wearing a "white jersey type shirt."  (R. 38)  However, Hathcock and Investigator Franklin testified that Jackson was wearing a "red jersey and a black pair of pants."  (R. 59-60, 93)  The alleged drug transaction took place no later than 6:30 p.m. (E.S.T.) and it was still daylight. (R. 42, 63, 105)

---

[4] It is interesting to note that although Sergeant Johnson and Investigator Franklin were in the same vehicle while monitoring the alleged drug transaction; their testimony conflicted as to the distance their surveillance vehicle was from Hathcock.  (R. 42, 105) Investigator Franklin testified that they monitored the alleged drug transaction "less than a tenth of a mile" from Hathcock.  (R. 90)

Hathcock turned over the suspected crack cocaine to Investigator Franklin. (R. 106) Hathcock testified that after the alleged drug transaction, no law enforcement officer searched his person or his vehicle. (R. 70) However, Investigator Franklin testified that a "pat-down" search was conducted on Hathcock's person and a "cockpit" search of Hathcock's vehicle was conducted. (R. 112) Investigator Franklin testified that the suspected rock cocaine weighed point four (0.4) grams. (R. 108) Investigator Franklin testified that it was his habit of weighing "just the rock" when attempting to ascertain a weight. (R. 108-109) Investigator Franklin testified that the particular piece of suspected rock cocaine had a street value of forty dollars ($40.00)[5]. (R. 109)

Investigator Franklin testified that the suspected rock cocaine was turned over to evidence custodian Tommy Pell who turned said evidence over to forensic scientist Sherwin Boswell. (R. 24-31, 96) Boswell testified that when he received the suspected rock cocaine that it had a weight of point one seven (0.17) grams, which is point two three (0.23) grams less than what the suspected rock

---

[5] It is interesting to note that Jackson purchased a $40.00 piece of suspected rock cocaine with $20.00.

cocaine weighed at the time Investigator Franklin took custody of the suspected rock cocaine.  (R. 75, 82)

<div align="center">

**ARGUMENT**
**I.**

</div>

> **THE TRIAL COURT ABUSED ITS' DISCRETION WHEN IT DENIED THE DEFENDANT THE RIGHT TO ATTACK THE CREDIBILITY OF THE STATE'S CONFIDENTIAL INFORMANT ON MATTERS RELEVANT TO A MATERIAL ISSUE IN THE CASE.**

Jackson's conviction and sentence is due to be vacated because the trial court abused its' discretion when it denied Jackson the right to attack the credibility of the state's confidential informant on matters relevant to a material issue in the case; to wit:  whether a drug transaction actually took place between the confidential informant and Jackson.  Jackson respectfully requests that this Honorable Court vacate his conviction and sentence.

After a reading of the trial transcript in this matter, there is no doubt that the "key" to the State's case was the credibility of the confidential informant, Jason Hathcock.  The only witnesses as to whether a drug transaction took place are Hathcock and Jackson.  Sergeant Johnson and Investigator Franklin testified that they, nor any other law enforcement officers, were able to actually see the alleged drug transaction.  (R. 43, 116)  It is also

clear from the trial transcript that Hathcock had a motive to make sure a drug transaction occurred between he and Jackson; to wit: to "work off" traffic citations by purchasing crack cocaine from Jackson.   (R. 33-34, 45-46, 85-86)

Rule 611(b), Alabama Rules of Evidence, states, in pertinent part:

> The right to cross-examine a witness extends to any matter relevant to any issue and to matters affecting the credibility of the witness, . . . .

(Emphasis Added), See also, Moody v. State, 100 So. 2d 733 (1957), Cooper v. State, 526 So. 2d 602 (Ala. Crim. App. 1986).   "Rule 611(b) continues Alabama's present position as a 'wide open rule' jurisdiction regarding matters that may be inquired about on cross-examination."   See, Section (b), Advisory Committee Notes, Rule 611(b), Alabama Rules of Evidence.

> [T]he cross-examiner may ask two kinds of questions that fall within the permissible boundaries of cross-examination.   First, any question relevant to the witness's credibility may be propounded.   Additionally, any question is permissible so long as it is relevant to a material issue in the case.   Even if a question is not otherwise relevant to a material issue in the case, the cross-examiner may be permitted to propound it if the question is relevant to a matter brought out by the adverse party during direct examination of the witness.

8

§136.01, McElroy's Alabama Evidence, (Emphasis Added)(citations omitted).

Adverse parties have a right to conduct a "thorough and sifting cross-examination." Rincher v. State, 632 So. 2d 37, 40 (Ala. Crim. App. 1993); §136.01, McElroy's Alabama Evidence. The latitude and extent of such cross-examination, however, rests largely within the sound discretion of the trial court which is reversible only if abused. Pilkington v. Peking Chinese Restaurant, 596 So. 2d 586 (Ala. 1992); §136.01, McElroy's Alabama Evidence. However, it is only after a party has had an opportunity to substantially exercise this right of cross-examination that this discretion becomes operative. McMillian v. State, 594 So. 2d 1253, 1261 (Ala. Crim. App. 1991); §136.01, McElroy's Alabama Evidence. "When the question does not call for collateral or irrelevant matter, the action of the trial court is sustaining an objection to the question cannot be rested on an exercise of discretion on the part of the trial court to limit cross-examination." §136.01, McElroy's Alabama Evidence, (Emphasis Added); Riley v. City of Huntsville, 379 So. 2d 557 (Ala. 1980).

    A. **The Trial Court Abused Its' Discretion When It Denied The Defendant The Right To Thoroughly Cross-Examine The State's Confidential Informant As To His Traffic Citations.**

Jackson's conviction and sentence is due to be vacated because the trial court abused its' discretion when it denied Jackson the right to thoroughly cross-examine the State's confidential informant as to the traffic citations the confidential informant was "working off" in exchange for a drug transaction with Jackson. This issue was specifically preserved at trial. (R. 62) Jackson respectfully requests that this Honorable Court vacate his conviction and sentence.

On September 16, 2002, confidential informant, Jason Hathcock, approached Sergeant Steve Johnson with the Russell County Sheriff's Department. (R. 32-33, 44-45) Hathcock informed Sergeant Johnson that he had a couple of traffic citations he would like to "work off." (R. 34, 44-45) Hathcock informed Sergeant Johnson that he could "work off" those traffic citations by purchasing crack cocaine from Jackson. (R. 33-34, 45-46, 85-86)

The State brought out the issue of Hathcock's traffic citations during the direct examination of Seargant Johnson and Hathcock. (R. 33-34, 45-46, 85-86) In cross-examination of Hathcock the following occurred:

> [DEFENSE COUNSEL ARMSTRONG]: Now, you said your traffic citations, one of them was driving while suspended?

10

[HATHCOCK]: Yes, sir.

[DEFENSE COUNSEL ARMSTRONG]: Why was your license suspended?

[PROSECUTOR LANDREAU]: Judge, I object. That's irrelevant.

[DEFENSE COUNSEL ARMSTRONG]: Your Honor, it goes to credibility.

THE COURT: I'll sustain the objection.

[DEFENSE COUNSEL ARMSTRONG]: Just note my objection, Your Honor.

There is no doubt that the "key" to the State's case was the credibility of the confidential informant, Jason Hathcock. The issue of Hathcock's traffic citations is the very reason Hathcock approached law enforcement to set up an alleged drug transaction with Jackson. Not only did the State bring the issue of the traffic citations through the direct examination of Hathcock and Sergeant Johnson, this issue was relevant to a material issue in the case; to wit: Hathcock's credibility. The question of why Hathcock's license was suspended did not call for collateral or irrelevant matter, and the action of the trial court in sustaining the State's objection to the defense counsel's question cannot be rested on an exercise of discretion on the part of the trial court to limit cross-examination. §136.01, McElroy's Alabama Evidence, (Emphasis Added); Riley v. City of Huntsville, 379 So. 2d 557 (Ala. 1980).

11

Jackson was denied his right to a "thorough and sifting cross-examination" and his right to a fair and impartial trial in violation of the Fifth, Sixth, Eighth and Fourteenth Amendment to the United States Constitution. Jackson is due to have his conviction and sentenced vacated.

**B.  The Trial Court Abused Its' Discretion When It Denied The Defendant The Right To Thoroughly Cross-Examine The State's Confidential Informant As To Length Of Time The Confidential Informant Owned The Vehicle That Was Used In The Alleged Drug Transaction.**

Jackson's conviction and sentence is due to be vacated because the trial court abused its' discretion when it denied Jackson the right to thoroughly cross-examine the State's confidential informant as to the length of time the confidential informant owned the vehicle that was used in the alleged drug transaction. This issue was specifically preserved at trial. (R. 69-70) Jackson respectfully requests that this Honorable Court vacate his conviction and sentence.

It is clear from the record that the testimony between confidential informant Hathcock and Sergeant Johnson and Investigator Franklin conflicted as to the extensiveness of the search of Hathcock's person and vehicle. Prior to the alleged drug transaction, Sergeant Johnson searched

12

Hathcock's person and Investigator Franklin searched Hathcock's vehicle. (R. 35-36, 88-89) The testimony of Sergeant Johnson and Hathcock conflicted as to the extensiveness of the search of Hathcock's person. Sergeant Johnson testified that he "stripped searched" Hathcock to his underwear. (R. 35) Hathcock testified that Sergeant Johnson "did not" strip search him and only a "pat-down" search was conducted. (R. 61) Hathcock testified that after the alleged drug transaction, no law enforcement officer searched his person or his vehicle. (R. 70) However, Investigator Franklin testified that a "pat-down" search was conducted on Hathcock's person and a "cockpit" search of Hathcock's vehicle was conducted. (R. 112) Additionally, it is clear from the record that Hathcock allegedly purchased a forty dollar ($40.00) piece of crack cocaine from Jackson with twenty dollars ($20.00). (R. 49-51, 109)

It is clear from the record that Jackson's strategy at trial was that no drug transaction took place between Hathcock and Jackson. Specifically, one of Jackson's arguments was that Hathcock had the suspected crack cocaine hidden in his vehicle, or on his person, that was not

13

thoroughly searched by law enforcement.[6] Jackson wanted to validate this point by showing to the jury that due to the length of time Hathcock owned the vehicle, Hathcock had knowledge of places to hide drugs in the vehicle. However, when Jackson asked Hathcock as to the length of time he owned the vehicle, the trial court sustained the State's objection on the basis that said question was not relevant. (R. 69-70)

There is no doubt that the "key" to the State's case was the credibility of the confidential informant, Jason Hathcock. Not only did the State bring the issue of the use of Hathcock's vehicle for the alleged drug transaction through the direct examination of Hathcock, Sergeant Johnson and Investigator Franklin, this issue was relevant to a material issue in the case; to wit: Hathcock's credibility. The question of the length of time Hathcock owned the vehicle that was used during the alleged drug transaction did not call for collateral or irrelevant matter. The action of the trial court in sustaining the State's objection to the defense counsel's question cannot be rested on an exercise of discretion on the part of the

[6] This argument was made during closing arguments. However, although appellate counsel requested a transcript of closing arguments in his docketing statement, the closing arguments were not transcribed for this appeal. (CR. 78)

trial court to limit cross-examination. §136.01, <u>McElroy's</u> <u>Alabama Evidence</u>, (Emphasis Added); <u>Riley v. City of</u> <u>Huntsville</u>, 379 So. 2d 557 (Ala. 1980).

Jackson was denied his right to a "thorough and sifting cross-examination" and his right to a fair and impartial trial in violation of the Fifth, Sixth, Eighth and Fourteenth Amendment to the United States Constitution. Jackson is due to have his conviction and sentenced vacated.

## CONCLUSION

For the above reasons, Jackson is entitled to have his conviction and sentence vacated. The Appellant respectfully requests that this Honorable Court reverse and remand this case to the trial court with instructions to render a judgment in favor of the Appellant.

Respectfully submitted,

JEREMY W. ARMSTRONG (ARM 021)
COUNSEL FOR THE APPELLANT

15

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of March, 2004,
I served a copy of the foregoing, by placing said copy in
the United States Mail, first class, **CERTIFIED**, postage
prepaid and addressed as follows:

> Office of the Attorney General
> Criminal Appeals Division
> 11 South Union Street
> Montgomery, Alabama  36103
>
> Alabama Court of Criminal Appeals
> ATTN: Hon. Lane Mann
> 300 Dexter Avenue
> Montgomery, Alabama  36104-3741

JEREMY W. ARMSTRONG (ARM 021)
COUNSEL FOR APPELLANT

ADDRESS OF CO-COUNSEL:

ARMSTRONG & GRAY, P.C.
POST OFFICE BOX 3409
1619 BROAD STREET
PHENIX CITY, ALABAMA  36868-3409
(334) 291-0410
(334) 291-0411 [FAX]

16

## SUMMARY OF RULINGS AND ACTIONS
## ADVERSE TO APPELLANT

| Record Page Number | Summary |
|---|---|
| R. 10-11 | Trial Court's Denial of Defendant's *Batson* Motion |
| R. 62 | Trial Court Denied Defendant's Right to Attack Credibility of State's Confidential Informant (CI); to wit: Reason for CI's Suspension of Driver's License |
| R. 69-70 | Trial Court Denied Defendant's Right to Attack Credibility of State's Confidential Informant (CI); to wit: Length of time CI owned vehicle that was used in alleged drug transaction |
| R. 125-128 | Trial Court's Denial of Defendant's Motion for Mistrial Based on State's Use of Photograph Line-Up (State Ex. 7 & 7A) |
| R. 126 | Trial Court's Denial of Defendant's Motion for Mistrial Based on Prosecutor's Statement; to wit: "Would an innocent man run." |
| R. 128 | Trial Court's Denial of Defendant's Motion for Judgment of Acquittal Based on the State's Failure to Prove Each and Every Element of the Charged Offense |
| R. 129-130 | Trial Court Overruled Defendant's Objection to Prosecutor's Comment During Closing Argument; to wit: "would an innocent man run from the police." |

## STATEMENT OF COUNSEL

Appellant Counsel, Jeremy W. Armstrong, has reviewed the entire record for any claims that he feels would be viable on appeal. Although there were few adverse rulings made against my Client, I determined, after researching the applicable law on those adverse rulings, the remaining adverse rulings not raised in this brief would be meritless on appeal. Additionally, counsel understands that any claims which were not objected to at trial, would not be preserved for appeal, and; therefore, would not be viable on appeal.

18

## <u>CERTIFICATION OF FONT AND TYPE STYLE</u>

Pursuant to Rule 32(a)(5), <u>Alabama Rules of Appellate Procedure</u>, counsel certifies that his computer equipment is incapable of producing the font and type style "Courier New 13" as required by the <u>Alabama Rules of Appellate Procedure</u>. Counsel certifies that he has used the font and type style "Courier New 12" for this brief and said font and type style constitutes the closest approximation of "Courier New 13" under the circumstances.

No. CR-02-2200

In the COURT of CRIMINAL APPEALS
of ALABAMA

◆

JAMES WILLIE JACKSON,

Appellant,

v.

STATE OF ·ALABAMA,

Appellee.

◆

On Appeal From the Circuit Court of
Russell County (CC-03-378)

**BRIEF OF APPELLEE**

Troy King
*Attorney General*

Andy S. Poole
*Assistant Attorney General*

Kristi Deason Hagood
*Deputy Attorney General*
Counsel of Record*

State of Alabama
Office of the Attorney General
11 South Union Street
Montgomery, Alabama  36130
(334) 242-7300*

April 6, 2004

EXHIBIT

RX-3

tabbies®

## STATEMENT REGARDING ORAL ARGUMENT

The State does not view oral argument as necessary in this case because the issue is not complicated and it has been thoroughly briefed.

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT......................... i

TABLE OF CONTENTS........................................ ii

TABLE OF AUTHORITIES.................................... iii

STATEMENT OF THE CASE.................................... 1

ISSUE PRESENTED FOR REVIEW............................... 3

STATEMENT OF THE FACTS................................... 4

STANDARD OF REVIEW....................................... 8

SUMMARY OF THE ARGUMENT.................................. 8

ARGUMENT................................................. 9

   The Trial Court Did Not Abuse Its Discretion In Its
   Rulings Regarding Objections Made During The Cross-
   Examination Of The Confidential Informant .............. 9

      A.   The trial court did not impermissibly curtail
      Jackson's ability to cross-examine Hathcock in regard
      to the agreement he made with the State. ............. 11

      B.   The trial court did not abuse its discretion by
      sustaining the State's objection regarding the length
      of time Hathcock had owned his car. ................. 16

CONCLUSION.............................................. 18

CERTIFICATE OF SERVICE................................. 19

## TABLE OF AUTHORITIES

**Cases**

Hart v. State, 852 So. 2d 839 (Ala. Crim. App. 2002) ..... 11

Mason v. State, 768 So. 2d 981 (Ala. Crim. App. 1998) .... 13

Phelps v. State, CR-01-0186, 2002 WL 1397880 (Ala. Crim.
  App. Jun. 28, 2002) ................................... 11

Reeves v. State, 807 So. 2d 18 (Ala. Crim. App. 2000) .... 11

Robinson v. State, 728 So. 2d 650 (Ala. Crim. App.
  1997) ................................................. 13

Roviaro v. United States, 353 U.S. 53 (1957) ............ 13

Self v. State, 420 So. 2d 798 (Ala. Crim. App. 1982) ..... 13

## STATEMENT OF THE CASE

This appeal arises from the conviction and sentence of James Willie Jackson ("Jackson") for one count of unlawful distribution of a controlled substance in the Circuit Court of Russell County, Alabama.  Judge George R. Greene presided.

On May 23, 2003, the Russell County Grand Jury indicted Jackson for one count of unlawful distribution of a controlled substance in violation of Section 13A-12-211 of the 1975 Code of Alabama.  (C. 1, 8-9)  On June 24, 2003, Jackson pleaded not guilty to the indicted charge.  (C. 1)  On that same date, the State filed notice of its intent to present evidence of Jackson's prior felony convictions for the purpose of sentence enhancement and impeachment.  (C. 1, 14-15)

On July 25, 2003, Jackson filed a motion to compel the State to reveal the name and criminal history of the confidential informant.  (C. 4, 28-30)  On July 29, 2003, the State responded that it had revealed the name of the confidential informant, but that it objected to disclosure of his criminal history.  (C. 4, 31-32)  Before the beginning of the trial, the trial court heard arguments on

the motion to compel. (R. 7-10) The trial court found

that Jackson was entitled to disclosure of the confidential

informant's felony convictions and criminal history

pertaining to the deal he worked out with the State. (R.

8-9) The State informed the trial court that it had

already provided the information regarding the deal worked

out with the confidential informant and the State. (R. 9)

The State performed a criminal background check on the

confidential informant, Jason Hathcock, and found that he

had no prior felony convictions. (R. 9, 11-12)

On August 21, 2003, the jury was struck and sworn. (R.

5, 10-12) The case was tried before a jury and, on that

same day, the jury returned a verdict finding Jackson

guilty of unlawful distribution of a controlled substance.

(C. 4, 42-43; R. 141) On September 9, 2003, the trial

court conducted a sentencing hearing. (R. 145-148) The

State presented certified copies of Jackson's two prior

felony convictions. (C. 70-77; R. 146) The trial court

sentenced Jackson to twenty-two years, with credit for time

served, under the Habitual Felony Offender Act. (C. 4-5,

44-45; R. 147-148) The trial court ordered Jackson to pay

a $2,500 fine, court costs, a $250 assessment to the

2

Alabama Crime Victims Compensation Fund, a $100 assessment to the Forensic Sciences Trust Fund, a $1,000 fine under the Drug Demand Reduction Act, and attorney's fees.  (C. 4-5, 44-45; R. 147-148)  In addition, the trial court ordered Jackson to participate in a substance abuse program; offered Jackson the opportunity to suspend the Drug Demand Reduction fine if he would enroll in drug rehabilitation; and, suspended Jackson's driver's license for six months. (C. 4-5, 44-45; R. 147-148)

On September 12, 2003, Jackson filed notice of appeal and a motion for new trial.  (C. 5, 47-48, 53-55)  The trial court denied Jackson's motion for new trial on September 17, 2003.  (C. 56)

## ISSUE PRESENTED FOR REVIEW

Did the trial court improperly curtail Jackson's ability to challenge the credibility of the State's confidential informant during cross-examination?

3

## STATEMENT OF THE FACTS

On September 16, 2002, James Willie Jackson sold crack cocaine to Jason Hathcock in Phenix City.  (R. 49-51) Consequently, Jackson was convicted of unlawful distribution of a controlled substance.  (R. 141)

On September 16, 2002, Jason Hathcock approached Russell County Sheriff Sergeant Steve Johnson at the Sheriff's Department.  (R. 32-33, 44)  Hathcock told Sergeant Johnson that he could buy dope or crack from a man known as "Blackjack" on Masons Road in Phenix City; in return, Hathcock wanted to work off fines and restitution owed from his two traffic tickets.  (R. 33-34, 45-46) Sergeant Johnson notified Sergeant Thomas Franklin, a detective with the Russell County Sheriff's Department. (R. 34, 84-85)  Sergeant Franklin was familiar with a person known as "Blackjack", and that this person was James Willie Jackson.  (R. 34, 85)  To make sure that Hathcock and Sergeant Franklin were talking about the same person, Sergeant Franklin compiled a photographic line-up with a picture of Jackson and five other similar-looking black men.  (R. 46-47, 86-87)  Sergeant Franklin showed this

4

photographic line-up to Hathcock and he identified Jackson as the person he knew as "Blackjack." (R. 86-87)

Sergeant Johnson searched Hathcock to make sure he had no illegal drugs or contraband on his person. (R. 33-36, 47, 88) Sergeant Franklin searched Hathcock's car for contraband and none was found. (R. 47, 89) They photocopied the twenty-dollar bill that they gave to Hathcock to use for the transaction. (R. 48, 88) They fitted Hathcock with an electronic monitoring device so they could listen to the transaction and make an audiotape of it. (R. 36, 88) Hathcock got back into his car and drove to a residence at 7 Masons Road; Sergeant Johnson and Sergeant Franklin followed, but the officers waited around the corner while Hathcock was making the transaction. (R. 36-37, 48, 90-93)

When Hathcock drove up to the trailer at 7 Masons Road, there were four people standing out in the front yard. (R. 49) Jackson walked up to Hathcock's car and asked him how he was doing. (R. 49) Hathcock asked Jackson if he could give him a twenty and Jackson said yes. (R. 49-50) Hathcock told Jackson that he wanted to see it first, so Jackson walked up to another guy and then walked back to

5

Hathcock.  (R. 55)  Jackson gave Hathcock a piece of crack cocaine and Hathcock gave Jackson the twenty-dollar bill. (R. 50)  Hathcock drove away and Sergeant Johnson and Sergeant Franklin followed him to Industrial Park.  (R. 90-92)  From their location, Sergeant Johnson and Sergeant Franklin could hear the entire transaction.  (R. 37, 89-90) The entire transaction was audio-recorded and the tape was played for the jury at trial.  (R. 89-90, 100)

Hathcock told them that Jackson was wearing a red shirt and black pants.  (R. 60, 93)  Hathcock turned over the crack cocaine to Sergeant Franklin and he sealed it in a plastic bag with his initials and the date.  (R. 91-92, 95) The substance field-tested positive for cocaine and was later verified as containing 0.17 grams of cocaine.  (C. 64; R. 79, 95)  Later that night, Sergeant Franklin drove back by the trailer at 7 Masons Road and he saw an individual wearing a red shirt and black pants.  (R. 93) They did not arrest Jackson immediately because they wanted to try making other cases.  (R. 97)  After several attempts, Russell County Sheriff's deputies were able to arrest Jackson on January 9, 2003.  (R. 114)

Subsequently, Hathcock's two tickets were disposed of
and he paid $180 of the original $236 fine. (R. 63)  At
trial, Hathcock testified that one of his traffic tickets
was for driving with a suspended license. (R. 62)  When
asked why his license was suspended, the State objected to
the relevance of the question and the trial court sustained
the objection. (R. 62)  Hathcock also testified that he
was driving his car that night, a 1994 Mercury Sable.  (R.
69)  Jackson's counsel asked how long he had owned the car
and the State objected to the relevance of the question;
the trial court sustained the objection. (R. 69-70)

After being properly given the <u>Miranda</u> warnings and
waiving them, Jackson spoke to Investigator Goodrich and
Sergeant Franklin. (R. 99)  This interview was video and
audio recorded and played for the jury. (R. 99-100)
During this interview, Sergeant Franklin said "I know you
may not be the main man, you may not be making all the
money, in fact, I think you said you probab[l]y just
getting part of the dope" and Jackson turned to
Investigator Goodrich and said "see, I told you that's what
I was doing." (R. 101)  After considering the evidence
presented at trial, the jury returned a verdict finding

7

Jackson guilty of unlawful distribution of a controlled substance. (R. 141)

## STANDARD OF REVIEW

The trial court's ruling regarding what is allowed during cross-examination is reviewed for "abuse of discretion." See Long v. State, 621 So. 2d 383, 388 (Ala. Crim. App. 1993)(quoting Beavers v. State, 565 So. 2d 688, 689 (Ala. Crim. App. 1990)("The latitude and extent of cross-examination is abuse of the discretion of the trial court, and rulings with respect thereto will not be reversed on appeal except in cases of abuse.").

## SUMMARY OF THE ARGUMENT

Jackson argues on appeal that the trial court abused its discretion by impermissibly curtailing his cross-examination of Hathcock in regard to challenging his credibility. First, Jackson argues that the trial court erred by precluding him from asking Hathcock about the reason his driver's license was suspended when he received a ticket for driving with a suspended license. Second,

Jackson argues that the trial court erred by precluding him from asking Hathcock about the length of time he had owned the car he drove the night of the drug transaction. The trial court properly sustained the State's objections to these questions because they were irrelevant and they were not eliciting "bias-creating facts."

<div align="center">

**ARGUMENT**

</div>

**The Trial Court Did Not Abuse Its Discretion In Its Rulings Regarding Objections Made During The Cross-Examination Of The Confidential Informant.**

Jackson argues on appeal that the trial court abused its discretion by sustaining the State's objections to his cross-examination of the confidential informant, Jason Hathcock. Jackson asserts that the key to the State's case was Hathcock's credibility because the law enforcement officers did not witness the transaction. This argument ignores the fact that the State presented the audio recording of the transaction to the jury as evidence. (R. 51-54) Even so, Jackson claims that the trial court impermissibly curtailed his ability to challenge Hathcock's

credibility by sustaining the State's objections during cross-examination of Hathcock.

In regard to cross-examination, this Court has held the following:

> It is well settled that '[a] party is entitled to a thorough and sifting cross-examination of the witnesses against him,' McMillian v. State, 594 So.2d 1253, 1261 (Ala.Crim.App.1991), remanded on other grounds, 594 So.2d 1288 (Ala.1992), opinion after remand, 616 So.2d 933 (Ala. Crim. App. 1993), citing Perry v. Brakefield, 534 So.2d 602 (Ala. 1988), and § 12-21-137, Ala.Code 1975, and that a party should be given 'wide latitude on cross-examination to test a witness's partiality, bias, intent, credibility, or prejudice, or to impeach, illustrate, or test the accuracy of the witness's testimony or recollection as well as the extent of his knowledge.' Williams v. State, 710 So.2d 1276, 1327 (Ala. Crim. App. 1996), aff'd, 710 So.2d 1350 (Ala.1997), cert. denied, 524 U.S. 929, 118 S.Ct. 2325, 141 L.Ed.2d 699 (1998). It is equally well established, however, 'that the latitude and extent of cross-examination are matters which of necessity rest largely within the sound discretion of the trial court, and rulings with respect thereto will not be revised on appeal except in extreme cases of abuse.' Long v. State, 621 So.2d 383, 388 (Ala. Crim. App. 1993), cert. denied, 510 U.S. 932, 114 S.Ct. 345, 126 L.Ed.2d 310 (1993), quoting Beavers v. State, 565 So.2d 688, 689 (Ala. Crim. App. 1990). 'The trial judge may reasonably limit the range of cross-examination on matters that are repetitious, argumentative, collateral, irrelevant, harassing, annoying, or humiliating.' Newsome v. State, 570 So.2d 703, 714 (Ala. Crim. App. 1989). 'On appeal, the party claiming an abuse of such discretion bears the burden of persuasion.' Ross v. State, 555 So.2d 1179, 1180 (Ala. Crim. App. 1989),

quoting <u>Hembree v. City of Birmingham</u>, 381 So.2d 664, 666 (Ala. Crim. App. 1980).

See <u>Phelps v. State</u>, CR-01-0186, 2002 WL 1397880, at *3 (Ala. Crim. App. Jun. 28, 2002); <u>see also</u> <u>Hart v. State</u>, 852 So. 2d 839, 844 (Ala. Crim. App. 2002); <u>Reeves v. State</u>, 807 So. 2d 18, 38 (Ala. Crim. App. 2000). As will be discussed below, the trial court did not abuse its discretion or impermissibly curtail Jackson's ability to challenge Hathcock's credibility during cross-examination.

**A.    The trial court did not impermissibly curtail Jackson's ability to cross-examine Hathcock in regard to the agreement he made with the State.**

Jackson argues on appeal that the trial court impermissibly curtailed his ability to challenge Hathcock's credibility in regard to his motivation for working with law enforcement. Sergeant Johnson and Hathcock testified that Hathcock approached Sergeant Johnson at the Russell County Sheriff's Department with the proposition that he could buy dope or crack from a man known as "Blackjack" on Masons Road in Phenix City in return for working off fines and restitution owed from his two traffic tickets. (R. 32-34, 44-46) Subsequently, Hathcock's two tickets were

11

disposed of and he paid $180 of the original $236 fine.
(R. 63)

Before trial, Jackson filed a motion to compel the
State to reveal the name and criminal history of the
confidential informant. (C. 4, 28-30)  The State responded
that it had revealed the name of Jason Hathcock as the
confidential informant, but that it objected to disclosure
of his criminal history. (C. 4, 31-32)  After hearing
arguments on the matter, the trial court found that Jackson
was entitled to disclosure of the confidential informant's
felony convictions and criminal history pertaining to the
deal he worked out with the State. (R. 7-10)  The State
informed the trial court that it had already provided the
information regarding the deal worked out between Hathcock
and the State; Hathcock had no prior felony convictions.
(R. 9, 11-12)

At trial, Hathcock testified that one of his traffic
tickets was for driving with a suspended license. (R. 62)
When asked why his license was suspended, the State
objected to the relevance of the question and the trial
court sustained the objection. (R. 62)  Jackson argues
that the trial court impermissibly curtailed his ability to

12

challenge Hathcock's credibility when it sustained the State's objection regarding the reason Hathcock's license was suspended at the time he received the ticket for driving with a suspended license.

In Roviaro v. United States, 353 U.S. 53 (1957), the United States Supreme Court held that where a confidential informant was an active participant in the illegal activity resulting in the subsequent arrest and conviction of the defendant, the defendant was entitled to disclosure of the confidential informant's identity and address. See Self v. State, 420 So. 2d 798, 799-800 (Ala. Crim. App. 1982); see also Mason v. State, 768 So. 2d 981, 1002 (Ala. Crim. App. 1998); Robinson v. State, 728 So. 2d 650, 656 (Ala. Crim. App. 1997). Further disclosure may be warranted, however, under certain circumstances. See Self, 420 So. 2d at 800 (citing Roviaro v. United States, 353 U.S. at 62).

The State voluntarily disclosed Hathcock's identity to Jackson and the details of the agreement with Hathcock in exchange for his cooperation. (R. 9, 11-12) In addition, the trial court required the State to disclose Hathcock's felony convictions, but he had no felony convictions. (R. 7-10) Further, this information was presented to the jury

13

to explain his motivation for working with police.    (R. 32-34, 44-46, 62-63)    In addition, the State presented the audiotape recording of the transaction for additional verification of Hathcock's testimony.    (R. 51-54) Therefore, the jury was fully able to judge Hathcock's credibility when evaluating his testimony.

In regard to impeaching evidence that may be used to challenge a witness's credibility on cross-examination, this Court has held the following:

> "Rule 616, Ala.R.Evid., provides that '[a] party may attack the credibility of a witness by presenting evidence that the witness has a bias or prejudice for or against a party to the case or that the witness has an interest in the case.' Generally, this rule permits cross-examination, and the introduction of independent evidence, regarding statements, acts, or relationships indicating bias or prejudice, including arrests, indictments, and pending charges that have not resulted in convictions even though such 'bad acts' are generally inadmissible under Rules 608 and 609, Ala.R.Evid. See, e.g., C. Gamble, McElroy's Alabama Evidence, § 149.01(8)(a) (5th ed.1996). However, the arrests, indictments or pending charges must have a tendency to show bias or prejudice on the part of the witness in order to be admissible." 807 So.2d at 38-39. This Court, in Reeves, continued:
>
> "Furthermore, although '[i]t is always permissible to cross-examine a witness to ascertain his interest, bias, prejudice or partiality concerning the matters about which he is testifying ... [t]he fact that a witness has merely been indicted for an offense unrelated to the crime charged against the accused is not such

14

a bias-creating fact.' <u>Woodard v. State</u>, 489 So.2d
1, 2 (Ala. Crim. App. 1986). Only where '"the
offenses are factually related or where the
particular facts furnish a reasonable inference of
interest or bias"' is the fact that a witness has
charges pending a proper subject of cross-
examination. <u>Beavers v. State</u>, 497 So.2d 612, 617
(Ala. Crim. App. 1986), quoting <u>Woodard</u>, 489 So.2d
at 2. <u>See</u> <u>also</u> <u>Baker v. State</u>, 568 So.2d 374 (Ala.
Crim. App. 1990); and <u>Moody v. State</u>, 495 So.2d
104 (Ala. Crim. App.), cert. denied, 495 So.2d 110
(Ala.1986)." 807 So.2d at 39.

See <u>Phelps</u>, 2002 WL 1397880, at *3.

Jackson was allowed to cross-examine Hathcock about the

traffic offense he was working off by cooperating with law

enforcement. (R. 62-63) The reason why Hathcock's license

was suspended was not within the proper scope of cross-

examination, however, because it was an underlying case

that was not factually related to the deal he was receiving

from the State for a reduction in his fines owed. The

reason for the suspension was not a "bias-creating fact"

because he was getting no consideration for the reasons

that led to his license being suspended. Jackson was given

full opportunity to cross-examine Hathcock for his bias as

it pertained to the deal he made with the State for

cooperating in the sting and the jury was given full

opportunity to judge the credibility of his testimony. As

such, the trial court did not abuse its discretion by sustaining the State's objection to this question.

**B.   The trial court did not abuse its discretion by sustaining the State's objection regarding the length of time Hathcock had owned his car.**

Jackson further argues on appeal that the trial court abused its discretion by sustaining the State's objection to Jackson cross-examining Hathcock in regard to the length of time he had owned the car he was driving on the night of the transaction.   Hathcock testified that he was driving his car that night, a 1994 Mercury Sable. (R. 69) Jackson's counsel asked how long he had owned the car and the State objected to the relevance of the question; the trial court sustained the objection.   (R. 69-70)   Jackson argues that this was relevant to challenging his credibility because if he had owned his car a long time, this would prove that he had knowledge of where to hide drugs in his car so that the police would not have been able to find it when searching the vehicle.   According to Jackson, this is important in disproving that Hathcock obtained the crack cocaine from Jackson and relevant to proving that Hathcock had the

16

contraband on his person or in his car before the transaction.

Again, this argument ignores the fact that the State presented an audiotape of the transaction to the jury at trial. (R. 51-54) Further, this ignores the fact that Sergeant Franklin manually searched Hathcock's car in addition to using the canine unit to search the car prior to the transaction. (R. 88-89, 104-105) Even so, Jackson's argument fails to state what approximate amount of time would have been long enough for Hathcock to have owned the car so that he would be able to hide drugs in such a way that would elude law enforcement officers and canine drug search units. If Jackson's theory of the case -- that Hathcock hid the contraband in his vehicle and eluded law enforcement searching his car for such contraband -- were to be believed by the jury, then such knowledge could have been gained in a relatively short amount of time. Rather, there is no way of quantifying the length of time necessary for someone to hide contraband in a vehicle in such a way as to elude law enforcement officers and canine drug search units. Thus, Jackson's claim that the trial court abused its discretion by not

17

allowing him to cross-examine Hathcock about the length of time he had owned this vehicle is clearly without merit.

## CONCLUSION

Based upon the foregoing, the State of Alabama respectfully requests this Honorable Court affirm Jackson's conviction and sentence for unlawful distribution of a controlled substance.

Respectfully submitted,

Troy King
*Attorney General*

Andy S. Poole
*Assistant Attorney General*

Kristi Deason Hagood
Kristi Deason Hagood
*Deputy Attorney General**
Counsel of Record*

## CERTIFICATE OF SERVICE

I hereby certify that on this <u>6th</u> day of April, 2004, I served a copy of the foregoing on the attorney for Jackson, by placing said copy in the United States Mail, first class, postage prepaid and addressed as follows:

> Jeremy W. Armstrong
> Armstrong & Gray, P.C.
> P. O. Box 3409
> 1619 Broad Street
> Phenix City, Alabama   36868-3409

<div style="text-align: right">

_Kristi Deason Hagood_

</div>

Kristi Deason Hagood
_Deputy Attorney General*_

ADDRESS OF COUNSEL:

Office of the Attorney General
Alabama State House
11 South Union Street
Montgomery, AL   36130
(334) 242-7408
143756

Notice: This unpublished memorandum should not be cited as precedent. See Rule 54, Ala.R.App.P. Rule 54(d), states, in part, that this memorandum "shall have no precedential value and shall not be cited in arguments or briefs and shall not be used by any court within this state, except for the purpose of establishing the application of the doctrine of law of the case, res judicata, collateral estoppel, double jeopardy, or procedural bar."

# Court of Criminal Appeals

State of Alabama

Judicial Building, 300 Dexter Avenue

**P. O. Box 301555**

**Montgomery, AL 36130-1555**

*HAGOOD*

*5 8875*



RELEASED

APR 23 2004

CLERK
ALA COURT CRIMINAL APPEALS

H.W."BUCKY" McMILLAN
Presiding Judge
SUE BELL COBB
PAMELA W. BASCHAB
GREG SHAW
A. KELLI WISE
Judges

Lane W. Mann
Clerk
Wanda K. Ivey
Assistant Clerk
(334) 242-4590
Fax (334) 242-4689

### MEMORANDUM

CR-02-2200                    Russell Circuit Court CC-03-378

<u>James W. Jackson v. State of Alabama</u>

Baschab, Judge.

The appellant was convicted of unlawful distribution of a controlled substance, a violation of §13A-12-211(a), Ala. Code 1975. The trial court sentenced him, as a habitual offender, to serve a term of twenty-two years in prison. See §13A-5-9(b)(2), Ala. Code 1975. It also imposed a $1,000 Demand Reduction Assessment Act fine. See §13A-12-281, Ala. Code 1975. The appellant filed a motion for a new trial, which the trial court summarily denied. This appeal followed.

The State presented evidence that Jason Hathcock approached Deputy Steve Johnson of the Russell County Sheriff's Department about working off some of the restitution or fines from his two traffic citations for driving with a suspended license. Subsequently, Hathcock drove his vehicle

EXHIBIT

RX-4

to a trailer and made a controlled buy of cocaine from the appellant. After the buy, Hathcock drove to another location and turned the cocaine over to a law enforcement officer.

The appellant argues that the trial court improperly limited his cross-examination of Hathcock. Specifically, he contends that the trial court should have allowed him to ask Hathcock why his driver's license had been suspended and how long he had owned the vehicle he was driving when he made the buy.

> "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
>
> " . . .
>
> "(2) <u>Offer of Proof</u>. In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked."

Rule 103(a), Ala. R. Evid. Further,

> "'"[a]n offer of proof must be certain, intelligible, and must definitely state the facts sought to be proved, either by reference to the evidence proposed to be offered or to the facts to be proved.... The offer cannot be made in general terms, but must be so made as to give the court an opportunity to rule on the specific testimony, complaint of the exclusion of which is made, and must be so specific as to show the error of the court in refusing to admit it."' <u>Redwine v. State</u>, 258 Ala. 196, 61 So. 2d 724, 727 (Ala. 1952)."

<u>Futral v. State</u>, 558 So. 2d 991, 992 (Ala. Crim. App. 1989). In this case, the appellant did not make an offer of proof as to the substance of the testimony he was trying to elicit or as to the relevance of the testimony. Therefore, his argument is not properly before this court. Accordingly, we affirm the trial court's judgment.

**AFFIRMED.**

McMillan, P.J., and Cobb, Shaw, and Wise, JJ., concur.

*Hagood*
*58875*

# THE STATE OF ALABAMA - - JUDICIAL DEPARTMENT
# THE ALABAMA COURT OF CRIMINAL APPEALS

**CR-02-2200**

James W. Jackson v. State of Alabama  (Appeal from Russell  Circuit Court: CC03-378).

# CERTIFICATE OF JUDGMENT

WHEREAS, the appeal in the above referenced cause has been duly submitted and considered by the Court of Criminal Appeals; and

WHEREAS, the judgment indicated below was entered in this cause on April 23rd 2004:

### Affirmed by Memorandum.

NOW, THEREFORE, pursuant to Rule 41 of the Alabama Rules of Appellate Procedure, it is hereby certified that the aforesaid judgment is final.

**Witness. Lane W. Mann, Clerk
Court of Criminal Appeals, on this
the 12th day of May, 2004.**

**Clerk
Court of Criminal Appeals
State of Alabama**

cc: Hon. George R. Greene, Circuit Judge
Hon. Kathy S. Coulter, Circuit Clerk
Jeremy W. Armstrong, Attorney
Kristi L. Deason Hagood, Asst. Atty. Gen.



EXHIBIT
RX-5

```
ACRO370              ALABAMA JUDICIAL INFORMATION SYSTEM        CASE: CC 2003 000378.60
OPER: JOS                  CASE ACTION SUMMARY
PAGE:   1                   CIRCUIT   CRIMINAL                 RUN DATE: 10/27/2006
==================================================================================
IN THE CIRCUIT COURT OF  RUSSELL                                    JUDGE: GRG

CITY OF SL0204552                    VS      JACKSON JAMES WILLIE
                                             151754
CASE: CC 2003 000378.60                      565 BIBB LANE
                                             BRENT, AL  35034 0000

DOB: 04/25/1961         SEX: M  RACE: B  HT: 5 11  WT: 180    HR: BLK EYES: BRO
SSN: 423029851  ALIAS NAMES:
==================================================================================
CHARGE01: RULE 32-FELONY        CODE01: RULE  LIT: RULE 32-FELONY TYP: F #: 001
OFFENSE DATE:                           AGENCY/OFFICER:

DATE WAR/CAP ISS:                       DATE ARRESTED:
DATE    INDICTED:                       DATE     FILED: 10/29/2004
DATE    RELEASED:                       DATE   HEARING:
     BOND AMOUNT:            $.00          SURETIES:

DATE 1:              DESC:              TIME: 0000
DATE 2:              DESC:              TIME: 0000

TRACKING NOS:                    /                      /

  DEF/ATY:                          TYPE:                        TYPE:

                      00000                      00000

PROSECUTOR:


==================================================================================
OTH CSB:   000000000000 CHK/TICKET NO:                  GRAND JURY:
COURT REPORTER: _____ SID NO:      000000000
DEF STATUS: PRISON           DEMAND:                        OPER: JOS
==================================================================================
 TRANS DATE    ACTIONS, JUDGEMENTS, AND NOTES                         OPE
==================================================================================
| 09/21/2004  |  IN FORMA PAUPERIS DECLARATION                      | JOS |
|-------------|----------------------------------------------------|-----|
| 10/29/2004  |  ORDER GRANTING REQUEST TO PROCEED IN FORMA         | JOS |
|-------------|----------------------------------------------------|-----|
| 10/29/2004  |       PAUPERIS                                      | JOS |
|-------------|----------------------------------------------------|-----|
| 10/29/2004  |  PETITION FOR RELIEF FROM CONVICTION OR SENTENCE    | JOS |
|-------------|----------------------------------------------------|-----|
| 11/19/2004  |  ANSWER TO RULE 32 PETITION                         | JOS |
|-------------|----------------------------------------------------|-----|
| 12/13/2004  |  REPLY AND REBUTTAL TO ANSWER FROM STATE            | JOS |
|-------------|----------------------------------------------------|-----|
| 02/25/2005  |  MOTION FOR EVIDENTUARY HEARING                     | JOS |
|-------------|----------------------------------------------------|-----|
| 03/21/2005  |  REQUEST FOR SUMMARY ON THE STATUS OF RULE 32       | JOS |
|-------------|----------------------------------------------------|-----|
| 03/21/2005  |       PETITION                                      | JOS |
|-------------|----------------------------------------------------|-----|
| 05/05/2005  |  ORDER OF DENIAL ON REQUEST FOR SUMMARY ON THE      | JOS |
|-------------|----------------------------------------------------|-----|
| 05/05/2005  |       STATUS OF RULE 32 PETITION                    | JOS |
|-------------|----------------------------------------------------|-----|
| 05/06/2005  |  TRANSMITTAL NOTICE        SENT TO DEFENDANT (AR09) |     |
|-------------|----------------------------------------------------|-----|
| 08/25/2005  |  REQUEST FOR STATUS OF RULE 32 PETITION             | JOS |
|-------------|----------------------------------------------------|-----|
| 09/30/2005  |  MOTION FOR AN EVIDENTUARY HEARING                  | JOS |
|-------------|----------------------------------------------------|-----|
| 07/21/2006  |  ADDR2 CHANGED FROM: P.O. BOX 767          (AR01)   | JOS |
|-------------|----------------------------------------------------|-----|
| 07/21/2006  |  HOME CITY CHANGED FROM: CLAYTON           (AR01)   | JOS |
|-------------|----------------------------------------------------|-----|
| 07/21/2006  |  MOTION FOR STATUS OF RULE 32 PETITION              | JOS |
```

EXHIBIT

RX-6

```
ACRO370                ALABAMA JUDICIAL INFORMATION SYSTEM        CASE: CC 2003 000378.60
OPER: JOS                      CASE ACTION SUMMARY
PAGE:   2                   CIRCUIT   CRIMINAL                    RUN DATE: 10/27/2006
=================================================================================
IN THE CIRCUIT COURT OF  RUSSELL                                        JUDGE: GRG

CITY OF SL0204552                    VS     JACKSON JAMES WILLIE
                                            151754
CASE: CC 2003 000378.60                     565 BIBB LANE
                                            BRENT, AL  35034 0000

DOB: 04/25/1961          SEX: M  RACE: B  HT: 5 11  WT: 180    HR: BLK EYES: BRO
SSN: 423029851  ALIAS NAMES:
=================================================================================
   TRANS DATE  |  ACTIONS, JUDGEMENTS, AND NOTES                            OPE
=================================================================================
| 10/27/2006 | ORDER OF DISMISSAL, COSTS ASSESSED TO PETITIONER.         | JOS |
|------------|--------------------------------------------------------------|
| 10/27/2006 |    MONIES ARE TO BE DEDUCTED FROM THE PETITIONER'S         | JOS |
|------------|--------------------------------------------------------------|
| 10/27/2006 |    PRISON ACCOUNT TO REIMBURSE THE STATE OF                | JOS |
|------------|--------------------------------------------------------------|
| 10/27/2006 |    ALABAMA COURT COSTS.                                    | JOS |
|------------|--------------------------------------------------------------|
| 10/27/2006 | COST BILL ISSUED: 10/27/2006                 (AR08)        | JOS |
|------------|--------------------------------------------------------------|
| 10/27/2006 | CASE ACTION SUMMARY PRINTED                   (AR08)        | JOS |
```

10/25/04    *Motion granted*

Case Number

CC    03    000378    10
ID    YR    NUMBER
(To be completed
by Court Clerk)

# IN FORMA PAUPERIS DECLARATION

## Circuit Court Of Russell County, Ala.
[insert appropriate court]

James W. Jackson
(Petitioner)

vs.

State of Alabama
(Respondent(s)

### DECLARATION IN SUPPORT OF REQUEST TO PROCEED
### IN FORMA PAUPERIS

I, James W. Jackson - A15 151 754 declare that I am the petitioner in the above entitled case; that in support of my motion to proceed without being required to prepay fees, costs, or give security therefor, I state that because of my poverty I am unable to pay the costs of said proceeding or to give security therefor; that I believe I am entitled to relief.

1. Are you presently employed?    Yes _____    No __X__ (incarcerated)

   a. If the answer is "yes", state the amount of your salary or wages per month, and give the name and address of your employer.

   N/A

   b. If the answer is "no", state the date of last employment and the amount of the salary and wages per month which you received.

   (Too long ago to remember)

2. Have you received within the past twelve months any money from any of the following sources?

   a. Business, profession, or other form of self-employment?

   Yes _____        No __X__

   b. Rent payments, interest, or dividends?

   Yes _____        No __X__

   c. Pensions, annuities, or life insurance payments?

   Yes _____        No __X__

   d. Gifts or inheritances?

   Yes _____        No __X__

   e. Any other sources?

   Yes __X__ .        No _____ (loan from family members)

If the answer to any of the above is "yes", describe each source of money and state the amount received from each during the past twelve months.

Very small loans from family members for my needed Hygene products, and Doctor visits

3. Do you own cash, or do you have money in a checking or savings account?

Yes _____    No __X__

(Include any funds in prison accounts.)

If the answer is "yes", state the total value of the items owned.

N/A

4. Do you own any real estate, stocks, bonds, notes, automobiles, or other valuable property (excluding ordinary household furnishings and clothing)?

Yes _____    No __X__

If the answer is "yes", describe the property and state its approximate value.

N/A

5. List the persons who are dependent upon you for support, state your relationship to those persons, and indicate how much you contribute toward their support.

N/A

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

Executed on ___9-9-04___
              (Date)

_James W. Jackson_
Signature of Petitioner
AIS 151754

### CERTIFICATE

I hereby certify that the petitioner herein has the sum of $ _0 45_ on account to his credit at the institution where he is confined. I further certify that petitioner likewise has the foregoing securities to his credit according to the records of said ___Ventress___ institution:

_Computed monthly Balances attached._

9/15/0~    VENTRESS CORRECTIONAL FACILITY
DATE       P. O. BOX 767
           CLAYTON, AL 36016

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS
224856VENTRESS CORR FAC

AIS #: 151754      NAME: JACKSON, JAMES WILLIE          AS OF: 09/15/2004

| MONTH | # OF DAYS | AVG DAILY BALANCE | MONTHLY DEPOSITS |
|-------|-----------|-------------------|------------------|
| SEP   | 15        | $0.00             | $0.00            |
| OCT   | 31        | $0.00             | $0.00            |
| NOV   | 30        | $2.42             | $20.88           |
| DEC   | 31        | $1.01             | $20.00           |
| JAN   | 31        | $8.98             | $40.00           |
| FEB   | 28        | $3.97             | $20.00           |
| MAR   | 31        | $2.76             | $40.00           |
| APR   | 30        | $0.94             | $20.00           |
| MAY   | 31        | $0.55             | $20.00           |
| JUN   | 30        | $0.94             | $20.00           |
| JUL   | 31        | $2.43             | $40.00           |
| AUG   | 31        | $0.80             | $40.00           |
| SEP   | 15        | $1.13             | $20.00           |

James W. Jackson - 151754
Ventress Correctional Facility
Dorm (10-A)
P.O. Box 767
Clayton, Al. 36016 - 0767

Legal Documents

Certified Ma[il]

RETURN RECEIPT REQUESTED

RETURN RECEIPT REQUESTED

RETURN RECEIPT REQUESTED

**CERTIFIED MAIL**

PLACE STICKER AT TOP OF ENVELOPE
TO THE RIGHT OF RETURN ADDRESS.
FOLD AT DOTTED LINE

7000 0520 0013 6414 6784

Att: Kathy S. Coulter - Circuit C[lerk]
Russell County Circuit C[ourt]
P.O. Box 518
Phenix City, Al. 368[68]

NAME [signature]
1st Notice 9-21-04
2nd Notice _____
Return _____

FIRST CLASS

10/25/04     *Melein greenlee*

Case Number

CC     03     000378.10
ID     YR     NUMBER
(To be completed
by Court Clerk)

## IN FORMA PAUPERIS DECLARATION

Circuit Court Of Russell County, Ala.

[insert appropriate court]

James W. Jackson

(Petitioner)

vs.

State of Alabama

(Respondent(s))

### DECLARATION IN SUPPORT OF REQUEST TO PROCEED IN FORMA PAUPERIS

I, James W. Jackson - A15 151874 declare that I am the petitioner in the above entitled case; that in support of my motion to proceed without being required to prepay fees, costs, or give security therefor, I state that because of my poverty I am unable to pay the costs of said proceeding or to give security therefor; that I believe I am entitled to relief.

1. Are you presently employed?     Yes _____     No **X** (incarcerated)

   a. If the answer is "yes", state the amount of your salary or wages per month, and give the name and address of your employer.

   N/A

   b. If the answer is "no", state the date of last employment and the amount of the salary and wages per month which you received.

   (Too long ago to remember)

2. Have you received within the past twelve months any money from any of the following sources?

   a. Business, profession, or other form of self-employment?

   Yes _____     No **X**

   b. Rent payments, interest, or dividends?

   Yes _____     No **X**

   c. Pensions, annuities, or life insurance payments?

   Yes _____     No **X**

   d. Gifts or inheritances?

   Yes _____     No **X**

   e. Any other sources?

   Yes **X**     No _____ (loan from family members)

6. Kind of trial: (Check one)

    (a) Jury _X_           (b) Judge only _____

7. Did you testify at the trial?

    Yes _____          No _____

8. Did you appeal from the judgment of conviction?

    Yes _X_          No _____

9. If you did appeal, answer the following:

    (a) As to the state court to which you first appealed, give the following information:

        (1) Name of court: Court of Criminal Appeals, State of Alabama - Judicial Building, 300 Dexter Ave. Montgomery, Al. 36130

        (2) Result: Conviction Affirmed

        (3) Date of result: April (23rd), 2004

    (b) If you appealed to any other court, then as to the second court to which you appealed, give the following information:

        (1) Name of court: N/A

        (2) Result: N/A

        (3) Date of result: N/A

    (c) If you appealed to any other court, then as to the third court to which you appealed, give the following information:

        (1) Name of court: N/A

        (2) Result: N/A

        (3) Date of result: N/A

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?

Yes _____          No __X__

11. If your answer to Question 10 was "yes", then give the following information in regard to the first such petition, application, or motion you filed:

(a) (1) Name of court _____

(2) Nature of proceeding _____

(3) Grounds raised _____

_____

_____

_____

_____

(attach additional sheets if necessary)

(4) Did you receive an evidentiary hearing on your petition, application, or motion?

Yes _____          No __X__

(5) Result _____

(6) Date of result _____

(b) As to any second petition, application, or motion, give the same information:

(1) Name of court _____

(2) Nature of proceeding _____

(3) Grounds raised _____

_____

_____

_____

(attach additional sheets if necessary)

(4) Did you receive an evidentiary hearing on your petition, application, or motion?

Yes _____          No _____

(5) Result _____

(6) Date of result _____

(c) As to any third petition, application, or motion, give the same information (attach additional sheets giving the same information for any subsequent petitions, applications, or motions):

(1) Name of court _____

(2)  Nature of proceeding _____

(3)  Grounds raised _____

_____

_____

_____

_____

(attach additional sheets if necessary)

(4)  Did you receive an evidentiary hearing on your petition, application, or motion?

    Yes _____             No _____

(5)  Result _____

(6)  Date of result _____

(d)  Did you appeal to any appellate court the result of the action taken on any petition, application, or motion?

   (1)  First petition, etc.        Yes _____          No _____

   (2)  Second petition, etc.     Yes _____          No _____

   (2)  Third petition, etc.      Yes _____          No _____

**ATTACH ADDITIONAL SHEETS GIVING THE SAME INFORMATION
FOR ANY SUBSEQUENT PETITIONS, APPLICATIONS, OR MOTIONS.**

(e)  If you did not appeal when you lost on any petition, application, or motion, explain briefly why you did not:

_____

_____

_____

12.  Specify every ground on which you claim that you are being held unlawfully, by placing a check mark on the appropriate line(s) below and providing the required information. Include _all_ facts. If necessary, you may attach pages stating additional grounds and the facts supporting them.

# GROUNDS OF PETITION

Listed below are the possible grounds for relief under Rule 32. Check the ground(s) that apply in your case, and follow the instruction under the ground(s):

_____ A.  The Constitution of the United States or of the State of Alabama requires a new trial, a new sentence proceeding, or other relief.

    For your information, the following is a list of the most frequently raised claims of constitutional violation:

(1)   Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.

(2)   Conviction obtained by use of coerced confession.

(3)   Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(4)   Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(5)   Conviction obtained by a violation of the privilege against self-incrimination.

X (6)   Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(7)   Conviction obtained by a violation of the protection against double jeopardy.

(8)   Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

X (9)   Denial of effective assistance of counsel.

This list is not a complete listing of all possible constitutional violations.

If you checked this ground of relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each constitutional violation that you claim, whether or not it is one of the nine listed above, and include under it each and every fact you feel supports this claim. Be specific and give details.

_____ B.   The court was without jurisdiction to render the judgment or to impose the sentence.

If you checked this ground or relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each and every fact you feel supports this claim. Be specific and give details.

_____ C.   The sentence imposed exceeds the maximum authorized by law, or is otherwise not authorized by law.

If you checked this ground or relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each and every fact you feel supports this claim. Be specific and give details.

_____ D.   Petitioner is being held in custody after his sentence has expired.

If you checked this ground or relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each and every fact you feel supports this claim. Be specific and give details.

X   E.   Newly discovered material facts exist which require that the conviction or sentence be vacated by the court, because:

The facts relied upon were not known by petitioner or petitioner's counsel at the time of trial or sentencing or in time to file a post-trial motion pursuant to rule 24, or in time to be included in any previous collateral proceeding, and could not have been discovered by any of those times through the exercise of reasonable diligence; and

The facts are not merely cumulative to other facts that were known; and

5

The facts do not merely amount to impeachment evidence; and

If the facts had been known at the time of trial or sentencing, the result would probably have been different; and

The facts establish that petitioner is innocent of the crime for which he was convicted or should not have received the sentence that he did.

If you checked this ground or relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each and every fact you feel supports this claim. Be specific and give details.

_____  F.  The petitioner failed to appeal within the prescribed time and that failure was without fault on petitioner's part.

If you checked this ground or relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each and every fact you feel supports this claim. Be specific and give details.

13.  IMPORTANT NOTICE REGARDING ADDITIONAL PETITIONS RULE 32.2(b) LIMITS YOU TO ONLY ONE PETITION IN MOST CIRCUMSTANCES. IT PROVIDES:

"Successive Petitions.  The court shall not grant relief on a second or successive petition on the same or similar grounds on behalf of the same petitioner. A second or successive petition on different grounds shall be denied unless the petitioner shows both that good cause exist why the new ground or grounds were not known or could not have been ascertained through reasonable diligence when the first petition was heard, and that failure to entertain the petition will result in a miscarriage of justice."

A.  Other than an appeal to the Alabama Court of Criminal Appeals or the Alabama Supreme Court, have you filed in state court any petition attacking this conviction or sentence?

Yes _____          No  X

B.  If you checked "Yes," give the following information as to earlier petition attacking this conviction or sentence:

(a)  Name of court _____

(b)  Result _____ N/A _____

(c)  Date of result _____
     (attach additional sheets if necessary)

C.  If you checked the "Yes" line in 13A, above, and this petition contains a different ground or grounds of relief from an earlier petition or petitions you filed, attach a separate sheet or sheets labeled: "EXPLANATION FOR NEW GROUND(S) OF RELIEF."

On the separate sheet(s) explain why "good cause exists why the new ground or grounds were not known or could not have been ascertained through reasonable diligence when the first petition was heard, and [why the] failure to entertain [this] petition will result in a miscarriage of justice."

14.  Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack? (No)

13

Susan C. Huffstutler (334) 298-5576

15. Give the name and address, if known, of each attorney who represented you at the following stages of the case that resulted in the judgment under attack:

(a) At preliminary hearing ————————— Jeremy W. Armstrong
1619 Broad St.
(b) At arraignment and plea ————————— Phenix City, Al. 36868
(334) 291-0410

(c) At trial —————————

(d) At sentencing — (A) through (E),
Attorney Armstrong - Through Appeal

(e) On appeal —————————

(f) In any post-conviction proceeding ___N/A___

(g) On appeal from adverse ruling in a post-conviction proceeding ___N/A___

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?

Yes _____        No _X_

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?

Yes _____        No _X_

(a) If so, give name and location of court which imposed sentence to be served in the future: ___N/A___

(b) And give date and length of sentence to be served in the future: ___N/A___

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?

Yes _____        No ___N/A___

18. What date is this petition being mailed?

_September 7th, 2004._

Wherefore, petitioner prays that the court grant petitioner relief to which he may be entitled in this proceeding.

Case Number

CC 03 378

ID    YR    NUMBER

(To be completed
by Court Clerk)

# IN FORMA PAUPERIS DECLARATION

Circuit Court of Russell County, Al.

[insert appropriate court]

James Willie Jackson

(Petitioner)

vs.

State of Alabama

(Respondent(s)

## DECLARATION IN SUPPORT OF REQUEST TO PROCEED
## IN FORMA PAUPERIS

I, __James Willie Jackson__, declare that I am the petitioner in the above entitled case; that in support of my motion to proceed without being required to prepay fees, costs, or give security therefor, I state that because of my poverty I am unable to pay the costs of said proceeding or to give security therefor; that I believe I am entitled to relief.

1. Are you presently employed?    Yes _____    No __X__

    a. If the answer is "yes", state the amount of your salary or wages per month, and give the name and address of your employer.

    __N/A__

    b. If the answer is "no", state the date of last employment and the amount of the salary and wages per month which you received.

    __I have not worked in many years__

2. Have you received within the past twelve months any money from any of the following sources?

    a. Business, profession, or other form of self-employment?

    Yes _____    No __X__

    b. Rent payments, interest, or dividends?

    Yes _____    No __X__

    c. Pensions, annuities, or life insurance payments?

    Yes _____    No __X__

    d. Gifts or inheritances?

    Yes _____    No __X__

    e. Any other sources?

    Yes _____    No __X__

If the answer to any of the above is "yes", describe each source of money and state the amount received from each during the past twelve months.

_____

_____

_____

_____

3. Do you own cash, or do you have money in a checking or savings account?

Yes _____        No __X__

(Include any funds in prison accounts.)

If the answer is "yes", state the total value of the items owned.

_____

_____

4. Do you own any real estate, stocks, bonds, notes, automobiles, or other valuable property (excluding ordinary household furnishings and clothing)?

Yes _____        No __X__

If the answer is "yes", describe the property and state its approximate value.

_____

_____

5. List the persons who are dependent upon you for support, state your relationship to those persons, and indicate how much you contribute toward their support.

N /A

_____

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

Executed on _____
                           (Date)

                    X _____
                       Signature of Petitioner  James W. Jackson

## CERTIFICATE

I hereby certify that the petitioner herein has the sum of $ _____ on account to his credit at the institution where he is confined. I further certify that petitioner likewise has the foregoing securities to his credit according to the records of said _____ institution:

See enclosed Completed copy of this)
Document

_____

VENTRESS CORRECTIONAL FACILITY
P. O. BOX 767
CLAYTON, AL 36016

DATE                                    AUTHORIZED OFFICER OF INSTITUTION

James W. Jackson V. State of Alabama
                    Case No: (CC03-000378)
                    Circuit Court of Russell County

## Allegations and Claims

(1) Defendant was illegaly arrested on, (01-04-03) and placed in Russell County Jail on a failure to appear, charge, or warrant - a charge or warrant Defendant knew nothing about, and or had no Knowledge of.

(2) In the following week after Defendants illegal arrest of (01-04-03), Defendant was taken to District Court in Russell County, and a Judge sentenced Defendant to (13) days in Jail, for "Failure To Appear" and Defendant still was not informed of on what charge he failed to appear on, or, when, he failed to appear.

(3) After Defendant completed his "illegal" (13) day sentence, reffered to above, Defendant was kept in Jail illegaly - was never re-arrested, and was not told why he was not released from Jail after Completing his (13) day Jail sentence.

(4) Defendant alledges and claims that he was held in Jail for months, illegaly, after he served his (13) day illegal Jail sentence, he recieved in January, 2003 - that said incarceration was an illegal pretext to keep him in Jail till he was —

(1)

## Allegations and Claims

(4) Cont. — indicted on May (23rd), 2003, on a new charge by indictment which was defective as it failed to alledge that Defendant did, Knowingly with intent, unlawfully cause Distribution of a Controlled Substance, which made the indictment, defective and illegal.

## Ineffective Assistance of Counsel

(5) Defendant, James W. Jackson alledges and claims that he had ineffective assistance of Trial Counsel, prior to, and during trial, in that Court appointed Counsel Jeremy W. Armstrong, Phenix City, Alabama, who failed as Counsel, on and in the following issues:

(A) Failed to keep the Batson Challenge Alive for Appellate Consideration.

(B) Failed to Challenge in any means, the indictment as being illegal or defective, as applied.

(C) Failed to develope a defense for Defendant.

(D) Failed to raise the nesessary Challenges to the Prosecutor, Striking all the black people off of Defendants Jury Panel, except One.

(E) Failed to alledge Defendant was denied the equal protection of the Due Process Law, when perspective Jury members were Not drawn from a fair cross section of the Comunity.          (2)

## Allegations and Claims

(F) As a direct result of a violation of the Batson Authority, Defendant was prejudicially Harmed and he was denied a fair, and Just Trial.

(G) defense Counsel Armstrong failed to investigate the law as applicable to Defendant Jacksons Case - if he had, he would have known to keep the Batson issue alive for appellate consideration, among other things.

(H) Defendant Jackson alleges and claims, that he was a victim of a maliciously illegal entrapment scheme, concocted by the State's informant (Jason Hathcock) who had pending charges against him, so he made a deal with officers, and agents of the State, to "work" off the charges by setting up a "cocainebust" for and in favor of the said officers/agents of the State, which did as a matter of fact, violate Defendants, 4th, 5th, 6th, and 14th Amendment Rights, as defendant Jackson was an innocent third party, who only believed he was doing the informant a favor, as Defendant had no criminal intent to violate any laws.

(I) Defendant alleges and claims, that as of April (3rd), 2003, the state did not have sufficient evidence to try Defendant on, and if he had an effective defense Counsel at that time, to file the appropriate and necessary "Motions to Dismiss", that the outcome of Defendants trial would have been different,

# Allegations and Claims

(J) Defense Counsel Armstrongs performance was deficient and prejudicial to Defendants defense, in that said Attorney failed to challange the State's <u>Violation</u> of the <u>Brady Rule</u>, in the State's refusing to reveal the <u>full extent</u> of the Confidential informant's prior <u>criminal</u> and bad conduct record, as well as the promise's made to said informant, for his service's.

(K) Trial, and Appellate Counsel's peformance was deficient and prejudicial, due to his failure to Challange, and Argue the Batson issue on Appeal, and Counsel's failure to seek review of Defendant's Case, before the Alabama Supreme Court, on a writ of Certiorari.

## Ineffective Attorney on Direct Appeal

(L) Defendant allege's and claims that he had ineffective assistance of Counsel on his direct appeal, and said Attorney failed to research the laws, as applied to Defendant's Direct Appeal's, and had appellate Counsel Armstrong <u>been</u> effective, the outcome of Defendant's Appeal would have been different.

(4)

## Cont.- ineffective Attorney on Direct Appeal

Defendant alleges and claims that, not only was his appellate counsel ineffective, he was also ineffective by design, as he really <u>did not</u> have intent to adequately represent Defendant Jackson, because if he had the necessary intent, he would have raised all the obvious error that occurred during the states prosecution of this Defendant, but instead, all he did was, raise one issue on direct appeal, and that one issue on appeal did not have the necessary merit to cause the Jury's verdict of guilty as charged, to be reversed on appeal.

## Conclusion

Wherefore, all premises considered, Defendant James W. Jackson, respectfully moves this Honorable Court for post conviction relief, for the obvious reasons cited herein, by this Court entering an Order directing that an evidentiary Hearing be held, to allow Defendant a chance to prove his claims and to appoint an impartial Attorney for Defendant, one that will not be hesitant to prove Attorney Armstrong's ineffectiveness.

Subscribed and Sworn to, on September ____ 2004.

Respectfully,
James W. Jackson
James W. Jackson
V.C.F., POB 767
Clayton, Al. 36016
(A15-151754)

_____
Notary Public

(5)

21

# PETITIONER'S VERIFICATION UNDER OATH
## SUBJECT TO PENALTY FOR PERJURY

I swear (or affirm) under penalty of perjury that the foregoing is true and correct.

Executed on ___9,9,04___
_____(Date)_____

X _James W. Jackson_
Signature of Petitioner VENTRESS CORRECTIONAL FACILIT
P. O. BOX 767
CLAYTON, AL 36016

SWORN TO AND SUBSCRIBED before me this the _9th_ day of _September_, _2004_.

_Carolyn R. Abercrombie_
Notary Public

My Commission Expires August 18, 2007

### OR *

## ATTORNEY'S VERIFICATION UNDER OATH
## SUBJECT TO PENALTY FOR PERJURY

I Swear (or affirm) under penalty of perjury that, upon information and belief, the foregoing is true and correct. Executed on _____.
_____(Date)_____

_____
Signature of Petitioner's Attorney

SWORN TO AND SUBSCRIBED before me this the _____ day of _____, _____.

_____
Notary Public

Name and address of attorney representing petitioner
in this proceeding (if any)

_____

_____

_____

_____

* If petitioner is represented by counsel, Rule 32.6(a) permits either petitioner or counsel to verify the

Sept. 14, 2004

Dear Ms. Coulter,

Please appropriatley file the enclosed Petition in compliance with rule (32), Ala.R.Cri.P.

Please furnish The Russell County District Attorney's Office, the enclosed exact copy of Rule (32) Petition.

If at all possible, send me a "Stamped", "filed" copy to the address as follows:

James W. Jackson
No. 151754 - Dorm (10-A)
Ventress Correctional
PO Box 767
Clayton, Al. 36016

Your earliest and most serious attension is greatly appreciated.

Sincerely,

James W. Jackson

IN THE CIRCUIT COURT OF RUSSELL COUNTY, ALABAMA

JAMES W. JACKSON                )
                                )
        PETITIONER,             )
                                )
VS.                             )        CASE NO.   CC 03-378
                                )
STATE OF ALABAMA                )
                                )
        RESPONDENT.             )


ORDER

The Petitioner, James W. Jackson having filed a request to proceed in forma pauperis and the Court having reviewed and considered same, it is ORDERED that the request is granted.

DONE this the 29th day of October 2004.


_____
JUDGE, CIRCUIT COURT

FILED IN OFFICE
2004 OCT 29  PM 4: 24

24

File

STATE OF ALABAMA )   IN THE CIRCUIT COURT OF
(
V. )   RUSSELL COUNTY, ALABAMA
(
JAMES W. JACKSON )   CASE NO.    CC-03-378 . 60

## ANSWER TO RULE 32 PETITION

COMES NOW THE STATE OF ALABAMA, by and through it's Assistant District Attorney and answers the Defendant's petition as follows:

Petitioner has alleged:

1.    The conviction was obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant;

2.    denial of effective assistance of counsel

3.    that newly discovered material facts exist which require that the conviction or sentence be vacated.

Petitioner did file an appeal. The issues above were or could have been raised in that manner. Pursuant to ARCP 32.2(a)(3) and (a)(5), therefore, these allegations are precluded and the petition on these grounds is due to be dismissed.

Petitioner's fails to supply a sufficient factual basis on these claims. The State of Alabama denies that any of the conduct complained of in the petition, if true, would rise to the level of requiring granting of this petition.

Therefore, based on the above, the State of Alabama moves this Honorable Court to dismiss this petition.

Done this the 19th day of November, 2004.

KENNETH DAVIS,
District Attorney

Greg Waldrep
Assistant District Attorney

FILED IN OFFICE
2004 NOV 19 PM 3: 52
DISTRICT COURT CO.

## CERTIFICATE OF SERVICE

The State of Alabama certifies that it has this day served a copy of the foregoing answer upon defendant by placing a copy of same in the United States Mail with proper postage affixed thereto addressed to:

James W. Jackson, AIS # 151754
Ventress Correctional Facility
P.O. Box 767
Clayton, AL    36016

This the 19th day of November, 2004.

KENNETH DAVIS,
District Attorney

Greg Waldrep
Assistant District Attorney

In The Circuit Court For Russell County, Ala.

James W. Jackson
Petitioner / Defendant
V.
State of Alabama
Plaintiff / Respondent

Re: Rule 32 Petition

Case No. CC-03378.60

FILED IN OFFICE
2004 DEC 13  AM 10:
CIRCUIT/DIST. COURT
RUSSELL CO., AL.

## Reply and Rebuttal to Answer from State

Comes now James W. Jackson, Pro-Se Petitioner, pursuant to the appropriate rule and authority, herein respectfully files and submits his Reply and Rebuttal to the answer from the State's assistant District Attorney, Greg Waldrep, who himself filed in the Russell County, Ala., Circuit Court, on November 19th, 2004, and will reply thereto as follows:

Petitioner rebuts the answer of the State District Attorney's Office supra, as being not only insufficient but also rediculous in that the (D.A.'s) office claims Petitioner failed to supply sufficient factual basis on the claims. That statement is false and misleading, as evidence in support of Petitioner's claims are present on the "face" of records and transcripts, as Petitioner will show.

(1) First off, Petitioner points out that the said D.A's "answer" filed (11-19-04) is as Defective as his Original Conviction of Petitioner, as assistant D.A's Office failed to list or address all of Petitioner's Challenged Errors and deprivation - evidently, the assistant D.A. under estamated Petitioner's ability to Overcome such answers as: "Conduct Complained of" were true, it would not rise to the level of requireng granting of this Petition. Assitant D.A's above statement is so rediculous that it questions his qualifications to hold a position working for the District Attorneys Office, because:

The assistant D.A. claims that the issues cited were, or could have been raised in his Appeal, therefore, the allegations are precluded and the Petition should therefore be dismissed — is a claim that carries <u>no legal weight</u> of persuation, <u>or</u> merit, because the Petitioner had the <u>same</u> ineffective attorney on his Direct Appeal, as he had for his Trial, and Said Attorney Armstrong continued to render <u>ineffective</u> assistance of Counsel throughout the Appellete Court, Therefore, The default or Constitutional Error <u>cannot</u> be attributed to Petitioner, as he had <u>no</u> control over the actions of said Attorney. So in a sense, Petitioner is challenging the application of Rule 32.2 (a)(3), and (a)(5) —

— of the (Ala. R. Crim. P.), as it applies to a
Defendant who has the <u>Same</u> Attorney in
Appellete Court as he had during Trial, in
that said procedural defaults are attributed
to Defendants ineffective assistance of Counsel,
which Supports Petitioners claim of <u>having</u>
ineffective assistance of Counsel, both at Trial,
as well as in Appellete Court.

Than Petitioner Jackson also points out
another Obvious misstatement, and error,
in that of No. 3 of said paragraph in said
DA's Answer, stating that Petitioner claimed
or alleged of Newly Discovered Material Facts
Exist — and since Petitioner <u>never</u> made that
claim, such "answer" Carries no merit and
should be denied and stricken from said Answer.

<u>Violation of Well Established Rights</u>
Petitioners rights to effective assistance of Counsel
reguarding Petitioners "Defense" have been well
established since the Giden decision,
<u>Giden V. Wainwright</u> 372 U.S. 335, a LED 2d (799)
in which said Attorney Only provided a          (1963)
"Show" of Representation in Petitioners Case.
(Also See) McMann V. Richardson 397 U.S. 759, 25 LED 2d.
                                                    (1763)
                                                    (1970)

(3)

The <u>Factual Evidence does exist</u>, and Just one of many is that Petitioner was illegally arrested on a "Trumped Up" charge that Petitioner was never made aware of on that (4th) day of January, 2003, and then Petitioner was found guilty of said Trumped up charge, he then <u>served the (13) day sentence</u> in its entirety, but <u>was still illegally held</u> in Russell County (Ala.) Jail for (3) months <u>after</u> serving his (13) day sentence, but was <u>not</u> served an arrest warrant, or even informed <u>Why</u> he was <u>still being held After serving</u> his (13) day sentence, than when Petitioner <u>Finally was</u> served an indictment, it was <u>defective</u> in the sense that it failed to charge a "Mental State", (<u>Please See</u>) Chapman V. State 813 So 2d. 956 (Ala.Crim.App.) And, Please let this Honorable Court - <u>Note</u>,      (2001) that "<u>anything</u>" occurring after an illegal Arrest is Completely Un-Constitutional and/or a denial of substancial Due Process Law, (<u>Please See</u>) U.S. V. Santana 427 U.S. 38, 49 LED 2d., 300 (1976)

Petitioner's Substancial <u>Due Process Rights</u> were <u>Also Violated</u> prior to his Trial, as when the Court "Appointed" Attourney Armstrong, who in fact failed to <u>Challenge</u> Petitioner's indictment, "Arrest", or Prosecutor's Charge, in <u>any</u> manner.

(4)

Additionally, The Trial Court (Russell County, Al.) should, or could have acted, or at least Overseen the Trial to ascertain that Petitioners Rights were protected, (Stano V. Dugger 921 F. 2d 1125 (11th Cir. 1991) and it is obvious on the face of the "records" that Defense Counsel Armstrong acted incompetently (Code V. Montgomery 799 F 2d 1481 (11 Cir. 1981) and the authorities in these (2) cases are, (Supra) applicable to this Case at bar, and This Honorable Court should allow an Evidentiary Hearing to be scheduled, in where Petitioner can appear with an _effective_, different appointed Counsel to offer supportive Testimony and Evidence, in order for Petitioners Well Established Rights to be protected.

Petitioner further argues that the Claim of _ineffective assistance of Counsel_ at his Trial, as well as in his Appeal, _must_ be dealt with "By Law", in a _Rule 32 Action_ (In the State of Alabama) (Drake V. State, 620 So. 2d 60 (Ala. Crim. App. 1992) (Ex Parte Rice, 565 So. 2d 606 (Ala. 1990), and the States response (Answer) to Petitioner Jackson's Rule 32 Petition did not satisfy the burden of The State to adequately rebut said "32" action, (Richardson V. State 571 So. 2d 399 (Ala. Crim. App.) and the "keys" to _Effective_ Assistance of Counsel are involved in the pre-Trial _Investigation_ ——

(5)

— As well as an Appropriate Defense, involving proper Preparation for Trial, and in this Case, Attorney Armstrong had never done an investigation, Or if he did, it was a "Sham" for Show — did Armstrong ever interview anyone?, did he ever make an independant investigation of all necessary facts or The State's evidence used to Convict Petitioner? this remains to be established.

(Please See) Davis V. Alabama 596 F 2d 1214 (5th Cir 1979) Code V. Montgomery (Supra), Eslinger V. Davis, 44 F 3d. (15/5, 11 Cir 95)

Additionally, the Only way this Honorable Court can reach a proper decision in this Case, is to allow the Record's to be developed accordingly; Lynch V. State 620 So. 2d 748 (Ala. Crim. App, 1993), On the Claim that: Petitioner's Indictment was defective, The D. A's Assistant, Greg Waldrep, Failed to address, or even mention this Claim in his (Answer), and a review of the indictment reveals that it is defective in it's failure to allege that Petitioner Jackson Knowingly with intent did unlawfully Sell, furnish, give away, manufactor, deliver, or distribute Cocaine, or a Controlled Substance, in violation of Section, 13A-12-211, of the Code of Alabama, 1975, Etc., Etc. in which said actions by Petitioner remain unproven, and improperly raised or un-Challanged by Attorney Armstrong, as the —

(6)

said issue's were not properly preserved for Appellant Court, or properly Objected to, by and in Trial Court because of failure's of Attorney "effective procedures" that should/could have been used by Attorney Armstrong, and is another reason Why Petitioner's Conviction and Sentence should be vacated accordingly.

Wherefore, premise's Considered, and in Opposition to the Assistant District Attorney's defective and ineffective Answer's Reguarding Petitioners Rule 32 Petition, James W. Jackson, Pro-Se Petitioner respectfully moves this Honorable Court to issue Order denying the State's request that Petitioner's Rule 32 Petition for Relief be dismissed, and respectfully enter an Order scheduling a hearing, as an Evidentiary Hearing, and/or enter an Order granting Petitioner the Relief he is so entitled too.

It is so prayed,

Respectfully Submitted,
*James W Jackson*
James W. Jackson - Pro-Se
A/S-No. ( 151754 )
V.C.F. - dorm 10-A
PO Box 767
Clayton, Al. 36016

<u>Certificate of Service</u>

Comes now James W. Jackson pro se who herein avows and states that a true copy of the fore-going attach Reply and Rebuttal to the Answer of the State is being sent by U.S. mail to The States Attorney listed therein at their listed address on December 10th, 2004

Mailed to:

Russell County Circuit Court      S/ James W. Jackson
Clerk - Kathy S. Coulter           James W. Jackson - Affiant
P.O. Box 518                       Petitioner - Defendant pro-se
Phinix City, Al. 36868-0518       Ventress Corr. Fac. (AIS-No. 151754 )
                                   P.O. Box 767, Clayton, Ala. 36016


Subscribed and Sworn to
before me a Notary Public Witness
on December 10th, 2004
S/    Kuith B. Nedny
Notary  Witness
                My commission expires on _____

_ 8 _

34

NAME James W Jackson AIS # 151754 DORM #10-A

VENTRESS CORRECTIONAL FACILITY
P. O. BOX 767
Clayton, AL 36016

"This correspondence is forwarded from
an Alabama State Prison. The contents have
not been evaluated, and the Alabama Department
of Corrections is not responsible for the substance
or content of the enclosed communication."

(VENTRESS
LAW LIBRARY
Legal Documents)

Russell County Circuit
Court Clerk - Kathy S. Coulter
P.O. Box 518
Phenix City, Al. 36868-0518



## In The Circuit Court For Russell County, Ala.

James W. Jackson
Petitioner

V.

State of Alabama
Respondent

Re: Rule 32 Petition

Case No. CC03-378.60

## Motion For Evidentuary Hearing

Comes now James W. Jackson, Pro-Se Petitioner, pursuant to the appropriate rule and authority, herein moves this Honorable Court to issue an evidentiary Hearing for the above styled and numbered cause, and that said Hearing be placed on the next available Docket, for the following reasons:

(1) Petitioner filed his Rule 32 Petition over (3) months ago, and a reasonable amount of time has passed.

(2) The Russell County Assistant District Attorney had filed his Answer to Rule 32 Petition on November (19th), 2004.

(3) Petitioner filed and submitted his Reply and Rebuttal to the Answer of the State, over (2) months ago, respectfully requesting an Evidentiary Hearing as Petitioner would show this Honorable Court a sufficient factual basis of evidence supporting the relief he is seeking.

(1)

## Conclusion

Wherefore, all premises considered, and in opposition of the Russell County, Al., District Attorney assistants ineffective "Answer" to this Petitioners Rule 32 Petition for relief, Petitioner respectfully moves this Honorable Court for an Order scheduling a date for an Evidentiary Hearing to be held, allowing Petitioner to be presant and/or enter an Order granting Petitioner the relief he is inso entitled too.

Respectfully Submitted,

*James W Jackson*

## Certificate of Service

I, James W. Jackson, swear under the penalty of perjury that the foregoing is true and correct, and that I served a true and correct copy to Russell County Circuit Court, by placing said copy in the U.S. mail, first class, postage prepaid, and addressed as follows:

Russell County Circuit Court
Att: Kathy S. Coulter - Clerk
P.O. Box 518
Phenix City, Al. 36868-0518

Executed on February 23, 2005
*James W Jackson*
James W. Jackson - 151754

Sworn to and Subscribed before me on this 23rd day of February, 2005

*Carolyn R. Abercrombie*
My Commission Notary Public
My Commission Expires April 18, 2008

NAME James W. Jackson AIS # 151754 DORM # 7B
VENTRESS CORRECTIONAL FACILITY
P. O. BOX 767
Clayton, AL 36016

VENTRESS
LAW LIBRARY 36868-0518

"This correspondence is forwarded from
an Alabama State Prison. The contents have
not been evaluated, and the Alabama Department
of Corrections is not responsible for the substance
or content of the enclosed communication."

Russell County Circuit Court
Att: Kathy S. Coulter - Clerk
P.O. Box 518
Phenix City, AL. 36868-0518

To: Kathy Coulter, "Circuit Court Clerk"

From: James Willie Jackson  AIS 151754A

In R.E.  CASE NO. CC 03-00378.

FILED IN OFFICE
2005 MAR 21 AM 11:09
____ CIRCUIT COURT

Dear Ms. Coulter

     I Am writing in referance to a Rule 32 Petition mailed September 7, 2004.
I Am Needing A Summary on the Status of the Petition. Any rulings on Any motions And Any dates set for hearing the Petition.
Thank you for your Time And Any Assitance you give.

     Sincerly

     James Jackson

march 16, 2004

5/3/05 - Request Denied
F 6

39



NAME James Jackson AIS # 151154 DORM # 7B
VENTRESS CORRECTIONAL FACILITY
P. O. BOX 767
Clayton, AL 36016



"This correspondence is forwarded from
an Alabama State Prison. The contents have
not been evaluated, and the Alabama Department
of Corrections is not responsible for the substance
or content of the enclosed communication."

Kathy Coulter
P.O. box 518
Phenix City, AL.

36868-0518

40

STATE OF ALABAMA                    )        IN THE CIRCUIT COURT OF

      PLAINTIFF,                )        RUSSELL COUNTY, ALABAMA
                           )
VS.                                 )        CASE NO.: CC 03-378.60
                           )
JAMES WILLIE JACKSON                )
                           )
      DEFENDANT.                )

## ORDER

The defendant having filed a Request for a summary on the status of his Rule 32 petition and the Court having reviewed and considered same, it is ORDERED that the request is denied.

DONE this the 4th day of May 2005.


_____
JUDGE, CIRCUIT COURT

91

To: Kathy S. Coulter
Circuit Clerk
P.O. box 518
Phenix City, Al. 36868-0518

In RE. Rule 32 Appeal,

Case # CC 03-378-60

FILED IN OFFICE
2005 JUL 14 PM 1:20
CIRCUIT/DIST. COURT
RUSSELL CO. AL.

Dear ms. Coulter,

I am writing you concerning a Rule 32 Appeal filed in your office under the above case number.
I was told once, a few months back by the officials that Russell County was coming to transport me to court.
I packed all my things and waited for hours at the back gate, but nobody came. I was sent back to my dorm confused and wondering what was happening. I'm still confused about my case, is it still active, are Russell County Authorities coming after me? I was told that I would go to court after I completed S.A.P. I have finished S.A.P. and have fowarded a copy of my certificate to Judge Green.
Will you please write me and let me know whats going on.

Thank you

Sincerly:

AIS. 151754
James W. Jackson
P.O. box 767
Clayton, Al. 36016

42

NAME James W. Jackson # 151154 DORM #
VENTRESS CORRECTIONAL FACILITY
P. O. BOX 767
Clayton, AL 36016

"This correspondence is forwarded from
an Alabama State Prison. The contents have
not been evaluated, and the Alabama Department
of Corrections is not responsible for the substance
or content of the enclosed communication."

Circuit Clerk
Kathy S. Coulter
P.O. box 518
Phenix City, Al.

36868-0518

43

## IN THE CIRCUIT COURT OF
## RUSSELL COUNTY, ALABAMA

JAMES W. JACKSON,         )
     PETITIONER,       )
VS                     )       CASE NO.: CC 03-378.60
STATE OF ALABAMA,       )
     RESPONDENT.       )

### MOTION FOR STATUS OF RULE 32 PETITION

COMES NOW your Petitioner, James W. Jackson, appearing Pro se
in the aboved-styled cause and respectfully moves the Court to
notify Jackson of the status of his Rule 32 Petition filed in
this Court.

AS GROUNDS FOR HIS MOTION, PETITIONER WOULD SHOW AS FOLLOWS:
1.    Jackson would submit to the Court that this Court granted
him leave to proceed In Forma Pauperis on October 29, 2004.
2.    On May 4, 2005 Jackson requested for summary of status and
this Court denied his request on May 4, 2005.
3.    Jackson requested for production of documents and the
Court denied his request on April 3, 2006.
4.    Jackson would further submit to the Court that until this
filing date of this Motion for the Status of his Rule 32 Peti-
tion Jackson has not been informed of the status and/or ruling
on his Rule 32 Petition.

WHEREFORE, PREMISES CONSIDERED, JACKSON respectfully prays,
that this Court inform him of the status of his Rule 32 Petition
and/or render a decision.

RESPECTFULLY SUBMITTED,

_____

JAMES W. JACKSON, PRO SE
565 BIBB LANE
BRENT, ALABAMA 35034

## CERTIFICATE OF SERVICE

I do hereby certify that I have served a copy of the fore-
going upon: KENNETH E. DAVIS, DISTRICT ATTORNEY, P.O. BOX 939,
PHENIX CITY, ALABAMA 36868, by placing a copy in the U.S. Mail
first class postage prepaid this the_____day of_____,2006.


JAMES W. JACKSON, PRO SE
565 BIBB LANE
BRENT, ALABAMA 35034

...orm

...ave

...que

of th...

...or us...

respondence is forwarded

State Prison. The ...ntents

...iated, and the Alabama

...rections is not responsible

... content of the enclosed

CIRCUIT CLERK
KATHY S. COULTER
P.O. BOX 518
PHENIX CITY, AL.
36868

36868+0518-1A B007

JAMES JACKSON 151751 A2 49 TOP
50 S BIBB LN
BRENT, AL.
35035

46

*Fl*

# In The Circuit Court Of Russell County, Alabama

James W. Jackson
    Petitioner

VS.

State of Alabama
    Respondant

CC# 03-325

FILED IN OFFICE
2006 AUG 25 PM 1:06
CIRCUIT DIST. COURT
RUSSELL CO. AL

Comes now, the petitioner James Jackson pro-se to seek and immediate status report on a Rule 32 post-conviction petition filed in this court on or about October 29, 2004. Petitioner's in forma pauperis was granted 10-29-04, but no other action has been taken on said petition that petitioner is aware of. Therefore petitioner respectfully request a case action summary sheet along with status of said petition.

James W Jackson

Sworn and subsribed before
me this the ___23Rd___ day of August
2005

Notary    Carolyn R. Abercrombie

My Comm. Expiries    My Commission Expires August 18, 2007

48

NAME James Willie Jackson AIS # 151254 DORM # 3

VENTRESS CORRECTIONAL FACILITY
P. O. BOX 767
Clayton, AL 36016

"This correspondence is forwarded from
an Alabama State Prison. The contents have
not been evaluated, and the Alabama Department
of Corrections is not responsible for the substance
or content of the enclosed communication."

Kathy Coulter, Clerk
P.O. Box 518
Phenix City, Al.

36868-0518

Original

99

# In The Circuit Court OF Russell County Alabama

Defendant
## James Willie Jackson

## Vs.

Case No. CC-03-878.60

plaintiff
## State OF Alabama

## Motion For An Evidentiary Hearing.

Comes Now the Defendant James Willie Jackson, Pro Se, And moves this Honorable Court for An Order Setting this matter for A hearing, in support thereof, the defendant would submit the following....

On or About September 9, 2003 Defendant filed A Rule 32 for relief, New evidence has been discovered, that would be exculpatory to the defendant.

Wherefore, the primisise Considered, the defendant prays this Honorable Court for An Order setting this matter for A hearing. And any other relief this Court deems proper And just.

50

Submitted on this 27th day of September 2005.

JAMES W JACKSON
~~Print~~ Name

*James W Jackson*
Cursif long hand here

Known to and Sworn before me on this the 27th day of, September 2005.

Carolyn R Abercrombie
My Commission Expires August 18, 2007

James W. Jackson
P.O. box 769
Clayton, AL,
36016

DOR: ...
AND THE ALABAMA DEPARTMENT OF
CORRECTIONS IS NOT RESPONSIBLE
...

Circuit Court Clerk
Kathy Coulter
P.O. box 518
Phenix City, AL,
36868




52

| | | |
|---|---|---|
| JAMES WILLIE JACKSON | ) | IN THE CIRCUIT COURT OF |
| PETITIONER, | ) | RUSSELL COUNTY, ALABAMA |
| | ) | |
| VS. | ) | CASE NO.: CC 03-378.60 |
| | ) | |
| STATE OF ALABAMA | ) | |
| | ) | |
| RESPONDENT. | ) | |

FILED IN OFFICE
2006 OCT 27 AM 10:58
CIRCUIT/DIST. COURT
RUSSELL CO., AL.

## ORDER

The Petitioner, James Willie Jackson, has filed a petition seeking relief from conviction and sentence pursuant to Rule 32 of the Alabama Rules of Criminal Procedure. Petitioner cites as grounds for relief:

1. Failure of prosecution to disclose evidence favorable to Petitioner.

2. Newly discovered evidence.

3. Denial of effective assistance of counsel.

Petitioner, James Willie Jackson, makes claim that the District Attorney of Russell County failed to disclose evidence favorable to the Petitioner and also claims that newly discovered evidence requires that Petitioner's conviction and sentence be set aside, and a new trial granted. The Court finds that Petitioner, James Willie Jackson, has not plead either of these two claims with specificity and both these claims are hereby dismissed.

As to Petitioner's claim of ineffective assistance of counsel, Petitioner cites the failure of Defense Counsel to:

1. Challenge validity of indictment.

2. Failure to object to composition of jury.

3. Failure to preserve Batson challenge for appellate review.

4. Failure to develop a defense for Petitioner.

5. Failure to challenge method of selection of jury.

6. Ineffective assistance of counsel.

The Court finds the following: The indictment issued against Petitioner James Willie Jackson was in Code form and was sufficient on its face to notify the Petitioner of the crime with which he was charged.

A defense counsel is under no obligation to invent or develop a defense for a defendant.

Petitioner cites numerous grounds claiming ineffective assistance of counsel. Petitioner's claim that the jurors were not drawn from a fair cross section of the community is not plead with specificity and is due to be dismissed. Defense Counsel did in fact challenge the composition of the jury by making a Batson Motion. This Motion was overruled or denied by the Court. This issue was preserved for review. On appeal, a review of this ruling would not have overturned the Trial Court's ruling. At trial, the Petitioner did not show that the Russell County District Attorney's Office had selected jurors in a discriminatory manner. This claim is due to be dismissed.

Petitioner's other claims challenge the sufficiency of the evidence. These claims are hereby dismissed. Petitioner's sentence and conviction was affirmed by the Alabama Criminal Court of Appeals on April 23, 2004. These claims are barred by statute.

Petitioner claims he was denied effective assistance of counsel due to failure of his attorney to research the law. Petitioner has not shown with specificity which law or laws would lead to a reversal of his conviction or sentence. This claim is hereby dismissed.

It is hereby ORDERED, ADJUGED and DECREED that the Petition seeking relief pursuant to Rule 32 of the Alabama Rules of Criminal Procedure is hereby dismissed. Court costs are assessed to Petitioner. Monies are to be deducted from the Petitioner's prison account with the Alabama Department of Corrections to reimburse the State of Alabama court costs.

DONE this the 26th day of October 2006.

_George R. Greene_

———————————————
JUDGE, CIRCUIT COURT

1    a problem instead of speculating.

2        MR. ARMSTRONG:  That's fine with me.

3        THE COURT:  All right.  Strike a jury.

4    You've got 30 minutes.

5            (Counsel and the circuit court clerk

6             struck the jury without the presence

7             of the court reporter.)

8            (Jury venire not present.)

9        THE COURT:  There is a motion at this time?

10        MR. ARMSTRONG:  Yes, Your Honor.  I make a

11    Batson motion.  During jury selection, the State

12    of Alabama struck four of the five

13    African-American jurors that are on the jury

14    panel: Juror Number 41, Juror Number 43, Juror

15    Number 53 and Juror Number 157.  I contend this

16    is in violation of Ex parte Branch, State of

17    Alabama's case.  They do not have sufficient

18    reasons to exercise their peremptory strikes to

19    strike each and every one of these jurors.  And,

20    again, that takes into account in terms of my

21    client not getting a fair and impartial jury that

22    is a fair representation of the community to

23    preside over this case or to hear this case, and

24    I just ask that the Court make the State of

25    Alabama give their reasons for each strike.

1    THE COURT:  28 jurors, and of the venire,

2    there were five blacks?

3       MR. ARMSTRONG:  Correct.

4       THE COURT:  And of 28, 23 whites.  And as

5    impaneled, there's one black juror?

6       MR. ARMSTRONG:  Correct.  And for the

7    record, my client is African-American, Your

8    Honor.

9       THE COURT:  Anything further?

10      MR. ARMSTRONG:  No, Your Honor.

11      THE COURT:  Court finds there is an

12   insufficient showing in the motion of

13   discrimination in the selection on the part of

14   the District Attorney's office and would deny

15   your motion.

16      MR. ARMSTRONG:  Just note my objection for

17   the record.

18      THE COURT:  If we'll bring the jurors in,

19   please.

20          (Jury venire present.)

21          (The following bench conference was

22           held outside the hearing of the jury

23           venire:)

24      MR. LANDREAU:  During the break, we ran the

25   history, criminal history, of the informant.  The

1    criminal history shows that he has no prior

2    felony offenses, and, therefore, there would be

3    nothing to disclose.

4         MR. ARMSTRONG:  And I'm just relying on what

5    the State of Alabama has told me that the

6    confidential informant, which is Mr. Hathaway --

7    Hathcock, has no prior felony criminal history.

8              (Jury impaneled.)

9              (Rest of jury venire dismissed.)

10            (Jury sworn.)

11       THE COURT:  Ladies and gentlemen, I had

12    previously read out the indictment to you and I

13    will not reread the indictment, but this case

14    comes to the Court by way of an indictment

15    returned by a grand jury impaneled here in

16    Russell County.  The indictment is not evidence

17    in the case and should not be considered by you

18    as evidence in the case.  It is merely the

19    written means by which the case is brought before

20    you for trial.  The indictment also serves the

21    purpose of notifying a defendant with

22    particularity of the offense with which he is

23    charged, and it sets out the elements of the

24    offense which must be proved by the State of

25    Alabama.

ACR362

ALABAMA JUDICIAL DATA CENTER
RUSSELL COUNTY
COST BILL

CC 2003 000378 60
JID: GEORGE R. GREENE

IN THE CIRCUIT  COURT  OF RUSSELL COUNTY

CITY OF SL0204552 VS

JACKSON JAMES WILLIE
151754
565 BIBB LANE
BRENT, AL
                35034

C O S T S

| ITEM | DUE | PAID | BALN |
| --- | --- | --- | --- |
| RULE 32 | $234.00 | | $234.00 |

| TOTAL COSTS | $234.00 | $0.00 | $234.00 |

I HEREBY CERTIFY THAT THE ABOVE IS A TRUE AND CORRECT STATEMENT OF THE
COSTS DUE IN THE SPECIFIED CASE:

10/27/2006 ISSUED DATE        KATHY COULTER              CLERK/REGISTER

OPERATOR: JOS
PREPARED: 10/27/2006